JEAN E. WILLIAMS, Deputy Assistant Attorney General
Environment & Natural Resources Division
SETH M. BARSKY, Chief
S. JAY GOVINDAN, Assistant Chief
ROBERT P. WILLIAMS, Sr. Trial Attorney
KAITLYN POIRIER, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Tel: 202-307-6623; Fax: 202-305-0275
Email: robert.p.williams@usdoj.gov
Email: kaitlyn.poirier@usdoj.gov

**Attorneys for Federal Defendants**

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| YUROK TRIBE, PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, and INSTITUTE FOR FISHERIES RESOURCES, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. BUREAU OF RECLAMATION and NATIONAL MARINE FISHERIES SERVICE, <br><br> Defendants, <br><br> and <br><br> KLAMATH WATER USERS ASSOCIATION, <br><br> Intervenor-Defendant. | Case No. 3:19-cv-04405-WHO <br><br> **FEDERAL DEFENDANTS' OBJECTION TO REPLY EVIDENCE AND SUR-REPLY** <br><br><br> Hearing Date: February 28, 2020 <br> Hearing Time: 9:30 AM <br> Courtroom: 2, 17th Floor <br> Judge William H. Orrick |

## I. Introduction

On reply in support of their motion for preliminary injunction (ECF 27), Plaintiffs have proffered new evidence, asserted new factual allegations and claims, and requested a new preliminary injunction (ECF 48 & 48-1). Plaintiffs concede that their original request to compel a return to the 2012 Operations Plan for the Klamath Project and this Court's 2017 Injunction was inappropriate, and they now pivot to ask the Court to instead alter the 2018 Operations Plan, specifically by adding 50,000 acre feet of water to the Environmental Water Account ("EWA") for this year. This new request on reply is procedurally improper under Ninth Circuit authority and Local Rule 7-3(d)(1). Plaintiffs could have sought this new injunction from the outset, and doing so on reply prejudices Federal Defendants. The Court should disregard Plaintiffs' new request for an injunction and deny their motion for all of the reasons set forth in Federal Defendants' opposition thereto (ECF 46).

In the alternative, if the Court entertains Plaintiffs' request for a new injunction, it should deny it because it is unwarranted for the same reasons as their original injunction, as further explained in this sur-reply. Plaintiffs' concession of the impropriety of their original preliminary injunction illustrates why the Court likewise should not grant their new request. Plaintiffs fail to specify what operations they are requesting, and in so doing they fail to show that their new injunction solves the problems posed by their original one. Plaintiffs again fail to show that their injunction could be implemented in real-time operations while maintaining elevations in Upper Klamath Lake needed by endangered suckers. Indeed, Plaintiffs fail to carry their heavy burden of showing that 50,000 acre feet of additional water is narrowly tailored to prevent an imminent likelihood of irreparable harm to the Southern Oregon/Northern California Coast Evolutionarily Significant Unit of Coho Salmon ("SONCC Coho"). Plaintiffs offer no scientific justification for adding 50,000 acre feet of water, as opposed to any other volume. Plaintiffs' newly requested injunction should be denied for this reason alone.

Plaintiffs assert that the U.S. Bureau of Reclamation ("Bureau") "has not yet given [the National Marine Fisheries Service ("NMFS")] a biological assessment for the [reinitiated] consultation specifying the amount of increased May-June flows to meet salmon rearing needs" (ECF 48 at 1), however, the Bureau has, in fact, provided NMFS with its biological assessment of its

new operations plan (on February 7, 2020), and that plan proposes to allocate up to an additional 20,000 acre feet of water from Project supply to the EWA in years of water shortfall to meet the Bureau's responsibilities under the Endangered Species Act ("ESA") with respect to the SONCC Coho. The Bureau has requested that NMFS complete reinitiated consultation on the new proposed operations plan by March 31, 2020, prior to the start of the 2020 irrigation season.

Additionally, in failing to specify how the 50,000 acre feet of additional water would be distributed (*i.e.*, whether under the formulaic distribution methodology and protocols of the 2018 Operations Plan and NMFS' 2019 biological opinion ("BiOp") or some other, unidentified framework), Plaintiffs' newly requested injunction does not comport with Federal Rule of Civil Procedure 65. Federal Rule 65 would prohibit an ill-defined injunction requiring the Bureau to operate outside of the specific confines of the established framework of the 2018 Operations Plan and 2019 BiOp. Complying with such an injunction would be inherently perilous, placing the Bureau in an untenable position of managing the Project under constant threat of accusation that it is violating an order of this Court for any operational decision with which Plaintiffs did not agree.

