015387

7—5234
August, 1927
Approved by the Department
January 4, 1927

# DEPARTMENT OF THE INTERIOR
## BUREAU OF RECLAMATION

Klamath ............ Irrigation Project

# RECORD OF EXECUTION OF CONTRACT

IN RE CONTRACT, and bond, if any, relating to above–named project, dated **May 15, 1931**
symbol and number ___18r-614___ ; made by W.H.Hadley & Hazel Shields and Susan C.Hadley
amount involved $ __2040.00__ ; authority No. _____ or clearing account _____
purpose **Purchase of permanent water right - Pumping Division**
authority contained in Commissioners letter of 11/20/29 sub-
Reference: **Joel "Contract of November 9, 1929, with Rex E.Nord for a**
**water right on the Pumping Division, Klamath Project."**
Notice of execution of contract to be given Chief Engineer at Denver, Superintend-
ent at **Klamath Falls, Oregon**, District Counsel at **Portland, Oregon**
and _____

Place **Klamath Falls, Oregon** Date **May 22, 1931**

1. On this date the above–described contract was executed (or) passed, and bond, if
any, approved (or) passed, by this office, and transmitted to district counsel for legal
approval.

B.E.Hayden

_____, Project Superintendent.

Inclosures:
   Original and __3__ copies of this form.  **Statement & Cert. of Award, Orig. & 3**
   Original and __4__ copies of contract.

Place **Portland, Ore.** Date **May 25, 1931**

2. On this date the above–described contract, with bond, if any, was given legal
approval by this office, and transmitted to the **Project (Klamath Falls)** office.

SPENCER L. Baird   **Associate**
_____, District Counsel.

Inclosures:
   Original and __2__ copies of this form.
   Original and __3__ copies of contract.

Denver, Colorado, Date _____

3. On this date the above–described contract was executed, and bond, if any,
approved by this office.

_____, Chief Engineer.

Denver, Colorado, Date _____

4. On this date the above–described contract, with bond, if any, was passed by this
office and transmitted to the Washington office.

_____, Chief Engineer.

Inclosures:
   Original and _____ copies of this form.
   Original and _____ copies of contract.

Washington, D. C., Date _____

5. On this date the above–described contract was executed, and bond, if any,
approved by _____

_____, Commissioner.

6—7410

001532

015389

001533



HADLEY   AND   McCORMICK
IRRIGATION   PROJECT

045390

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
KLAMATH IRRIGATION PROJECT

THIS AGREEMENT, Made this 20th day of        May        , 1936, in pursuance of the Act of Congress of June 17, 1902 (32 Stat. 388), and acts amendatory thereof or supplementary thereto, and particularly pursuant to the Warren Act of February 21, 1911 (36 Stat. 925), between the UNITED STATES OF AMERICA, herein styled the United States, represented by the officer executing this contract, and

Gertrude McCormick, a widow,
hereinafter styled the Contractor,

WITNESSETH, That

2.   WHEREAS, the parties hereto, entered into an agreement under date of

May 16, 1931        , and providing for use by the Contractor of a maximum of two (2) acre-feet for each acre of irrigable land as provided in Article

five (5) of said contract of        May 16, 1931        and the Contractor now desires that the said contract May 16, 1931 to increase such maximum use from two (2) to two and one-half (2½) acre-feet; and

3.   WHEREAS, the United States desires to obtain from the Contractor each year an accurate record of all crops raised and agricultural and livestock products produced on the lands of the Contractor each year;

NOW, THEREFORE, it is agreed that:

4.   Article five (5) of said contract of        May 16, 1931
shall be and is amended to read as follows.

    "5.   The United States shall furnish each year to the Contractor,

during the usual irrigation season, water from the   C-3 lateral      and deliver same to the Contractor at or near a turnout located in the

SE¼SW¼ of Section 32, Township 40 South, Range 11 East, W. M.,

for the irrigation of the lands of the Contractor described as follows:

11.2 acres in the SE¼SW¼ of Section 32, Township 40 South, Range 11 East, W.M., under a 20-foot pumping lift.

001534

015391

The quantity so delivered shall not exceed the amount that can be fur-
nished as determined by the Secretary of the Interior, at a cost of
Thirty-four Dollars ($34.00) per acre; nor shall it exceed two and
one-half (2½) acre-feet per acre of irrigable land during the usual
irrigation season as established on the Klamath Project, being approx-
imately that period from April 15 to September 30, inclusive, of each
year; and in no event shall it exceed six-tenths (0.6) of an acre-
foot of water per irrigable acre in any one month; Provided that if
the Contractor is in need of and desires to purchase additional water
over and above the 2½ acre-feet per acre specified herein such addi-
tional water will be furnished at the same rate established for
additional water furnished Warren Act contractors in the Public No-
tices of Annual Water Charges issued or to be issued hereafter for the
Klamath Project; Provided, further, that all rights to the use and
delivery of water acquired by the Contractor under this contract are
inferior and subject to prior rights reserved for the lands of the
Klamath Project."

5. The Contractor shall keep an accurate record of all crops raised and
agricultural and livestock products produced on his lands and furnish a re-
port on same, to the Secretary of the Interior in form prescribed, on or before
December 31 of each year.

6. In all other respects said contract of    May 16, 1931         shall
remain in effect with like intent and purpose as though this contract had never
been executed.

7. No member of or delegate to Congress or resident commissioner shall
be admitted to any share or part of this contract or to any benefit that may
arise therefrom, but this restriction shall not be construed to extend to
this contract if made with a corporation or company for its general benefit.

IN WITNESS WHEREOF, the parties have hereunto subscribed their names as
of the date first above written.

UNITED STATES OF AMERICA

B. E. Hayden

By _____

                                        Superintendent,
                                        Bureau of Reclamation

Witnesses:

M.A. Bowman                             Gertrude McCormick
_____         _____
                                                            Contractor

Uel Dillard                             _____
_____                             Contractor

                                        Merrill, Oregon
                                        _____
                                                            P.O. Address

001535

STATE OF OREGON   )
                  ) SS.
COUNTY OF KLAMATH )


BE IT REMEMBERED, That on this __20th__ day of __May__ , A.D.,
1936, before me, the undersigned, a Notary Public in and for the said
state and county, personally appeared the within named _____

Gertrude McCormick
_____

who __is__ known to me to be the identical individual__ described in and
who executed the within instrument, and acknowledged to me that __she__
executed the same freely and voluntarily.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official
seal the day and year last above written.


M. A. Bowman
Notary Public for Oregon

My commission expires     9-11-39
_____

(SEAL)

Standard Form No. 1036 (Revised)
Form approved by
Comptroller General U. S.
August 20, 1930

No. _____ 015393
(Contract)

# STATEMENT AND CERTIFICATE
## OF AWARD

Date May 20, 19 36

DEPARTMENT OF THE INTERIOR
(Department or establishment)

BUREAU OF RECLAMATION
(Bureau or office)

Klamath Falls, Oregon
(Location)

## METHOD OF OR ABSENCE OF ADVERTISING
(Section 3709 of the Revised Statutes)

1. After advertising in newspapers.
2. (a) After advertising by circular letters sent to _____ dealers.
   (b) And by notices posted in public places.
   (If notices were not posted in addition to advertising by circular letters sent to dealers, explanation of such omission must be made. The notation on the certificate below must be "2 (a) (b)" or "2 (a)," depending on whether or not notices were posted.)

3. Without advertising, under an exigency of the service which existed prior to the order and would not admit of the delay incident to advertising.

4. Without advertising in accordance with _____

5. Without advertising, it being impracticable to secure competition because of **Contract made with land owner**

(Here state circumstances under which the securing of competition was impracticable)

## AWARD OF CONTRACT

A. To lowest bidder as to price (Expenditures).
B. To other than the lowest bidder as to price (Expenditures).
C. To highest bidder as to price (Receipts).
D. To other than the highest bidder as to price (Receipts).

## CERTIFICATE

I CERTIFY that the foregoing statement is true and correct; that the agreement was made in consequence of No. **5** of the method of or absence of advertising and in accordance with award of contract lettered _____, as shown above; that where lower bids (expenditure contracts) or higher bids (receipt contracts) as to price were received a statement of reasons for their rejection, together with an abstract of bids received, including all lower than that accepted in case of expenditure contracts and all higher in case of receipt contracts, is given below or on the reverse hereof or on a separate sheet attached hereto; that the articles or services covered by the agreement (expenditure) are necessary for the public service, and that the prices charged are just and reasonable.

B. E. Hayden
(Signature of contracting officer)

Superintendent, Bureau of Reclamation
(Title)

NOTE.—This statement and certificate will be used to support all agreements, both formal contracts and less formal agreements of whatever character, involving the expenditure or receipt of public funds. It must be executed and signed by the contracting officer (unless the award is made by or is subject to approval by an officer other than the contracting officer, when execution and signature may be made by such officer).

U. S. GOVERNMENT PRINTING OFFICE                    6—8000

001537

015394

7—523t
August, 1927
Approved by the Department
January 4, 1927

# DEPARTMENT OF THE INTERIOR
## BUREAU OF RECLAMATION

Klamath Irrigation Project

# RECORD OF EXECUTION OF CONTRACT

IN RE CONTRACT, and bond, if any, relating to above—named project, dated May 20, 1936
symbol and number I8r—418 ; made by Gertrude McCormick
amount involved, $ ; authority No. or clearing account
purpose Increase of water duty — Warren Act Contract
Reference: Authority granted 4/2/36 by First Asst. Secy.

Notice of execution of contract to be given Chief Engineer at Denver, Superintend-
ent at Klamath Falls, Oregon , District Counsel at Portland, Oregon
and

Place Klamath Falls, Oregon Date May 21, 1936
1. On this date the above—described contract was executed (or) passed, and bond, if
any, approved (or) passed, by this office, and transmitted to district counsel for legal
approval.

R. B. Hayden , Project Superintendent.

Inclosures:
Original and 5 copies of this form.
Original and 4 copies of contract. Statement & Cert. of Award, Orig. & 3

Place Portland, Ore. Date May 23, 1936
2. On this date the above—described contract, with bond, if any, was given legal
approval by this office, and transmitted to the Project (Klamath Falls) office.

B E STOUTEMYER , District Counsel.

Inclosures:
Original and 2 copies of this form.
Original and 1 copies of contract.

Denver, Colorado, Date
3. On this date the above—described contract was executed, and bond, if any,
approved by this office.

, Chief Engineer.

Denver, Colorado, Date
4. On this date the above—described contract, with bond, if any, was passed by this
office and transmitted to the Washington office.

, Chief Engineer.

Inclosures:
Original and copies of this form.
Original and copies of contract.

Washington, D. C., Date
5. On this date the above—described contract was executed, and bond, if any,
approved by

, Commissioner.

8—7416

001538

015395

*Office Copy*

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
KLAMATH PROJECT

*Serial - 54*

I8r-415

1.   THIS AGREEMENT, made this **16th** day **May**,
nineteen hundred and thirty **one**, between THE UNITED STATES OF
AMERICA, acting for this purpose by the contracting officer exe-
cuting this agreement, pursuant to the provisions of the Act of
Congress of June 17, 1902 (32 Stat., 388), and acts amendatory
thereof or supplementary thereto, all of which are commonly known
and referred to as the National Reclamation Laws, and particu-
larly pursuant to the Warren Act of February 21, 1911 (36 Stat.,
925), the party of the first part, hereinafter referred to as the
United States, and

**Gertrude McCormick, a widow**

, the party of
the second part, hereinafter referred to as the Contractor.

WITNESSETH:

## Explanatory Recitals

2.   WHEREAS, in connection with the construction and opera-
tion of the Klamath Irrigation Project, Oregon-California, after
providing water sufficient for the irrigation of lands supplied
by gravity within the limits of the Klamath Irrigation Project,
the United States will have available an additional supply of
water which may be utilized by pumping to adjacent lands; and

3.   WHEREAS, the Contractor is the owner of the lands here-
inafter described, for which he desires to secure a water supply
from the United States;

4.   NOW, THEREFORE, for and in consideration of the mutual
and dependent stipulations herein set forth, it is hereby agreed
as follows:

-1-

001539

## Furnishing of Water by United States

5.    The United States shall furnish each year to the Contractor during the usual irrigation season water from the G-3 Lateral    and deliver same to the Contractor at a turnout located in the SW¼SW¼ of Section 32, Township 40 South, Range 11 East, W.M. for the irrigation of the land of the Contractor described as follows:  11. 2 acres in the SE¼SW¼ of Section 32, Township 40 South, Range 11 East, W.M., under a 80-foot pumping lift.

The quantity so delivered shall not exceed the  amount that can be furnished as determined by the Secretary of the Interior, at a cost of Thirty-four Dollars ($34.00) per acre; nor shall it exceed two acre-feet per acre of irrigable land during the usual irrigation season as established on the Klamath Project, being approximately that period from April 15 to September 30, inclusive, of each year; and in no event shall it exceed 0.6 acre-feet of water per irrigable acre in any one month; Provided, that all rights to the use and delivery of water acquired by the Contractor under this contract are inferior and subject to the prior rights reserved for the gravity lands of the Klamath Project.

## Water to be Delivered only on Demand

6.    The United States shall make delivery of water hereunder only upon written demand of the Contractor served on the Superintendent of the Klamath Project at least three days prior to the beginning of the irrigation season as herein defined.  The failure of the Contractor to make such demand or the failure by him to use said  water shall not in any way relieve the Contractor of his obligation to pay to the United States the amounts herein agreed upon at the time and in the manner specified.

-2-

015397

Measurement of Water

7.   The water to be delivered hereunder shall be
measured   at the turnout described in Article 5 hereof,
by such measuring and controlling devices or such automatic
gauges, or both, as shall be satisfactory to the Superintendent
or other officer of the United States in charge of the Klamath
Project.  Said measuring and controlling devices shall be
furnished, installed and maintained by and at the expense of
the Contractor, but they shall be and remain at all times
under the complete control of the United States, whose repre-
sentative may at all times have access to them over the land
of the Contractor.  All future repairs and renewals necessary
to the operation of said turnout for delivery of water from
the canal shall be done at the expense of the Contractor.

Receipt of Water by Contractor

8.   The Contractor shall receive said irrigation water
at the point of delivery above stated by means of said turn-
out, and shall at his own expense convey the water to his
pumping plant through a canal constructed by him, and shall
perform all acts required by law or custom in order to main-
tain his control over such water and to secure its lawful
and proper diversion from the G-3 Lateral  of the Klamath
Project as herein provided for, and the beneficial applica-
tion of the same to the land of the Contractor above described.

Shortage of Water

9.   On account of drought, inaccuracy in distribution
or other cause, there may occur at times a shortage in the
quantity of water provided for herein, and while the United
States will use all reasonable means to guard against such
shortages, in no event shall any liability accrue against the
United States, its officers, agents or employees for any
damage, direct or indirect, arising therefrom, and the pay-
ments due hereunder shall not be reduced because of any such
shortage.  All losses or diminution of water by reason of
seepage, evaporation or other causes after delivery thereof
by the United States at the aforesaid point of delivery shall
be borne by the Contractor.

-3-

001541

015398

### Waste and Seepage Waters

10.   The United States reserves the right to collect for use on the Klamath Project all waste and seepage water coming from the land of the Contractor.  The Contractor shall have the right to discharge waste and  seepage water into the drainage system of the Klamath Project.

### Operation of Irrigation System

11.  In the distribution and application of the water supply provided for herein, the Contractor shall comply with all of the applicable provisions of the Reclamation Law and the regulations of the Secretary of the Interior thereunder; and will operate and maintain his irrigation system and works to be constructed hereunder to the satisfaction of the United States.  The United States assumes no responsibility whatever for the safety, integrity, or operation of the same or any portion thereof, and the Contractor will hold the United States and its officers, agents and employees harmless from any and all claims arising in connection therewith.  During the irrigation season the United States shall have the right to place inspectors at any point on the works of the Contractor to make such measurements, investigations or observations as in the judgment of the Superintendent may be necessary for the enforcement of the provisions of this contract.

### Construction Charge

12.  The Contractor agrees to pay the United States as construction charges for the supply of water heretofore described the sum of $ 380.50 .  The total amount of such construction charges shall be paid in 40 annual instalments, due December 1 of each year beginning with the year 1931.  The first 5 of such instalments shall each be 1 per centum, the next 10 instalments each 2 per centum, and the next 25 instalments each 3 per centum of the total construction charge; Provided, that the Contractor may pay the whole or any part of the construction charge within any shorter period.

### Operation and Maintenance Charges

13.  In addition to the construction charge described in Article 12 the Contractor agrees to pay the United States for the irrigable area of the land of the Contractor, annual

-4-

001542

015399

operation and maintenance charges equal to (a) one-half of
the acre-charge assessed against such lands in the Main Divi-
sion of the Klamath Project served by gravity, plus (b) an
equitable proportion, as determined by the Secretary of the
Interior, of any expenses incurred by the United States in
regulating the waters from Upper Klamath Lake.  The operation
and maintenance charges due shall be payable to the United
States or its successors in the operation of the Main Divi-
sion of the Klamath Project in advance of the delivery of
water each year and in any event not later than April 1 of
such year.

### Penalty for Delinquency in Payment

14.  To every instalment of money required to be paid
under this contract which shall remain unpaid after the same
shall become due, there shall be added at once a penalty of
one-half of one per centum ($\frac{1}{2}\%$), and thereafter a like penalty
of one-half of one per centum ($\frac{1}{2}\%$) on the first of each month
so long as such default shall continue; and the contractor
hereby agrees to pay such penalty.

### Lien to Secure Payment of Charges

15.  For the purpose of securing payment to the United
States of the obligations, and each of them described in
Articles 12, 13, and 14, according to the conditions therein
stated, a lien in favor of the United States in the amount
of the total obligation described in said Articles 12, 13,
and 14, is hereby created and made a charge upon all of said
land both irrigable and non-irrigable, together with its
privileges and appurtenances, including all water rights and
irrigation works.  Upon the failure of the Contractor to pay
when due any instalment of charges described in said articles,
the United States is empowered to foreclose the lien hereby
created in the manner provided by law.

### Refusal of Water in Case of Default

16.  The United States reserves the right to refuse to
deliver water to the Contractor in the event of  default for
a period of more than twelve months in any payment due the
United States under this contract.  The provisions of this
article are not exclusive, and shall not in any manner hinder
the United States from exercising any other remedy to enforce
collection of any amount due hereunder.

001543

015400

## Secretary may Make and Modify Regulations

17. There is reserved to the Secretary of the Interior the right to make regulations and modify the same in his discretion in general harmony, however, with this contract, to the end that the true intent of the law and of this contract shall be carried into full effect.

## Contingent Appropriation Clause

18. Where the operations of this contract extend beyond the current fiscal year, it is understood that the contract is made contingent upon Congress making the necessary appropriation for expenditures thereunder after such current year has expired. In case such appropriation as may be necessary to carry out this contract is not made, the Contractor hereby releases the United States from all liability due to the failure of Congress to make such appropriation.

## Member of Congress Clause

19. No Member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this contract or to any benefit to arise therefrom. Nothing, however, herein contained shall be construed to extend to any incorporated company if the contract be for the general benefit of such corporation or company.

## Successors and Assigns Obligated

20. The terms of this contract shall inure to the benefit of and be binding upon the successors in interest and assigns of the parties hereto.

IN WITNESS WHEREOF the parties have hereunto subscribed their names as of the date first above written.

THE UNITED STATES OF AMERICA

By B. E. Hayden
Superintendent, Bureau of Reclamation

Witnesses:

Gertrude McCormick
Contractor

N. G. Wheeler

R. S. Hopkins

Contractor

Map is attached to contract dated
May 15, 1931, No. I8r-414, with
R. A. Shields, et al

P. O. Address:

Merrill, Oregon

-6-

001544

015401

STATE OF OREGON )
                ) SS.
COUNTY OF KLAMATH )

BE IT REMEMBERED, That on this **16th** day of **May**              ,
A. D., 193 **1**, before me, the undersigned, a Notary Public in
and for the said state and county, personally appeared the
within named        Gertrude McCormick
_____ who **is** known to me to be the
identical individual__ described in and who executed the within
instrument, and acknowledged to me that **she** executed the same
freely and voluntarily.

IN TESTIMONY WHEREOF, I have hereunto set my hand and
official seal the day and year last above written.

R. S. Hopkins
Notary Public for Oregon

My Commission expires **Jan. 5, 1934**

(SEAL)

--7--

001545

Standard Form No. 1036 (Revised)
Form approved by
Comptroller General U. S.
August 20, 1930

## STATEMENT AND CERTIFICATE
## OF AWARD

No. I8r-411 815402
(Contract)

Date May 16, 19 52

DEPARTMENT OF THE INTERIOR
(Department or establishment)

BUREAU OF RECLAMATION
(Bureau or office)

Klamath Falls, Oregon
(Location)

## METHOD OF OR ABSENCE OF ADVERTISING
(Section 3709 of the Revised Statutes)

1. After advertising in newspapers.
2. (a) After advertising by circular letters sent to_____dealers.
   (b) And by notices posted in public places.
   (If notices were not posted in addition to advertising by circular letters sent to dealers, explanation of such omission must be made. The notation on the certificate below must be "2 (a) (b)" or "2 (a)," depending on whether or not notices were posted.)
3. Without advertising, under an exigency of the service which existed prior to the order and would not admit of the delay incident to advertising.
4. Without advertising in accordance with _____
5. Without advertising, it being impracticable to secure competition because of Water supplied to land owner

(Here state circumstances under which the securing of competition was impracticable)

## AWARD OF CONTRACT

A. To lowest bidder as to price (Expenditures).
B. To other than the lowest bidder as to price (Expenditures).
C. To highest bidder as to price (Receipts).
D. To other than the highest bidder as to price (Receipts)

## CERTIFICATE

I CERTIFY that the foregoing statement is true and correct; that the agreement was made in consequence of No. 5 of the method of or absence of advertising and in accordance with award of contract lettered _____, as shown above; that where lower bids (expenditure contracts) or higher bids (receipt contracts) as to price were received a statement of reasons for their rejection, together with an abstract of bids received, including all lower than that accepted in case of expenditure contracts and all higher in case of receipt contracts, is given below or on the reverse hereof or on a separate sheet attached hereto; that the articles or services covered by the agreement (expenditure) are necessary for the public service, and that the prices charged are just and reasonable.

B.E.Hayden
(Signature of contracting officer)

Superintendent, Bureau of Reclamation
(Title)

NOTE.—This statement and certificate will be used to support all agreements, both formal contracts and less formal agreements of whatever character, involving the expenditure or receipt of public funds. It must be executed and signed by the contracting officer (unless the award is made by or is subject to approval by an officer other than the contracting officer, when execution and signature may be made by such officer).

001546

015403

7—323;
August, 1927
Approved by the Department
January 4, 1927

# DEPARTMENT OF THE INTERIOR
## BUREAU OF RECLAMATION

Klamath
................................. Irrigation Project



## RECORD OF EXECUTION OF CONTRACT

IN RE CONTRACT, and bond, if any, relating to above–named project, dated **May 16,1931**
symbol and number ....**18r-415**...... ; made by ........**Gertrude McCormick**..............
amount involved, $....**380.80**.... ; authority No........... or clearing account ...........
purpose ....**Purchase of permanent water right – Pumping Division**
....................**Authority contained in Commissioners letter of 11/29/29 sub-**
Reference: **ject "Contract of November 9, 1929, with Rex E.Bond for a**
**water right on the Pumping Division, Klamath Project".**
Notice of execution of contract to be given Chief Engineer at Denver, Superintend-
ent at **Klamath Falls, Oregon**, District Counsel at .......**Portland, Oregon**............
and

_____

Place **Klamath Falls,** Oregon Date **May 22, 1931**

1. On this date the above–described contract was executed (or) passed, and bond, if
any, approved (or) passed, by this office, and transmitted to district counsel for legal
approval.

................**B. E. Hayden**................. , Project Superintendent.

Inclosures:
Original and ..3.. copies of this form.  **Statement & Cert. of Award, Orig. & 3**
Original and ..4.. copies of contract.

_____

Place **Portland, Ore.** Date **May 25, 1931**

2. On this date the above–described contract, with bond, if any, was given legal
approval by this office, and transmitted to the **Project (Klamath Falls)**......... office.

Associate
............**Spencer L. Baird**............... , District Counsel.

Inclosures:
Original and ..2... copies of this form.
Original and ..3... copies of contract.

_____

Denver, Colorado, Date ................

3. On this date the above–described contract was executed, and bond, if any,
approved by this office.

........................................... , Chief Engineer.

_____

Denver, Colorado, Date ................

4. On this date the above–described contract, with bond, if any, was passed by this
office and transmitted to the Washington office.

........................................... , Chief Engineer.

Inclosures:
Original and ....... copies of this form.
Original and ....... copies of contract.

_____

Washington, D. C., Date ................

5. On this date the above–described contract was executed, and bond, if any,
approved by ........................................................

........................................... , Commissioner.