**II.    Argument**

    **A.    Plaintiffs' New Evidence, Claims, and Requested Relief on Reply Are Procedurally Improper and Should Not Be Considered**

Plaintiffs' reply contradicts the general rule in the Ninth Circuit that a moving party "cannot raise a new issue for the first time in their reply briefs.'" *Nevada v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990) (citations omitted). Specifically, Plaintiffs' motion for preliminary injunction (ECF 27) asks the Court to order the Bureau "to revert to and operate the Klamath Project under" its operations plan from 2012, consistent with the BiOp on that operations plan from 2013, "supplemented by the flows required by the injunction issued [in 2017] in *Yurok Tribe v. Bureau of Reclamation* ("*Yurok I*"), No. 16-cv-6863-WHO, ECF 70." ECF 27-1 at 2. Plaintiffs' motion argues that, without this specific relief, the SONCC Coho is likely to be harmed irreparably before this case can be decided on the merits. Plaintiffs further contend that they are likely to prevail on the merits of their claims that NMFS' 2019 BiOp on the effects of the Bureau's 2018 Operations Plan for the

Klamath Project on SONCC Coho is unlawful, and that the Bureau unlawfully decided to rely on that BiOp to meet its duties with regard to the species under the ESA.

On reply, however, Plaintiffs have abandoned their requested injunction entirely. Plaintiffs concede that, as Federal Defendants demonstrated in their opposition (ECF 46), the injunction would be ill-advised because it would be a reversion to outdated science that likely would harm endangered sucker fish in Upper Klamath Lake. ECF 48 at 2. But, though they have abandoned their requested injunction, Plaintiffs have not withdrawn their motion or filed a new motion. Instead, Plaintiffs have proposed, for the first time in their reply brief, that the injunction take a wholly new form. Rather than requesting a return to the 2012 Operations Plan and 2017 Injunction, Plaintiffs now ask the Court to alter the 2018 Operations Plan, specifically by adding 50,000 acre feet of water to the EWA for SONCC Coho. And, confronted with uncontroverted facts presented in Federal Defendants' opposition that undermine their claim that an affirmative injunction is needed to prevent likely irreparable harm to SONCC Coho in 2020, Plaintiffs attempt to justify their new injunction on reply by asserting new factual allegations and legal theories regarding species *other than* SONCC Coho, namely Chinook salmon and Southern Resident Killer Whales. Plaintiffs invoke "Tribal trust needs" with regard to these species and devote a section of their reply to an argument that "Chinook Will Suffer Irreparable Harm Unless Additional Water Is Available For Spring Flows." ECF 48 at 2-3, 13-14. However, this is not a water rights or a Tribal trust case. Plaintiffs did not move for a preliminary injunction based on a legal cause of action involving Tribal trust obligations or arguments about claimed inadequacies of the 2019 BiOp or irreparable harm specific to Chinook salmon or Killer Whales. The Court will not find reference to a claim for breach of Tribal trust obligations in Plaintiffs' motion for preliminary injunction. Rather, Plaintiffs moved for a preliminary injunction based on arguments regarding the likelihood to succeed in claimed inadequacies of the 2019 BiOp as it relates to SONCC Coho and that an injunction is necessary to avoid likely irreparable harm to SONCC Coho. Indeed, Chinook salmon in the Klamath River are not listed under the ESA, and Plaintiffs did not mention Killer Whales anywhere in their motion for preliminary injunction. In short, Plaintiffs' allegations regarding Chinook salmon and Killer Whales – offered for the first time on reply – cannot justify a preliminary injunction here.