6—7418

001547

015404

Project Office Copy

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
KLAMATH IRRIGATION PROJECT

76r-416

THIS AGREEMENT, Made this 29th day of          May     , 1936, in pursu-
ance of the Act of Congress of June 17, 1902 (32 Stat. 388), and acts amenda-
tory thereof or supplementary thereto, and particularly pursuant to the Warren
Act of February 21, 1911 (36 Stat. 925), between the UNITED STATES OF AMERICA,
herein styled the United States, represented by the officer executing this con-
tract, and

        Alfred C. Carleton, a single man,

hereinafter styled the Contractor,

        WITNESSETH, That -
                    S. Q. Vixen, predecessor of
2.      WHEREAS, the parties hereto, entered into an agreement under date of

        May 16, 1931          , and providing for use by the Contractor of a maxi-
mum of two (2) acre-feet for each acre of irrigable land as provided in Article

five (5) of said contract of      May 16, 1931          and the Contractor now
desires that the said contract be amended to increase such maximum use from two
(2) to two and one-half (2½) acre-feet; and

        3.      WHEREAS, the United States desires to obtain from the Contractor each
year an accurate record of all crops raised and agricultural and livestock pro-
ducts produced on the lands of the Contractor each year;

        NOW, THEREFORE, It is agreed that:

        4.      Article five (5) of said contract of      May 16, 1931
shall be and is amended to read as follows:

                "5.    The United States shall furnish each year to the Contractor,

        during the usual irrigation season, water from the G-5 lateral      and
        deliver same to the Contractor at or near a turnout located in the

        SE¼SW¼ of Section 32, Township 40 South, Range 11 East, W.M.,

        for the irrigation of the lands of the Contractor described as follows:
        6.0 acres in the NE¼NW¼, and 23.4 acres in the SE¼NW¼ of Section 4,
        Township 41 South, Range 11 East, W.M., containing in all a total of
        29.4 irrigable acres, under a 20-foot pumping lift.

001548

015405

The quantity so delivered shall not exceed the amount that can be furnished as determined by the Secretary of the Interior, at a cost of Thirty-four Dollars ($34.00) per acre; nor shall it exceed two and one-half ($2\frac{1}{2}$) acre-feet per acre of irrigable land during the usual irrigation season as established on the Klamath Project, being approximately that period from April 15 to September 30, inclusive, of each year; and in no event shall it exceed six-tenths (0.6) of an acre-foot of water per irrigable acre in any one month; Provided that if the Contractor is in need of and desires to purchase additional water over and above the $2\frac{1}{2}$ acre-feet per acre specified herein such additional water will be furnished at the same rate established for additional water furnished Warren Act contractors in the Public Notices of Annual Water Charges issued or to be issued hereafter for the Klamath Project; Provided, further, that all rights to the use and delivery of water acquired by the Contractor under this contract are inferior and subject to prior rights reserved for the lands of the Klamath Project."

5.  The Contractor shall keep an accurate record of all crops raised and agricultural and livestock products produced on his lands and furnish a report on same, to the Secretary of the Interior in form prescribed, on or before December 31 of each year.

6.  In all other respects said contract of  May 16, 1931  shall remain in effect with like intent and purpose as though this contract had never been executed.

7.  No member of or delegate to Congress or resident commissioner shall be admitted to any share or part of this contract or to any benefit that may arise therefrom, but this restriction shall not be construed to extend to this contract if made with a corporation or company for its general benefit.

IN WITNESS WHEREOF, the parties have hereunto subscribed their names as of the date first above written.

                                    UNITED STATES OF AMERICA

                                    By  J. R. Hayden,
                                        _____
                                        Superintendent,
                                        Bureau of Reclamation

Witnesses:

                                        Alfred G. Carleton
                                    _____
                                                    Contractor

_____

                                    _____
                                                    Contractor

_____

                                        Merrill, Oregon
                                    _____
                                            P.O. Address

001549

015406

STATE OF OREGON   )
                ) SS.
COUNTY OF KLAMATH )

    BE IT REMEMBERED, That on this   29th day of     May    , A. D.,
1936, before me, the undersigned, a Notary Public in and for the said
state and county, personally appeared the within named         

    Alfred C. Carleton, a single man

who   is   known to me to be the identical individual   described in and
who executed the within instrument, and acknowledged to me that   he
executed the same freely and voluntarily.

    IN TESTIMONY WHEREOF, I have hereunto set my hand and official
seal the day and year last above written.

                                   R. S. Hopkins
                                Notary Public for Oregon

My commission expires   Dec. 25, 1937

(SEAL)

Standard Form No. 1036 (Revised)
Form approved by
Comptroller General U. S.
August 20, 1930

**STATEMENT AND CERTIFICATE**

**OF AWARD**

No. I8r-005407

(Contract)

Date May 29, 19 36

DEPARTMENT OF THE INTERIOR
(Department or establishment)

BUREAU OF RECLAMATION
(Bureau or office)

Klamath Falls, Oregon
(Location)

## METHOD OF OR ABSENCE OF ADVERTISING

(Section 3709 of the Revised Statutes)

1. After advertising in newspapers.
2. (a) After advertising by circular letters sent to _____ dealers.
   (b) And by notices posted in public places.
   (If notices were not posted in addition to advertising by circular letters sent to dealers, explanation of such omission must be made. The notation on the certificate below must be "2 (a) (b)" or "2 (a)," depending on whether or not notices were posted.)
3. Without advertising, under an exigency of the service which existed prior to the order and would not admit of the delay incident to advertising.
4. Without advertising in accordance with _____
5. Without advertising, it being impracticable to secure competition because of **Contract made with land owner**

(Here state circumstances under which the securing of competition was impracticable)

## AWARD OF CONTRACT

A. To lowest bidder as to price (Expenditures).
B. To other than the lowest bidder as to price (Expenditures).
C. To highest bidder as to price (Receipts).
D. To other than the highest bidder as to price (Receipts).

## CERTIFICATE

I CERTIFY that the foregoing statement is true and correct; that the agreement was made in consequence of No. **5** of the method of or absence of advertising and in accordance with award of contract lettered _____, as shown above; that where lower bids (expenditure contracts) or higher bids (receipt contracts) as to price were received a statement of reasons for their rejection, together with an abstract of bids received, including all lower than that accepted in case of expenditure contracts and all higher in case of receipt contracts, is given below or on the reverse hereof or on a separate sheet attached hereto; that the articles or services covered by the agreement (expenditure) are necessary for the public service, and that the prices charged are just and reasonable.

B. A. Hayden

(Signature of contracting officer)

Superintendent, Bureau of Reclamation

(Title)

NOTE.—This statement and certificate will be used to support all agreements, both formal contracts and less formal agreements of whatever character, involving the expenditure or receipt of public funds. It must be executed and signed by the contracting officer (unless the award is made by or is subject to approval by an officer other than the contracting officer, when execution and signature may be made by such officer).

U. S. GOVERNMENT PRINTING OFFICE          8—6000

001551

015408

7—528†
August, 1927
Approved by the Department
January 4, 1927

# DEPARTMENT OF THE INTERIOR
## BUREAU OF RECLAMATION

_____Klamath_____ Irrigation Project

# RECORD OF EXECUTION OF CONTRACT

IN RE CONTRACT, and bond, if any, relating to above-named project, dated __May 29, 1936__
symbol and number __I8r-416__; made by __Alfred C. Carleton__
amount involved, $_____; authority No. _____ or clearing account _____
purpose __Increase of water duty - Warren Act Contract__
Reference: __Authority granted 4/2/36 by First Asst. Secy.__

Notice of execution of contract to be given Chief Engineer at Denver, Superintend-
ent at __Klamath Falls, Oregon__, District Counsel at _____Portland, Oregon_____
and _____

_____

Place__Klamath Falls, Oreg.__ Date __June 8, 1936__
1. On this date the above-described contract was executed (or) passed, and bond, if
any, approved (or) passed, by this office, and transmitted to district counsel for legal
approval.

_____R. E. Hayden_____, Project Superintendent.

Inclosures:
 Original and __3__ copies of this form.
 Original and __4__ copies of contract. __Statement & Cert. of Award, Orig. & 3__

_____

Place__Portland, Ore.__ Date __June 9, 1936__
2. On this date the above-described contract, with bond, if any, was given legal
approval by this office, and transmitted to the __Project (Klamath)_____ office.

__D G TYREE_____ __Acting_____, District Counsel.

Inclosures:
 Original and __2__ copies of this form.
 Original and __3__ copies of contract.

_____

Denver, Colorado, Date _____
3. On this date the above-described contract was executed, and bond, if any,
approved by this office.

_____, Chief Engineer.

_____

Denver, Colorado, Date _____
4. On this date the above-described contract, with bond, if any, was passed by this
office and transmitted to the Washington office.

_____, Chief Engineer.

Inclosures:
 Original and _____ copies of this form.
 Original and _____ copies of contract.

_____

Washington, D. C., Date _____
5. On this date the above-described contract was executed, and bond, if any,
approved by _____

6—741E                                                    _____, Commissioner.

001552

015409

*Serial - 55*

*Project Order Copy*

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
KLAMATH PROJECT

I8r-416

1.   THIS AGREEMENT, made this 16th   day May ,
nineteen hundred and thirty one   , between THE UNITED STATES OF
AMERICA, acting for this purpose by the contracting officer exe-
cuting this agreement, pursuant to the provisions of the Act of
Congress of June 17, 1902 (32 Stat., 388), and acts amendatory
thereof or supplementary thereto, all of which are commonly known
and referred to as the National Reclamation Laws, and particu-
larly pursuant to the Warren Act of February 21, 1911 (36 Stat.,
925), the party of the first part, hereinafter referred to as the
United States, and

S. O. Viken, a single man,


                                            , the party of
the second part, hereinafter referred to as the Contractor.

        WITNESSETH:

                Explanatory Recitals

    2.   WHEREAS, in connection with the construction and opera-
tion of the Klamath Irrigation Project, Oregon-California, after
providing water sufficient for the irrigation of lands supplied
by gravity within the limits of the Klamath Irrigation Project,
the United States will have available an additional supply of
water which may be utilized by pumping to adjacent lands; and

    3.   WHEREAS, the Contractor is the owner of the lands here-
inafter described, for which he desires to secure a water supply
from the United States;

    4.   NOW, THEREFORE, for and in consideration of the mutual
and dependent stipulations herein set forth, it is hereby agreed
as follows:

                    -1-

015410

## Furnishing of Water by United States

5.    The United States shall furnish each year to the Contractor during the usual irrigation season water from the G-3 Lateral    and deliver same to the Contractor at or near a turnout located in the SW¼SW¼ of Section 33, Township 40 South, Range 11 East, W.M., for the irrigation of the land of the Contractor described as follows:

6.0 acres in the NE¼NW¼, and 23.4 acres in the SE¼NW¼ of Section 4, Township 41 South, Range 11 East, W.M., containing in all a total of 29.4 irrigable acres, under a 20-foot pumping lift.

The quantity so delivered shall not exceed the  amount that can be furnished as determined by the Secretary of the Interior, at a cost of Thirty-four Dollars ($34.00) per acre; nor shall it exceed two acre-feet per acre of irrigable land during the usual irrigation season as established on the Klamath Project, being approximately that period from April 15 to September 30, inclusive, of each year; and in no event shall it exceed 0.6 acre-feet of water per irrigable acre in any one month; Provided, that all rights to the use and delivery of water acquired by the Contractor under this contract are inferior and subject to the prior rights reserved for the gravity lands of the Klamath Project.

## Water to be Delivered only on Demand

6.    The United States shall make delivery of water hereunder only upon written demand of the Contractor served on the Superintendent of the Klamath Project at least three days prior to the beginning of the irrigation season as herein defined.  The failure of the Contractor to make such demand or the failure by him to use said  water shall not in any way relieve the Contractor of his obligation to pay to the United States the amounts herein agreed upon at the time and in the manner specified.

-2-

015411

### Measurement of Water

7.   The water to be delivered hereunder shall be measured **at the turnout described in article 5 hereof,** by such measuring and controlling devices or such automatic gauges, or both, as shall be satisfactory to the Superintendent or other officer of the United States in charge of the Klamath Project. Said measuring and controlling devices shall be furnished, installed and maintained by and at the expense of the Contractor, but they shall be and remain at all times under the complete control of the United States, whose representative may at all times have access to them over the land of the Contractor. All future repairs and renewals necessary to the operation of said turnout for delivery of water from the canal shall be done at the expense of the Contractor.

### Receipt of Water by Contractor

8.   The Contractor shall receive said irrigation water at the point of delivery above stated by means of said turnout, and shall at his own expense convey the water to his pumping plant through a canal constructed by him, and shall perform all acts required by law or custom in order to maintain his control over such water and to secure its lawful and proper diversion from the **G-5 lateral**   of the Klamath Project as herein provided for, and the beneficial application of the same to the land of the Contractor above described.

### Shortage of Water

9.   On account of drought, inaccuracy in distribution or other cause, there may occur at times a shortage in the quantity of water provided for herein, and while the United States will use all reasonable means to guard against such shortages, in no event shall any liability accrue against the United States, its officers, agents or employees for any damage, direct or indirect, arising therefrom, and the payments due hereunder shall not be reduced because of any such shortage. All losses or diminution of water by reason of seepage, evaporation or other causes after delivery thereof by the United States at the aforesaid point of delivery shall be borne by the Contractor.

001555

015412

## Waste and Seepage Waters

10.  The United States reserves the right to collect for use on the Klamath Project all waste and seepage water coming from the land of the Contractor.  The Contractor shall have the right to discharge waste and seepage water into the drainage system of the Klamath Project.

## Operation of Irrigation System

11.  In the distribution and application of the water supply provided for herein, the Contractor shall comply with all of the applicable provisions of the Reclamation Law and the regulations of the Secretary of the Interior thereunder; and will operate and maintain his irrigation system and works to be constructed hereunder to the satisfaction of the United States.  The United States assumes no responsibility whatever for the safety, integrity, or operation of the same or any portion thereof, and the Contractor will hold the United States and its officers, agents and employees harmless from any and all claims arising in connection therewith.  During the irrigation season the United States shall have the right to place inspectors at any point on the works of the Contractor to make such measurements, investigations or observations as in the judgment of the Superintendent may be necessary for the enforcement of the provisions of this contract.

## Construction Charge

12.  The Contractor agrees to pay the United States as construction charges for the supply of water heretofore described the sum of $ 999.60.  The total amount of such construction charges shall be paid in 40 annual instalments, due December 1 of each year beginning with the year 1931.  The first 5 of such instalments shall each be 1 per centum, the next 10 instalments each 2 per centum, and the next 25 instalments each 3 per centum of the total construction charge; Provided, that the Contractor may pay the whole or any part of the construction charge within any shorter period.

## Operation and Maintenance Charges

13.  In addition to the construction charge described in Article 12 the Contractor agrees to pay the United States for the irrigable area of the land of the Contractor, annual

-4-

015413

operation and maintenance charges equal to (a) one-half of the acre-charge assessed against such lands in the Main Division of the Klamath Project served by gravity, plus (b) an equitable proportion, as determined by the Secretary of the Interior, of any expenses incurred by the United States in regulating the waters from Upper Klamath Lake. The operation and maintenance charges due shall be payable to the United States or its successors in the operation of the Main Division of the Klamath Project in advance of the delivery of water each year and in any event not later than April 1 of such year.

### Penalty for Delinquency in Payment

14. To every instalment of money required to be paid under this contract which shall remain unpaid after the same shall become due, there shall be added at once a penalty of one-half of one per centum ($\frac{1}{2}$%), and thereafter a like penalty of one-half of one per centum ($\frac{1}{2}$%) on the first of each month so long as such default shall continue; and the contractor hereby agrees to pay such penalty.

### Lien to Secure Payment of Charges

15. For the purpose of securing payment to the United States of the obligations, and each of them described in Articles 12, 13, and 14, according to the conditions therein stated, a lien in favor of the United States in the amount of the total obligation described in said Articles 12, 13, and 14, is hereby created and made a charge upon all of said land both irrigable and non-irrigable, together with its privileges and appurtenances, including all water rights and irrigation works. Upon the failure of the Contractor to pay when due any instalment of charges described in said articles, the United States is empowered to foreclose the lien hereby created in the manner provided by law.

### Refusal of Water in Case of Default

16. The United States reserves the right to refuse to deliver water to the Contractor in the event of default for a period of more than twelve months in any payment due the United States under this contract. The provisions of this article are not exclusive, and shall not in any manner hinder the United States from exercising any other remedy to enforce collection of any amount due hereunder.

-5-

001557

### Secretary may Make and Modify Regulations

17.   There is reserved to the Secretary of the Interior the right to make regulations and modify the same in his discretion in general harmony, however, with this contract to the end that the true intent of the law and of this contract shall be carried into full effect.

### Contingent Appropriation Clause

18.   Where the operations of this contract extend beyond the current fiscal year, it is understood that the contract is made contingent upon Congress making the necessary appropriation for expenditures thereunder after such current year has expired.   In case such appropriation as may be necessary to carry out this contract is not made, the Contractor hereby releases the United States from all liability due to the failure of Congress to make such appropriation.

### Member of Congress Clause

19.   No Member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this contract or to any benefit to arise therefrom.   Nothing, however, herein contained shall be construed to extend to any incorporated company if the contract be for the general benefit of such corporation or company.

### Successors and Assigns Obligated

20.   The terms of this contract shall inure to the benefit of and be binding upon the successors in interest and assigns of the parties hereto.

IN WITNESS WHEREOF the parties have hereunto subscribed their names as of the date first above written.

THE UNITED STATES OF AMERICA

By   B. E. Hayden

Superintendent, Bureau of Reclamation

Witnesses:

S. O. Viken

N. G. Wheeler

Contractor

R. S. Hopkins

Contractor

Map is attached to contract dated May 15, 1951, No. 18r-414, with R. E. Shields, et al

P.O.Address:

Merrill, Oregon

--6--

STATE OF OREGON    )
                   ) SS.
COUNTY OF KLAMATH )

BE IT REMEMBERED, That on this 16th day of May ,
A. D., 1931, before me, the undersigned, a Notary Public in
and for the said state and county, personally appeared the
within named S.O.Viken, a single man,
_____ who is known to me to be the
identical individual described in and who executed the within
instrument, and acknowledged to me that he executed the same
freely and voluntarily.

IN TESTIMONY WHEREOF, I have hereunto set my hand and
official seal the day and year last above written.

                                    R.S.Hopkins
                                    Notary Public for Oregon

My Commission expires Jan. 5, 1934
(SEAL)

-7-

015416

99257

State of Oregon)
                )ss.
Klamath County )

This instrument was filed
for record on the 29 day of May
A.D.1931, at 1:15 o'clock p.m.
and duly recorded in Vol. 9b
of Deeds, Page 581.

C. R. DeLap, County Clerk

By C. J. Gates, Deputy

(SEAL)

001560

Standard Form No. 1025 (Revised)
Form approved by
Comptroller General U. S.
August 20, 1930

**STATEMENT AND CERTIFICATE OF AWARD**

No. ____

Int. __ 015417

(Contract)

Date May 16, 19 31

DEPARTMENT OF THE INTERIOR          BUREAU OF RECLAMATION          Klamath Falls, Oregon

(Department or establishment)          (Bureau or office)          (Location)

## METHOD OF OR ABSENCE OF ADVERTISING
(Section 3709 of the Revised Statutes)

1. After advertising in newspapers.
2. (a) After advertising by circular letters sent to _____ dealers.
   (b) And by notices posted in public places.

   (If notices were not posted in addition to advertising by circular letters sent to dealers, explanation of such omission must be made. The notation on the certificate below must be "2 (a) (b)" or "2 (a)," depending on whether or not notices were posted.)

3. Without advertising, under an exigency of the service which existed prior to the order and would not admit of the delay incident to advertising.
4. Without advertising in accordance with _____
5. Without advertising, it being impracticable to secure competition because of _____  Water supplied to land owner

(Here state circumstances under which the securing of competition was impracticable)

## AWARD OF CONTRACT

A. To lowest bidder as to price (Expenditures).
B. To other than the lowest bidder as to price (Expenditures).
C. To highest bidder as to price (Receipts).
D. To other than the highest bidder as to price (Receipts)

## CERTIFICATE

I CERTIFY that the foregoing statement is true and correct; that the agreement was made in consequence of No. ____ 5 of the method of or absence of advertising and in accordance with award of contract lettered _____, as shown above; that where lower bids (expenditure contracts) or higher bids (receipt contracts) as to price were received a statement of reasons for their rejection, together with an abstract of bids received, including all lower than that accepted in case of expenditure contracts and all higher in case of receipt contracts, is given below or on the reverse hereof or on a separate sheet attached hereto; that the articles or services covered by the agreement (expenditure) are necessary for the public service, and that the prices charged are just and reasonable.

B. E.    Hayden                    Superintendent, Bureau of Reclamation

(Signature of contracting officer)                    (Title)

NOTE.—This statement and certificate will be used to support all agreements, both formal contracts and less formal agreements of whatever character, involving the expenditure or receipt of public funds. It must be executed and signed by the contracting officer (unless the award is made by or is subject to approval by an officer other than the contracting officer, when execution and signature may be made by such officer).

U. S. GOVERNMENT PRINTING OFFICE: 1931     O—4699

001561

015418

7—533t
Aug 2t, 192f
Approved by the Department
January 4, 1927

# DEPARTMENT OF THE INTERIOR
## BUREAU OF RECLAMATION

Klamath     Irrigation Project

# RECORD OF EXECUTION OF CONTRACT

IN RE CONTRACT, and bond, if any, relating to above–named project, dated May 16,1931
symbol and number ___ISr-416 ; made by S. O. Viken
amount involved, $ 999.60 ; authority No. ____ or clearing account ____
purpose Purchase of permanent water right – Pumping Division
Reference: Authority contained in Commissioners letter of 11/29/29 sub-
ject "Contract of November 9, 1929, with Rex. E.Bord for a
water right on the Pumping Division, Klamath Project."
Notice of execution of contract to be given Chief Engineer at Denver, Superintend-
ent at Klamath Falls,Oregon District Counsel at ___ Portland, Oregon
and ____

Place Klamath Falls, Oregon Date May 22, 1931
1. On this date the above–described contract was executed (or) passed, and bond, if
any, approved (or) passed, by this office, and transmitted to district counsel for legal
approval.

R.T.Hayden , Project Superintendent.

Inclosures:
Original and 3 copies of this form. Statement & Cert. of Award, Orig. & 5
Original and 4 copies of contract.

Place Portland, Ore. Date May 25 1931
2. On this date the above–described contract, with bond, if any, was given legal
approval by this office, and transmitted to the Project (Klamath Falls) office.
Spencer L. Baird , District Counsel.
Associate

Inclosures:
Original and 2 copies of this form.
Original and 3 copies of contract.

Denver, Colorado, Date ____
3. On this date the above–described contract was executed, and bond, if any,
approved by this office.

, Chief Engineer.

Denver, Colorado, Date ____
4. On this date the above–described contract, with bond, if any, was passed by this
office and transmitted to the Washington office.

, Chief Engineer.

Inclosures:
Original and ____ copies of this form.
Original and ____ copies of contract.

Washington, D. C., Date ____
5. On this date the above–described contract was executed, and bond, if any,
approved by ____

, Commissioner.

6—7416

001562

015419

## CERTIFICATE

TO BE ATTACHED TO CONTRACT DATED MAY 16, 1931, SYMBOL NO. I8r-416, BETWEEN THE UNITED STATES AND S. O. VIKEN, A SINGLE MAN.

- - -

I HEREBY CERTIFY that an examination of the Klamath County, Oregon, records shows that S. O. VIKEN, has transferred his title in the NE¼NW¼ and SE¼NW¼, of Section 4, Township 41 South, Range 11 East, W.M., to ALFRED G. CARLETON, a single man.

Dated at Klamath Falls, Oregon, this 29th day of May, 1936.

W. L. Tingley
Chief Clerk
Bureau of Reclamation

001563

015420

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
KLAMATH IRRIGATION PROJECT

16r-416

THIS AGREEMENT, Made this 11th day of May , 1936, in pursuance of the Act of Congress of June 17, 1902 (32 Stat. 388), and acts amendatory thereof or supplementary thereto, and particularly pursuant to the Warren Act of February 21, 1911 (36 Stat. 925), between the UNITED STATES OF AMERICA, herein styled the United States, represented by the officer executing this contract, and

James Wesley Reeder and Lewie Maria Reeder, husband and wife,

hereinafter styled the Contractor,

WITNESSETH, That

2.   WHEREAS the parties hereto, entered into an agreement under date of May 16, 1931 , and providing for use by the Contractor of a maximum of two (2) acre-feet for each acre of irrigable land as provided in Article five (5) of said contract of May 16, 1931 and the Contractor now desires that the said contract be amended to increase such maximum use from two (2) to two and one-half (2½) acre-feet; and

3.   WHEREAS, the United States desires to obtain from the Contractor each year an accurate record of all crops raised and agricultural and livestock products produced on the lands of the Contractor each year;

NOW, THEREFORE, It is agreed that.

4.   Article five (5) of said contract of May 16, 1931 shall be and is amended to read as follows:

"5.   The United States shall furnish each year to the Contractor, during the usual irrigation season, water from the G-3 Lateral and deliver same to the Contractor at or near a turnout located in the SW¼SW¼ of Section 32, Township 40 South, Range 11 East, W.M.,

for the irrigation of the lands of the Contractor described as follows:

39.2 acres in the NE¼NW¼ of Section 5, Township 41 South, Range 11 East, W.M., under a 20-foot pumping lift.