Plaintiffs attempt to justify their about-face on reply by asserting it is based on "recent developments" (ECF 48 at 1), but the "developments" they identify are not new. It was well-known at the time Plaintiffs filed their motion that the 2018 Operations Plan "incorporates changes in the Klamath Basin Planning Model ("KBPM")" and "provides both a surface flushing flow in most water years and certain habitat conditions to protect endangered suckers in Upper Klamath Lake." *Id.* at 2. Plaintiffs also attempt to downplay their about-face by labeling it a "modification" of their motion for preliminary injunction, but they did not actually file an amended or modified motion. Had they done that, the effect would have been to moot their original motion and waive any argument(s) asserted therein that they did not reassert in the amended/modified motion. *United States v. Barreras*, No. CV 14-1030-PHX-DGC (BSB), 2014 WL 2135943, *1 (D. Ariz. May 22, 2014) ("An amended motion supersedes the original Motion. . . . After amendment, the Court will treat the Motion as nonexistent. . . . Any ground for relief that was raised in the original Motion and that was voluntarily dismissed or was dismissed without prejudice is waived if it is not alleged in an amended motion") (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992), *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990), and *Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (*en banc*)). As explained above, what Plaintiffs have actually done is to request a new injunction based, in part, on new evidence and claims, in a reply. That is procedurally improper.

The Court should exclude Plaintiffs' new evidence, claims, and requested injunction on reply under Local Rule 7-3(d)(1) as contrary to Ninth Circuit authority. *Watkins*, 914 F.2d at 1560; *Calence v. Dimension Data Holdings*, 222 F. App'x 563, 566 (9th Cir. 2007) (upholding district court's refusal to consider arguments raised for the first time on reply when considering a motion for preliminary injunction); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1035 (N.D. Cal. 2014) ("arguments raised for the first time in Reply briefs are waived"); *In re Flash Memory Antritrust Litig.*, No. 07-cv-86-SBA, 2010 WL 2332081, at *15 (N.D. Cal. June 9, 2010) (declining to consider reply "evidence [that] should have been proffered with Plaintiffs' moving papers"); *Protect Lake Pleasant v. Johnson*, No. 07-cv-454-PHX, 2007 WL 1486869, *6 n.4 (D. Ariz. May 21, 2007) (declining to consider new legal claims raised on reply, focusing instead on how the plaintiffs "originally decided to focus their arguments" in their opening motion), *aff'd*, 252 F. App'x 856 (9th Cir. 2007). Plaintiffs could have

requested the relief they now request on reply from the outset, and "[t]he moving nature of the target" frustrates Federal Defendants' ability to fairly evaluate and respond to the new request. *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 790 (7th Cir. 2011).  Responding to Plaintiffs' original request for an injunction consumed considerable agency resources in the midst of the ongoing reinitiated consultation and, by now requesting a new injunction on reply, Plaintiffs have afforded the expert hydrologists and biologists at the Bureau, NMFS, and U.S. Fish & Wildlife Service scarcely two weeks to consider the complexities presented and the potential impacts of the new injunction on the SONCC Coho and sucker species, while they are working expeditiously on the reinitiated consultation.  In addition, Plaintiffs' new request for injunction on reply has thrown off the schedule that the parties previously negotiated, requiring that the hearing on the motion be postponed until just 32 days prior to the start of the irrigation season on April 1.

> **B.    In the Alternative, If the Court Considers Plaintiffs' New Request for an Injunction, It Should Deny It**
>
> **1.    Plaintiffs Have Not Carried Their Burden of Showing That Their New Injunction Is Narrowly Tailored to Avoid Likely Irreparable Harm to SONCC Coho in 2020**

The Ninth Circuit has "explained that '[i]njunctive relief must be tailored to remedy the specific harm alleged, and an overbroad preliminary injunction is an abuse of discretion.'" *League of Wilderness Defs. v. Connaughton*, 752 F.3d 755, 767 (9th Cir. 2014) (quoting *Nat. Res. Def. Council v. Winter*, 508 F.3d 885, 886 (9th Cir. 2007)).  Here, Plaintiffs have failed to carry their heavy burden of showing that a mandatory injunction to deviate from the status quo by adding 50,000 acre feet of water to the EWA under the 2018 Operations Plan is narrowly tailored to preventing irreparable harm to SONCC Coho that is likely to occur before this case can be decided on the merits.  ECF 46 at 8-9.  As an initial matter, Plaintiffs have not shown that a disease outbreak is likely without the requested injunction given that:

> (1) surface flushing flows to protect SONCC Coho from *C. Shasta* disease occur in almost all years under the 2018 Operations Plan.  And even if the new proposed operations plan is in place by the start of the 2020 spring irrigation season, a surface flushing flow is likely to occur this year under that plan as well based on the February, 2020 Natural Resources Conservation Service inflow forecast and current Upper Klamath Lake elevations; and

> (2) the prevalence of mortality for SONCC Coho from *C. Shasta* under the 2018 Operations Plan is estimated to have been zero percent in 2019.