001564

The quantity so delivered shall not exceed the amount that can be furnished as determined by the Secretary of the Interior, at a cost of Thirty-four Dollars ($34.00) per acre; nor shall it exceed two and one-half ($2\frac{1}{2}$) acre-feet per acre of irrigable land during the usual irrigation season as established on the Klamath Project, being approximately that period from April 15 to September 30, inclusive, of each year; and in no event shall it exceed six-tenths (0.6) of an acre-foot of water per irrigable acre in any one month; Provided that if the Contractor is in need of and desires to purchase additional water over and above the $2\frac{1}{2}$ acre-feet per acre specified herein such additional water will be furnished at the same rate established for additional water furnished Warren Act contractors in the Public Notices of Annual Water Charges issued or to be issued hereafter for the Klamath Project; Provided, further, that all rights to the use and delivery of water acquired by the Contractor under this contract are inferior and subject to prior rights reserved for the lands of the Klamath Project."

5.  The Contractor shall keep an accurate record of all crops raised and agricultural and livestock products produced on his lands and furnish a report on same, to the Secretary of the Interior in form prescribed, on or before December 31 of each year.

6.  In all other respects said contract of          May 16, 1931          shall remain in effect with like intent and purpose as though this contract had never been executed.

7.  No member of or delegate to Congress or resident commissioner shall be admitted to any share or part of this contract or to any benefit that may arise therefrom, but this restriction shall not be construed to extend to this contract if made with a corporation or company for its general benefit.

IN WITNESS WHEREOF, the parties have hereunto subscribed their names as of the date first above written.

UNITED STATES OF AMERICA

By  B. E. Hayden
    Superintendent,
    Bureau of Reclamation

Witnesses:

_____            James Wesley Reeder
                                                        Contractor

_____            Lovie Marie Reeder
                                                        Contractor

                                        Merrill, Oregon
                                              P.O. Address

015422

STATE OF OREGON )
              ) SS.
COUNTY OF KLAMATH )

     BE IT REMEMBERED, That on this ___11th___ day of ___May___ , A.D.,
1936, before me, the undersigned, a Notary Public in and for the said
state and county, personally appeared the within named ___James Wesley___
Reeder and Dovie Marie Reeder, husband and wife, of Merrill, Oregon,
who ___are___ known to me to be the identical individual described in and
who executed the within instrument, and acknowledged to me that ___they___
executed the same freely and voluntarily.

     IN TESTIMONY WHEREOF, I have hereunto set my hand and official
seal the day and year last above written.

                                Thomas W. Chatburn
                                Notary Public for Oregon

My commission expires ___Nov. 23, 1937___

(SEAL)

001566

Standard Form No. 1036 (Revised)
Form approved by
Comptroller General U. S
August 20, 1930

# TATEMENT AND CERTIFICAT
## OF AWARD

No. I3r-A19   015423
(Contract)

Date May 11 , 19 36
(Date)

DEPARTMENT OF THE INTERIOR
(Department or establishment)

BUREAU OF RECLAMATION
(Bureau or office)

Klamath Falls,Oregon
(Location)

## METHOD OF OR ABSENCE OF ADVERTISING
(Section 3709 of the Revised Statutes)

1. After advertising in newspapers.
2. (a) After advertising by circular letters sent to _____ dealers.
   (b) And by notices posted in public places.
   (If notices were not posted in addition to advertising by circular letters sent to dealers, explanation of such omission must be made. The notation on the certificate below must be "2 (a) (b)" or "2 (a)," depending on whether or not notices were posted.)
3. Without advertising, under an exigency of the service which existed prior to the order and would not admit of the delay incident to advertising.
4. Without advertising in accordance with _____
5. Without advertising, it being impracticable to secure competition because of Contract made with land owner

(Here state circumstances under which the securing of competition was impracticable)

## AWARD OF CONTRACT

A. To lowest bidder as to price (Expenditures).
B. To other than the lowest bidder as to price (Expenditures).
C. To highest bidder as to price (Receipts).
D. To other than the highest bidder as to price (Receipts).

## CERTIFICATE

I CERTIFY that the foregoing statement is true and correct; that the agreement was made in consequence of No. 5 of the method of or absence of advertising and in accordance with award of contract lettered _____, as shown above; that where lower bids (expenditure contracts) or higher bids (receipt contracts) as to price were received a statement of reasons for their rejection, together with an abstract of bids received, including all lower than that accepted in case of expenditure contracts and all higher in case of receipt contracts, is given below or on the reverse hereof or on a separate sheet attached hereto; that the articles or services covered by the agreement (expenditure) are necessary for the public service, and that the prices charged are just and reasonable.

B. E. Hayden
(Signature of contracting officer)

Superintendent, Bureau of Reclamation
(Title)

NOTE.—This statement and certificate will be used to support all agreements, both formal contracts and less formal agreements of whatever character, involving the expenditure or receipt of public funds. It must be executed and signed by the contracting officer (unless the award is made by or is subject to approval by an officer other than the contracting officer, when execution and signature may be made by such officer).

U. S. GOVERNMENT PRINTING OFFICE          6—8000

001567

015424

7—523t
August, 1927
Approved by the Department
January 4, 1927

## DEPARTMENT OF THE INTERIOR
### BUREAU OF RECLAMATION

Klamath ............ Irrigation Project

# RECORD OF EXECUTION OF CONTRACT

IN RE CONTRACT, and bond, if any, relating to above-named project, dated __May 11, 1936__
    symbol and number __I8r-418__; made by __James Wesley Reeder and Dovie Marie Reeder__
    amount involved, $_____; authority No. _____ or clearing account _____
    purpose __Increase of water duty - Warren Act Contract__
    Reference: __Authority granted 4/2/36 by First Asst. Secy.__

Notice of execution of contract to be given Chief Engineer at Denver, Superintend-
ent at __Klamath Falls, Oregon__, District Counsel at __Portland, Oregon__
and _____

                Place __Klamath Falls, Ore.__ Date __May 19, 1936__
    1. On this date the above-described contract was executed (or) passed, and bond, if
any, approved (or) passed, by this office, and transmitted to district counsel for legal
approval.

                __B. E. Hayden__ _____, Project Superintendent.
Inclosures:
    Original and __5/4__ copies of this form. __Statement & Cert. of Award, Orig. & 3__
    Original and ____ copies of contract.

                Place __Portland, Ore.__ Date __May 23, 1936__
    2. On this date the above-described contract, with bond, if any, was given legal
approval by this office, and transmitted to the __Project (Klamath Falls)__ office.

                __B. E. STOUTEMYER__ _____, District Counsel.
Inclosures:
    Original and __2__ copies of this form.
    Original and __3__ copies of contract.

                Denver, Colorado, Date _____
    3. On this date the above-described contract was executed, and bond, if any,
approved by this office.

                _____, Chief Engineer.

                Denver, Colorado, Date _____
    4. On this date the above-described contract, with bond, if any, was passed by this
office and transmitted to the Washington office.

                _____, Chief Engineer.
Inclosures:
    Original and _____ copies of this form.
    Original and _____ copies of contract.

                Washington, D. C., Date _____
    5. On this date the above-described contract was executed, and bond, if any,
approved by _____

                _____, Commissioner.

6—7415

001568

015425

Copy

Serial 57

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
KLAMATH PROJECT

No. 418

1.   THIS AGREEMENT, made this    16th   day    May    ,
nineteen hundred and thirty one   , between THE UNITED STATES OF
AMERICA, acting for this purpose by the contracting officer exe-
cuting this agreement, pursuant to the provisions of the Act of
Congress of June 17, 1902 (32 Stat., 388), and acts amendatory
thereof or supplementary thereto, all of which are commonly known
and referred to as the National Reclamation Laws, and particu-
larly pursuant to the Warren Act of February 21, 1911 (36 Stat.,
925), the party of the first part, hereinafter referred to as the
United States, and

Gertrude McCormick, a widow, and Lutie Anson Boyes and Estella
Boyes, his wife,

, the party of
the second part, hereinafter referred to as the Contractor.

WITNESSETH:

### Explanatory Recitals

2.   WHEREAS, in connection with the construction and opera-
tion of the Klamath Irrigation Project, Oregon-California, after
providing water sufficient for the irrigation of lands supplied
by gravity within the limits of the Klamath Irrigation Project,
the United States will have available an additional supply of
water which may be utilized by pumping to adjacent lands; and

3.   WHEREAS, the Contractor is the owner of the lands here-
inafter described, for which he desires to secure a water supply
from the United States;

4.   NOW, THEREFORE, for and in consideration of the mutual
and dependent stipulations herein set forth, it is hereby agreed
as follows:

-1-

001569

015426

## Furnishing of Water by United States

5. The United States shall furnish each year to the Contractor during the usual irrigation season water from the _____ and deliver same to the Contractor at or near G-3 Lateral a turnout located in the SW¼SW¼ of Section 32, Township 40 fourths same at or near the land of the Contractor described as follows:

59.2 acres in the NE¼NW¼ of Section 5, Township 41 South, Range 11 East, W.M., under a 20-foot pumping lift.

The quantity so delivered shall not exceed the amount that can be furnished as determined by the Secretary of the Interior, at a cost of Thirty-four Dollars ($34.00) per acre; nor shall it exceed two acre-feet per acre of irrigable land during the usual irrigation season as established on the Klamath Project, being approximately that period from April 15 to September 30, inclusive, of each year; and in no event shall it exceed 0.6 acre-feet of water per irrigable acre in any one month; Provided, that all rights to the use and delivery of water acquired by the Contractor under this contract are inferior and subject to the prior rights reserved for the gravity lands of the Klamath Project.

## Water to be Delivered only on Demand

6. The United States shall make delivery of water hereunder only upon written demand of the Contractor served on the Superintendent of the Klamath Project at least three days prior to the beginning of the irrigation season as herein defined. The failure of the Contractor to make such demand or the failure by him to use said water shall not in any way relieve the Contractor of his obligation to pay to the United States the amounts herein agreed upon at the time and in the manner specified.

-2-

001570

### Measurement of Water

7.   The water to be delivered hereunder shall be measured **at the turnout described in Article 5 hereof,** by such measuring and controlling devices or such automatic gauges, or both, as shall be satisfactory to the Superintendent or other officer of the United States in charge of the Klamath Project. Said measuring and controlling devices shall be furnished, installed and maintained by and at the expense of the Contractor, but they shall be and remain at all times under the complete control of the United States, whose representative may at all times have access to them over the land of the Contractor. All future repairs and renewals necessary to the operation of said turnout for delivery of water from the canal shall be done at the expense of the Contractor.

### Receipt of Water by Contractor

8.   The Contractor shall receive said irrigation water at the point of delivery above stated by means of said turnout, and shall at his own expense convey the water to his pumping plant through a canal constructed by him, and shall perform all acts required by law or custom in order to maintain his control over such water and to secure its lawful and proper diversion from the **G-3 Lateral**   of the Klamath Project as herein provided for, and the beneficial application of the same to the land of the Contractor above described.

### Shortage of Water

9.   On account of drought, inaccuracy in distribution or other cause, there may occur at times a shortage in the quantity of water provided for herein, and while the United States will use all reasonable means to guard against such shortages, in no event shall any liability accrue against the United States, its officers, agents or employees for any damage, direct or indirect, arising therefrom, and the payments due hereunder shall not be reduced because of any such shortage. All losses or diminution of water by reason of seepage, evaporation or other causes after delivery thereof by the United States at the aforesaid point of delivery shall be borne by the Contractor.

-3-

015428

### Waste and Seepage Waters

10.  The United States reserves the right to collect
for use on the Klamath Project all waste and seepage water
coming from the land of the Contractor.  The Contractor shall
have the right to discharge waste and seepage water into
the drainage system of the Klamath Project.

### Operation of Irrigation System

11.  In the distribution and application of the water
supply provided for herein, the Contractor shall comply with
all of the applicable provisions of the Reclamation Law and
the regulations of the Secretary of the Interior thereunder;
and will operate and maintain his irrigation system and works
to be constructed hereunder to the satisfaction of the United
States.  The United States assumes no responsibility whatever
for the safety, integrity, or operation of the same or any
portion thereof, and the Contractor will hold the United
States and its officers, agents and employees harmless from
any and all claims arising in connection therewith.  During
the irrigation season the United States shall have the right
to place inspectors at any point on the works of the Con-
tractor to make such measurements, investigations or observa-
tions as in the judgment of the Superintendent may be necessary
for the enforcement of the provisions of this contract.

### Construction Charge

12.  The Contractor agrees to pay the United States as
construction charges for the supply of water heretofore de-
scribed the sum of $ 1,553.80  The total amount of such con-
struction charges shall be paid in 40 annual instalments, due
December 1 of each year beginning with the year 1931.   The
first 5 of such instalments shall each be 1 per centum, the
next 10 instalments each 2 per centum, and the next 25 instal-
ments each 3 per centum of the total construction charge;
Provided, that the Contractor may pay the whole or any part
of the construction charge within any shorter period.

### Operation and Maintenance Charges

13.  In addition to the construction charge described in
Article 12 the Contractor agrees to pay the United States for
the irrigable area of the land of the Contractor, annual

-4-

001572

015429

operation and maintenance charges equal to (a) one-half of
the acre-charge assessed against such lands in the Main Divi-
sion of the Klamath Project served by gravity, plus (b) an
equitable proportion, as determined by the Secretary of the
Interior, of any expenses incurred by the United States in
regulating the waters from Upper Klamath Lake.  The operation
and maintenance charges due shall be payable to the United
States or its successors in the operation of the Main Divi-
sion of the Klamath Project in advance of the delivery of
water each year and in any event not later than April 1 of
such year.

### Penalty for Delinquency in Payment

14.  To every instalment of money required to be paid
under this contract which shall remain unpaid after the same
shall become due, there shall be added at once a penalty of
one-half of one per centum ($\frac{1}{2}\%$), and thereafter a like penalty
of one-half of one per centum ($\frac{1}{2}\%$) on the first of each month
so long as such default shall continue; and the contractor
hereby agrees to pay such penalty.

### Lien to Secure Payment of Charges

15.  For the purpose of securing payment to the United
States of the obligations, and each of them described in
Articles 12, 13, and 14, according to the conditions therein
stated, a lien in favor of the United States in the amount
of the total obligation described in said Articles 12, 13,
and 14, is hereby created and made a charge upon all of said
land both irrigable and non-irrigable, together with its
privileges and appurtenances, including all water rights and
irrigation works.  Upon the failure of the Contractor to pay
when due any instalment of charges described in said articles,
the United States is empowered to foreclose the lien hereby
created in the manner provided by law.

### Refusal of Water in Case of Default

16.  The United States reserves the right to refuse to
deliver water to the Contractor in the event of  default for
a period of more than twelve months in any payment due the
United States under this contract.  The provisions of this
article are not exclusive, and shall not in any manner hinder
the United States from exercising any other remedy to enforce
collection of any amount due hereunder.

-5-

001573

015430

### Secretary may Make and Modify Regulations

17.  There is reserved to the Secretary of the Interior the right to make regulations and modify the same in his discretion in general harmony, however, with this contract, to the end that the true intent of the law and of this contract shall be carried into full effect.

### Contingent Appropriation Clause

18.  Where the operations of this contract extend beyond the current fiscal year, it is understood that the contract is made contingent upon Congress making the necessary appropriation for expenditures thereunder after such current year has expired.  In case such appropriation as may be necessary to carry out this contract is not made, the Contractor hereby releases the United States from all liability due to the failure of Congress to make such appropriation.

### Member of Congress Clause

19.  No Member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this contract or to any benefit to arise therefrom.  Nothing, however, herein contained shall be construed to extend to any incorporated company if the contract be for the general benefit of such corporation or company.

### Successors and Assigns Obligated

20.  The terms of this contract shall inure to the benefit of and be binding upon the successors in interest and assigns of the parties hereto.

IN WITNESS WHEREOF the parties have hereunto subscribed their names as of the date first above written.

THE UNITED STATES OF AMERICA

By  B. E. Hayden

Superintendent, Bureau of Reclamation

Gertrude McCormick

Contractor

P.O.Address: Merrill, Oregon

Lutie Anson Boyes

Contractor

Estella Boyes   Contractor

P.O.Address:

Tennant, Calif.

Witnesses:

N. G. Wheeler      )As to
                   )Gertrude
R. G. Hopkins      )McCormick

Dorothy A. Wincott )As to
                   )Boyes
L.H. Alsop         )

-6-

015431

STATE OF OREGON   )
                  ) SS.
COUNTY OF KLAMATH )

BE IT REMEMBERED, That on this 16th day of May,
A. D., 1931, before me, the undersigned, a Notary Public in
and for the said state and county, personally appeared the
within named Gertrude McCormick, a widow,
_____ who is known to me to be the
identical individual described in and who executed the within
instrument, and acknowledged to me that she executed the same
freely and voluntarily.

IN TESTIMONY WHEREOF, I have hereunto set my hand and
official seal the day and year last above written.

R. S. Hopkins
Notary Public for Oregon

My Commission expires   Jan. 5, 1934

(SEAL)

-.7-

001575

015432



STATE OF ~~OREGON~~ California )
                                 ) SS.
COUNTY OF ~~KLAMATH~~ Siskiyou )

 BE IT REMEMBERED, That on this __25th__ day of __May__ ,
A. D., 193__1__, before me, the undersigned, a Notary Public in
and for the said state and county, personally appeared the
within named <u>Lutie Anson Boyes and Estella Boyes, his wife,</u>
_____ who __are__ known to me to be the
identical individual __s__ described in and who executed the within
instrument, and acknowledged to me that __they__ executed the same
freely and voluntarily.

 IN TESTIMONY WHEREOF, I have hereunto set my hand and
official seal the day and year last above written.

<div align="right">

F. Boyle
Notary Public for ~~Oregon~~
California

</div>

My Commission expires __Jan. 30, 1934__

(SEAL)

<div align="center">-7-</div>

001576

015433

99690

State of Oregon }
                 }ss.
Klamath County }

    This instrument was filed
for record on the 26 day of June
A.D.1931 at 9:10 o'clock a.m. and
duly recorded in Vol. 95 of Deeds
Page 494

C. R. DeLap, County Clerk

(SEAL)

001577

Standard Form No. 1086 (Revised)
Form approved by
Comptroller General U. S.
August 20, 1930

No. _____

(Contract)

ATEMENT AND CERTIFICAT
OF AWARD

Date _____ May 16 31 , 19___

DEPARTMENT OF THE INTERIOR      BUREAU OF RECLAMATION   Klamath Falls, Oregon
_____   _____   _____
(Department or establishment)        (Bureau or office)                (Location)

## METHOD OF OR ABSENCE OF ADVERTISING

(Section 3709 of the Revised Statutes)

1. After advertising in newspapers.
2. (a) After advertising by circular letters sent to _____ dealers.
   (b) And by notices posted in public places.

   (If notices were not posted in addition to advertising by circular letters sent to dealers, explanation of such omission must be made. The notation on the certificate below must be "2 (a) (b)" or "2 (a)," depending on whether or not notices were posted.)

3. Without advertising, under an exigency of the service which existed prior to the order and would not admit of the delay incident to advertising.
4. Without advertising in accordance with _____
5. Without advertising, it being impracticable to secure competition because of _____ Water supplied to land
   owner

(Here state circumstances under which the securing of competition was impracticable)

## AWARD OF CONTRACT

A. To lowest bidder as to price (Expenditures).
B. To other than the lowest bidder as to price (Expenditures).
C. To highest bidder as to price (Receipts).
D. To other than the highest bidder as to price (Receipts)

## CERTIFICATE

I CERTIFY that the foregoing statement is true and correct; that the agreement was made in consequence of No. _____ 5
of the method of or absence of advertising and in accordance with award of contract lettered _____, as shown above; that where lower bids (expenditure contracts) or higher bids (receipt contracts) as to price were received a statement of reasons for their rejection, together with an abstract of bids received, including all lower than that accepted in case of expenditure contracts and all higher in case of receipt contracts, is given below or on the reverse hereof or on a separate sheet attached hereto; that the articles or services covered by the agreement (expenditure) are necessary for the public service, and that the prices charged are just and reasonable.

B. E. Hayden                    Superintendent, Bureau of Reclamation
_____           _____
(Signature of contracting officer)              (Title)

NOTE.—This statement and certificate will be used to support all agreements, both formal contracts and less formal agreements of whatever character, involving the expenditure or receipt of public funds. It must be executed and signed by the contracting officer (unless the award is made by or is subject to approval by an officer other than the contracting officer, when execution and signature may be made by such officer).

U. S. GOVERNMENT PRINTING OFFICE 1931      0—8090

015435

7—533t
August, 1927
Approved by the Department
January 4, 1927

## DEPARTMENT OF THE INTERIOR
### BUREAU OF RECLAMATION

_____ Klamath _____ Irrigation Project

# RECORD OF EXECUTION OF CONTRACT

IN RE CONTRACT, and bond, if any, relating to above–named project, dated __May 16, 1931__
symbol and number __18r–418__ ; made by __Gertrude McCormick, et al__
amount involved, $__1532.80__; authority No. _____ or clearing account _____
purpose __Purchase of permanent water right — Pumping Division__
Reference: __Authority contained in Commissioners letter of 11/29/29 sub-__
ject "Contract of November 29, 1929, with Rex E. Bord, for a
__Water Right of permanent water right, Klamath Project__
Notice of execution of contract was designated, _____ Superintend-
ent at __Klamath Falls, Oregon__ District Counsel at _____
and _____                                    __Portland, Oregon__

                       Place __Klamath Falls, Oregon__ June 23, 1931
     1. On this date the above–described contract was executed (or) passed, and bond, if
any, approved (or) passed, by this office, and transmitted to district counsel for legal
approval.

                   __B. E. Hayden__ _____, Project Superintendent.

Inclosures:
   Original and __3__ copies of this form.      __Statement & Cert. of Award, Orig.& 3__
   Original and __4__ copies of contract.

                       Place __Portland, Ore__ Date __June 25, 1931__
     2. On this date the above–described contract, _____ any, was _____
approval by this office, and transmitted to the _____ office.
                   __project (Klamath Falls)__
Inclosures:                __Spencer L Baird   Assoc.__ District Counsel.
   Original and __2__ copies of this form.
   Original and __3__ copies of contract.

                       Denver, Colorado, Date _____
     3. On this date the above–described contract was executed, and bond, if any,
approved by this office.

                   _____, Chief Engineer.

                       Denver, Colorado, Date _____
     4. On this date the above–described contract, with bond, if any, was passed by this
office and transmitted to the Washington office.

                   _____, Chief Engineer.

Inclosures:
   Original and _____ copies of this form.
   Original and _____ copies of contract.

                       Washington, D. C., Date _____
     5. On this date the above–described contract was executed, and bond, if any,
approved by _____

                   _____, Commissioner.

6—7416

001579

015436

CERTIFICATE

TO BE ATTACHED TO CONTRACT DATED MAY 16, 1931,
SYMBOL No.Ig-618, BETWEEN THE UNITED STATES
AND GERTRUDE McCORMICK, a widow, AND
LUTIE ALLON BOYES AND ESTELLA BOYES, his wife.

- - - - - -

I HEREBY CERTIFY that an examination of the Klamath
County, Oregon, records shows that Gertrude McCormick,
a widow, and Lutie Allen Boyes and Estelle Boyes, his
wife, have transferred their title in the NE¼NW¼ of
Section 6, T. 41 S., R. 11 E., W. M., to James Wesley
Bowdon and Doyle Marie Bowden, husband and wife.

Dated at Klamath Falls, Oregon, this 16th day of
November, 1936.

                    H. G. Wheeler
                    Chief Clerk
                    Bureau of Reclamation

001580

015437

Project Office Copy

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
KLAMATH IRRIGATION PROJECT

IDr-419

THIS AGREEMENT, Made this 24th day of       June       , 1936, in pursu-
ance of the Act of Congress of June 17, 1902 (32 Stat. 388), and acts amenda-
tory thereof or supplementary thereto, and particularly pursuant to the Warren
Act of February 21, 1911 (56 Stat. 925), between the UNITED STATES OF AMERICA,
herein styled the United States, represented by the officer executing this con-
tract, and

I.E.Icenbice and Louisa A. Icenbice, his wife; and C.F.Icenbice, a single man
hereinafter styled the Contractor,

WITNESSETH, That --
I.E.Icenbice,Louisa A.Icenbice,C.F.Icenbice,Lutie Anson Boyes and Estella Boyes,predecessors,
    2.    WHEREAS, the parties hereto, entered into an agreement under date of

May 16, 1931            , and providing for use by the Contractor of a max-
mum of two (2) acre-feet for each acre of irrigable land as provided in Article

five (5) of said contract of        May 16, 1931     and the Contractor now
desires that the said contract be amended to increase such maximum use from two
(2) to two and one-half (2½) acre-feet; and

    3.    WHEREAS, the United States desires to obtain from the Contractor each
year an accurate record of all crops raised and agricultural and livestock pro-
ducts produced on the lands of the Contractor each year;

NOW, THEREFORE, It is agreed that:

    4.    Article five (5) of said contract of      May 16, 1931
shall be and is amended to read as follows:

        "5.    The United States shall furnish each year to the Contractor,

during the usual irrigation season, water from the    C-3 Lateral    and
deliver same to the Contractor at or near a turnout located in the

SW¼SW¼ of Section 32, Township 40 South, Range 11 East, W.M.,

for the irrigation of the lands of the Contractor described as follows:

33.2 acres in the NW¼NW¼, 40.0 acres in the SW¼NW¼, and 40.0 acres in the
SE¼NW¼, all in Section 5, Township 41 South, Range 11 East, W.M., con-
taining in all a total of 113.2 irrigable acres, under a 20-foot pumping
lift.