Nor have Plaintiffs shown that SONCC Coho critical habitat will be irreparably harmed without the requested injunction given that:

> (3) the Bureau has adjusted the trigger in the 2018 Operations Plan for May/June enhanced Klamath River flows from April 1 to May 1 to prevent a repeat of low flows that occurred in May 2019 as a result of unanticipated changes in hydrology in April 2019; and
>
> (4) the Bureau is currently engaged in reinitiated ESA consultation on the 2018 Operations Plan to rectify the erroneous habitat suitability data for SONCC Coho with which it was provided, with a requested completion date of March 31, 2020.

Plaintiffs assert on reply that the Bureau has "yet to allocate more water to the river for this water year" (ECF 48 at 1), however, as noted above the Bureau has proposed a new operations plan as part of the ongoing reinitiated ESA consultation that would add up to 20,000 acre feet of water from Project supply to the EWA in certain water year types to meet ESA responsibilities with respect to SONCC Coho, and the Bureau is endeavoring to implement its new action prior to the start of the irrigation season on April 1, 2020. The Bureau's proposed action is, of course, subject to change pending the outcome of the ongoing ESA Section 7 consultation.

Plaintiffs proffer an extra-record declaration on reply purporting to show that the daily average mainstem flows in certain reaches of the Klamath River under the 2018 Operations Plan are not expected to provide at least 80% of maximum SONCC Coho fry habitat (ECF 48-1),[1] however

---

[1] In addition to being improper new evidence offered on reply, this declaration is inadmissible to challenge the merits of NMFS' 2019 BiOp because it is extra-record and post-decisional. Federal Defendants have moved separately to exclude it on those bases. ECF 50; *see also* ECF 46 at 9-11. Seeking to evade record-review principles, Plaintiffs cite *NRDC v. U.S. Forest Serv.*, 421 F.3d 797, 802, 806-07, 810 (9th Cir. 2005), in their reply to argue that, "under Ninth Circuit precedent, an agency's reliance on erroneous data renders a decision arbitrary and a clear error in judgment, even if the mistake is uncovered after the decision has been made." ECF 48 at 5. Plaintiffs miss the point. The issue is not when an error is discovered, but *what evidence is admissible* to show that an error was committed. *NRDC* plainly does not, as Plaintiffs suggest, stand for the proposition that post-decisional evidence that was not before the agency at the time of its decision may be used to show the agency committed an error. In *NRDC*, it was determined that the Forest Service had misinterpreted a report that had been before it at the time it made its decision. 421 F.3d at 802. The Ninth Circuit held that the Forest Service's decision ran "counter to the evidence *before the agency*" and exemplified a "clear error of judgment." *Id.* at 806 (emphasis added, citation omitted). There is no indication that post-decisional evidence was admitted to show that the agency

Plaintiffs fail to provide any scientific basis for concluding that irreparable harm is likely to occur unless 50,000 acre feet in particular – and not any other volume – is added to the EWA this year. Plaintiffs offer only the unscientific and wholly conclusory assertion that, "because 2020 is unlikely to be a drought year, [50,000 acre feet] may be sufficient for this year." ECF 48 at 2. Plaintiffs appear to have chosen the 50,000 acre-foot figure simply because it is the same volume of water that the 2017 Injunction required the Bureau to set aside in reserve for emergency dilution flows. *Id.* But unlike the 2017 Injunction, Plaintiffs' new injunction "would not require particular dilution flows." *Id.* Rather, Plaintiffs vaguely assert that the "additional water in the EWA would be used during the spring months to provide accessible rearing habitat and/or for an emergency dilution flow." *Id.* Plaintiffs make no provision at all, however, for how the additional water would be used in real time operations to avoid likely irreparable harm, and under what protocols, as Federal Rule of Civil Procedure 65 requires.