001581

015438

The quantity so delivered shall not exceed the amount that can be furnished as determined by the Secretary of the Interior, at a cost of
Thirty-four Dollars ($34.00) per acre; nor shall it exceed two and
one-half (2½) acre-feet per acre of irrigable land during the usual
irrigation season as established on the Klamath Project, being approximately that period from April 15 to September 30, inclusive, of each
year; and in no event shall it exceed six-tenths (0.6) of an acre-
foot of water per irrigable acre in any one month; Provided that if
the Contractor is in need of and desires to purchase additional water
over and above the 2½ acre-feet per acre specified herein such additional water will be furnished at the same rate established for
additional water furnished Warren Act contractors in the Public Notices of Annual Water Charges issued or to be issued hereafter for the
Klamath Project; Provided, further, that all rights to the use and
delivery of water acquired by the Contractor under this contract are
inferior and subject to prior rights reserved for the lands of the
Klamath Project."

5.    The Contractor shall keep an accurate record of all crops raised and
agricultural and livestock products produced on his lands and furnish a report on same, to the Secretary of the Interior in form prescribed, on or before
December 31 of each year.

6.    In all other respects said contract of      **May 16, 1931**            shall
remain in effect with like intent and purpose as though this contract had never
been executed.

7.    No member of or delegate to Congress or resident commissioner shall
be admitted to any share or part of this contract or to any benefit that may
arise therefrom, but this restriction shall not be construed to extend to
this contract if made with a corporation or company for its general benefit.

IN WITNESS WHEREOF, the parties have hereunto subscribed their names as
of the date first above written.

JUN 26 1936

UNITED STATES OF AMERICA

By    B. E. Hayden
        Superintendent,
        Bureau of Reclamation

Witnesses:

_____
                                    I. E. Icenbice
                                                    Contractor

_____     Louisa A. Icenbice, Contractor

                                    G. F. Icenbice
                                                    Contractor

_____

                                    Merrill, Oregon
                                                    P.O. Address

001582

015439

STATE OF OREGON    )
                   ) SS.
COUNTY OF KLAMATH  )


BE IT REMEMBERED, That on this 24th day of June , A.D.,
1936, before me, the undersigned, a Notary Public in and for the said
state and county, personally appeared the within named  I.E.Isenbice
and Louisa A. Isenbice, his wife, and C. F. Isenbice, a single man
who are  known to me to be the identical individual s described in and
who executed the within instrument, and acknowledged to me that they
executed the same freely and voluntarily.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official
seal the day and year last above written.


                              R. S. Hopkins
                              Notary Public for Oregon

My commission expires  December 25, 1937

(SEAL)

015440

Standard Form No. 1036 (Revised)
Form approved by
Comptroller General U. S.
August 20, 1930

**STATEMENT AND CERTIFICATE**
**OF AWARD**

No. ISX-419
(Contract)

Date June 24, 19 50

DEPARTMENT OF THE INTERIOR          BUREAU OF RECLAMATION   Klamath Falls, Oregon
(Department or establishment)                (Bureau or office)                    (Location)

## METHOD OF OR ABSENCE OF ADVERTISING
(Section 3709 of the Revised Statutes)

1. After advertising in newspapers.
2. (a) After advertising by circular letters sent to_____dealers.
   (b) And by notices posted in public places.
      (If notices were not posted in addition to advertising by circular letters sent to dealers, explanation of such omission must be made. The notation on the certificate below must be "2 (a) (b)" or "2 (a)," depending on whether or not notices were posted.)
3. Without advertising, under an exigency of the service which existed prior to the order and would not admit of the delay incident to advertising.
4. Without advertising in accordance with _____
5. Without advertising, it being impracticable to secure competition because of **Suppl. contract made with land owner**

(Here state circumstances under which the securing of competition was impracticable.)

## AWARD OF CONTRACT

A. To lowest bidder as to price (Expenditures).
B. To other than the lowest bidder as to price (Expenditures).
C. To highest bidder as to price (Receipts).
D. To other than the highest bidder as to price (Receipts).

## CERTIFICATE

I CERTIFY that the foregoing statement is true and correct; that the agreement was made in consequence of No. **5** of the method of or absence of advertising and in accordance with award of contract lettered _____, as shown above; that where lower bids (expenditure contracts) or higher bids (receipt contracts) as to price were received a statement of reasons for their rejection, together with an abstract of bids received, including all lower than that accepted in case of expenditure contracts and all higher in case of receipt contracts, is given below or on the reverse hereof or on a separate sheet attached hereto; that the articles or services covered by the agreement (expenditure) are necessary for the public service, and that the prices charged are just and reasonable.

B. E. Hayden                    Superintendent, Bureau of Reclamation
(Signature of contracting officer)                        (Title)

NOTE.—This statement and certificate will be used to support all agreements, both formal contracts and less formal agreements of whatever character, involving the expenditure or receipt of public funds. It must be executed and signed by the contracting officer (unless the award is made by or is subject to approval by an officer other than the contracting officer, when execution and signature may be made by such officer).          U. S. GOVERNMENT PRINTING OFFICE          6—8090

001584

7—522t
August, 1927
Approved by the Department
January 4, 1927

## DEPARTMENT OF THE INTERIOR
### BUREAU OF RECLAMATION

Klamath _____ Irrigation Project



# RECORD OF EXECUTION OF CONTRACT

IN RE CONTRACT, and bond, if any, relating to above-named project, dated June 24, 1936
    symbol and number I8r-419 _____; made by I.E. Icenbice,Louisa A. Icenbice & C.E. Icenbice
    amount involved, $_____; authority No. _____ or clearing account _____
    purpose Increase of water duty - Warren Act contract _____
    Reference: Authority granted 4/2/36 by First Asst. Secy. _____

Notice of execution of contract to be given Chief Engineer at Denver, Superintend-
ent at Klamath Falls, Oregon _____, District Counsel at Portland, Oregon _____
and _____

Place Klamath Falls,Ore. Date June 26, 1936

1. On this date the above-described contract was executed (or) passed, and bond, if
any, approved (or) passed, by this office, and transmitted to district counsel for legal
approval.

_____B. E. Hayden_____, Project Superintendent.

Inclosures:
    Original and 3 copies of this form.
    Original and 4 copies of contract.  Statement & Cert. of Award,Orig. & 3

Place Portland, Ore. Date June 27, 1936

2. On this date the above-described contract, with bond, if any, was given legal
approval by this office, and transmitted to the project (Klamath Falls) office.

_____B. E. Stoutemyer_____, District Counsel.

Inclosures:
    Original and 2 copies of this form.
    Original and 3 copies of contract.

Denver, Colorado, Date _____

3. On this date the above-described contract was executed, and bond, if any,
approved by this office.

_____, Chief Engineer.

Denver, Colorado, Date _____

4. On this date the above-described contract, with bond, if any, was passed by this
office and transmitted to the Washington office.

_____, Chief Engineer.

Inclosures:
    Original and ____ copies of this form.
    Original and ____ copies of contract.

Washington, D. C., Date _____

5. On this date the above-described contract was executed, and bond, if any,
approved by _____

_____, Commissioner.

6—741t

001585

015442

Serial 98

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
KLAMATH PROJECT

1.   THIS AGREEMENT, made this    18th  day    May       ,
nineteen hundred and thirty one  , between THE UNITED STATES OF
AMERICA, acting for this purpose by the contracting officer exe-
cuting this agreement, pursuant to the provisions of the Act of
Congress of June 17, 1902 (32 Stat., 388), and acts amendatory
thereof or supplementary thereto, all of which are commonly known
and referred to as the National Reclamation Laws, and particu-
larly pursuant to the Warren Act of February 21, 1911 (36 Stat.,
925), the party of the first part, hereinafter referred to as the
United States, and

I. E. Icenbice and Louisa A. Icenbice, his wife, C. F. Icenbice,
a single man, and Lutie Anson Boyes and Estella Boyes, his wife,

, the party of
the second part, hereinafter referred to as the Contractor.

    WITNESSETH:

                        Explanatory Recitals

    2.   WHEREAS, in connection with the construction and opera-
tion of the Klamath Irrigation Project, Oregon-California, after
providing water sufficient for the irrigation of lands supplied
by gravity within the limits of the Klamath Irrigation Project,
the United States will have available an additional supply of
water which may be utilized by pumping to adjacent lands; and

    3.   WHEREAS, the Contractor is the owner of the lands here-
inafter described, for which he desires to secure a water supply
from the United States;

    4.   NOW, THEREFORE, for and in consideration of the mutual
and dependent stipulations herein set forth, it is hereby agreed
as follows:

                            -1-

001586

## Furnishing of Water by United States

5.   The United States shall furnish each year to the Contractor during the usual irrigation season water from the G-3 Lateral   and deliver same to the Contractor at on Main. a turnout located in the SE¼SW¼ of Section 32, Township 40 South, Range 11 East, W.M. for the irrigation of the land of the Contractor described as follows:

33.2 acres in the NW¼NE¼, 40.0 acres in the SW¼NE¼, and 40.0 acres in the SE¼NW¼, all in Section 5, Township 41 South, Range 11 East, W.M., containing in all a total of 113.2 irrigable acres, under a 20-foot pumping lift.

The quantity so delivered shall not exceed the  amount that can be furnished as determined by the Secretary of the Interior, at a cost of Thirty-four Dollars ($34.00) per acre; nor shall it exceed two acre-feet per acre of irrigable land during the usual irrigation season as established on the Klamath Project, being approximately that period from April 15 to September 30, inclusive, of each year; and in no event shall it exceed 0.6 acre-feet of water per irrigable acre in any one month; Provided, that all rights to the use and delivery of water acquired by the Contractor under this contract are inferior and subject to the prior rights reserved for the gravity lands of the Klamath Project.

## Water to be Delivered only on Demand

6.   The United States shall make delivery of water hereunder only upon written demand of the Contractor served on the Superintendent of the Klamath Project at least three days prior to the beginning of the irrigation season as herein defined.  The failure of the Contractor to make such demand or the failure by him to use said  water shall not in any way relieve the Contractor of his obligation to pay to the United States the amounts herein agreed upon at the time and in the manner specified.

-2-

015444

### Measurement of Water

7.    The water to be delivered hereunder shall be measured at the turnout described in Article 5 hereof, by such measuring and controlling devices or such automatic gauges, or both, as shall be satisfactory to the Superintendent or other officer of the United States in charge of the Klamath Project.  Said measuring and controlling devices shall be furnished, installed and maintained by and at the expense of the Contractor, but they shall be and remain at all times under the complete control of the United States, whose representative may at all times have access to them over the land of the Contractor.  All future repairs and renewals necessary to the operation of said turnout for delivery of water from the canal shall be done at the expense of the Contractor.

### Receipt of Water by Contractor

8.    The Contractor shall receive said irrigation water at the point of delivery above stated by means of said turnout, and shall at his own expense convey the water to his pumping plant through a canal constructed by him, and shall perform all acts required by law or custom in order to maintain his control over such water and to secure its lawful and proper diversion from the G-3 Lateral     of the Klamath Project as herein provided for, and the beneficial application of the same to the land of the Contractor above described.

### Shortage of Water

9.    On account of drought, inaccuracy in distribution or other cause, there may occur at times a shortage in the quantity of water provided for herein, and while the United States will use all reasonable means to guard against such shortages, in no event shall any liability accrue against the United States, its officers, agents or employees for any damage, direct or indirect, arising therefrom, and the payments due hereunder shall not be reduced because of any such shortage.  All losses or diminution of water by reason of seepage, evaporation or other causes after delivery thereof by the United States at the aforesaid point of delivery shall be borne by the Contractor.

-3-

015445

### Waste and Seepage Waters

10.  The United States reserves the right to collect for use on the Klamath Project all waste and seepage water coming from the land of the Contractor.  The Contractor shall have the right to discharge waste and seepage water into the drainage system of the Klamath Project.

### Operation of Irrigation System

11.  In the distribution and application of the water supply provided for herein, the Contractor shall comply with all of the applicable provisions of the Reclamation Law and the regulations of the Secretary of the Interior thereunder; and will operate and maintain his irrigation system and works to be constructed hereunder to the satisfaction of the United States.  The United States assumes no responsibility whatever for the safety, integrity, or operation of the same or any portion thereof, and the Contractor will hold the United States and its officers, agents and employees harmless from any and all claims arising in connection therewith.  During the irrigation season the United States shall have the right to place inspectors at any point on the works of the Contractor to make such measurements, investigations or observations as in the judgment of the Superintendent may be necessary for the enforcement of the provisions of this contract.

### Construction Charge

12.  The Contractor agrees to pay the United States as construction charges for the supply of water heretofore described the sum of $3,843.80.  The total amount of such construction charges shall be paid in 40 annual instalments, due December 1 of each year beginning with the year 1931 .  The first 5 of such instalments shall each be 1 per centum, the next 10 instalments each 2 per centum, and the next 25 instalments each 3 per centum of the total construction charge; Provided, that the Contractor may pay the whole or any part of the construction charge within any shorter period.

### Operation and Maintenance Charges

13.  In addition to the construction charge described in Article 12 the Contractor agrees to pay the United States for the irrigable area of the land of the Contractor, annual

--4--

001589

015446

operation and maintenance charges equal to (a) one-half of
the acre-charge assessed against such lands in the Main Division
of the Klamath Project served by gravity, plus (b) an
equitable proportion, as determined by the Secretary of the
Interior, of any expenses incurred by the United States in
regulating the waters from Upper Klamath Lake.  The operation
and maintenance charges due shall be payable to the United
States or its successors in the operation of the Main Division
of the Klamath Project in advance of the delivery of
water each year and in any event not later than April 1 of
such year.

### Penalty for Delinquency in Payment

14.  To every instalment of money required to be paid
under this contract which shall remain unpaid after the same
shall become due, there shall be added at once a penalty of
one-half of one per centum (½%), and thereafter a like penalty
of one-half of one per centum (½%) on the first of each month
so long as such default shall continue; and the contractor
hereby agrees to pay such penalty.

### Lien to Secure Payment of Charges

15.  For the purpose of securing payment to the United
States of the obligations, and each of them described in
Articles 12, 13, and 14, according to the conditions therein
stated, a lien in favor of the United States in the amount
of the total obligation described in said Articles 12, 13,
and 14, is hereby created and made a charge upon all of said
land both irrigable and non-irrigable, together with its
privileges and appurtenances, including all water rights and
irrigation works.  Upon the failure of the Contractor to pay
when due any instalment of charges described in said articles,
the United States is empowered to foreclose the lien hereby
created in the manner provided by law.

### Refusal of Water in Case of Default

16.  The United States reserves the right to refuse to
deliver water to the Contractor in the event of default for
a period of more than twelve months in any payment due the
United States under this contract.  The provisions of this
article are not exclusive, and shall not in any manner hinder
the United States from exercising any other remedy to enforce
collection of any amount due hereunder.

-5-

015447

## Secretary may Make and Modify Regulations

17.   There is reserved to the Secretary of the Interior
the right to make regulations and modify the same in his dis-
cretion in general harmony, however, with this contract to
the end that the true intent of the law and of this contract
shall be carried into full effect.

## Contingent Appropriation Clause

18.   Where the operations of this contract extend beyond
the current fiscal year, it is understood that the contract
is made contingent upon Congress making the necessary appro-
priation for expenditures thereunder after such current year
has expired.  In case such appropriation as may be necessary
to carry out this contract is not made, the Contractor hereby
releases the United States from all liability due to the fail-
ure of Congress to make such appropriation.

## Member of Congress Clause

19.   No Member of or Delegate to Congress or Resident
Commissioner shall be admitted to any share or part of this
contract or to any benefit to arise therefrom.  Nothing,
however, herein contained shall be construed to extend to
any incorporated company if the contract be for the general
benefit of such corporation or company.

## Successors and Assigns Obligated

20.   The terms of this contract shall inure to the bene-
fit of and be binding upon the successors in interest and
assigns of the parties hereto.

IN WITNESS WHEREOF the parties have hereunto subscribed
their names as of the date first above written.

THE UNITED STATES OF AMERICA

By   B. E. Hayden

Superintendent, Bureau of Reclamation

Witnesses:

N. G. Wheeler   ) As to
                  Icenbice
M. S. Hopkins   ) Icenbice

L. H. Alsop     ) As to
                  Boyes
Dorothy A. Wincott )

I. A. Icenbice
                        Contractor
P.O.Address: Merrill, Oregon
Louisa A. Icenbice
                        Contractor
G. F. Icenbice
                        Contractor
P.O.Address:
Lutie Anson Boyes   Contractor
Estella Boyes       Contractor

-6-  P.O.Address: Tulelake, Calif.

001591

015448

STATE OF OREGON )
                ) SS.
COUNTY OF KLAMATH )

BE IT REMEMBERED, That on this **15th** day of ___May___,

A. D., 193<u>1</u>, before me, the undersigned, a Notary Public in

and for the said state and county, personally appeared the

within named ___I.E.Icenbice and Louisa A.Icenbice, his wife, and___

___C.F.Icenbice, a single man___ who ___are___ known to me to be the

identical individual_s described in and who executed the within

instrument, and acknowledged to me that ___they___ executed the same

freely and voluntarily.

IN TESTIMONY WHEREOF, I have hereunto set my hand and

official seal the day and year last above written.

                              R. S. Hopkins
                              ___Notary Public for Oregon___

My Commission expires ___Jan. 5, 1934___

(SEAL)

-7-

001592

Standard Form. No. 1036 (Revised)
Form approved by
Comptroller General U. S.
August 20, 1930

## STATEMENT AND CERTIFICATE
## OF AWARD

No. _____
(Contract)

Date __May 16__, 19__ 31__

Isr-4915449

DEPARTMENT OF THE INTERIOR        BUREAU OF RECLAMATION    Klamath Falls, Oregon
(Department or establishment)                (Bureau or office)                (Location)

## METHOD OF OR ABSENCE OF ADVERTISING
(Section 3709 of the Revised Statutes)

1. After advertising in newspapers.
2. (a) After advertising by circular letters sent to_____dealers.
   (b) And by notices posted in public places.
   
   (If notices were not posted in addition to advertising by circular letters sent to dealers, explanation of such omission must be made. The notation on the certificate below must be "2 (a) (b)" or "2 (a)," depending on whether or not notices were posted.)

3. Without advertising, under an exigency of the service which existed prior to the order and would not admit of the delay incident to advertising.
4. Without advertising in accordance with _____
5. Without advertising, it being impracticable to secure competition because of_____Water supplied to land owner_____

(Here state circumstances under which the securing of competition was impracticable)

## AWARD OF CONTRACT

A. To lowest bidder as to price (Expenditures).
B. To other than the lowest bidder as to price (Expenditures).
C. To highest bidder as to price (Receipts).
D. To other than the highest bidder as to price (Receipts).

## CERTIFICATE

I CERTIFY that the foregoing statement is true and correct; that the agreement was made in consequence of No._____5_____ of the method of or absence of advertising and in accordance with award of contract lettered _____, as shown above; that where lower bids (expenditure contracts) or higher bids (receipt contracts) as to price were received a statement of reasons for their rejection, together with an abstract of bids received, including all lower than that accepted in case of expenditure contracts and all higher in case of receipt contracts, is given below or on the reverse hereof or on a separate sheet attached hereto; that the articles or services covered by the agreement (expenditure) are necessary for the public service, and that the prices charged are just and reasonable.

B. E. Hayden                    Superintendent, Bureau of Reclamation

(Signature of contracting officer)                                    (Title)

NOTE.—This statement and certificate will be used to support all agreements, both formal contracts and less formal agreements of whatever character, involving the expenditure or receipt of public funds. It must be executed and signed by the contracting officer (unless the award is made by or is subject to approval by an officer other than the contracting officer, when execution and signature may be made by such officer).    U. S. GOVERNMENT PRINTING OFFICE: 3191    6—8090

001593

015450

```
                  California
STATE OF   XXXXXX    )
              Siskiyou  ) SS.
COUNTY OF  XXXXXX   )
```

BE IT REMEMBERED, That on this 25th day of May,
A. D., 193 1, before me, the undersigned, a Notary Public in
and for the said state and county, personally appeared the
within named Lutie Anson Boyes and Estella Boyes, his wife,
_____ who are known to me to be the
identical individual s described in and who executed the within
instrument, and acknowledged to me that they executed the same
freely and voluntarily.

IN TESTIMONY WHEREOF, I have hereunto set my hand and
official seal the day and year last above written.

                              F. Boyle
                              Notary Public for XXXXXX California

My Commission expires Jan. 30, 1934

(SEAL)

--7--

015451

99689

State of Oregon)
              )ss.
Klamath County)

    This instrument was
filed for record on the 26th
day of June A.D. 1931 at 9:10
o'clock a.m. and duly recorded
in Vol. 95 of Deeds, page 491.

C. R. DeLap, County Clerk

(SEAL)

001595

015452

7—5331
August, 1927
Approved by the Department
January 4, 1927

# DEPARTMENT OF THE INTERIOR

## BUREAU OF RECLAMATION

Klamath
................................ Irrigation Project

# RECORD OF EXECUTION OF CONTRACT

May 16, 1931

IN RE CONTRACT, and bond, if any, relating to above-named project, dated ................................
symbol and number ....Ifr—419.......................; made by ....I.P.Icenbice,Jt al........................
amount involved, $ ..3848.80........................; authority No. ....on Clearing account ................................
purpose ....Purchase of water right - Pumping Division................................
reference ....Authority contained in Commissioners letter of 11/29/29 sub-
....1800 Contract of November 9, 1929, with Rex E. Bord for a water
right on the Pumping Division, Klamath Project"
Notice of execution of contract to be given Chief Engineer at Denver, Superintend-
ent at ....Klamath Falls, Oregon............, District Counsel at ....Portland, Oregon....
and ................................

Place ....Klamath Falls, Oregon........   Date ....June 23, 1931........

1. On this date the above-described contract was executed (or) passed, and bond, if
any, approved (or) passed, by this office, and transmitted to district counsel for legal
approval.

B. E. Hayden
................................, Project Superintendent.

Inclosures:
    Original and ....3.... copies of this form.  Statement & Cert. of Award, Orig. & 3
    Original and ....4.... copies of contract.

Place ....Portland, Ore.....   Date ....June 25, 1931....

2. On this date the above-described contract, with bond, if any, was given legal
approval by this office, and transmitted to the ....project (Klamath Falls)....  office.

Spencer L. Baird        Assoc. District Counsel.

Inclosures:
    Original and ....2.... copies of this form.
    Original and ....3.... copies of contract.

Denver, Colorado, Date ................................

3. On this date the above-described contract was executed, and bond, if any,
approved by this office.

................................, Chief Engineer.

Denver, Colorado, Date ................................

4. On this date the above-described contract, with bond, if any, was passed by this
office and transmitted to the Washington office.

................................, Chief Engineer.

Inclosures:
    Original and ........ copies of this form.
    Original and ........ copies of contract.

Washington, D. C., Date ................................

5. On this date the above-described contract was executed, and bond, if any,
approved by ................................

................................, Commissioner.

6—7414

001596

015453
Project Office

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
KLAMATH IRRIGATION PROJECT                    I8r-420

THIS AGREEMENT, Made this   18th day of   October   , 1936, in pursu-
ance of the Act of Congress of June 17, 1902 (32 Stat. 388), and acts amenda-
tory thereof or supplementary thereto, and particularly pursuant to the Warren
Act of February 21, 1911 (36 Stat. 925), between the UNITED STATES OF AMERICA,
herein styled the United States, represented by the officer executing this con-
tract, and

Katherine Kendra and John Kendra, her husband,

hereinafter styled the Contractor,

WITNESSETH, That -

2.   WHEREAS, the parties hereto, entered into an agreement under date of
June 1, 1931
                          , and providing for use by the Contractor of a maxi-
mum of two (2) acre-feet for each acre of irrigable land as provided in Article

five (5) of said contract of    June 1, 1931        and the Contractor now
desires that the said contract be amended to increase such maximum use from two
(2) to two and one-half (2½) acre-feet; and

3.   WHEREAS, the United States desires to obtain from the Contractor each
year an accurate record of all crops raised and agricultural and livestock pro-
ducts produced on the lands of the Contractor each year;

NOW, THEREFORE, It is agreed that:

4.   Article five (5) of said contract of   June 1, 1931
shall be and is amended to read as follows:

    "5.   The United States shall furnish each year to the Contractor,

during the usual irrigation season, water from the   G-3   Lateral      and
deliver same to the Contractor at or near a turnout located in the
SW¼SW¼ of Section 32, Township 40 South, Range 11 East, W.M.,

for the irrigation of the lands of the Contractor described as follows:
11.4 acres in the NE¼SE¼ of Section 31, and 12.1 acres in the NW¼SW¼ of
Section 32, all in Township 40 South, Range 11 East, W.M., containing
in all a total of 23.5 irrigable acres, under a 20-foot pumping lift.