### 2. Plaintiffs' Newly Requested Injunction Does Not Comport With Federal Rule of Civil Procedure 65

Federal Rule 65(d) states that every order granting an injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." In other words, "an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed." *Columbia Pictures Indus. v. Fung*, 710 F.3d 1020, 1047-48 (9th Cir. 2013) (quoting 11A CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2955 (2d ed.)). The Supreme Court has explained that "the specificity provisions of Rule 65(d) are no mere technical requirements." *Schmidt v. Lessard*, 414 U.S. 473, 476

---

committed an error. Here, by contrast, Plaintiffs are attempting to use evidence that was *not* before the agency to attack its decision in retrospect. That is contrary to Administrative Procedure Act record review principles. Plaintiffs are wrong to assert that "[i]t is appropriate to consider … post-issuance evidence to determine if NMFS considered all relevant factors and explained its decision." ECF 48 at 5 n.4. Ninth Circuit precedent holds that the "relevant factors" exception to record-review principles does not allow consideration of post-decisional information. ECF 50 at 4-5. Moreover, neither the Bureau nor NMFS even committed an error here, at any time. ECF 46-1 at 4-5. Plaintiffs do not dispute that it was their own declarant who provided the Bureau and NMFS with the erroneous habitat suitability data, which is now being reevaluated in the new consultation. Plaintiffs, however, continue to misleadingly imply that the agencies were somehow responsible for the error. ECF 48 at 4-5. The facts are otherwise.

(1974). "The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Id.* (citation omitted).

As noted above, Plaintiffs' newly requested injunction would require the Bureau to add 50,000 acre feet of water to the EWA prior to April 1, 2020 with no other instruction than that it be used to "provide accessible rearing habitat and/or for an emergency dilution flow." ECF 48 at 2. Of note, Plaintiffs' reply brief fails to specify whether their newly requested injunction would require distribution of the additional 50,000 acre feet of water under the formulaic distribution methodology and protocols of the 2018 Operations Plan and NMFS' 2019 BiOp or some other, unidentified framework. Plaintiffs offer that "the technical experts" could make "recommendations" on how the additional volume would be used (ECF 48 at 2), but they fail to specify whether they are referring to the framework and protocols set forth in the 2018 Operations Plan and 2019 BiOp, though only that framework and those protocols would be permissible.[2] As is explained in the 2019 NMFS BiOp, under the 2018 Operations Plan, water that has been allocated to the EWA to support SONCC Coho needs and produce enhanced river flows for disease mitigation or protection of habitat during the spring/summer operational period is distributed from Upper Klamath Lake into the Klamath River according to the formulaic approach to the ESA, a complex formula that takes into account a number of factors. A_000025, 35-40. The Plan provides flexibility to deviate from the spring/summer formulaic approach to EWA distribution in real-time operations; however, the Plan makes clear that the Bureau retains decision-making authority over such deviations and it includes a detailed process for obtaining input at decision points from the Flow Account Scheduling

---

[2] In particular, the Bureau possesses sole discretion over any and all operational decisions. *Nat. Res. Def. Council v. Kempthorne*, No. 1:05-cv-1207 OWW TAG, 2007 WL 1989015, *14 (E.D. Cal. July 3, 2007) (noting "legal uncertainty about the constitutional ability of the Court in potential violation of the separation of powers doctrine" to order the United States government to "defer to and follow all the recommendations of" an outside group regarding operation the Central Valley Project); *Fortyune v. Am. Multi-Cinema*, 364 F.3d 1075, 1087 (9th Cir. 2004) (citing *Indep. Living Res. v. Or. Arena Corp.*, 1 F. Supp. 2d 1159, 1173 n.6 (D. Or. 1998), for the proposition that "logistical matters" concerning the implementation of the injunction should be left "in the capable hands" of the defendants); *see also Celano v. Marriott Int'l*, No. C 05-4004-PHJ, 2008 WL 239306, at *21 (N.D. Cal. Jan. 28, 2008).

Technical Advisory ("FASTA") Team.  *Id.* at 44-45.  Representatives of the Yurok Tribe are regular participants in FASTA conferences.