001597

015454

The quantity so delivered shall not exceed the amount that can be furnished as determined by the Secretary of the Interior, at a cost of Thirty-four Dollars ($34.00) per acre; nor shall it exceed two and one-half ($2\frac{1}{2}$) acre-feet per acre of irrigable land during the usual irrigation season as established on the Klamath Project, being approximately that period from April 15 to September 30, inclusive, of each year; and in no event shall it exceed six-tenths (0.6) of an acre-foot of water per irrigable acre in any one month; Provided that if the Contractor is in need of and desires to purchase additional water over and above the $2\frac{1}{2}$ acre-feet per acre specified herein such additional water will be furnished at the same rate established for additional water furnished Warren Act contractors in the Public Notices of Annual Water Charges issued or to be issued hereafter for the Klamath Project; Provided, further, that all rights to the use and delivery of water acquired by the Contractor under this contract are inferior and subject to prior rights reserved for the lands of the Klamath Project."

5.   The Contractor shall keep an accurate record of all crops raised and agricultural and livestock products produced on his lands and furnish a report on same, to the Secretary of the Interior in form prescribed, on or before December 31 of each year.

6.   In all other respects said contract of      June 1, 1931      shall remain in effect with like intent and purpose as though this contract had never been executed.

7.   No member of or delegate to Congress or resident commissioner shall be admitted to any share or part of this contract or to any benefit that may arise therefrom, but this restriction shall not be construed to extend to this contract if made with a corporation or company for its general benefit.

IN WITNESS WHEREOF, the parties have hereunto subscribed their names as of the date first above written.

UNITED STATES OF AMERICA

By    B. E. Hayden
                Superintendent,
                Bureau of Reclamation

Witnesses:

                                    Katherine Kandra
                                                Contractor

                                    John Kandra
                                                Contractor

                                    Merrill, Oregon
                                                P.O. Address

001598

STATE OF OREGON )
               ) SS.
COUNTY OF KLAMATH )

BE IT REMEMBERED, That on this **13th** day of    **October**  , A.D., 1936, before me, the undersigned, a Notary Public in and for the said state and county, personally appeared the within named _____

    Katherine Kandra and John Kandra, her husband,

who **are** known to me to be the identical individual **s** described in and who executed the within instrument, and acknowledged to me that **they** executed the same freely and voluntarily.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal the day and year last above written.

                             R. S. Hopkins
                         Notary Public for Oregon

My commission expires   Dec. 25, 1937

(SEAL)

015456

Standard Form No. 1036 (Revised)
Form approved by
Comptroller General U. S.
August 20, 1930

# "ATEMENT AND CERTIFICAT
## OF AWARD

No. 18r-420
(Contract)

Date October 13, 1936

DEPARTMENT OF THE INTERIOR
(Department or establishment)

BUREAU OF RECLAMATION
(Bureau or office)

Klamath Falls, Oregon
(Location)

## METHOD OF OR ABSENCE OF ADVERTISING
### (Section 3709 of the Revised Statutes)

1. After advertising in newspapers.
2. (a) After advertising by circular letters sent to............................dealers.
   (b) And by notices posted in public places.
   (If notices were not posted in addition to advertising by circular letters sent to dealers, explanation of such omission must be made. The notation on the certificate below must be "2 (a) (b)" or "2 (a)," depending on whether or not notices were posted.)
3. Without advertising, under an exigency of the service which existed prior to the order and would not admit of the delay incident to advertising.
4. Without advertising in accordance with ..............................
5. Without advertising, it being impracticable to secure competition because of Contract made with land owner

(Here state circumstances under which the securing of competition was impracticable)

## AWARD OF CONTRACT

A. To lowest bidder as to price (Expenditures).
B. To other than the lowest bidder as to price (Expenditures).
C. To highest bidder as to price (Receipts).
D. To other than the highest bidder as to price (Receipts).

## CERTIFICATE

I CERTIFY that the foregoing statement is true and correct; that the agreement was made in consequence of No. 5 of the method of or absence of advertising and in accordance with award of contract lettered ..............., as shown above; that where lower bids (expenditure contracts) or higher bids (receipt contracts) as to price were received a statement of reasons for their rejection, together with an abstract of bids received, including all lower than that accepted in case of expenditure contracts and all higher in case of receipt contracts, is given below or on the reverse hereof or on a separate sheet attached hereto; that the articles or services covered by the agreement (expenditure) are necessary for the public service, and that the prices charged are just and reasonable.

R. E. Hayden
(Signature of contracting officer)

Superintendent, Bureau of Reclamation
(Title)

NOTE.—This statement and certificate will be used to support all agreements, both formal contracts and less formal agreements of whatever character, involving the expenditure or receipt of public funds. It must be executed and signed by the contracting officer (unless the award is made by or is subject to approval by an officer other than the contracting officer, when execution and signature may be made by such officer).

U. S. GOVERNMENT PRINTING OFFICE        6——9000

001600

015457

7 .338.
August, 1927
Approved by the Department
January 4, 1927

Project Office Copy

# DEPARTMENT OF THE INTERIOR
## BUREAU OF RECLAMATION

_____Klamath_____ Irrigation Project

# RECORD OF EXECUTION OF CONTRACT

IN RE CONTRACT, and bond, if any, relating to above–named project, dated **October 13, 1936**
symbol and number __IBr-420__ ; made by ____**Katherine Kandra and John Kandra**____
amount involved, $_____ ; authority No. _____ or clearing account _____
purpose __**Increase of water duty – Warren Act contract**__
Reference:     **Authority granted 4/2/36 by First Asst. Secy.**

Notice of execution of contract to be given Chief Engineer at Denver, Superintend-
ent at __**Klamath Falls, Oregon**___, District Counsel at ___**Portland, Oregon**___
and _____

Place**Klamath Falls, Oregon**Date __October 16, 1936__

   1. On this date the above–described contract was executed (or) passed, and bond, if
any, approved (or) passed, by this office, and transmitted to district counsel for legal
approval.

_____**B. E. Hayden**_____, Project Superintendent.

Inclosures:
  Original and __3__ copies of this form.
  Original and __4__ copies of contract.     **Statement & Cert. of Award, Orig. & 3**

Place **Portland, Ore.** Date **October 17, 1936**

   2. On this date the above–described contract, with bond, if any, was given legal
approval by this office, and transmitted to the **Pro ´ ct (Klamath Falls)** office.

B E **STOUTEMYER**
_____, District Counsel.

Inclosures:
  Original and __2__ copies of this form.
  Original and __3__ copies of contract.

Denver, Colorado, Date _____

   3. On this date the above–described contract was executed, and bond, if any,
approved by this office.

_____, Chief Engineer.

Denver, Colorado, Date _____

   4. On this date the above–described contract, with bond, if any, was passed by this
office and transmitted to the Washington office.

_____, Chief Engineer.

Inclosures:
  Original and _____ copies of this form.
  Original and _____ copies of contract.

Washington, D. C., Date _____

   5. On this date the above–described contract was executed, and bond, if any,
approved by _____

_____, Commissioner.

6 .7416

015458

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
KLAMATH PROJECT

Serial 59

IBr-420

1.   THIS AGREEMENT, made this        1st   day   June   ,
nineteen hundred and thirty  one      , between THE UNITED STATES OF
AMERICA, acting for this purpose by the contracting officer exe-
cuting this agreement, pursuant to the provisions of the Act of
Congress of June 17, 1902 (32 Stat., 388), and acts amendatory
thereof or supplementary thereto, all of which are commonly known
and referred to as the National Reclamation Laws, and particu-
larly pursuant to the Warren Act of February 21, 1911 (36 Stat.,
925), the party of the first part, hereinafter referred to as the
United States, and

Katherine Kandra and John Kandra, her husband,

, the party of
the second part, hereinafter referred to as the Contractor.

WITNESSETH:

### Explanatory Recitals

2.   WHEREAS, in connection with the construction and opera-
tion of the Klamath Irrigation Project, Oregon-California, after
providing water sufficient for the irrigation of lands supplied
by gravity within the limits of the Klamath Irrigation Project,
the United States will have available an additional supply of
water which may be utilized by pumping to adjacent lands; and

3.   WHEREAS, the Contractor is the owner of the lands here-
inafter described, for which he desires to secure a water supply
from the United States;

4.   NOW, THEREFORE, for and in consideration of the mutual
and dependent stipulations herein set forth, it is hereby agreed
as follows:

~1~

001602

## Furnishing of Water by United States

5.   The United States shall furnish each year to the
Contractor during the usual irrigation season water from the
G-3 Lateral    and deliver same to the Contractor at ~~a new~~
**a turnout located in the SW¼SW¼ of Section 32, Township 40
South, Range 11 East, W.M.**
for the irrigation of the land of the Contractor described
as follows:   **11.4 acres in the NE¼SE¼ of Section 31, and
12.1 acres in the NW¼SW¼ of Section 32, all in Township
40 South, Range 11 East, W.M., containing in all a total
of 23.5 irrigable acres, under a 20-foot pumping lift.**

The quantity so delivered shall not exceed the  amount that
can be furnished as determined by the Secretary of the
Interior, at a cost of Thirty-four Dollars ($34.00) per acre;
nor shall it exceed two acre-feet per acre of irrigable land
during the usual irrigation season as established on the
Klamath Project, being approximately that period from April
15 to September 30, inclusive, of each year; and in no event
shall it exceed 0.6 acre-feet of water per irrigable acre in
any one month; Provided, that all rights to the use and
delivery of water acquired by the Contractor under this con-
tract are inferior and subject to the prior rights reserved
for the gravity lands of the Klamath Project.

## Water to be Delivered only on Demand

6.   The United States shall make delivery of water
hereunder only upon written demand of the Contractor served
on the Superintendent of the Klamath Project at least three
days prior to the beginning of the irrigation season as
herein defined.  The failure of the Contractor to make such
demand or the failure by him to use said  water shall not in
any way relieve the Contractor of his obligation to pay to
the United States the amounts herein agreed upon at the time
and in the manner specified.

-2-

001603

015460

## Measurement of Water

7.    The water to be delivered hereunder shall be measured **at the turnout described in Article 5 hereof**, by such measuring and controlling devices or such automatic gauges, or both, as shall be satisfactory to the Superintendent or other officer of the United States in charge of the Klamath Project.  Said measuring and controlling devices shall be furnished, installed and maintained by and at the expense of the Contractor, but they shall be and remain at all times under the complete control of the United States, whose representative may at all times have access to them over the land of the Contractor.  All future repairs and renewals necessary to the operation of said turnout for delivery of water from the canal shall be done at the expense of the Contractor.

## Receipt of Water by Contractor

8.    The Contractor shall receive said irrigation water at the point of delivery above stated by means of said turn-out, and shall at his own expense convey the water to his pumping plant through a canal constructed by him, and shall perform all acts required by law or custom in order to maintain his control over such water and to secure its lawful and proper diversion from the **G-5 Lateral**    of the Klamath Project as herein provided for, and the beneficial application of the same to the land of the Contractor above described.

## Shortage of Water

9.    On account of drought, inaccuracy in distribution or other cause, there may occur at times a shortage in the quantity of water provided for herein, and while the United States will use all reasonable means to guard against such shortages, in no event shall any liability accrue against the United States, its officers, agents or employees, for any damage, direct or indirect, arising therefrom, and the payments due hereunder shall not be reduced because of any such shortage.  All losses or diminution of water by reason of seepage, evaporation or other causes after delivery thereof by the United States at the aforesaid point of delivery shall be borne by the Contractor.

-3-

001604

015461

### Waste and Seepage Waters

10.  The United States reserves the right to collect
for use on the Klamath Project all waste and seepage water
coming from the land of the Contractor.  The Contractor shall
have the right to discharge waste and seepage water into
the drainage system of the Klamath Project.

### Operation of Irrigation System

11.  In the distribution and application of the water
supply provided for herein, the Contractor shall comply with
all of the applicable provisions of the Reclamation Law and
the regulations of the Secretary of the Interior thereunder;
and will operate and maintain his irrigation system and works
to be constructed hereunder to the satisfaction of the United
States.  The United States assumes no responsibility whatever
for the safety, integrity, or operation of the same or any
portion thereof, and the Contractor will hold the United
States and its officers, agents and employees harmless from
any and all claims arising in connection therewith.  During
the irrigation season the United States shall have the right
to place inspectors at any point on the works of the Con-
tractor to make such measurements, investigations or observa-
tions as in the judgment of the Superintendent may be necessary
for the enforcement of the provisions of this contract.

### Construction Charge

12.  The Contractor agrees to pay the United States as
construction charges for the supply of water heretofore de-
scribed the sum of $ 799.00 .  The total amount of such con-
struction charges shall be paid in 40 annual instalments, due
December 1 of each year beginning with the year 1931.  The
first 5 of such instalments shall each be 1 per centum, the
next 10 instalments each 2 per centum, and the next 25 instal-
ments each 3 per centum of the total construction charge;
Provided, that the Contractor may pay the whole or any part
of the construction charge within any shorter period.

### Operation and Maintenance Charges

13.  In addition to the construction charge described in
Article 12 the Contractor agrees to pay the United States for
the irrigable area of the land of the Contractor, annual

001605

015462

operation and maintenance charges equal to (a) one-half of
the acre-charge assessed against such lands in the Main Divi-
sion of the Klamath Project served by gravity, plus (b) an
equitable proportion, as determined by the Secretary of the
Interior, of any expenses incurred by the United States in
regulating the waters from Upper Klamath Lake.  The operation
and maintenance charges are shall be payable to the United
States or its successors in the operation of the Main Divi-
sion of the Klamath Project in advance of the delivery of
water each year and in any event not later than April 1 of
such year.

### Penalty for Delinquency in Payment

14.  To every instalment of money required to be paid
under this contract which shall remain unpaid after the same
shall become due, there shall be added at once a penalty of
one-half of one per centum ($\frac{1}{2}$%), and thereafter a like penalty
of one-half of one per centum ($\frac{1}{2}$%) on the first of each month
so long as such default shall continue; and the Contractor
hereby agrees to pay such penalty.

### Lien to Secure Payment of Charges

15.  For the purpose of securing payment to the United
States of the obligations, and each of them described in
Articles 12, 13, and 14, according to the conditions therein
stated, a lien in favor of the United States in the amount
of the total obligation described in said Articles 12, 13,
and 14, is hereby created and made a charge upon all of said
land both irrigable and non-irrigable, together with its
privileges and appurtenances, including all water rights and
irrigation works.  Upon the failure of the Contractor to pay
when due any instalment of charges described in said Articles,
the United States is empowered to foreclose the lien hereby
created in the manner provided by law.

### Refusal of Water in Case of Default

16.  The United States reserves the right to refuse to
deliver water to the Contractor in the event of default for a
period of more than twelve months in any payment due the
United States under this contract.  The provisions of this
article are not exclusive, and shall not in any manner hinder
the United States from exercising any other remedy to enforce
collection of any amount due hereunder.

--6--

001606

### Secretary may Make and Modify Regulations

17.   There is reserved to the Secretary of the Interior
the right to make regulations and modify the same in his
discretion in general harmony, however, with this contract,
to the end that the true intent of the law and of this con-
tract shall be carried into full effect.

### Contingent Appropriation Clause

18.   Where the operations of this contract extend beyond
the current fiscal year, it is understood that the contract
is made contingent upon Congress making the necessary appro-
priation for expenditures thereunder after such current year
has expired.   In case such appropriation as may be necessary
to carry out this contract is not made, the Contractor hereby
releases the United States from all liability due to the fail-
ure of Congress to make such appropriation.

### Member of Congress Clause

19.   No Member of or Delegate to Congress or Resident
Commissioner shall be admitted to any share or part of this
contract or to any benefit to arise therefrom.   Nothing,
however, herein contained shall be construed to extend to
any incorporated company if the contract be for the general
benefit of such corporation or company.

### Successors and Assigns Obligated

20.   The terms of this contract shall inure to the bene-
fit of and be binding upon the successors in interest and
assigns of the parties hereto.

   IN WITNESS WHEREOF the parties have hereunto subscribed
their names as of the date first above written.

                              THE UNITED STATES OF AMERICA

                              By   B. E. Hayden
Witnesses:                    Superintendent, Bureau of Reclamation

M. A. Bowman                  Katherine Kandra
                                        Contractor
W. F. Fruits                  John Kandra
                                        Contractor

Map is attached to contract dated
May 15, 1931, No. I3r-414, with    P.O. Address:
R. E. Shields, et al                  Merrill, Oregon

-6-

001607

015464

STATE OF OREGON )
                ) SS.
COUNTY OF KLAMATH )

BE IT REMEMBERED, That on this 1st day of June, A. D., 1931, before me, the undersigned, a Notary Public in and for the said state and county, personally appeared the within named    Katherine Kandra and John Kandra

who are known to me to be the identical individual s described in and who executed the within instrument, and acknowledged to me that they executed the same freely and voluntarily.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal the day and year last above written.

M. A. Bowman
Notary Public for Oregon

My Commission expires Oct. 13, 1931
(SEAL)

-7-

015465

99468

State of Oregon )
                 )ss.
Klamath County )

        This instrument was fildd
for record on the 11th day of
June A.D. 1931 at 3:00 o'clock
p.m. and duly recorded in Vol.
95 of Deeds Page 444

C.R.DeLap, County Clerk

By C.J.Gates, Deputy


        (SEAL)

001609

Standard Form No. 1086 (Revised)
Form approved by
Comptroller General U. S.
August 20, 1930

## ...ATEMENT AND CERTIFICAT...
## OF AWARD

No. Ind. 015466

(Contract)

Date June 1 , 19 31

### DEPARTMENT OF THE INTERIOR
(Department or establishment)

### BUREAU OF RECLAMATION
(Bureau or office)

Klamath Falls, Oregon
(Location)

## METHOD OF OR ABSENCE OF ADVERTISING
(Section 3709 of the Revised Statutes)

1. After advertising in newspapers.
2. (a) After advertising by circular letters sent to.............................dealers.
   (b) And by notices posted in public places.
      (If notices were not posted in addition to advertising by circular letters sent to dealers, explanation of such omission must be made. The notation on the certificate below must be "2 (a) (b)" or "2 (a)," depending on whether or not notices were posted.)
3. Without advertising, under an exigency of the service which existed prior to the order and would not admit of the delay incident to advertising.
4. Without advertising in accordance with ............................................................................
5. Without advertising, it being impracticable to secure competition because of..........Water supplied to land owner

(Here state circumstances under which the securing of competition was impracticable)

## AWARD OF CONTRACT

A. To lowest bidder as to price (Expenditures).
B. To other than the lowest bidder as to price (Expenditures).
C. To highest bidder as to price (Receipts).
D. To other than the highest bidder as to price (Receipts)

## CERTIFICATE

I CERTIFY that the foregoing statement is true and correct; that the agreement was made in consequence of No........ 5 of the method of or absence of advertising and in accordance with award of contract lettered .................... as shown above; that where lower bids (expenditure contracts) or higher bids (receipt contracts) as to price were received a statement of reasons for their rejection, together with an abstract of bids received, including all lower than that accepted in case of expenditure contracts and all higher in case of receipt contracts, is given below or on the reverse hereof or on a separate sheet attached hereto; that the articles or services covered by the agreement (expenditure) are necessary for the public service, and that the prices charged are just and reasonable.

B. E. Hayden
(Signature of contracting officer)

Superintendent, Bureau of Reclamation
(Title)

NOTE.—This statement and certificate will be used to support all agreements, both formal contracts and less formal agreements of whatever character, involving the expenditure or receipt of public funds. It must be executed and signed by the contracting officer (unless the award is made by or is subject to approval by an officer other than the contracting officer, when execution and signature may be made by such officer).

U. S. GOVERNMENT PRINTING OFFICE: 1931      6—8020

001610

015467

7—5231
August, 1927
Approved by the Department
January 4, 1927

# DEPARTMENT OF THE INTERIOR
## BUREAU OF RECLAMATION

........ Klamath ........ Irrigation Project

# RECORD OF EXECUTION OF CONTRACT

IN RE CONTRACT, and bond, if any, relating to above-named project, dated ........ June 1, 1951
symbol and number ....Ior-420....; made by ..Katherine Kandra & John Kandra....
amount involved, $....799.00....; authority No. ........ or clearing account
purpose ..Purchase of permanent water right - Pumping Division....
Reference: ..Authority contained in Commissioners letter of 11/29/29 sub-
ject "Contract of November 9, 1929, with Rex B.Bord for a
water right on the Pumping Division, Klamath Project."
Notice of execution of contract to be given Richel.Engasatatianyect Superintend-
ent at ..Klamath Falls, Oregon.. District Counsel at
and ........ Portland, Oregon

---

Place ....Klamath Falls, Oregon.. June 9, 1951
1. On this date the above-described contract was executed (or) passed, and bond, if
any, approved (or) passed, by this office, and transmitted to district counsel for legal
approval.

........ D.E.Heyden .. Project Superintendent.

Inclosures:
Original and ..23 copies of this form.
Original and ..24 copies of contract.     Statement & Cert. of Award, Orig. & 5

---

Place ..Portland, Ore.. Date ..June 10, 1931
2. On this date the above-described contract, with bond, if any, was ..........
approval by this office, and transmitted to the ............................ office.
Project (Klamath Falls)
........ Spencer L. Baird ........ As District Counsel.

Inclosures:
Original and ..2.. copies of this form.
Original and ..5.. copies of contract.

---

Denver, Colorado, Date ........
3. On this date the above-described contract was executed, and bond, if any,
approved by this office.

........................................., Chief Engineer.

---

Denver, Colorado, Date ........
4. On this date the above-described contract, with bond, if any, was passed by this
office and transmitted to the Washington office.

........................................., Chief Engineer.

Inclosures:
Original and ........ copies of this form.
Original and ........ copies of contract.

---

Washington, D. C., Date ........
5. On this date the above-described contract was executed, and bond, if any,
approved by ........

........................................., Commissioner.

6—7416

001611

015468

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
KLAMATH IRRIGATION PROJECT

18r-421

THIS AGREEMENT, Made this 23rd day of June , 1936, in pursuance of the Act of Congress of June 17, 1902 (32 Stat. 388), and acts amendatory thereof or supplementary thereto, and particularly pursuant to the Warren Act of February 21, 1911 (36 Stat. 925), between the UNITED STATES OF AMERICA, herein styled the United States, represented by the officer executing this contract, and

R. B. Anderson and Mae Anderson, his wife,

hereinafter styled the Contractor,

WITNESSETH, That --

2.   WHEREAS, the parties hereto, entered into an agreement under date of

May 29, 1931                     , and providing for use by the Contractor of a maximum of two (2) acre-feet for each acre of irrigable land as provided in Article

five (5) of said contract of   May 29, 1931          and the Contractor now desires that the said contract be amended to increase such maximum use from two (2) to two and one-half (2½) acre-feet; and

3.   WHEREAS, the United States desires to obtain from the Contractor each year an accurate record of all crops raised and agricultural and livestock products produced on the lands of the Contractor each year;

NOW, THEREFORE, It is agreed that:

4.   Article five (5) of said contract of   May 29, 1931 shall be and is amended to read as follows:

"5.   The United States shall furnish each year to the Contractor,

during the usual irrigation season, water from the S-3 Lateral       and deliver same to the Contractor at or near a turnout located in the SW¼SW¼ of Section 32, Township 40 South, Range 11 East, W.M.,

for the irrigation of the lands of the Contractor described as follows:

11.4 acres in the SW¼SW¼ of Section 32, Township 40 South, Range 11 East, W.M. and 20.4 acres in the NW¼NW¼, and 8.3 acres in the S½SE¼NW¼, all in Section 5, Township 41 South, Range 11 East, W.M., containing in all a total of 40.1 irrigable acres, under a 20-foot pumping lift.

015469

The quantity so delivered shall not exceed the amount that can be furnished as determined by the Secretary of the Interior, at a cost of Thirty-four Dollars ($34.00) per acre; nor shall it exceed two and one-half ($2\frac{1}{2}$) acre-feet per acre of irrigable land during the usual irrigation season as established on the Klamath Project, being approximately that period from April 15 to September 30, inclusive, of each year; and in no event shall it exceed six-tenths (0.6) of an acre-foot of water per irrigable acre in any one month; Provided that if the Contractor is in need of and desires to purchase additional water over and above the $2\frac{1}{2}$ acre-feet per acre specified herein such additional water will be furnished at the same rate established for additional water furnished Warren Act contractors in the Public Notices of Annual Water Charges issued or to be issued hereafter for the Klamath Project; Provided, further, that all rights to the use and delivery of water acquired by the Contractor under this contract are inferior and subject to prior rights reserved for the lands of the Klamath Project."

5.   The Contractor shall keep an accurate record of all crops raised and agricultural and livestock products produced on his lands and furnish a report on same, to the Secretary of the Interior in form prescribed, on or before December 31 of each year.

6.   In all other respects said contract of Nov 26, 1931 shall remain in effect with like intent and purpose as though this contract had never been executed.

7.   No member of or delegate to Congress or resident commissioner shall be admitted to any share or part of this contract or to any benefit that may arise therefrom, but this restriction shall not be construed to extend to this contract if made with a corporation or company for its general benefit.