In failing to specify when, under what conditions, and how much water will be released from the EWA, Plaintiffs again have not shown that their requested injunction could be implemented in real-time operations while maintaining the elevations in Upper Klamath Lake that are needed by endangered suckers.  Making operational decisions outside of the formulaic distribution for a water project as delicately balanced, complex, dynamic, and contentious as the Klamath Project requires careful planning to guard against unintended consequences, but also quick decision making.  That is why the 2018 Operations Plan includes procedures for obtaining input from the FASTA Team and specifies that the Bureau has ultimate authority to make the often difficult decisions regarding implementation.  Complying with any injunction from this Court that was not specifically limited to the established framework and protocols specified in the 2018 Operations Plan and 2019 BiOp would be inherently perilous, placing the Bureau in an untenable position of operating the Project under constant threat of accusation that it is violating a court order for any operational decision with which Plaintiffs did not agree.  *Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S 64, 76 (1967) ("The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one. Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid").

In sum, Plaintiffs' assertion that the Court could simply grant their new injunction without any "need for the parties' technical experts to work out the parameters of such flows" (ECF 48 at 2) could be true only if the injunction specified implementation within the established framework and protocols of the 2018 Operations Plan and 2019 BiOp, which it does not.  To the extent Plaintiffs are requesting that 50,000 additional acre feet of water be implemented outside of the established framework and protocols, their new injunction does not give "fair and precisely drawn notice of what [it] actually prohibits" or requires in accordance with Rule 65(d), *Union Pac. R.R. Co. v. Mower*, 219 F.3d 1069, 1077 (9th Cir. 2000) (citation omitted), and should be denied on that basis.  As Federal Defendants have explained, ordering the technical experts for the parties to negotiate the

parameters of an injunction prior to the start of the irrigation season on April 1, 2020 would be disruptive to the ongoing ESA consultation, and would likely lead to further Court intervention.

### 3. Plaintiffs Have Not Shown They Are Likely to Prevail on the Merits

Plaintiffs are not likely to prevail on their claim against the Bureau regarding the erroneous weighted usable area curves because they do not dispute on reply that they failed to provide the Bureau with specific advance notice of their intent to sue on that issue, which operates as a jurisdictional bar under the ESA. *Compare* ECF 46 at 25 *with* ECF 48 at 10 n.7. Also, Plaintiffs cannot use post-decisional evidence regarding the weighted usable area curves to attack NMFS' 2019 BiOp on the merits. *Supra*, n.1. On reply, Plaintiffs also have abandoned their claim that it is unlawful for the Bureau to leave implementation of dilution flows to its discretion. *Compare* ECF 46 at 19-22 *with* ECF 48 at 10 n.6. Otherwise, Plaintiffs' reply mostly repeats arguments from their motion, against which Federal Defendants will rest on their opposition, which they incorporate by reference. ECF 46 at 9-11, 16-25. Most notably, Plaintiffs largely cherry pick statements in the 2019 BiOp regarding the status of the species and adverse effects of the proposed action but ignore the comprehensive integration and synthesis of effects that supports NMFS' conclusions. *Compare* ECF 48 at 6-10 *with* ECF 46 at 23. Given that reinitiated consultation is ongoing, which will culminate in a new BiOp to supersede the one being challenged, it is not a productive use of judicial or agency resources to litigate the merits of the current BiOp.

## III. Conclusion

The Court should exclude Plaintiffs' new evidence, claims, and requested injunction on reply, and deny their motion for preliminary injunction for all of the reasons set forth in Federal Defendants' opposition to that motion. In the alternative, if the Court considers Plaintiffs' new request for an injunction, it should deny it because Plaintiffs have failed to carry their heavy burden of showing that ordering a deviation from the status quo is needed to prevent likely irreparable harm, that Plaintiffs are likely to prevail on the merits of their claims, that the requested injunction is in the public interest, and that the requested injunction meets the requirements of Federal Rule 65.

Dated: February 7, 2020

Respectfully submitted,

JEAN E. WILLIAMS, Deputy Assistant Attorney General
SETH M. BARSKY, Chief
S. JAY GOVINDAN, Assistant Chief

*/s/ Robert P. Williams*
ROBERT P. WILLIAMS, Sr. Trial Attorney
KAITLYN POIRIER, Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
(202) 307-6623 (tel)
(202) 305-0275 (fax)
robert.p.williams@usdoj.gov
kaitlyn.poirier@usdoj.gov

**Attorneys for Federal Defendants**