IN WITNESS WHEREOF, the parties have hereunto subscribed their names as of the date first above written.

UNITED STATES OF AMERICA

By   B. E. Hayden
Superintendent.
Bureau of Reclamation

Witnesses:

_____

R. E. Anderson
Contractor

_____

Mac Anderson
Contractor

Merrill, Oregon
P.O. Address

001613

015470

STATE OF OREGON      )
                     ) SS.
COUNTY OF KLAMATH     )


BE IT REMEMBERED, That on this 23rd day of June , A.D.,
1936, before me, the undersigned, a Notary Public in and for the said
state and county, personally appeared the within named _____

_____ R. H. Anderson and Mae Anderson, his wife _____
who are known to me to be the identical individuals described in and
who executed the within instrument, and acknowledged to me that they
executed the same freely and voluntarily.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official
seal the day and year last above written.


                              E. G. Hopkins
                              Notary Public for Oregon

My commission expires Dec. 25, 1957

(SEAL)

001614

Standard For . No. 1036 (Revised)
Form. approved by
Comptroller General U. S.
August 20, 1930

**ATEMENT AND CERTIFICAT**
**OF AWARD**

No. 015421
(Contract)

Date June 25 , 19 36

DEPARTMENT OF THE INTERIOR     BUREAU OF RECLAMATION     Klamath Falls, Oregon

(Department or establishment)     (Bureau or office)     (Location)

## METHOD OF OR ABSENCE OF ADVERTISING
(Section 3709 of the Revised Statutes)

1. After advertising in newspapers.
2. (a) After advertising by circular letters sent to _____ dealers.
   (b) And by notices posted in public places.
   (If notices were not posted in addition to advertising by circular letters sent to dealers, explanation of such omission must be made. The notation on the certificate below must be "2 (a) (b)" or "2 (a)," depending on whether or not notices were posted.)
3. Without advertising, under an exigency of the service which existed prior to the order and would not admit of the delay incident to advertising.
4. Without advertising in accordance with _____
5. Without advertising, it being impracticable to secure competition because of ___ Suppl. contract made with land owner

(Here state circumstances under which the securing of competition was impracticable)

## AWARD OF CONTRACT

A. To lowest bidder as to price (Expenditures).
B. To other than the lowest bidder as to price (Expenditures).
C. To highest bidder as to price (Receipts).
D. To other than the highest bidder as to price (Receipts).

## CERTIFICATE

I CERTIFY that the foregoing statement is true and correct; that the agreement was made in consequence of No. 5 of the method of or absence of advertising and in accordance with award of contract lettered _____, as shown above; that where lower bids (expenditure contracts) or higher bids (receipt contracts) as to price were received a statement of reasons for their rejection, together with an abstract of bids received, including all lower than that accepted in case of expenditure contracts and all higher in case of receipt contracts, is given below or on the reverse hereof or on a separate sheet attached hereto; that the articles or services covered by the agreement (expenditure) are necessary for the public service, and that the prices charged are just and reasonable.

B. E. Hayden          Superintendent, Bureau of Reclamation

(Signature of contracting officer)          (Title)

NOTE.—This statement and certificate will be used to support all agreements, both formal contracts and less formal agreements of whatever character, involving the expenditure or receipt of public funds. It must be executed and signed by the contracting officer (unless the award is made by or is subject to approval by an officer other than the contracting officer, when execution and signature may be made by such officer).

U. S. GOVERNMENT PRINTING OFFICE     6--8000

001615

015472

T 5231
August, 1927
Approved by the Department
January 4, 1927

## DEPARTMENT OF THE INTERIOR
### BUREAU OF RECLAMATION

......Klamath............ Irrigation Project

# RECORD OF EXECUTION OF CONTRACT

IN RE CONTRACT, and bond, if any, relating to above-named project, dated .June. 23,. 1936.....
symbol and number 18r-421......; made by .R.H.Anderson. and. Mae. Anderson,. his. wife..
amount involved, $.............; authority No. ............ or clearing account ..............
purpose ..Increase. of. water. duty. - Warren. Act. contract...........................
Reference: ..Authority granted 4/2/36 by First Asst. Sey..

Notice of execution of contract to be given Chief Engineer at Denver, Superintend-
ent at .Klamath. Falls,. Oregon......, District Counsel at ......Portland,. Oregon........
and ..........................................................

Place Klamath Falls, Ore. Date June 23, 1936......
   1. On this date the above-described contract was executed (or) passed, and bond, if
any, approved (or) passed, by this office, and transmitted to district counsel for legal
approval.

................B.E. Hayden............, Project Superintendent.

Inclosures:
   Original and .3.... copies of this form.      Statement & Cert. of Award, Orig. & 5
   Original and .4.... copies of contract.

Place Portland, Ore.... Date June 25, 1936..
   2. On this date the above-described contract, with bond, if any, was given legal
approval by this office, and transmitted to the project (Klamath Falls) ....... office.

............B. R. Stoutemyer........, District Counsel,

Inclosures:
   Original and .2.... copies of this form.
   Original and .3.... copies of contract.

Denver, Colorado, Date ..............
   3. On this date the above-described contract was executed, and bond, if any,
approved by this office.

..........................................., Chief Engineer.

Denver, Colorado, Date ..............
   4. On this date the above-described contract, with bond, if any, was passed by this
office and transmitted to the Washington office.

..........................................., Chief Engineer.

Inclosures:
   Original and ...... copies of this form.
   Original and ...... copies of contract.

Washington, D. C., Date ..............
   5. On this date the above-described contract was executed, and bond, if any,
approved by .....................................................

......................................., Commissioner.

6-7415

001616

015473

Project Office copy
Serial 60

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
KLAMATH PROJECT

I8r-421

1.    THIS AGREEMENT, made this **29th** day **May** nineteen hundred and thirty **one** , between THE UNITED STATES OF AMERICA, acting for this purpose by the contracting officer executing this agreement, pursuant to the provisions of the Act of Congress of June 17, 1902 (32 Stat., 388), and acts amendatory thereof or supplementary thereto, all of which are commonly known and referred to as the National Reclamation Laws, and particularly pursuant to the Warren Act of February 21, 1911 (36 Stat., 925), the party of the first part, hereinafter referred to as the United States, and

**R. H. Anderson and Mae Anderson, his wife,**

, the party of the second part, hereinafter referred to as the Contractor.

WITNESSETH:

## Explanatory Recitals

2.    WHEREAS, in connection with the construction and operation of the Klamath Irrigation Project, Oregon-California, after providing water sufficient for the irrigation of lands supplied by gravity within the limits of the Klamath Irrigation Project, the United States will have available an additional supply of water which may be utilized by pumping to adjacent lands; and

3.    WHEREAS, the Contractor is the owner of the lands hereinafter described, for which he desires to secure a water supply from the United States;

4.    NOW, THEREFORE, for and in consideration of the mutual and dependent stipulations herein set forth, it is hereby agreed as follows:

-1-

001617

015474

## Furnishing of Water by United States

5.   The United States shall furnish each year to the Contractor during the usual irrigation season water from the C-5 Lateral   and deliver same to the Contractor at or near a turnout located in the SW¼SW¼ of Section 32, Township 40 South, Range 11 East, W.M., for the irrigation of the land of the Contractor described as follows:

11.4 acres in the SW¼SW¼ of Section 32, Township 40 South, Range 11 East, W.M.; and 20.4 acres in the NW¼NW¼, and 8.3 acres in the N½SW¼NW¼, all in Section 5, Township 41 South, Range 11 East, W.M., containing in all a total of 40.1 irrigable acres, under a 20-foot pumping lift.

The quantity so delivered shall not exceed the  amount that can be furnished as determined by the Secretary of the Interior, at a cost of Thirty-four Dollars ($34.00) per acre; nor shall it exceed two acre-feet per acre of irrigable land during the usual irrigation season as established on the Klamath Project, being approximately that period from April 15 to September 30, inclusive, of each year; and in no event shall it exceed 0.6 acre-feet of water per irrigable acre in any one month; Provided, that all rights to the use and delivery of water acquired by the Contractor under this con- tract are inferior and subject to the prior rights reserved for the gravity lands of the Klamath Project.

## Water to be Delivered only on Demand

6.   The United States shall make delivery of water hereunder only upon written demand of the Contractor served on the Superintendent of the Klamath Project at least three days prior to the beginning of the irrigation season as herein defined.  The failure of the Contractor to make such demand or the failure by him to use said  water shall not in any way relieve the Contractor of his obligation to pay to the United States the amounts herein agreed upon at the time and in the manner specified.

-2-

001618

015475

## Measurement of Water

·7.   The water to be delivered hereunder shall be
measured **at the turnout described in Article 5 hereof,**
by such measuring and controlling devices or such automatic
gauges, or both, as shall be satisfactory to the Superintendent
or other officer of the United States in charge of the Klamath
Project. Said measuring and controlling devices shall be
furnished, installed and maintained by and at the expense of
the Contractor, but they shall be and remain at all times
under the complete control of the United States, whose repre-
sentative may at all times have access to them over the land
of the Contractor. All future repairs and renewals necessary
to the operation of said turnout for delivery of water from
the canal shall be done at the expense of the Contractor.

## Receipt of Water by Contractor

8.   The Contractor shall receive said irrigation water
at the point of delivery above stated by means of said turn-
out, and shall at his own expense convey the water to his
pumping plant through a canal constructed by him, and shall
perform all acts required by law or custom in order to main-
tain his control over such water and to secure its lawful
and proper diversion from the C-3 lateral   of the Klamath
Project as herein provided for, and the beneficial applica-
tion of the same to the land of the Contractor above described.

## Shortage of Water

9.   On account of drought, inaccuracy in distribution
or other cause, there may occur at times a shortage in the
quantity of water provided for herein, and while the United
States will use all reasonable means to guard against such
shortages, in no event shall any liability accrue against the
United States, its officers, agents or employees for any
damage, direct or indirect, arising therefrom, and the pay-
ments due hereunder shall not be reduced because of any such
shortage. All losses or diminution of water by reason of
seepage, evaporation or other causes after delivery thereof
by the United States at the aforesaid point of delivery shall
be borne by the Contractor.

—5—

001619

015476

### Waste and Seepage Waters

10.  The United States reserves the right to collect for use on the Klamath Project all waste and seepage water coming from the land of the Contractor.  The Contractor shall have the right to discharge waste and seepage water into the drainage system of the Klamath Project.

### Operation of Irrigation System

11.  In the distribution and application of the water supply provided for herein, the Contractor shall comply with all of the applicable provisions of the Reclamation Law and the regulations of the Secretary of the Interior thereunder; and will operate and maintain his irrigation system and works to be constructed hereunder to the satisfaction of the United States.  The United States assumes no responsibility whatever for the safety, integrity, or operation of the same or any portion thereof, and the Contractor will hold the United States and its officers, agents and employees harmless from any and all claims arising in connection therewith.  During the irrigation season the United States shall have the right to place inspectors at any point on the works of the Contractor to make such measurements, investigations or observations as in the judgment of the Superintendent may be necessary for the enforcement of the provisions of this contract.

### Construction Charge

12.  The Contractor agrees to pay the United States as construction charges for the supply of water heretofore described the sum of $ 1,363.40  The total amount of such construction charges shall be paid in 40 annual instalments, due December 1 of each year beginning with the year 1931.  The first 5 of such instalments shall each be 1 per centum, the next 10 instalments each 2 per centum, and the next 25 instalments each 3 per centum of the total construction charge; Provided, that the Contractor may pay the whole or any part of the construction charge within any shorter period.

### Operation and Maintenance Charges

13.  In addition to the construction charge described in Article 12 the Contractor agrees to pay the United States for the irrigable area of the land of the Contractor, annual

--4--

001620

015477

operation and maintenance charges equal to (a) one-half of
the acre-charge assessed against such lands in the Main Divi-
sion of the Klamath Project served by gravity, plus (b) an
equitable proportion, as determined by the Secretary of the
Interior, of any expenses incurred by the United States in
regulating the waters from Upper Klamath Lake.  The operation
and maintenance charges due shall be payable to the United
States or its successors in the operation of the Main Divi-
sion of the Klamath Project in advance of the delivery of
water each year and in any event not later than April 1 of
such year.

### Penalty for Delinquency in Payment

14.  To every instalment of money required to be paid
under this contract which shall remain unpaid after the same
shall become due, there shall be added at once a penalty of
one-half of one per centum ($\frac{1}{2}$%), and thereafter a like penalty
of one-half of one per centum ($\frac{1}{2}$%) on the first of each month
so long as such default shall continue; and the contractor
hereby agrees to pay such penalty.

### Lien to Secure Payment of Charges

15.  For the purpose of securing payment to the United
States of the obligations, and each of them described in
Articles 12, 13, and 14, according to the conditions therein
stated, a lien in favor of the United States in the amount
of the total obligation described in said Articles 12, 13,
and 14, is hereby created and made a charge upon all of said
land both irrigable and non-irrigable, together with its
privileges and appurtenances, including all water rights and
irrigation works.  Upon the failure of the Contractor to pay
when due any instalment of charges described in said articles,
the United States is empowered to foreclose the lien hereby
created in the manner provided by law.

### Refusal of Water in Case of Default

16.  The United States reserves the right to refuse to
deliver water to the Contractor in the event of default for
a period of more than twelve months in any payment due the
United States under this contract.  The provisions of this
article are not exclusive, and shall not in any manner hinder
the United States from exercising any other remedy to enforce
collection of any amount due hereunder.

-5-

001621

015478

### Secretary may Make and Modify Regulations

17.   There is reserved to the Secretary of the Interior the right to make regulations and modify the same in his discretion in general harmony, however, with this contract to the end that the true intent of the law and of this contract shall be carried into full effect.

### Contingent Appropriation Clause

18.   Where the operations of this contract extend beyond the current fiscal year, it is understood that the contract is made contingent upon Congress making the necessary appropriation for expenditures thereunder after such current year has expired.   In case such appropriation as may be necessary to carry out this contract is not made, the Contractor hereby releases the United States from all liability due to the failure of Congress to make such appropriation.

### Member of Congress Clause

19.   No Member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this contract or to any benefit to arise therefrom.   Nothing, however, herein contained shall be construed to extend to any incorporated company if the contract be for the general benefit of such corporation or company.

### Successors and Assigns Obligated

20.   The terms of this contract shall inure to the benefit of and be binding upon the successors in interest and assigns of the parties hereto.

IN WITNESS WHEREOF the parties have hereunto subscribed their names as of the date first above written.

THE UNITED STATES OF AMERICA

By   B. E. Hayden
Superintendent, Bureau of Reclamation

Witnesses:

M. A. Bowman

W. F. Fruits

R. H. Anderson
_____
Contractor

Mae Anderson
_____
Contractor

Map is attached to contract
dated May 15, 1931, No. 18r-414
with R. E. Shields, et al

P.O. Address:

Merrill, Oregon

--6--

001622

015479

STATE OF OREGON   )
                 ) SS.
COUNTY OF KLAMATH )

    BE IT REMEMBERED, That on this __29th__ day of __May__,
A. D., 19__31__, before me, the undersigned, a Notary Public in
and for the said state and county, personally appeared the
within named __R. H. Anderson and Mae Anderson, his wife,__
_____ who __are__ known to me to be the
identical individual__s__ described in and who executed the within
instrument, and acknowledged to me that __they__ executed the same
freely and voluntarily.

    IN TESTIMONY WHEREOF, I have hereunto set my hand and
official seal the day and year last above written.

                              M. A. Bowman
                          Notary Public for Oregon

My Commission expires __Oct. 13, 1931__

(SEAL)

001623

015480

99352

State of Oregon)
              )ss
Klamath County )

This instrument was filed
for record on the 5 day of June
A.D.1931 at 11:00 o'clock a.m.
and duly recorded in Vol. 95
of Deeds, Page 418

G2 R. DeLap, County Clerk

By C. H. DeLap, Deputy

(SEAL)

001624

015481

Standard Form No. 1036 (Revised)
Form approved by
Comptroller Genera. U. S.
August 20, 1930

S .TEMENT AND CERTIFICATE
OF AWARD

To _____ I8r-481 _____
                    (Contract)

Date May 29-, 19 31

DEPARTMENT OF THE INTERIOR          BUREAU OF RECLAMATION     Klamath Falls, Oregon
(Department or establishment)              (Bureau or office)                   (Location)

## METHOD OF OR ABSENCE OF ADVERTISING
### (Section 3709 of the Revised Statutes)

1. After advertising in newspapers.
2. (a) After advertising by circular letters sent to _____ dealers.
   (b) And by notices posted in public places.
   (If notices were not posted in addition to advertising by circular letters sent to dealers, explanation of such omission must be made. The notation on the certificate below must be "2 (a) (b)" or "2 (a)," depending on whether or not notices were posted.)
3. Without advertising, under an exigency of the service which existed prior to the order and would not admit of the delay incident to advertising.
4. Without advertising in accordance with _____
5. Without advertising, it being impracticable to secure competition because of Water supplied to land
                                                                                                         owner
(Here state circumstances under which the securing of competition was impracticable)

## AWARD OF CONTRACT

A. To lowest bidder as to price (Expenditures).
B. To other than the lowest bidder as to price (Expenditures).
C. To highest bidder as to price (Receipts).
D. To other than the highest bidder as to price (Receipts).

## CERTIFICATE                                                                      5

I CERTIFY that the foregoing statement is true and correct; that the agreement was made in consequence of No. _____ of the method of or absence of advertising and in accordance with award of contract lettered _____, as shown above; that where lower bids (expenditure contracts) or higher bids (receipt contracts) as to price were received a statement of reasons for their rejection, together with an abstract of bids received, including all lower than that accepted in case of expenditure contracts and all higher in case of receipt contracts, is given below or on the reverse hereof or on a separate sheet attached hereto; that the articles or services covered by the agreement (expenditure) are necessary for the public service, and that the prices charged are just and reasonable.

B.E.Hayden                          Superintendent, Bureau of Reclamation
(Signature of contracting officer)                         (Title)

NOTE.—This statement and certificate will be used to support all agreements, both formal contracts and less formal agreements of whatever character, involving the expenditure or receipt of public funds. It must be executed and signed by the contracting officer (unless the award is made by or is subject to approval of an officer other than the contracting officer, when execution and signature may be made by such officer).                    10—1059

1625

015482

7—523t
August, 1927
Approved by the Department
January 4, 1927

## DEPARTMENT OF THE INTERIOR
### BUREAU OF RECLAMATION

———— Klamath ———— Irrigation Project

## RECORD OF EXECUTION OF CONTRACT

IN RE CONTRACT, and bond, if any, relating to above—named project, dated ———— May 29, 1931
symbol and number ——— Isr-421 ——— ; made by ——— R.H. Anderson and Mae Anderson
amount involved, $——— 1363.40 ——— authority No. ——— Orsel.ang Mae Anderson
purpose —Purchase of permanent water right — Pumping Division
Reference: Authority contained in Commissioners letter of 11/29/29 sub-
ject "Contract of November 9, 1929, with Rex E. Bord for a
water right on the Pumping Division, Klamath Project." Superintend-
Notice of execution of contract to its District Counsel,
ent at ——— Klamath Falls, Oregon ——— District Counsel at
and ——————————————— Portland, Oregon

                           Place ——— Klamath Falls, Oregon
    1. On this date the above—described contract was executed (or) passed June 2, 1931,
any, approved (or) passed, by this office, and transmitted to district counsel for legal
approval.

                   ——— D. E. Hayden ———, Project Superintendent.

Inclosures:
    Original and ——3copies of this form.   Statement & Cert. of Award, Orig. & 3
    Original and ——4copies of contract.

                      Place ——— Portland, Ore. ——— Date ——— June 4, 1931
    2. On this date the above—described contract, with bond, if any, was given legal
approval by this office, and transmitted to the ——— Project (Klamath Falls) ——— office.

               ——— Spencer L. Baird ———, Associate District Counsel.

Inclosures:
    Original and ——2copies of this form.
    Original and ——3copies of contract.

                    Denver, Colorado, Date ———————
    3. On this date the above—described contract was executed, and bond, if any,
approved by this office.

                   ————————————————, Chief Engineer.

                    Denver, Colorado, Date ———————
    4. On this date the above—described contract, with bond, if any, was passed by this
office and transmitted to the Washington office.

                   ————————————————, Chief Engineer.

Inclosures:
    Original and —— copies of this form.
    Original and —— copies of contract.

                    Washington, D. C., Date ———————
    5. On this date the above—described contract was executed, and bond, if any,
approved by ——————————————————————

6—7416
                   ————————————————, Commissioner.

015483



UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
KLAMATH IRRIGATION PROJECT

THIS AGREEMENT, Made this  10th day of      June        , 1936, in pursu-
ance of the Act of Congress of June 17, 1902 (32 Stat. 388), and acts amenda-
tory thereof or supplementary thereto, and particularly pursuant to the Warren
Act of February 21, 1911 (36 Stat. 925), between the UNITED STATES OF AMERICA,
herein styled the United States, represented by the officer executing this con-
tract, and

John F. Goldsworthy and Alice D. Goldsworthy, husband and wife,

hereinafter styled the Contractor,

WITNESSETH, That Jesse Hadley and Susan G. Hadley, predecessors of

2.   WHEREAS, the parties hereto, entered into an agreement under date of
June 17, 1931                , and providing for use by the Contractor of a max-
mum of two (2) acre-feet for each acre of irrigable land as provided in Article
                          June 17, 1931
five (5) of said contract of                       and the Contractor now
desires that the said contract be amended to increase such maximum use from two
(2) to two and one-half (2½) acre-feet; and

3.   WHEREAS, the United States desires to obtain from the Contractor each
year an accurate record of all crops raised and agricultural and livestock pro-
ducts produced on the lands of the Contractor each year;

NOW, THEREFORE, It is agreed that:
                                            June 17, 1931
4.   Article five (5) of said contract of
shall be and is amended to read as follows:

    "5.   The United States shall furnish each year to the Contractor,
                                         C-3 Lateral
during the usual irrigation season, water from the                    and
deliver same to the Contractor at or near a turnout located in the
SW¼SW¼ of Section 32, Township 40 South, Range 11 East, W.M.,

for the irrigation of the lands of the Contractor described as follows:
17.2 acres in the NW¼NE¼, and 10.0 acres in the NE¼SE¼ of Section 4, and
23.5 acres in the NE¼NW¼ and 10.0 acres in the N½SW¼ of Section 5, all in
Township 41 South, Range 11 East, W.M., containing in all 60.7 irrigable
acres under a 20-foot pumping lift; also 1.0 acres in the SE¼SE¼ of Section
32, and 5.9 acres in the SW¼SW¼ of Section 33, all in Township 40 South,
Range 11 East, W.M., irrigable under an additional 89-foot pumping lift; in
all a total of 67.6 irrigable acres, being that portion of the said contract
of June 17, 1931, transferred from the said predecessors.

The quantity so delivered shall not exceed the amount that can be fur-
nished as determined by the Secretary of the Interior, at a cost of
Thirty-four Dollars ($34.00) per acre; nor shall it exceed two and
one-half (2½) acre-feet per acre of irrigable land during the usual
irrigation season as established on the Klamath Project, being approx-
imately that period from April 15 to September 30, inclusive, of each
year; and in no event shall it exceed six-tenths (0.6) of an acre-
foot of water per irrigable acre in any one month; Provided that if
the Contractor is in need of and desires to purchase additional water
over and above the 2½ acre-feet per acre specified herein such addi-
tional water will be furnished at the same rate established for
additional water furnished Warren Act contractors in the Public No-
tices of Annual Water Charges issued or to be issued hereafter for the
Klamath Project; Provided, further, that all rights to the use and
delivery of water acquired by the Contractor under this contract are
inferior and subject to prior rights reserved for the lands of the
Klamath Project."

5.   The Contractor shall keep an accurate record of all crops raised and
agricultural and livestock products produced on his lands and furnish a re-
port on same, to the Secretary of the Interior in form prescribed, on or before
December 31 of each year.

6.   In all other respects said contract of        June 17, 1931        shall
remain in effect with like intent and purpose as though this contract had never
been executed.

7.   No member of or delegate to Congress or resident commissioner shall
be admitted to any share or part of this contract or to any benefit that may
arise therefrom, but this restriction shall not be construed to extend to
this contract if made with a corporation or company for its general benefit.

IN WITNESS WHEREOF, the parties have hereunto subscribed their names as
of the date first above written.

                                        UNITED STATES OF AMERICA

                                        By  B. E. Hayden
                                           Superintendent,
                                           Bureau of Reclamation
Witnesses:

   M. A. Bowman                          John F. Goldsworthy
                                                        Contractor


   Uel Dillard                           Alice D. Goldsworthy
                                                        Contractor


                                        Merrill, Oregon
                                                        P.O. Address

STATE OF OREGON    )
                   ) SS.
COUNTY OF KLAMATH )


BE IT REMEMBERED, That on this **10th** day of _____ June _____ , A.D.,
1936, before me, the undersigned, a Notary Public in and for the said
state and county, personally appeared the within named _____

John F. Goldsworthy and Alice D. Goldsworthy, husband and wife
who **are** known to me to be the identical individual described in and
who executed the within instrument, and acknowledged to me that **they**
executed the same freely and voluntarily.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official
seal the day and year last above written.

M. A. Bowman
Notary Public for Oregon

My commission expires    9-11-39

(SEAL)

Standard Form No. 1036 (Revised)
Form approved by
Comptroller General U. S.
August 20, 1930

No. 18-r-426    015486    (Contract)

**~TATEMENT AND CERTIFICAT~**
**OF AWARD**

Date __June 10__, 19 __36__

DEPARTMENT OF THE INTERIOR          BUREAU OF RECLAMATION          Klamath Falls, Oregon
(Department or establishment)                (Bureau or office)                    (Location)

## METHOD OF OR ABSENCE OF ADVERTISING
(Section 3709 of the Revised Statutes)

1. After advertising in newspapers.
2. (a) After advertising by circular letters sent to_____dealers.
   (b) And by notices posted in public places.

(If notices were not posted in addition to advertising by circular letters sent to dealers, explanation of such omission must be made. The notation on the certificate below must be "2 (a) (b)" or "2 (a)," depending on whether or not notices were posted.)

3. Without advertising, under an exigency of the service which existed prior to the order and would not admit of the delay incident to advertising.

4. Without advertising in accordance with _____

5. Without advertising, it being impracticable to secure competition because of **Water supplied to land owner**

(Here state circumstances under which the securing of competition was impracticable)

## AWARD OF CONTRACT

A. To lowest bidder as to price (Expenditures).
B. To other than the lowest bidder as to price (Expenditures).
C. To highest bidder as to price (Receipts).
D. To other than the highest bidder as to price (Receipts).

## CERTIFICATE

I CERTIFY that the foregoing statement is true and correct; that the agreement was made in consequence of No. __5__ of the method of or absence of advertising and in accordance with award of contract lettered _____, as shown above; that where lower bids (expenditure contracts) or higher bids (receipt contracts) as to price were received a statement of reasons for their rejection, together with an abstract of bids received, including all lower than that accepted in case of expenditure contracts and all higher in case of receipt contracts, is given below or on the reverse hereof or on a separate sheet attached hereto; that the articles or services covered by the agreement (expenditure) are necessary for the public service, and that the prices charged are just and reasonable.

B. E. Hayden                    Superintendent, Bureau of Reclamation
(Signature of contracting officer)                    (Title)

NOTE.—This statement and certificate will be used to support all agreements, both formal contracts and less formal agreements of whatever character, involving the expenditure or receipt of public funds. It must be executed and signed by the contracting officer (unless the award is made by or is subject to approval by an officer other than the contracting officer, when execution and signature may be made by such officer).

U. S. GOVERNMENT PRINTING OFFICE          6—6080

015487

7—528t
August, 1927
Approved by the Department
January 4, 1927

# DEPARTMENT OF THE INTERIOR
## BUREAU OF RECLAMATION

Klamath _____ Irrigation Project

# RECORD OF EXECUTION OF CONTRACT

IN RE CONTRACT, and bond, if any, relating to above—named project, dated ____ June 10, 1936
symbol and number __Ilr—428__; made by John F.Goldsworthy and Alice D.Goldsworthy
amount involved, $ _____; authority No. _____ or clearing account
purpose __Increase of water duty — Warren Act contract__
Reference: __Authority granted 4/2/36 by First Asst. Secy.__

Notice of execution of contract to be given Chief Engineer at Denver, Superintend-
ent at __Klamath Falls,Oregon__, District Counsel at __Portland, Oregon__
and _____

_____ Place Klamath Falls,Oregon Date June 15, 1936

1. On this date the above—described contract was executed (or) passed, and bond, if
any, approved (or) passed, by this office, and transmitted to district counsel for legal
approval.

_____ H. E. Hayden _____, Project Superintendent.

Inclosures:
Original and __3__ copies of this form.
Original and __4__ copies of contract. Statement & Cert. of Award, Orig. & 3

_____ Place Portland, Ore. Date June 16, 1936

2. On this date the above—described contract, with bond, if any, was given legal
approval by this office, and transmitted to the Project (Klamath Falls) ____ office.

B E STOUTEMYER

_____, District Counsel.

Inclosures: **2**
Original and _____ copies of this form.
Original and __3__ copies of contract.

_____

Denver, Colorado, Date _____

3. On this date the above—described contract was executed, and bond, if any,
approved by this office.

_____, Chief Engineer.

_____

Denver, Colorado, Date _____

4. On this date the above—described contract, with bond, if any, was passed by this
office and transmitted to the Washington office.

_____, Chief Engineer.

Inclosures:
Original and _____ copies of this form.
Original and _____ copies of contract.

_____

Washington, D. C., Date _____

5. On this date the above—described contract was executed, and bond, if any,
approved by _____

_____, Commissioner.

6—7416

001631

015488

Project Office Copy

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
KLAMATH IRRIGATION PROJECT

12r-426 A

THIS AGREEMENT, Made this 20th day of            June            , 1936, in pursu-
ance of the Act of Congress of June 17, 1902 (32 Stat, 388), and acts amenda-
tory thereof or supplementary thereto, and particularly pursuant to the Warren
Act of February 21, 1911 (36 Stat, 925), between the UNITED STATES OF AMERICA,
herein styled the United States, represented by the officer executing this con-
tract, and

W.H.Hadley (otherwise known as William Henry Hadley) and Susan C.Hadley, his wife

hereinafter styled the Contractor.

WITNESSETH, That ―

    2.    WHEREAS, the parties hereto, entered into an agreement under date of

    June 17, 1931            , and providing for use by the Contractor of a max-
mum of two (2) acre-feet for each acre of irrigable land as provided in Article

five (5) of said contract of        June 17, 1931        and the Contractor now
desires that the said contract be amended to increase such maximum use from two
(2) to two and one-half (2½) acre-feet; and

    3.    WHEREAS, the United States desires to obtain from the Contractor each
year an accurate record of all crops raised and agricultural and livestock pro-
ducts produced on the lands of the Contractor each year;

NOW, THEREFORE, It is agreed that:

    4.    Article five (5) of said contract of   June 17, 1931
shall be and is amended to read as follows:

        "5.    The United States shall furnish each year to the Contractor,

during the usual irrigation season, water from the C-5 Lateral        and
deliver same to the Contractor at or near a turnout located in the

SE¼SE¼ of Section 32, Township 40 South, Range 11 East, W.M.,

for the irrigation of the lands of the Contractor described as follows:

6.4 acres in the SE¼SE¼ of Section 32, Township 40 South, Range 11 East,
W.M., irrigable under a 28-foot pumping lift, being that portion of the
said contract of June 17, 1931, remaining after a portion was transferred
to John F. Goldsworthy and Alice B. Goldsworthy, husband and wife.

001632

The quantity so delivered shall not exceed the amount that can be furnished as determined by the Secretary of the Interior, at a cost of Thirty-four Dollars ($34.00) per acre; nor shall it exceed two and one-half (2½) acre-feet per acre of irrigable land during the usual irrigation season as established on the Klamath Project, being approximately that period from April 15 to September 30, inclusive, of each year; and in no event shall it exceed six-tenths (0.6) of an acre-foot of water per irrigable acre in any one month; Provided that if the Contractor is in need of and desires to purchase additional water over and above the 2½ acre-feet per acre specified herein such additional water will be furnished at the same rate established for additional water furnished Warren Act contractors in the Public Notices of Annual Water Charges issued or to be issued hereafter for the Klamath Project; Provided, further, that all rights to the use and delivery of water acquired by the Contractor under this contract are inferior and subject to prior rights reserved for the lands of the Klamath Project."

5.   The Contractor shall keep an accurate record of all crops raised and agricultural and livestock products produced on his lands and furnish a report on same, to the Secretary of the Interior in form prescribed, on or before December 31 of each year.

6.   In all other respects said contract of **June 17, 1931**          shall remain in effect with like intent and purpose as though this contract had never been executed.

7.   No member of or delegate to Congress or resident commissioner shall be admitted to any share or part of this contract or to any benefit that may arise therefrom, but this restriction shall not be construed to extend to this contract if made with a corporation or company for its general benefit.

IN WITNESS WHEREOF, the parties have hereunto subscribed their names as of the date first above written.

UNITED STATES OF AMERICA

By _____ B. E. Hayden _____
Superintendent,
Bureau of Reclamation

Witnesses:

_____          H. H. Hadley _____
                                                    Contractor

_____          Susan C. Hadley _____
                                                    Contractor

                                        Klamath Falls, Oregon _____
                                                    P.O. Address
                                        Rt. 1, Box 587

001633

015490

STATE OF OREGON    )
                   ) SS.
COUNTY OF KLAMATH  )


    BE IT REMEMBERED, That on this __20th__ day of _____ __June__ , A.D.,
1936, before me, the undersigned, a Notary Public in and for the said
state and county, personally appeared the within named _____

_____ W.H.Hadley and Susan C. Hadley, his wife _____

who __are__ known to me to be the identical individual ~~s~~ described in and
who executed the within instrument, and acknowledged to me that ~~they~~
executed the same freely and voluntarily.

    IN TESTIMONY WHEREOF, I have hereunto set my hand and official
seal the day and year last above written.


                         R. S. Hopkins _____
                      Notary Public for Oregon

My commission expires __Dec. 25, 1937_____


(SEAL)

001634

015491

Standard Form No. 1036 (Revised)
Form approved by
Comptroller General U. S.
August 20, 1936

STATEMENT AND CERTIFICATE
OF AWARD

No. ISr-426
(Contract)

Date Juno 20, 19 36

DEPARTMENT OF THE INTERIOR
(Department or establishment)

BUREAU OF RECLAMATION
(Bureau or office)

Klamath Falls, Oregon
(Location)

## METHOD OF OR ABSENCE OF ADVERTISING
(Section 3709 of the Revised Statutes)

1. After advertising in newspapers.
2. (a) After advertising by circular letters sent to .................................. dealers.
   (b) And by notices posted in public places.
   (If notices were not posted in addition to advertising by circular letters sent to dealers, explanation of such omission must be made. The notation on the certificate below must be "3 (a) (b)" or "2 (a)," depending on whether or not notices were posted.)
3. Without advertising, under an exigency of the service which existed prior to the order and would not admit of the delay incident to advertising.
4. Without advertising in accordance with ..................................
5. Without advertising, it being impracticable to secure competition because of Suppl. contract made with land owner

(Here state circumstances under which the securing of competition was impracticable)

## AWARD OF CONTRACT

A. To lowest bidder as to price (Expenditures).
B. To other than the lowest bidder as to price (Expenditures).
C. To highest bidder as to price (Receipts).
D. To other than the highest bidder as to price (Receipts).

## CERTIFICATE

I CERTIFY that the foregoing statement is true and correct; that the agreement was made in consequence of No. 5 of the method of or absence of advertising and in accordance with award of contract lettered .................................., as shown above; that where lower bids (expenditure contracts) or higher bids (receipt contracts) as to price were received a statement of reasons for their rejection, together with an abstract of bids received, including all lower than that accepted in case of expenditure contracts and all higher in case of receipt contracts, is given below or on the reverse hereof or on a separate sheet attached hereto; that the articles or services covered by the agreement (expenditure) are necessary for the public service, and that the prices charged are just and reasonable.

B. E. Hayden
(Signature of contracting officer)

Superintendent, Bureau of Reclamation
(Title)

NOTE.—This statement and certificate will be used to support all agreements, both formal contracts and less formal agreements of whatever character, involving the expenditure or receipt of public funds. It must be executed and signed by the contracting officer (unless the award is made by or is subject to approval by an officer other than the contracting officer, when execution and signature may be made by such officer).

U. S. GOVERNMENT PRINTING OFFICE       6—8900

015492



7—523t
August, 1927
Approved by the Department
January 4, 1927

## DEPARTMENT OF THE INTERIOR
### BUREAU OF RECLAMATION

Klamath _____ Irrigation Project

# RECORD OF EXECUTION OF CONTRACT

IN RE CONTRACT, and bond, if any, relating to above—named project, dated June 20, 1936
symbol and number I8r—426 _____; made by W. H. Hadley and Susan C. Hadley, his wife
amount involved, $_____; authority No. _____ or clearing account
purpose increase of water duty — Warren Act contract
Reference: Authority granted 4/2/36 by First Asst. Secy.

Notice of execution of contract to be given Chief Engineer at Denver, Superintend-
ent at Klamath Falls, Oregon _____, District Counsel at ___Portland, Oregon_____
and _____

Place Klamath Falls, Oreg. Date June 22, 1936 _____
1. On this date the above—described contract was executed (or) passed, and bond, if
any, approved (or) passed, by this office, and transmitted to district counsel for legal
approval.

_____ N. E. Hayden _____, Project Superintendent.

Inclosures:
Original and 5 ___ copies of this form.
Original and 4 ___ copies of contract. Statement & Cert. of Award, Orig. & 3

Place ___Portland, Ore.___ Date June 23, 1936
2. On this date the above—described contract, with bond, if any, was given legal
approval by this office, and transmitted to the project (Klamath Falls) _____ office.

___B B Stoutemyer_____, District Counsel.

Inclosures:
Original and __2__ copies of this form.
Original and __3__ copies of contract.

Denver, Colorado, Date _____
3. On this date the above—described contract was executed, and bond, if any,
approved by this office.

_____, Chief Engineer.

Denver, Colorado, Date _____
4. On this date the above—described contract, with bond, if any, was passed by this
office and transmitted to the Washington office.

_____, Chief Engineer.

Inclosures:
Original and _____ copies of this form.
Original and _____ copies of contract.

Washington, D. C., Date _____
5. On this date the above—described contract was executed, and bond, if any,
approved by _____

_____, Commissioner.

5—7416

001636

015493

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
KLAMATH PROJECT

Form 426

Serial - 61

1.   THIS AGREEMENT, made this 17th day June
nineteen hundred and thirty one , between THE UNITED STATES OF
AMERICA, acting for this purpose by the contracting officer exe-
cuting this agreement, pursuant to the provisions of the Act of
Congress of June 17, 1902 (32 Stat., 388), and acts amendatory
thereof or supplementary thereto, all of which are commonly known
and referred to as the National Reclamation Laws, and particu-
larly pursuant to the Warren Act of February 21, 1911 (36 Stat.,
925), the party of the first part, hereinafter referred to as the
United States, and

W. H. Hadley (otherwise known as William Henry Hadley) and
Susan C. Hadley, his wife

, the party of
the second part, hereinafter referred to as the Contractor.

WITNESSETH:

Explanatory Recitals

2.   WHEREAS, in connection with the construction and opera-
tion of the Klamath Irrigation Project, Oregon-California, after
providing water sufficient for the irrigation of lands supplied
by gravity within the limits of the Klamath Irrigation Project,
the United States will have available an additional supply of
water which may be utilized by pumping to adjacent lands; and

3.   WHEREAS, the Contractor is the owner of the lands here-
inafter described, for which he desires to secure a water supply
from the United States;

4.   NOW, THEREFORE, for and in consideration of the mutual
and dependent stipulations herein set forth, it is hereby agreed
as follows:

-1-

001637

## Furnishing of Water by United States

5.   The United States shall furnish each year to the
Contractor during the usual irrigation season water from the
G-3 Lateral   and deliver same to the Contractor at a turnout located in the SW¼SW¼ of Section 32, Township 40
South, Range 11 East, W.M.,
for the irrigation of the land of the Contractor described
as follows:  17.2 acres in the NW¼NW¼, and 10.0 acres in the
N¼SW¼NW¼ of Section 4; and 23.5 acres in the NE¼NE¼ and
10.0 acres in the N½SE¼NE¼ of Section 5, all in Township 41
South, Range 11 East, W.M., containing in all 60.7 irrigable
acres under a 20-foot pumping lift; also 5.4 acres in the
SW¼SE¼ and 1.0 acre in the SE¼SE¼ of Section 32, and 5.9
acres in the SW¼SW¼ of Section 33, all in Township 40 South,
Range 11 East, W.M., irrigable under an additional 8-foot
pumping lift,  in all, a total of 73.0 irrigable acres.
The quantity so delivered shall not exceed the  amount that
can be furnished as determined by the Secretary of the
Interior, at a cost of Thirty-four Dollars ($34.00) per acre;
nor shall it exceed two acre-feet per acre of irrigable land
during the usual irrigation season as established on the
Klamath Project, being approximately that period from April
15 to September 30, inclusive, of each year; and in no event
shall it exceed 0.6 acre-feet of water per irrigable acre in
any one month; Provided, that all rights to the use and
delivery of water acquired by the Contractor under this con-
tract are inferior and subject to the prior rights reserved
for the gravity lands of the Klamath Project.

## Water to be Delivered only on Demand

6.   The United States shall make delivery of water
hereunder only upon written demand of the Contractor served
on the Superintendent of the Klamath Project at least three
days prior to the beginning of the irrigation season as
herein defined.  The failure of the Contractor to make such
demand or the failure by him to use said  water shall not in
any way relieve the Contractor of his obligation to pay to
the United States the amounts herein agreed upon at the time
and in the manner specified.

--2--

Measurement of Water

7. The water to be delivered hereunder shall be measured at the turnout described in Article 5 hereof,

by such measuring and controlling devices or such automatic gauges, or both, as shall be satisfactory to the Superintendent or other officer of the United States in charge of the Klamath Project. Said measuring and controlling devices shall be furnished, installed and maintained by and at the expense of the Contractor, but they shall be and remain at all times under the complete control of the United States, whose representative may at all times have access to them over the land of the Contractor. All future repairs and renewals necessary to the operation of said turnout for delivery of water from the canal shall be done at the expense of the Contractor.

Receipt of Water by Contractor

8. The Contractor shall receive said irrigation water at the point of delivery above stated by means of said turnout, and shall at his own expense convey the water to his pumping plant through a canal constructed by him, and shall perform all acts required by law or custom in order to maintain his control over such water and to secure its lawful and proper diversion from the G-3 Lateral of the Klamath Project as herein provided for, and the beneficial application of the same to the land of the Contractor above described.

Shortage of Water

9. On account of drought, inaccuracy in distribution or other cause, there may occur at times a shortage in the quantity of water provided for herein, and while the United States will use all reasonable means to guard against such shortages, in no event shall any liability accrue against the United States, its officers, agents or employees, for any damage, direct or indirect, arising therefrom, and the payments due hereunder shall not be reduced because of any such shortage. All losses or diminution of water by reason of seepage, evaporation or other causes after delivery thereof by the United States at the aforesaid point of delivery shall be borne by the Contractor.

015496

## Waste and Seepage Waters

10.  The United States reserves the right to collect for use on the Klamath Project all waste and seepage water coming from the land of the Contractor.  The Contractor shall have the right to discharge waste and  seepage water into the drainage system of the Klamath Project.

## Operation of Irrigation System

11.  In the distribution and application of the water supply provided for herein, the Contractor shall comply with all of the applicable provisions of the Reclamation Law and the regulations of the Secretary of the Interior thereunder; and will operate and maintain his irrigation system and works to be constructed hereunder to the satisfaction of the United States.  The United States assumes no responsibility whatever for the safety, integrity, or operation of the same or any portion thereof, and the Contractor will hold the United States and its officers, agents and employees harmless from any and all claims arising in connection therewith.  During the irrigation season the United States shall have the right to place inspectors at any point on the works of the Contractor to make such measurements, investigations or observations as in the judgment of the Superintendent may be necessary for the enforcement of the provisions of this contract.

## Construction Charge

12.  The Contractor agrees to pay the United States as construction charges for the supply of water heretofore described the sum of $ 2482.00.  The total amount of such construction charges shall be paid in 40 annual instalments, due December 1 of each year beginning with the year 1931.   The first 5 of such instalments shall each be 1 per centum, the next 10 instalments each 2 per centum, and the next 25 instalments each 3 per centum of the total construction charge; Provided, that the Contractor may pay the whole or any part of the construction charge within any shorter period.

## Operation and Maintenance Charges

13.  In addition to the construction charge described in Article 12 the Contractor agrees to pay the United States for the irrigable area of the land of the Contractor, annual

001640

015497

operation and maintenance charges equal to (a) one-half of
the acre-charge assessed against such lands in the Main Divi-
sion of the Klamath Project served by gravity, plus (b) an
equitable proportion, as determined by the Secretary of the
Interior, of any expenses incurred by the United States in
regulating the waters from Upper Klamath Lake.  The operation
and maintenance charges due shall be payable to the United
States or its successors in the operation of the Main Divi-
sion of the Klamath Project in advance of the delivery of
water each year and in any event not later than April 1 of
such year.

### Penalty for Delinquency in Payment

14.  To every instalment of money required to be paid
under this contract which shall remain unpaid after the same
shall become due, there shall be added at once a penalty of
one-half of one per centum ($\frac{1}{2}$%), and thereafter a like penalty
of one-half of one per centum ($\frac{1}{2}$%) on the first of each month
so long as such default shall continue; and the Contractor
hereby agrees to pay such penalty.

### Lien to Secure Payment of Charges

15.  For the purpose of securing payment to the United
States of the obligations, and each of them described in
Articles 12, 13, and 14, according to the conditions therein
stated, a lien in favor of the United States in the amount
of the total obligation described in said Articles 12, 13,
and 14, is hereby created and made a charge upon all of said
land both irrigable and non-irrigable, together with its
privileges and appurtenances, including all water rights and
irrigation works.  Upon the failure of the Contractor to pay
when due any instalment of charges described in said Articles,
the United States is empowered to foreclose the lien hereby
created in the manner provided by law.

### Refusal of Water in Case of Default

16.  The United States reserves the right to refuse to
deliver water to the Contractor in the event of default for a
period of more than twelve months in any payment due the
United States under this contract.  The provisions of this
article are not exclusive, and shall not in any manner hinder
the United States from exercising any other remedy to enforce
collection of any amount due hereunder.

-5-

001641

## Secretary may Make and Modify Regulations

17. There is reserved to the Secretary of the Interior the right to make regulations and modify the same in his discretion in general harmony, however, with this contract, to the end that the true intent of the law and of this contract shall be carried into full effect.

## Contingent Appropriation Clause

18. Where the operations of this contract extend beyond the current fiscal year, it is understood that the contract is made contingent upon Congress making the necessary appropriation for expenditures thereunder after such current year has expired. In case such appropriation as may be necessary to carry out this contract is not made, the Contractor hereby releases the United States from all liability due to the failure of Congress to make such appropriation.

## Member of Congress Clause

19. No Member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this contract or to any benefit to arise therefrom. Nothing, however, herein contained shall be construed to extend to any incorporated company if the contract be for the general benefit of such corporation or company.

## Successors and Assigns Obligated

20. The terms of this contract shall inure to the benefit of and be binding upon the successors in interest and assigns of the parties hereto.

IN WITNESS WHEREOF the parties have hereunto subscribed their names as of the date first above written.

THE UNITED STATES OF AMERICA

By      B. E. Hayden
Superintendent, Bureau of Reclamation

Witnesses:

N. G. Wheeler

M. G. Hopkins

W. H. Hadley
Contractor

Susan C. Hadley
Contractor

Map is attached to contract dated May 15, 1951, No. 18r-414, with R.E.Shields, et al.

P.O.Address:

Klamath Falls, Oregon

-6-  R.F.D. #1, Box 587

001642

015499

STATE OF OREGON  )
                 ) SS.
COUNTY OF KLAMATH )

BE IT REMEMBERED, That on this **17th** day of **June**,
A. D., 193 **1**, before me, the undersigned, a Notary Public in
and for the said state and county, personally appeared the
within named **W. H. Hadley and Susan C. Hadley, his wife**

_____ who **are** known to me to be the
identical individual**s** described in and who executed the within
instrument, and acknowledged to me that **they** executed the same
freely and voluntarily.

IN TESTIMONY WHEREOF, I have hereunto set my hand and
official seal the day and year last above written.

                              R. S. Hopkins
                              Notary Public for Oregon

My Commission expires **Jan. 5, 1934**

(SEAL)

001643

Standard Form No. 1036 (Revised)
Form approved by
Comptroller General U. S.
August 20, 1930

S**TEMENT AND CERTIFICATE
OF AWARD**

No. I8r–42O5500
(Contract)

Date June 17, 19 31

DEPARTMENT OF THE INTERIOR
(Department or establishment)

BUREAU OF RECLAMATION Klamath Falls, Oregon
(Bureau or office)                    (Location)

## METHOD OF OR ABSENCE OF ADVERTISING
(Section 3709 of the Revised Statutes)

1. After advertising in newspapers.
2. (a) After advertising by circular letters sent to_____dealers.
   (b) And by notices posted in public places.
   (If notices were not posted in addition to advertising by circular letters sent to dealers, explanation of such omission must be made. The notation on the certificate below must be "2 (a) (b)" or "2 (a)," depending on whether or not notices were posted.)
3. Without advertising, under an exigency of the service which existed prior to the order and would not admit of the delay incident to advertising.
4. Without advertising in accordance with _____
5. Without advertising, it being impracticable to secure competition because of Water supplied to land owner
   (Here state circumstances under which the securing of competition was impracticable)

## AWARD OF CONTRACT

A. To lowest bidder as to price (Expenditures).
B. To other than the lowest bidder as to price (Expenditures).
C. To highest bidder as to price (Receipts).
D. To other than the highest bidder as to price (Receipts)

## CERTIFICATE

I CERTIFY that the foregoing statement is true and correct; that the agreement was made in consequence of No._____ **5**
of the method of or absence of advertising and in accordance with award of contract lettered _____, as shown above; that where lower bids (expenditure contracts) or higher bids (receipt contracts) as to price were received a statement of reasons for their rejection, together with an abstract of bids received, including all lower than that accepted in case of expenditure contracts and all higher in case of receipt contracts, is given below or on the reverse hereof or on a separate sheet attached hereto; that the articles or services covered by the agreement (expenditure) are necessary for the public service, and that the prices charged are just and reasonable.

B. E. Hayden                    Superintendent, Bureau of Reclamation
(Signature of contracting officer)                    (Title)

NOTE.—This statement and certificate will be used to support all agreements, both formal contracts and less formal agreements of whatever character, involving the expenditure or receipt of public funds. It must be executed and signed by the contracting officer (unless the award is made by or is subject to approval by an officer other than the contracting officer, when execution and signature may be made by such officer).
U. S. GOVERNMENT PRINTING OFFICE: 1931      B–3099

015501



T—5231
August, 1927
Approved by the Department
January 4, 1927

## DEPARTMENT OF THE INTERIOR
### BUREAU OF RECLAMATION

Klamath _____ Irrigation Project

## RECORD OF EXECUTION OF CONTRACT

IN RE CONTRACT, and bond, if any, relating to above-named project, dated June 17, 1931
symbol and number I8r-426 ; made by W.H.Hadley and Susan C.Hadley
amount involved, $ 2482.00 ; authority No. _____ or clearing account _____
purpose Purchase of permanent water right - Pumping Division
Reference. Authority contained in Commissioners letter of 11/29/29 sub-
"ject "Contract of November 9, 1929, with Rex E.Bord for a water
right on the Pumping Division, Klamath Project"
Notice of execution of contract to be given Chief Engineer at Denver, Superintend-
ent at Klamath Falls, Oregon, District Counsel at Portland, Oregon
and _____

Place Klamath Falls, Oregon Date June 18, 1931

1. On this date the above-described contract was executed (or) passed, and bond, if
any, approved (or) passed, by this office, and transmitted to district counsel for legal
approval.

B. E. Hayden _____, Project Superintendent.

Inclosures:
Original and 5 copies of this form. Statement & Cert. of Award, Orig. &3
Original and 4 copies of contract.

Place Portland, Ore. Date June 22, 1931

2. On this date the above-described contract, with bond, if any, was given legal
approval by this office, and transmitted to the project (Klamath Falls) office.

Spencer L Baird Assoc, District Counsel.

Inclosures:
Original and 2 copies of this form.
Original and 3 copies of contract.

Denver, Colorado, Date _____
3. On this date the above-described contract was executed, and bond, if any,
approved by this office.

_____, Chief Engineer.

Denver, Colorado, Date _____
4. On this date the above-described contract, with bond, if any, was passed by this
office and transmitted to the Washington office.

_____, Chief Engineer.

Inclosures:
Original and _____ copies of this form.
Original and _____ copies of contract.

Washington, D. C., Date _____
5. On this date the above-described contract was executed, and bond, if any,
approved by _____

_____, Commissioner.

5—7416

001645

CERTIFICATE

TO ... ...TLETERS TO CONTRACT DATED JUNE 17, 1921,
SERIAL NO.102-206, BETWEEN THE UNITED STATES
AND W. H. HADLEY AND SUSAN G. HADLEY

* * * * *

I HEREBY CERTIFY that an examination of the Klamath
County, Oregon, records shows that W. H. Hadley and
Susan G. Hadley, his wife, have transferred their title
in the following described lands to John F. Goldsworthy
and Alice D. Goldsworthy, husband and wife:

SE¼ of Section 33 and SW¼ of Section 33, T.
40 ...; N. 11 ...; ....; NE¼ and NW¼ of
Section 4; and NW¼ and W½NW¼ of Section
5, T. 41 ..., N. 11 ..., W.M., containing in all
a total of 87.3 irrigable acres,

and W. H. Hadley and Susan G. Hadley, his wife, remain
the title holders to the SW¼ of Section 33, T. 40 ...,
N. 11 ..., W.M., containing an irrigable area of 8.4 acres.

Dated at Klamath Falls, Oregon, this 14th day of
November, 1934.

R. O. Wheeler
Chief Clerk
Bureau of Reclamation

001646

015503

Project Office Copy

Serial No. 62

(I8r-508)

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
KLAMATH PROJECT

1.   THIS AGREEMENT, made this ~~one~~ 7th day of July
nineteen hundred and ~~twenty~~ thirty, between THE UNITED STATES
OF AMERICA, acting for this purpose by contracting officer
executing this agreement                , pursuant to the
provisions of the Act of Congress of June 17, 1902 (32 Stat.,
388), and acts amendatory thereof or supplementary thereto,
all of which are commonly known and referred to as the National
Reclamation Laws, and particularly pursuant to the Warren Act
of February 21, 1911 (36 Stat., 925), the party of the first
part, hereinafter referred to as the United States, and

F. B. Hayes and Maud S. Hayes, his wife

                                     , the party of
the second part, hereinafter referred to as the Contractor,

        WITNESSETH:


                  Explanatory Recitals

    2.    WHEREAS, in connection with the construction and
operation of the Klamath Irrigation Project, Oregon-California,
after providing water sufficient for the irrigation of lands
supplied by gravity within the limits of the Klamath Irriga-
tion Project, the United States will have available an addi-
tional supply of water which may be utilized by pumping to
adjacent lands; and

    3.    WHEREAS, the Contractor is the owner of the lands
hereinafter described, for which he desires to secure a water
supply from the United States;

    4.    NOW, THEREFORE, for and in consideration of the
mutual and dependent stipulations herein set forth, it is
hereby agreed as follows:


                        -1-

001647

015504

### Furnishing of Water by United States

5.   The United States shall furnish each year to the Contractor during the usual irrigation season water from the C C a n a l   and deliver same to the Contractor at or near a turnout located in Lot 3 of Section 8, Township 40 South, Range 10 East, W.M., for the irrigation of the land of the Contractor described as follows: 10.8 acres in Lot 3 of Section 8, and 6.9 acres in Lot 10 of Section 17, all in Township 40 South, Range 10 East, W.M., containing in all a total of 17.7 irrigable acres, under a 16-foot pumping lift.

The quantity so delivered shall not exceed the  amount that can be furnished as determined by the Secretary of the Interior, at a cost of Thirty-four Dollars ($34.00) per acre; nor shall it exceed two acre-feet per acre of irrigable land during the usual irrigation season as established on the Klamath Project, being approximately that period from April 15 to September 30, inclusive, of each year; and in no event shall it exceed 0.6 acre-feet of water per irrigable acre in any one month; Provided, that all rights to the use and delivery of water acquired by the Contractor under this contract are inferior and subject to the prior rights reserved for the gravity lands of the Klamath Project.

### Water to be Delivered only on Demand

6.   The United States shall make delivery of water hereunder only upon written demand of the Contractor served on the Superintendent of the Klamath Project at least three days prior to the beginning of the irrigation season as herein defined.  The failure of the Contractor to make such demand or the failure by him to use said  water shall not in any way relieve the Contractor of his obligation to pay to the United States the amounts herein agreed upon at the time and in the manner specified.

-2-

015505

### Measurement of Water

7.    The water to be delivered hereunder shall be measured **at the turnout described in Article 5 hereof,** by such measuring and controlling devices or such automatic gauges, or both, as shall be satisfactory to the Superintendent or other officer of the United States in charge of the Klamath Project.  Said measuring and controlling devices shall be furnished, installed and maintained by and at the expense of the Contractor, but they shall be and remain at all times under the complete control of the United States, whose representative may at all times have access to them over the land of the Contractor.  All future repairs and renewals necessary to the operation of said turnout for delivery of water from the canal shall be done at the expense of the Contractor.

### Receipt of Water by Contractor

8.    The Contractor shall receive said irrigation water at the point of delivery above stated by means of said turnout, and shall at his own expense convey the water to his pumping plant through a canal constructed by him, and shall perform all acts required by law or custom in order to maintain his control over such water and to secure its lawful and proper diversion from the  C a n a l  of the Klamath Project as herein provided for, and the beneficial application of the same to the land of the Contractor above described.

### Shortage of Water

9.    On account of drought, inaccuracy in distribution or other cause, there may occur at times a shortage in the quantity of water provided for herein, and while the United States will use all reasonable means to guard against such shortages, in no event shall any liability accrue against the United States, its officers, agents or employees, for any damage, direct or indirect, arising therefrom, and the payments due hereunder shall not be reduced because of any such shortage.  All losses or diminution of water by reason of seepage, evaporation or other causes after delivery thereof by the United States at the aforesaid point of delivery shall be borne by the Contractor.

-3-

001649

015506

## Waste and Seepage Waters

10.  The United States reserves the right to collect for use on the Klamath Project all waste and seepage water coming from the land of the Contractor.  The Contractor shall have the right to discharge waste and seepage water into the drainage system of the Klamath Project.

## Operation of Irrigation System

11.  In the distribution and application of the water supply provided for herein, the Contractor shall comply with all of the applicable provisions of the Reclamation Law and the regulations of the Secretary of the Interior thereunder; and will operate and maintain his irrigation system and works to be constructed hereunder to the satisfaction of the United States.  The United States assumes no responsibility whatever for the safety, integrity, or operation of the same or any portion thereof, and the Contractor will hold the United States and its officers, agents and employees harmless from any and all claims arising in connection therewith.  During the irrigation season the United States shall have the right to place inspectors at any point on the works of the Contractor to make such measurements  investigations or observations as in the judgment of the Superintendent may be necessary for the enforcement of the provisions of this contract.

## Construction Charge

12.  The Contractor agrees to pay the United States as construction charges for the supply of water heretofore described the sum of $601.80 .  The total amount of such construction charges shall be paid in 40 annual instalments, due December 1 of each year beginning with the year 1931 .  The first 5 of such instalments shall each be 1 per centum, the next 10 instalments each 2 per centum, and the next 25 instalments each 3 per centum of the total construction charge; Provided, that the Contractor may pay the whole or any part of the construction charge within any shorter period.

## Operation and Maintenance Charges

13.  In addition to the construction charge described in Article 12 the Contractor agrees to pay the United States for the irrigable area of the land of the Contractor, annual

001650

015507

operation and maintenance charges equal to (a) one-half of the acre-charge assessed against such lands in the Main Division of the Klamath Project served by gravity, plus (b) an equitable proportion, as determined by the Secretary of the Interior, of any expenses incurred by the United States in regulating the waters from Upper Klamath Lake. The operation and maintenance charges due shall be payable to the United States or its successors in the operation of the Main Division of the Klamath Project in advance of the delivery of water each year and in any event not later than April 1 of such year.

### Penalty for Delinquency in Payment

14. To every instalment of money required to be paid under this contract which shall remain unpaid after the same shall become due, there shall be added at once a penalty of one-half of one per centum ($\frac{1}{2}$%), and thereafter a like penalty of one-half of one per centum ($\frac{1}{2}$%) on the first of each month so long as such default shall continue; and the Contractor hereby agrees to pay such penalty.

### Lien to Secure Payment of Charges

15. For the purpose of securing payment to the United States of the obligations, and each of them described in Articles 12, 13, and 14, according to the conditions therein stated, a lien in favor of the United States in the amount of the total obligation described in said Articles 12, 13, and 14, is hereby created and made a charge upon all of said land both irrigable and non-irrigable, together with its privileges and appurtenances, including all water rights and irrigation works. Upon the failure of the Contractor to pay when due any instalment of charges described in said Articles, the United States is empowered to foreclose the lien hereby created in the manner provided by law.

### Refusal of Water in Case of Default

16. The United States reserves the right to refuse to deliver water to the Contractor in the event of default for a period of more than twelve months in any payment due the United States under this contract. The provisions of this article are not exclusive, and shall not in any manner hinder the United States from exercising any other remedy to enforce collection of any amount due hereunder.

-5-

001651

015508

### Secretary may Make and Modify Regulations

17.  There is reserved to the Secretary of the Interior the right to make regulations and modify the same in his discretion in general harmony, however, with this contract, to the end that the true intent of the law and of this contract shall be carried into full effect.

### Contingent Appropriation Clause

18.  Where the operations of this contract extend beyond the current fiscal year, it is understood that the contract is made contingent upon Congress making the necessary appropriation for expenditures thereunder after such current year has expired.  In case such appropriation as may be necessary to carry out this contract is not made, the Contractor hereby releases the United States from all liability due to the failure of Congress to make such appropriation.

### Member of Congress Clause

19.  No Member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this contract or to any benefit to arise therefrom.  Nothing, however, herein contained shall be construed to extend to any incorporated company if the contract be for the general benefit of such corporation or company.

### Successors and Assigns Obligated

20.  The terms of this contract shall inure to the benefit of and be binding upon the successors in interest and assigns of the parties hereto.

IN WITNESS WHEREOF the parties have hereunto subscribed their names as of the date first above written.

Witnesses:

N. G. Wheeler

W. T. Tingley

THE UNITED STATES OF AMERICA

B. E. Hayden

By

Superintendent

F. B. Hayes

Contractor

Maud S. Hayes

Contractor

P.O.Address:

Klamath Falls, Oregon

Rt. 2, Box 23

-6-

015509

STATE OF OREGON    )
                   ) ss.
COUNTY OF KLAMATH  )

    BE IT REMEMBERED, That on this **7th** day of **July**,
A. D., 192**31**, before me, the undersigned, a Notary Public in
and for the said state and county, personally appeared the
within named **F.B.Hayes and Maud S.Hayes, husband and wife**

_____ who **are** known to me to be the
identical individual**s** described in and who executed the within
instrument, and acknowledged to me that **they** executed the same
freely and voluntarily.

    IN TESTIMONY WHEREOF, I have hereunto set my hand and
official seal the day and year last above written.

                        R. S. Hopkins
                        Notary Public for Oregon

    My Commission expires   **Jan. 5, 1934**

(SEAL)

001653

015510

102195

State of Oregon)
                )ss.
Klamath County )

This instrument was filed
for record on the 29th day
of December A.D. 1931 at 3:00
o'clock P.M. and duly recorded
in Vol. 96 of Deeds, Page 513.
C. R. DeLap, County Clerk
By_____, Deputy

(SEAL)                3.40

015511



T.40S.~R.10E.W.M

Total Irrigable Area 177 Acres.

SCALE 1" = 400'

DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
KLAMATH PROJECT~ORE~CAL.
IRRIGABLE LANDS
F.B. HAYES ~ PUMPING PLANT
DRAWN: E.L.S.

K-I-G-257 KLAMATH FALLS ORE.

001655

015512

Standard Form No. 1036 (Revised)
Form approved by
Comptroller General U. S.
August 20, 1930

S...TEMENT AND CERTIFICATE
OF AWARD

CONTRACT NUMBER: OR, IF NOT ASSIGNED, GIVE NAME OF CONTRACTOR

**Department of the Interior    Bureau of Reclamation    Klamath Falls, Oregon**

Date July 7 _____, 19 51

(Department or establishment)        (Bureau or office)        (Location)

## METHOD OF OR ABSENCE OF ADVERTISING
(Section 3709 of the Revised Statutes)

1. After advertising in newspapers.
2. (a) After advertising by circular letters sent to_____dealers.
   (b) And by notices posted in public places.
   (If notices were not posted in addition to advertising by circular letters sent to dealers, explanation of such omission must be made. The notation on the certificate below must be "2 (a) (b)" or "2 (a)," depending on whether or not notices were posted.)
3. Without advertising, under an exigency of the service which existed prior to the order and would not admit of the delay incident to advertising.
4. Without advertising in accordance with _____ Water supplied to land
5. Without advertising, it being impracticable to secure competition because of_____ owner

(Here state circumstances under which the securing of competition was impracticable)

## AWARD OF CONTRACT

A. To lowest bidder as to price (Expenditures).
B. To other than the lowest bidder as to price (Expenditures).
C. To highest bidder as to price (Receipts).
D. To other than the highest bidder as to price (Receipts)

## CERTIFICATE                                                             5

I CERTIFY that the foregoing statement is true and correct; that the agreement was made in consequence of No._____ of the method of or absence of advertising and in accordance with award of contract lettered _____, as shown above; that where lower bids (expenditure contracts) or higher bids (receipt contracts) as to price were received a statement of reasons for their rejection, together with an abstract of bids received, including all lower than that accepted in case of expenditure contracts and all higher in case of receipt contracts, is given below or on the reverse hereof or on a separate sheet attached hereto; that the articles or services covered by the agreement (expenditure) are necessary for the public service, and that the prices charged are just and reasonable.

Superintendent, Bureau of Reclamation

B. E. Hayden
(Signature of contracting officer)                              (Title)

NOTE.—This statement and certificate will be used to support all agreements, both formal contracts and less formal agreements of whatever character, involving the expenditure or receipt of public funds. It must be executed and signed by the contracting officer (unless the award is made by or is subject to approval by an officer other than the contracting officer, when execution and signature may be made by such officer).    U. S. GOVERNMENT PRINTING OFFICE 1931   10—1956

015513

7—523t
August, 1927
Approved by the Department
January 4, 1927

# DEPARTMENT OF THE INTERIOR
## BUREAU OF RECLAMATION
### Klamath
_____ Irrigation Project



# RECORD OF EXECUTION OF CONTRACT

IN RE CONTRACT, and bond, if any, relating to above-named project, dated ~~March~~ July 7, 1931
symbol and number 18r-508 ; made by F. S. Hayes and Maud S. Hayes
amount involved $ 601.00 authority No. or clearing account
purpose "Purchase of permanent Water Right - Pumping Division
Reference: Authority contained in Commissioners letter of 11/29/29 subject
"Contract of November 9, 1931 with Rex E. Bord for a water
right on the Pumping Division, Klamath Project"

Notice Klamath Falls, Oregon to be given Chief Engineer at Portland, Superintend-
ent at _____, District Counsel at _____
and _____

Klamath Falls, Oregon        December 23, 1931
Place _____ Date _____

1. On this date the above-described contract was executed (or) passed, and bond, if
any, approved (or) passed, by this office, and transmitted to district counsel for legal
approval.
B. E. Hayden
_____, Project Superintendent.

Inclosures:      3                   Statement & Cert. of Award, Orig. & 3
Original and  4  copies of this form. Blue Print, 5 copies
Original and _____ copies of contract.

_____
                                    Portland, Ore.      Date December 25, 1931
                                    Place _____ Date _____
2. On this date the above-described contract, ~~with bond, if any,~~ was given legal
approval by this office, and transmitted to the Project (Klamath Falls) office.
Spencer L. Baird        Associate
_____, District Counsel.

Inclosures:      2
Original and  3  copies of this form.
Original and _____ copies of contract.

_____
                                    Denver, Colorado, Date _____
3. On this date the above-described contract was executed, and bond, if any,
approved by this office.

_____, Chief Engineer.

_____
                                    Denver, Colorado, Date _____
4. On this date the above-described contract, with bond, if any, was passed by this
office and transmitted to the Washington office.

_____, Chief Engineer.

Inclosures:
Original and _____ copies of this form.
Original and _____ copies of contract.

_____
                                    Washington, D. C., Date _____
5. On this date the above-described contract was executed, and bond, if any,
approved by _____

_____, Commissioner.

6—7416

001657

015514

*Serial No. 63*

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
KLAMATH PROJECT                    IGP-510

1.    THIS AGREEMENT, made this 26th  day  December
nineteen hundred and thirty **one** , between THE UNITED STATES OF
AMERICA, acting for this purpose by the contracting officer exe-
cuting this agreement, pursuant to the provisions of the Act of
Congress of June 17, 1902 (32 Stat., 388), and acts amendatory
thereof or supplementary thereto, all of which are commonly known
and referred to as the National Reclamation Laws, and particu-
larly pursuant to the Warren Act of February 21, 1911 (36 Stat.,
925), the party of the first part, hereinafter referred to as the
United States, and

**George M. Rudolph and Ethel J. Rudolph, his wife,**

, the party of
the second part, hereinafter referred to as the Contractor.

WITNESSETH:

### Explanatory Recitals

2.    WHEREAS, in connection with the construction and opera-
tion of the Klamath Irrigation Project, Oregon-California, after
providing water sufficient for the irrigation of lands supplied
by gravity within the limits of the Klamath Irrigation Project,
the United States will have available an additional supply of
water which may be utilized by pumping to adjacent lands; and

3.    WHEREAS, the Contractor is the owner of the lands here-
inafter described, for which he desires to secure a water supply
from the United States;

4.    NOW, THEREFORE, for and in consideration of the mutual
and dependent stipulations herein set forth, it is hereby agreed
as follows:

-1-

001658

015515

## Furnishing of Water by United States

5.    The United States shall furnish each year to the Contractor during the usual irrigation season water from the C a n a l and deliver same to the Contractor at or near a turnout located in NW Lot 9 of Section 17, Township 40 South, Range 10 East, W. M.

for the irrigation of the land of the Contractor described as follows:
11.1 acres in Lot 8 and 19.0 acres in Lot 9, all in Section 17, Township 40 South, Range 10 East, W.M., containing in all a total of 30.1 acres irrigable under a 30-foot pumping lift.

The quantity so delivered shall not exceed the  amount that can be furnished as determined by the Secretary of the Interior, at a cost of Thirty-four Dollars ($34.00) per acre; nor shall it exceed two acre-feet per acre of irrigable land during the usual irrigation season as established on the Klamath Project, being approximately that period from April 15 to September 30, inclusive, of each year; and in no event shall it exceed 0.6 acre-feet of water per irrigable acre in any one month; Provided, that all rights to the use and delivery of water acquired by the Contractor under this contract are inferior and subject to the prior rights reserved for the gravity lands of the Klamath Project.

## Water to be Delivered only on Demand

6.    The United States shall make delivery of water hereunder only upon written demand of the Contractor served on the Superintendent of the Klamath Project at least three days prior to the beginning of the irrigation season as herein defined.  The failure of the Contractor to make such demand or the failure by him to use said  water shall not in any way relieve the Contractor of his obligation to pay to the United States the amounts herein agreed upon at the time and in the manner specified.

—2—

001659

015516

## Measurement of Water

7.   The water to be delivered hereunder shall be measured **at the turnout described in Article 3 hereof,** by such measuring and controlling devices or such automatic gauges, or both, as shall be satisfactory to the Superintendent or other officer of the United States in charge of the Klamath Project.  Said measuring and controlling devices shall be furnished, installed and maintained by and at the expense of the Contractor, but they shall be and remain at all times under the complete control of the United States, whose representative may at all times have access to them over the land of the Contractor.  All future repairs and renewals necessary to the operation of said turnout for delivery of water from the canal shall be done at the expense of the Contractor.

## Receipt of Water by Contractor

8.   The Contractor shall receive said irrigation water at the point of delivery above stated by means of said turnout, and shall at his own expense convey the water to his pumping plant through a canal constructed by him, and shall perform all acts required by law or custom in order to maintain his control over such water and to secure its lawful and proper diversion from the  G a n a l  of the Klamath Project as herein provided for, and the beneficial application of the same to the land of the Contractor above described.

## Shortage of Water

9.   On account of drought, inaccuracy in distribution or other cause, there may occur at times a shortage in the quantity of water provided for herein, and while the United States will use all reasonable means to guard against such shortages, in no event shall any liability accrue against the United States, its officers, agents or employees for any damage, direct or indirect, arising therefrom, and the payments due hereunder shall not be reduced because of any such shortage.  All losses or diminution of water by reason of seepage, evaporation or other causes after delivery thereof by the United States at the aforesaid point of delivery shall be borne by the Contractor.

001660

015517

### Waste and Seepage Waters

10. The United States reserves the right to collect for use on the Klamath Project all waste and seepage water coming from the land of the Contractor. The Contractor shall have the right to discharge waste and seepage water into the drainage system of the Klamath Project.

### Operation of Irrigation System

11. In the distribution and application of the water supply provided for herein, the Contractor shall comply with all of the applicable provisions of the Reclamation Law and the regulations of the Secretary of the Interior thereunder; and will operate and maintain his irrigation system and works to be constructed hereunder to the satisfaction of the United States. The United States assumes no responsibility whatever for the safety, integrity, or operation of the same or any portion thereof, and the Contractor will hold the United States and its officers, agents and employees harmless from any and all claims arising in connection therewith. During the irrigation season the United States shall have the right to place inspectors at any point on the works of the Contractor to make such measurements, investigations or observations as in the judgment of the Superintendent may be necessary for the enforcement of the provisions of this contract.

### Construction Charge

12. The Contractor agrees to pay the United States as construction charges for the supply of water heretofore described the sum of $1,023.40 The total amount of such construction charges shall be paid in 40 annual instalments, due December 1 of each year beginning with the year 1931. The first 5 of such instalments shall each be 1 per centum, the next 10 instalments each 2 per centum, and the next 25 instalments each 3 per centum of the total construction charge; Provided, that the Contractor may pay the whole or any part of the construction charge within any shorter period.

### Operation and Maintenance Charges

13. In addition to the construction charge described in Article 12 the Contractor agrees to pay the United States for the irrigable area of the land of the Contractor, annual

001661