017484

district to the United States hereunder.  In the event of completion of such pumping unit and appurtenant structures or discontinuance of expenditures thereon at a time so that the Secretary may furnish the Langell Valley Irrigation District a statement of the cost thereof at the same time a statement of the cost to such districts of the dredging in Clear Lake Reservoir is furnished to said district, the total cost to said district of its proportionate cost of the dredging of a channel in Clear Lake Reservoir plus the cost of installation of such pumping unit, shall be due and payable by the Langell Valley Irrigation District in instalments and at times as hereinbefore provided.  It is understood that within the discretion of the Secretary the installation of such pumping plant and appurtenant structures may be postponed to such time as in his judgment may be necessary and his decision in respect thereto, as in respect to all matters referred to herein as coming within his discretion shall be final and conclusive upon the districts.  In the event the said pumping unit installation is not complete, or expenditures thereon are not discontinued at such time as the dredging work herein provided is completed and statement of costs thereof furnished the Districts, as herein provided, then upon completion of the installation of said pumping unit and appurtenant structures or the discontinuance of expenditures thereon, the Secretary shall furnish to the Langell Valley Irrigation District an additional written statement of the total amount of construction costs payable from such district to the United States including the amount payable from said district of its share of the cost of dredging a

002353

channel in Clear Lake Reservoir, and the total amount thus shown to be owing from said district shall be due and payable by the Langell Valley Irrigation District in equal annual instalments of such number of years remaining of the thirty-five year period herein provided as shall not have elapsed since the time of furnishing the districts by the Secretary of statements of the total amount of the cost of dredging a channel in Clear Lake Reservoir as herein provided. The sum thus annually payable by the Langell Valley Irrigation District shall be divided into two equal instalments payable June 30 and December 31 of each year, beginning with June 30 of the year following the year in which the Secretary shall announce that the said pumping unit and appurtenant structures are installed so far as deemed necessary by the Secretary, or that the construction thereon has terminated, or that said pumping unit is ready to begin operation. It is agreed that the payments herein provided to be paid by the Langell Valley Irrigation District are in addition to those provided for in all previous contracts of such district with the United States, some of which are referred to.

## Maximum Obligation

12. The maximum additional obligation assumed by the Langell Valley Irrigation District hereunder is the sum of Thirty thousand two hundred eighty-eight dollars and forty-five cents ($30,288.45), exclusive of penalties and interest and annual operation and maintenance charges, and the maximum additional obligation assumed by the Horsefly Irrigation District hereunder is the sum of Fourteen thousand seven hundred eleven dollars and fifty-five cents

002354

017486

($14,711.55), exclusive of penalties and interest and annual operation and maintenance.

## General Liability of Districts

13.  The Districts, as herein provided, are obligated to pay to the United States the full amount agreed upon herein according to the terms stated regardless of any individual default in the payment of any assessment levied by the Districts, and the Districts agree to make an estimate of the probable delinquencies in the payment of assessments and to levy assessments in an amount sufficient to meet in full their payments to the United States notwithstanding such delinquencies, and the Districts further agree that, should the Districts ever become delinquent in the payment of any of the charges provided to be paid to the United States herein or in said contract of 1922 as amended, the Districts will increase their levies on each succeeding assessment date to such extent as may be necessary to meet such delinquent charges as well as estimated delinquencies for the next ensuing year, until such time as all of the charges due and delinquent from the districts to the United States have been fully paid.

## Penalty for Delinquency in Payment

14.  To every instalment of money required to be paid under this contract which shall remain unpaid after the same shall have become due, there shall be added at once a penalty of one-half of one per cent ($\frac{1}{2}\%$) thereof, and thereafter a like penalty of one-half of one per cent ($\frac{1}{2}\%$) on the first day of each month so long as such default shall continue; and the Districts hereby agree to pay said penalties.

002355

017487

Refusal of Water to Districts in Case of Default

15.   Pursuant to the provisions of section 6 of the act of Congress of August 13, 1914 (38 Stat., 686), the United States reserves the right to refuse to deliver water to the Districts in the event of default of the Districts for a period of more than twelve months in any payment due the United States under this contract or under the said contract of 1922 as amended; or, in the event of partial default by the Districts for a period of more than twelve months in any payment due the United States from the Districts, the United States may, at its option, reduce the amount of water delivered to the Districts instead of discontinuing such delivery.  The provisions of this article are not exclusive and shall not in any manner hinder the United States from exercising any other remedy to enforce collection of any amount due the United States hereunder, or under said contract of 1922 as amended.

Refusal of Water in Case of Individual Default

16.   Pursuant to the provisions of section 6 of the act of Congress of August 13, 1914 (38 Stat., 686), no water shall be delivered to or for any tract of land in the Districts, the owner or holder of which shall be in arrears more than twelve months in the payment of any charge for operation and maintenance or any annual construction charge and penalties authorized under this contract or under the said contract of 1922 as amended, or any assessment levied by the Districts for the purpose of paying such construction or operation and maintenance charges; and no water furnished from or made available by reason of the dredging or of the pumping unit installation provided for herein or made available

002356

017488

by any other works constructed by the United States shall be furnished to or delivered for any land, the owner or holder of which shall fail to pay in advance his proportionate share of the annual operation and maintenance costs or charges in connection with the channel so dredged or with the pumping unit so installed as herein provided, and the distribution of water therefrom, as the said costs and charges are determined and announced by the Secretary.  The provisions of this article are not exclusive and shall not in any manner hinder the United States from exercising any other remedy to enforce collection of any amount due to the United States from the Districts or in any manner hinder the Districts from exercising any other remedy to enforce collection of any amount due from any landowner to the Districts.

### All Benefits Conditional Upon Payment

17.  Should any assessment or assessments authorized by the terms of this agreement or by said contract of 1922 as amended, or needed to meet any district obligation under any of said contracts, be held irregular or void or the Districts or their officers be enjoined or restrained from making or collecting any assessments provided for herein, or in said contract of 1922 as amended, from any tract of land in the Districts at the instance of any owner or holder of land, then such tract shall have no right to any of the benefits of this contract or the said contract of 1922 as amended. And no water made available from the works constructed by the United States shall be delivered to or for such tract of land until construction and operation and maintenance charges at the rates and upon the terms and conditions provided herein and in said

-11-

002357

017489

contract of 1922 as amended shall have been paid by the landowners to the Districts and by the Districts to the United States. And should the Districts fail to levy or collect the necessary assessments to pay the United States the amounts herein or in said contract of 1922 as amended agreed to be paid, or should any such levy or assessment made by the Districts prove to be irregular or void, then the Secretary may proceed to announce the construction and operation and maintenance charges against the lands in the Districts or any part thereof in the manner provided in the said Reclamation laws and may require payment thereof as a condition to the delivery of water, or may himself make an apportionment of any construction or operation and maintenance indebtedness of the Districts to the United States to the various tracts of land in the said Districts, and may issue public notices to the full extent authorized under any of the said Federal reclamation laws, and the Secretary may by notice to the Districts require that no water furnished from any works constructed by the United States shall be delivered to or for any tract or tracts of land in the Districts until the construction and operation and maintenance charges, at the rates and upon the terms and conditions provided for herein or in the public notices heretofore or hereafter issued, shall have been paid to the United States. In the event that any assessment levied by the Districts for the purpose of meeting the payments provided for in this contract and the said contract of 1922 as amended is found to be irregular or void on account of the failure or neglect of the Districts, or either of them, to comply with any legal requirement

-12-

or on account of any defect in the proceedings of the Districts, each District is hereby authorized to collect from the lands therein on which such defective assessment is levied, or from the owners thereof, such lands' proportionate share of the charges provided for herein, or in said contract of 1922 as amended, as fiscal agent of the United States and to require payment thereof as a condition to the delivery of water; and shall promptly pay over all such construction and operation and maintenance collections to the United States.  It is further agreed and understood that the payment of construction and operation and maintenance charges, at the rates and upon the terms and conditions provided for herein, and at the rates and upon the terms and conditions provided for in the said contract of 1922 as amended and in the public notices provided for herein, and applicable to the lands in question, is a prerequisite to the right to receive water from any of the works constructed by the United States, and no irregularity in levying assessments by the District, or the lack of authority in the Districts, whether affecting the validity of the Districts' assessments or not, shall be held to authorize or permit any landowner of either District to demand or to receive water made available through irrigation works constructed by the United States unless construction and operation and maintenance charges at the rates and upon the terms and conditions provided for herein and in said contract of 1922 as amended, and said public notices, have been paid by such landowners.

### Election and Confirmation

18.   The execution of this contract shall be authorized by the

-13-

017491

qualified electors of the Districts at an election held for that
purpose.  Thereafter, without delay, the Districts shall prose-
cute to decree proceedings in the court for the judicial confir-
mation of the authorization of this contract.  The United States
shall not be in any way bound to proceed under the terms of this
contract until the confirmatory final judgment in such proceed-
ings shall have been rendered, including final decision on any
appeal prosecuted therefrom.  The District shall furnish the
United States for its files certified copies of all proceedings
relating to the election upon this contract and the confirmation
proceedings in connection therewith.

### Computation of Costs

19.  The costs of construction and operation and maintenance,
which under this contract the Districts obligate themselves to pay,
shall embrace all expenditures of whatsoever kind in connection
with, growing out of, or resulting from the work described, inclu-
ding the cost of labor, material, equipment, engineering and
legal work, superintendence, administration and overhead, right
of way, property, and damage of all kinds, and shall include all
sums expended by the United States in surveys and investigations
and plans and designs in connection with the proposed dredging and
pumping installation.

### Rules and Regulations

20.  The Secretary reserves the right, so far as the purport
thereof may be consistent with the provisions of this contract, to
make rules and regulations and to add to and modify them as may be
deemed proper and necessary to carry out the true intent and

-14-

017492

meaning of the law and of this contract, and to cover any details
in the administration or interpretation of the same which are not
covered by express provisions in the contract.

### Claims and Complaints of Incorrect Distribution
### of Water

21.   The United States and its agents in charge of the irri-
gation works provided for herein and the works provided for in said
contract of 1922 as amended, will, during the time that the United
States remains in charge of the operation and maintenance of any
part thereof, use their best efforts and judgment to deliver and
turn out for said Districts their proper and correct share of the
water actually available therefrom, and should either of the Dis-
tricts, or any of their water users, feel aggrieved on account of
any alleged shortage in the water supply delivered by the United
States hereunder, or on account of any alleged mistakes or inaccu-
racies in the division of the water among the parties entitled to
receive water from the works constructed by the United States,
such party shall at once apply to the Secretary for an order for
the correction of any alleged error in the delivery or division
of water from said works; but neither the United States nor its
officers or agents shall be liable in damages on account of any
such alleged shortage or mistake in the delivery or division of
water from the said works.

### Operation and Maintenance of Channel

22.   The cost of the operation and maintenance of the channel
provided for herein shall be paid by the Districts in the proportion

-15-

002361

017493

of 12500/21564 to the Langell Valley Irrigation District and 9004/21564 to the Horsefly Irrigation District, and the whole of the cost of operation and maintenance of the pumping unit provided for herein shall be paid by the Langell Valley Irrigation District, and such costs shall be in addition to each District's proportionate share of other operation and maintenance costs provided for in the contract of 1922 as amended. The estimated costs of the operation and maintenance of said channel and of said pumping unit will be included in the estimate of the total operation and maintenance charges for each irrigation season to be furnished the respective districts as provided in the contract of 1922 as amended and the total of such estimate, including the estimated cost of operation and maintenance of said channel and of said pumping unit, shall be paid by the Districts in the manner provided in said contract of 1922, as amended.

<u>To Use All Power to Collect Agreed Charges</u>

23. The Districts agree that they shall cause to be levied and collected all necessary assessments and will use all the powers and resources of the Districts including the taxing power of the Districts and the power to withhold the delivery of water, to collect and pay to the United States all charges provided for in this contract in full on or before the day that the same becomes due.

<u>Changes in Organization of Districts</u>

24. While this contract is in effect, no change shall be made in the organization of the Districts, either by the inclusion

002362

017494

or exclusion of lands, by consolidation or merger with another dis-
trict, by proceedings to dissolve, or otherwise, except upon the
written assent thereto of the Secretary.

### Officials not to Benefit

25.  No Member of or Delegate to Congress, or resident Com-
missioner, shall be admitted to any share or part of this contract
or to any benefit to arise therefrom.  Nothing, however, herein
contained shall be construed to extend to any incorporated company
if the contract be for the general benefit of such corporation or
company.

IN WITNESS WHEREOF the parties hereto have hereunto signed
their names the day and year first above written.

UNITED STATES OF AMERICA

By  /s/ Jos M Dixon
First Assistant Secretary of the Interior

(SEAL)
Attest:                          LANGELL VALLEY IRRIGATION DISTRICT

F. E. Thompson              By    O. S. Cambpell
Secretary                         President

HORSEFLY IRRIGATION DISTRICT

By    Irl Davis
President

-17-

002363

002364

017495

1.    This agreement, made and entered into this  10th
day of    July      , 1919, in pursuance of the Act of Congress
of June 17, 1902 (32 Stat., 388), known as the Reclamation Act,
and acts amendatory thereof and supplementary thereto, and in
particular Sections 2 and 3 of the Act of Congress approved
February 21, 1911 (36 Stat., 925), known as the Warren Act, by
and between the United States of America acting in this behalf

by  /s/S. G. Hopkins, Assistant Secretary

____ of the Interior                          , hereinafter styled the

United States, and the Horsefly Irrigation District, a public
corporation organized and existing under the laws of the State
of Oregon, with its principal place of business in the Town of
Bonanza, Klamath County, Oregon, hereinafter styled the District,

      WITNESSETH, That

      2.    WHEREAS in carrying out the provisions of the Reclama-
tion Law the United States has under construction the Klamath
Project, and has made appropriation of all unappropriated waters
of Lost River and tributaries including Bonanza Springs, in
Klamath County, Oregon, and

      3.    WHEREAS the District proposes to furnish water for
certain lands included in the area which the United States has
contemplated irrigating with water from Lost River at or below
said Bonanza Springs, and

      4.    WHEREAS the United States has expended large sums of
money in surveys and other investigations looking toward the
irrigation of lands in the vicinity of Bonanza, Oregon, includ-
ing the lands to be watered by the District.

      NOW, THEREFORE, for and in consideration of the mutual
agreements, herein contained, it is hereby agreed as follows:

      5.    The United States agrees to deliver to the District
from the flow of Lost River at or below said Bonanza Springs
forty-four (44) cubic feet of water per second during the
irrigation season of each year for the irrigation of not to ex-
ceed four thousand four hundred (4,400) acres of land within the
District.    It is understood, however, that the United States
shall not be liable for a failure to deliver water hereunder
caused by insufficient supply of water, hostile diversion, draught,
interruption of service made necessary by repairs, damages caus-
ed by flood, unlawful acts or unavoidable accidents or the diver-
sion of water under appropriations superior to those of the

017496

United States.   It is understood that it is the purpose of the District to acquire, under the provisions of this contract, a permanent right to the use of the water hereinbefore described, for the irrigation of lands within the District.

6.   The District will at its own cost convey the water released as herein provided to the place of use and perform all acts required by law or custom to maintain the control over such water and to secure the beneficial application of the same to District lands.   A failure to exercise diligence in placing the water herein contracted for to beneficial use shall result in an impairment of the water supply at the disposal of the United States. The supply to be furnished to the District shall be reduced to the extent of such impairment but the payments to be made hereunder shall not thereby be reduced except upon the written consent of the Secretary of the Interior.

7.   Such waters shall be supplied to the District and by the District to the landowners in compliance with Sections 2 and 3 of the aforesaid Warren Act.   No greater area than forty-four (4,400) hundred acres of land shall be irrigated unless pursuant to supplemental contract with the United States.   The United States shall have the right to place inspectors at any point in the District during the irrigation season and make such measurement, investigation and observation as are or may be necessary in the judgment of the Project Manager for the enforcement of this provision.

8.   All machinery and equipment installed by the District in connection with the use of said water shall be located and operated so as not to interfere with the establishment, operation and maintenance of such other machinery, equipment, or other construction as may hereafter be established by the United States or its successors in interest, in connection with the irrigation system of the Klamath Project.   The water taken by the District under this contract shall be measured by automatic gauges or such other means as shall be satisfactory to the Project Manager or other officer of the United States in charge of said Klamath Project, said measuring and controlling devices to be furnished, installed and maintained by and at the expense of the District; provided, that said measuring and controlling devices shall be and remain at all times under the complete control of the United States, whose representatives may at any time have access to them over the lands of the District.   If the District shall fail to construct or maintain such devices in a satisfactory manner the United States may install, repair or maintain the same at the expense of the District and until put in proper order may reduce the amount of water delivered to such an extent as may insure the United States against

-2-

the delivery of a greater supply of water than that to which the District is entitled.

9.    The District agrees to pay to the United States the full sum of Twenty-eight Thousand Six Hundred no/100 ($28,600.00) Dollars in forty (40) semi-annual instalments, payable June 1 and December 1 of each year beginning June 1, 1920 and ending December 1, 1939.    The first eight of such semi-annual instalments shall each be one percentum, the next four instalments shall be two percentum and the next twenty-eight instalments each three percentum of the said total sum of Twenty-eight Thousand Six Hundred no/100 ($28,600.00) Dollars.

10.    The District will also pay to the United States an annual operation and maintenance charge of Three Hundred Fifty-two and no/100 ($352.00) Dollars which shall be due on the first day of January of each year.    The first payment of the operation and maintenance charge shall be due the first day of the year following the date of this contract.    If any payment required by this and the preceding paragraph is not made when due, it shall bear interest at the rate of ten (10%) percent per annum from the due date until paid.

11.    The terms of this contract shall inure to the benefit of and be binding upon the successors in interest and assigns of either party hereto.

12.    No Member of or Delegate to Congress, or Resident Commissioner, after his election or appointment or either before or after he has qualified and during his continuance in office, and no officer, agent or employee of the Government shall be admitted to any share or part of this contract or agreement, or to any benefit to arise thereupon.    Nothing, however, herein contained shall be construed to extend to any incorporated company, where such contract or agreement is made for the general benefit of such incorporation or company, as provided in Section 16 of the Act of Congress approved March 4, 1909 (35 Stat., L. 1109).

In Witness Whereof the parties hereto have caused this Instrument to be executed the day and year first above written.

AUG 23 1919

Witnesses:                                    UNITED STATES OF AMERICA

_____

_____            By  (Sgd) S. G. Hopkins
                                          Assistant Secretary

L. C. Horn                              HORSEFLY IRRIGATION DISTRICT

F.W. Breedsword                        By Jacob Rueck            , President.

                                        By J.E. Paddock          , Secretary.

017498

IIr-112

DEPARTMENT OF THE INTERIOR

UNITED STATES RECLAMATION SERVICE

KLAMATH IRRIGATION PROJECT

CONTRACT MADE BY UNITED STATES, LANGELL VALLEY IRRIGATION

DISTRICT AND HORSEFLY IRRIGATION DISTRICT, AMEND-

ING CONTRACT DATED MARCH 27, 1922.

THIS CONTRACT, made this ___15th___ day of ___October___, 1923 between the UNITED STATES OF AMERICA, herein styled the United States, acting for this purpose through /s/ E. C. Finney First Asst. , Secretary of the Interior, herein styled the Secretary, under the provisions of the act of June 17, 1902, (32 Stat.,388), and acts amendatory thereof or supplementary thereto, herein styled the Reclamation Law, and the LANGELL VALLEY IRRIGATION DISTRICT, herein styled the Langell Valley District, a public corporation organized and existing under the laws of the State of Oregon, and having its principal place of business at Klamath Falls, Oregon, and the HORSEFLY IRRIGATION DISTRICT, herein styled the Horsefly District, a public corpora- tion organized and existing under the laws of the State of Ore- gon, having its principal place of business at Bonanza, Oregon, both herein styled the Districts, witnesseth:

### Purpose of contract.

2.   WHEREAS, the parties hereto entered into a contract

Approved as to form:
Date. 4-8-24
By. /s/ H. L. Holgate
CEW   District Counsel

002367

017499

dated March 27, 1922, providing, among other things for the sale by the United States to the Horsefly District of a right to the use of 4,200 acre-feet of water from Clear Lake Reservoir, for approximately 2,100 acres of land; and,

3.   WHEREAS, it is desired by the parties hereto to increase such quantity of water to 9,064 acre-feet for approximately 4,532 acres of land; and to amend the contract of March 27, 1922, accordingly:

4.   NOW, THEREFORE, in consideration of the premises and the covenants herein contained, it is agreed between the parties as follows:

### Amendment of Article 4.

5.   Article 4 of said contract dated March 27, 1922, is amended to read as follows:

4.   WHEREAS, the Horsefly District contains within its boundaries, adjacent to the lands of the Langell Valley District, approximately 4,532 acres of land which can be irrigated with said water if facilities for carrying the same from Lost River through the Langell Valley District are provided; and,

### Amendment of Article 16.

6.   Article 16 of said contract dated March 27, 1922, is amended to read as follows:

16.   The United States hereby sells and conveys to the Horsefly District for the sum of Fifty-six Thousand Six Hundred Fifty Dollars ($56,650.00) the annual use of Nine Thousand Sixty-four (9,064) acre-feet of water from Clear Lake Reservoir, to be delivered in Lost River at

-2-

the point of diversion herein specified, the same being
Two (2) acre-feet of water per acre for approximately Four
Thousand Five Hundred Thirty-two (4,532) acres of land
within the District, at a charge of Six Dollars and Twenty-
five Cents ($6.25) per acre-foot.

### Amendment of Article 20.

7.   Article 20 of said contract dated March 27, 1922,

is amended to read as follows:

20.   The Langell Valley District hereby agrees to
pay to the United States the following construction costs:
(a)   One Hundred Twenty-five-One Hundred Sixty-
sevenths (125/167ths) of the total cost of the irrigation
works described in Article 8 to be constructed by the United
States for the joint use of said Districts;
(b)   The total cost of the irrigation works to be
constructed for the Langell Valley District described in
Article 9;
(c)   The sum of Seventy-eight Thousand One Hundred
Twenty-five Dollars ($78,125) for water supply described in
Article 15;
Provided: That the aggregate sum payable under this
contract by the Langell Valley District to the United States
for construction costs, exclusive of penalties, shall not
exceed the sum of $387,000.

### Amendment of Article 21.

8.   Article 21 of said contract dated March 27, 1922,

is amended to read as follows:

21.   The Horsefly District hereby agrees to pay to
the United States the following construction costs;
(a)   Forty-two-One Hundred Sixty-sevenths (42/167ths)
of the total cost of the irrigation works described in Article
8 to be constructed by the United States for the joint use of
said two Districts;
(b)   The total cost of the irrigation works to be
constructed for the Horsefly District described in Article 10;
(c)   The sum of Fifty-six Thousand Six Hundred Fifty
Dollars ($56,650.00) for water supply described in Article 16;

-3-

017501

Provided: That the aggregate sum payable under this contract by the Horsefly District to the United States for construction costs, exclusive of penalties shall not exceed the sum of $120,000.

### Contract of March 27, 1922, otherwise unaffected.

9. The said contract dated March 27, 1922, between the United States, the Langell Valley Irrigation District, and the Horsefly Irrigation District, shall remain in full force and effect except as herein specifically modified.

### Member of Congress Clause.

10. No Member of or Delegate to Congress, or Resident Commissioner, after his election or appointment, or either before or after he has qualified and during his continuance in office, and no officer, agent, or employee of the Government, shall be admitted to any share or part of this contract or agreement, or to any benefit to arise thereupon. Nothing, however, herein contained shall be construed to extend to any incorporated company, where such contract or agreement is made for the general benefit of such incorporation or company, as provided in section 116 of the act of Congress approved March 4, 1909 (35 Stat.,1109).

IN WITNESS WHEREOF the parties hereto have hereunto

-4-

017502

signed their names the day and year first above written.

THE UNITED STATES OF AMERICA

By (Sgd.) E. C. Finney
First Assistant    Secretary of the Interior.

(SEAL)                    LANGELL VALLEY IRRIGATION DISTRICT
Attest:
                          By    John W. Turner
    A. L. Wishard                            President.
        Secretary

(SEAL)                    HORSEFLY IRRIGATION DISTRICT
Attest:
                          By    Jacob Aueck
    Wm. F. B. Chase                          President.
        Secretary.

-5-

002371

017503

Symbol No. Ilr-400

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
KLAMATH IRRIGATION PROJECT

CONTRACT BETWEEN THE UNITED STATES OF AMERICA AND THE HORSEFLY IRRI-
GATION DISTRICT, AMENDATORY OF AND SUPPLEMENTARY TO CONTRACTS DATED
JULY 10, 1919, MARCH 27, 1922, OCTOBER 12, 1922
AND OCTOBER 15, 1923.

1.    THIS AGREEMENT, made this ...7th...day of .........May........
A. D., nineteen hundred and twenty-nine, between THE UNITED STATES OF
AMERICA, acting for this purpose by Jos. M. Dixon, First Assistant
Secretary of the Interior, pursuant to the provisions of the Act of
June 17, 1902 (32 Stat., 388), and acts amendatory thereof or supp-
lementary thereto, and particularly the Act of May 25, 1926 (44 Stat.,
636), all commonly known as the Reclamation Law, hereinafter referred
to as the United States, and the HORSEFLY IRRIGATION DISTRICT, a public
corporation, created, organized and existing under and by virtue of
the laws of the State of Oregon, with its principal place of business
in the Town of Bonanza, County of Klamath, State of Oregon, hereinafter
referred to as the District:

WITNESSETH THAT:

EXPLANATORY RECITALS

2.    WHEREAS, the parties hereto entered into an agreement dated
July 10, 1919, symbol Ilr-400, wherein the United States agreed, under
conditions as stated therein, to deliver to the District from the flow
of Lost River at or below Bonanza Springs, Klamath County, Oregon,
forty-four (44) cubic feet of water per second during the irrigation

002372

017504

season of each year, for which the District agreed to pay, including also the payment of certain annual operation and maintenance charges; and

3. WHEREAS, the parties hereto entered into a further agreement dated October 12, 1922, symbol Ilr-400, wherein the United States agreed, under conditions as stated therein, to deliver to the District from the flow of Lost River at or below the aforesaid Bonanza Springs, an additional fifteen (15) cubic feet of water per second during the irrigation season of each year, for which the District agreed to pay, including also the payment of certain annual operation and maintenance charges; and

4. WHEREAS, the parties hereto and the Langell Valley Irrigation District entered into an agreement dated March 27, 1922, Symbol Ilr-112, whereunder, besides other stipulations and agreements, the United States agreed to do certain work for the District and thereafter to furnish it with irrigation water from Clear Lake Reservoir, and the District agreed to pay the cost thereof, which said agreement, in so far as it affected the Horsefly Irrigation District, was amended by agreement dated October 15, 1923, Symbol Ilr-112; and

5. WHEREAS, only two instalments of one per centum each of construction charges due from the District to the United States under the terms and conditions of the agreement of March 27, 1922, amended and supplemented as aforesaid, have accrued, and the District has made application for amendment thereof to the extent that it may receive the benefits of the Act of May 25, 1926, which authorizes an extension of time for the payment of unaccrued construction charges, as well as the

002373

benefits of subsection "E" of Section 4 of the Act of December 5, 1924 (42 Stat., 673,703), which authorizes a reduction in the rate of penalty prescribed by sections three and six of the Act of August 13, 1914 (38 Stat., 606); and

6.   WHEREAS, the District has also made application for amendment of the aforesaid agreements dated July 10, 1919, and October 12, 1922, to the extent that it may receive the benefits of the said Act of December 5, 1924, in so far only as it authorizes a reduction in the rate of penalty on delinquent accounts;

NOW, THEREFORE, it is agreed as follows:

Time of Payment of Unaccrued Construction Charges under
Agreement of March 27, 1922, as amended, Extended.

7.   The agreement of March 27, 1922, as amended by agreement of October 15, 1923, is hereby modified to the extent that the payment of unaccrued construction charges may be made in thirty-nine annual instalments.  The first four of such instalments shall each be three-fourths of one per centum, the next ten instalments each two per centum, the next twenty-five instalments each three per centum of the total accrued and deferred construction charge.  The sums annually payable shall be divided into two (2) equal instalments payable June 30 and December 31 of each year, beginning with June 30 of the year 1929.

Time of Payment of Unaccrued Construction Charges under
Agreement of July 10, 1919, changed.

8.   Article nine (9) of the aforesaid agreement of July 10, 1919, is hereby amended to the extent only of changing the dates June

- 3 -

017506

1 and December 1 as said dates appear therein, to read June 30 and December 31.

### Penalties and Interest Reduced.

9.   The penalty against delinquent accounts as provided in previous agreements, is hereby reduced to one-half of one per centum per month, which said penalty shall apply to all instalments of charges, or any part thereof, due from the District to the United States subsequent to December 5, 1924, and on all such instalments or any part thereof, that may remain unpaid by the District to the United States after the same became due, there shall be added to the amount unpaid a penalty of one-half per centum and a like penalty of one-half per centum of the amount unpaid on the first day of each month thereafter so long as such default shall continue.

### Operation and Maintenance Charges Payable Annually in Advance.

10.   Article twenty-three (23) of the agreement of March 27, 1922, is hereby amended so as to provide that the annual operation and maintenance charges due from the District under paragraph (a) thereof shall be that proportionate part of the total estimated cost of the operation and maintenance of Clear Lake Reservoir that 4532 acres of irrigable land bears to the total irrigable area receiving benefits from the Reservoir during the year as determined by the Secretary of the Interior.   Paragraph (b) of said article twenty-three (23) is hereby amended so as to provide that the District shall pay annually 4532/10782 of the total estimated cost, as determined by the Secretary, of the delivery of water for the District and the Langell Valley Irrigation District from Clear Lake Reservoir to the Diversion Dam in

- 4 -

Lost River near the California-Oregon boundary line.  An estimate of the total of such operation and maintenance charges for each irrigation season shall be furnished to the District by the proper officer of the United States on or before September first of the year preceding the year in which such charges shall become due, and the total of such estimate, plus the annual operation and maintenance charges due under Article Ten (10) of the agreement of July 10, 1919, and Article twelve (12) of the agreement of October 12, 1922, shall be paid semi-annually in advance of the delivery of water.  One-half of such charges shall be due and payable on January 1 of each year (except that the first half of such charges for the year 1929 shall become due and payable as of the date hereof), and the balance thereof shall become due and payable on July 1 of each year, and no water shall be delivered to any water user until such charges have been paid by the District to the United States.  Any differences that may later develop between the estimated cost and the actual cost of operation and maintenance, will be adjusted and reconciled in the estimates for the following year.

<u>Existing Contracts affected only as Expressly Modified.</u>

11.   Except as expressly modified hereby, the contracts of July 10, 1919, March 27, 1922, October 12, 1922, and October 15, 1923, between the United States and the District shall be and remain in full force and effect.

<u>Member of Congress Clause</u>

12.   No Member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this contract or

- 5 -

017508

to any benefit to arise therefrom.  Nothing, however, herein contained shall be construed to extend to any incorporated company if the contract be for the general benefit of such corporation or company.

IN WITNESS WHEREOF, the said parties have caused these presents to be subscribed by their duly authorized representatives the day and year first above written.

THE UNITED STATES OF AMERICA

By    Jos. M. Dixon

First Assistant   Secretary of the Interior

HORSEFLY IRRIGATION DISTRICT

(SEAL)

By    Irl Davis

President

Attest:

Wm. F. B. Chase

Secretary.

002377

017509

I 1 r - 400

### DEPARTMENT OF THE INTERIOR

### UNITED STATES RECLAMATION SERVICE

### KLAMATH IRRIGATION PROJECT, OREGON.

Contract made by the United States with the Horsefly Irri-
gation District providing for the delivery of
Water from the flow of Lost River at
or below Bonanza Springs.

THIS AGREEMENT, made and entered into this _____ 12th _____

day of _____ October _____, 1922, in pursuance of the act of

Congress of June 17, 1902 (32 Stat., 388), known as the Recla-

mation Act, and acts amendatory thereof or supplementary there-

to, and in particular  Sections 2 and 3 of the Act of Congress

approved February 21, 1911 (36 Stat., 925), known as the

Warren Act, by and between the United States of America acting

in this behalf by E. C. Finney, First Assistant Secretary of the
Interior,
/hereinafter styled the United States, and the Horsefly Irriga-

tion District, a public corporation organized and existing

under the laws of the State of Oregon, with its principal place

of business in the Town of Bonanza, Klamath County, Oregon,

hereinafter styled the District, witnesseth:

### Purpose of Agreement.

2.   WHEREAS, in carrying out the provisions of the Recla-

mation law the United States has under construction the Klamath

Project, and has made appropriation of all unappropriated waters

of Lost River and tributaries including Bonanza Springs, in

Klamath County, Oregon, and

Approved as to form:
Date..Oct.25/22.........
By./s/.N.L.Holgate......
District Counsel

002378

3.   WHEREAS, the District did on the 10th day of July, 1919, enter into a contract with the United States for a supply of forty-four (44) cubic feet of water per second during each irrigation season for the irrigation of not to exceed four thousand four hundred (4400) acres of land within the District, and

4.   WHEREAS, the District proposes to furnish water to fifteen hundred (1500) acres of additional land within the District, and

5.   WHEREAS, the United States has expended large sums of money in surveys and other investigations looking toward the irrigation of lands in the vicinity of Bonanza, Oregon, including the lands to be watered by the District.

6.   NOW, THEREFORE, in consideration of the covenants herein contained, it is agreed as follows:

### United States Agrees to Deliver Water.

7.   The United States agrees to deliver to the District from the flow of Lost River at or below Bonanza Springs, fifteen (15) cubic feet of water per second during the irrigation season of each year for the irrigation of not to exceed fifteen hundred (1500) acres of land within the District, which amount of water is in addition to the forty-four (44) second feet provided in the contract of July 10, 1919, and the area in addition to the four thousand four hundred (4400) acres referred to in said contract.  It is understood, however, that the United

-2-

States shall not be liable for failure to deliver water hereunder caused by insufficient supply of water, hostile diversion, drought, interruption of service made necessary by repairs, damages caused by floods, unlawful acts or unavoidable accidents or the diversion of water under appropriations superior to those of the United States. It is the purpose of the District to acquire under the provisions of this contract a permanent right to the use of water hereinbefore described for the irrigation of lands within the District.

### Distribution of Water.

8.    The District will at its own cost convey the water released as herein provided to the place of use and perform all acts required by law or custom to maintain its control over such water and to secure the beneficial application of the same to District lands. A failure to exercise diligence in placing the water herein contracted for to beneficial use shall result in an impairment of the water supply at the disposal of the United States. The supply to be furnished to the District shall be reduced to the extent of such impairment but the payments to be made hereunder shall not thereby be reduced except upon the written consent of the Secretary of the Interior.

### Measurement and Use of Water.

9.    Such water shall be supplied to the District and by the District to the landowners in compliance with Sections 2 and 3 of the aforesaid Warren Act. No greater area than fifteen

-3-

017512

hundred (1500) acres of land in addition to the four thousand

four hundred (4400) acres hereinabove referred to shall be

irrigated unless pursuant to supplemental contract with the

United States.  The United States shall have the right to place

inspectors at any point in the District during the irrigation

season and make such measurements, investigations and observa-

tions as are or may be necessary in the judgment of the Project

Manager for the enforcement of this provision.

### Location of Machinery and Measurement of Water

10.  All machinery and equipment installed by the District

in connection with the use of said water shall be located and

operated so as not to interfere with the establishment, opera-

tion and maintenance of such other machinery, equipment, or

other construction as may hereafter be established by the United

States or its successors in interest, in connection with the

irrigation system of the Klamath Project.  The water taken by

the District under this contract shall be measured by automatic

gauges or such other means as shall be satisfactory to the Proj-

ect Manager or other officer of the United States in charge of

said Klamath Project, said measuring and controlling devices to

be furnished, installed and maintained by and at the expense of

the District; provided, that said measuring and controlling

devices shall be and remain at all times under the complete con-

trol of the United States, whose representatives may at any time

have access to them over the lands of the District.  If the

002381

017513

District shall fail to construct or maintain such devices in a satisfactory manner the United States may install, repair or maintain the same at the expense of the District and until put in proper order may reduce the amount of water delivered to such an extent as may insure the United States against the delivery of a greater supply of water than that to which the District is entitled.

### Payment by the District for Water

11. In addition to the sums agreed to be paid in the contract of July 10, 1919, hereinbefore referred to, the District agrees to pay to the United States the full sum of nine thousand seven hundred fifty no/100 ($9750.00) Dollars in forty (40) semi-annual installments, payable June 30 and December 31 of each year beginning June 30, of the first year following the year when water is first delivered hereunder. The first eight (8) of such semi-annual installments shall each be one percentum, the next four (4) installments shall be each two percentum and the next twenty-eight (28) installments each three percentum of the said total sum of $9750.00.

### Payment of Operation and Maintenance

12. In addition to the operation and maintenance charges provided by contract of July 10, 1919, the District will also pay to the United States the annual operation and maintenance charge of one hundred twenty dollars ($120.00) which shall be due on the first day of January of each year beginning with the year 1923. If any payment required by this and the preceding paragraph is not

002382

made when due it shall bear interest at the rate of ten percent (10%) per annum from the due date until paid.

### Successors and Assigns Obligated.

13.  The terms of this contract shall inure to the benefit of and be binding upon the successors in interest and assigns of either party hereto.

### Member of Congress Clause

14.  No Member of or Delegate to Congress, or Resident Commissioner, after his election or appointment or either before or after he has qualified and during his continuance in office, and no officer, agent or employee of the Government shall be admitted to any share or part of this contract or agreement, or to any benefit to arise thereupon.  Nothing, however, herein contained shall be construed to extend to any incorporated company, where such contract or agreement is made for the general benefit of such incorporation or company, as provided in Section 16 of the Act of Congress approved March 4, 1909 (35 Stat., L. 1109).

IN WITNESS WHEREOF the parties hereto have caused this instrument to be executed the day and year first above written.

UNITED STATES OF AMERICA

By  /s/ E. C. Finney
First Assistant Secretary of the Interior.

Witness;

HORSEFLY IRRIGATION DISTRICT

By   Jacob Rueck, President

By    Wm. F. B. Chase, Secretary.

Wm. R. Irwin

Ward Rueck

(SEAL)

-6-

R.O. Draft 8/26-1970
Rev. R.O. 1/28-1972

1

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Klamath Project, Oregon-California

Contract No.
14-06-200-5738A

2

3

CONTRACT BETWEEN THE UNITED STATES OF AMERICA AND
CLYDE M. HORSLEY AND ALMETA HORSLEY
PROVIDING FOR PROJECT WATER SERVICE AND
PAYMENT OF CONSTRUCTION CHARGES

4

5

6   THIS CONTRACT, made this 19 day of January        ,

7   19 72 , in pursuance generally of the Act of June 17, 1902 (32 Stat. 388),

8   and acts amendatory thereof or supplementary thereto, all collectively

9   hereinafter referred to as the Federal reclamation laws, between THE

10  UNITED STATES OF AMERICA, hereinafter referred to as the United States,

11  represented by the Secretary of the Interior or his duly authorized

12  representative, hereinafter referred to as the Secretary or Contracting

13  Officer, and ____ Clyde M. Horsley and Almeta Horsley, his wife

14  _____, hereinafter referred to as the Contractor,

15       WITNESSETH, That:

16       WHEREAS, the United States has constructed the Klamath

17  Irrigation Project in the States of Oregon and California and has

18  available for delivery therefrom a supply of water; and

19       WHEREAS, the Contractor desires to contract with the United

20  States for a water supply for the irrigable area of the land herein

21  described;

017516

1        NOW, THEREFORE, in consideration of the covenants herein

2    contained, it is hereby agreed as follows:

3    1.  Upon the terms and conditions set forth below the United

4    States will provide irrigation water for delivery to and for

5    beneficial use upon the irrigable lands of the Contractor described

6    as follows:  10.0 acres in the $SE_4^1 SE_4^1$ Section 31, Township 39 South,
Range 9 East, Willamette Meridian containing in all 10.0 acres of

7    irrigable land.

8        $SE_4^1 SE_4^1$ - 10.0 total irrigable acres

9

10

11

12    2.  Delivery of water to the Contractor's irrigable lands will

13    be made through Klamath Project distribution facilities operated and

14    maintained by Klamath Irrigation District.  The Contractor shall schedule

15    all water to be delivered with Klamath Irrigation District and pay all

16    assessed charges for operation and maintenance to that District or its

17    successors in interest.

18

19

20

21

22

2

002385

017517

1    3.   In consideration of the delivery of water by the United States,
2    in accordance with the schedule of delivery submitted by the Contractor
3    to the Klamath Irrigation District and the terms and conditions of this
4    contract, the Contractor agrees to pay to the United States $ 425.00
5    in 80 equal semiannual installments, which shall be due and payable on
6    June 30 and December 31 of each year, commencing on June 30 following
7    the date of execution of this contract.

8    4.   The United States assumes no responsibility for and neither it
9    nor its officers, agents, or employees shall have any liability for or
10   on account of:

11       (a)   The quality of water to be diverted by the Contractor;
12       (b)   The control, carriage, handling, use, disposal, or
13   distribution of said water outside the facilities being operated
14   and maintained by the United States;
15       (c)   Claims of damage of any nature whatsoever, including,
16   but not limited to, property loss or damage, personal injury, or
17   death arising out of or connected with the control, carriage,
18   handling, use, disposal, or distribution of said water outside
19   of the hereinabove referred to facilities; and
20       (d)   Any damage whether direct or indirect arising out of
21   or in any manner caused by a shortage of water whether such
22   shortage be on account of errors in operation, drought, or
23   unavoidable causes.

3

002386

017518

1      5.  The Contractor shall pay a penalty on installments or charges

2 which become delinquent computed at the rate of 0.5% per month of the

3 amount of such delinquent installments or charges for each day from

4 such delinquency until paid: _Provided_, That no penalty shall be charged

5 to the Contractor unless such delinquency continues for more than 30 days.

6      6.  For the purpose of securing payment to the United States of

7 the obligations described in Article 3, according to the conditions

8 herein stated, a lien in favor of the United States in the amount of

9 the total obligation described in Article 3, is hereby created and made

10 a charge upon all of the said land.  Upon the failure of the Contractor

11 for 2 or more successive years to make payments described in Article 3

12 and at the times and in the manner therein described, the United States

13 is hereby authorized to foreclose the lien hereby created and to sell

14 said land to satisfy the obligation due the United States: _Provided_,

15 _however_, That no water shall be made available to the Contractor after

16 any 12-month period in which the Contractor may be in arrears in the

17 payment of charges accruing under this contract.

18      7.  The United States reserves the right to collect for use on the

19 Klamath Project all waste and seepage water coming from the lands of

20 the Contractor.  The Contractor shall have the right to discharge waste

21 and seepage water into the drainage system of the Klamath Project.

22

002387

017519

1    8.   (a)   The Secretary reserves the right to make, after an

2    opportunity has been offered to the Contractor for consultation, rules

3    and regulations consistent with the provisions of this contract, the

4    laws of the United States, and the State of Oregon, to add to or to

5    modify them as may be deemed proper and necessary to carry out this

6    contract, and to supply necessary details of its administration which

7    are not covered by express provisions of this contract.   The Contractor

8    agrees to observe such rules and regulations.

9    (b)   Where the terms of this contract provide for action to

10   be based upon the opinion or determination of either party to this

11   contract, whether or not stated to be conclusive, said terms shall not

12   be construed as permitting such action to be predicated upon arbitrary,

13   capricious, or unreasonable opinions or determinations.   The Secretary's

14   decision on all questions of fact arising under this contract shall be

15   made only after consultation with the Contractor and shall be conclusive

16   upon the parties thereto.

17   9.   The Contractor agrees to submit through the Klamath Irrigation

18   District to the Contracting Officer or his authorized representative,

19   on or before December 31 of each year, a report of crop and livestock

20   production in such form as the Contracting Officer may request.

21

22

5

002388

1    10.   The Contractor agrees that the proper officials, agents, or

2    employees of the United States shall have the right of ingress to and

3    egress from the property as described in Article 1 above, at all proper

4    times and places as may be necessary to carry out the provisions of this

5    contract.

6    11.   The expenditure or advance of any money or the performance of

7    any work by the United States hereunder which may require appropriation

8    of money by the Congress or the allotment of funds shall be contingent

9    upon such appropriation or allotment being made.   The failure of the

10   Congress to appropriate funds or the absence of any allotment of funds

11   shall not relieve the Contractor from any obligations under this contract.

12   No liability shall accrue to the United States in case such funds are not

13   appropriated or allotted.

14   12.   No Member of or Delegate to Congress or Resident Commissioner

15   shall be admitted to any share or part of this contract or to any

16   benefit that may arise herefrom.   This restriction shall not be construed

17   to extend to this contract if made with a corporation for its general

18   benefit.

19   13.   (a)   Any notice, demand, or request authorized or required by

20   this contract shall be deemed to have been given when mailed, postage

21   prepaid, or delivered to the Regional Director, Region 2, Bureau of

22   Reclamation, 2800 Cottage Way, Sacramento, California  95825, on behalf

8

1   of the United States and to _____ Clyde M. Horsley _____, Box 57

2   _____ Midland _____, _____ Oregon _____, _____ 97634

3   _____, on behalf of the Contractor.  The designation of

4   the addressee or the address may be changed by notice given in the same

5   manner as provided in this article for other notices.

6       14.   The provisions of this contract shall apply to and bind the

7   successors in interest and assigns of either party hereto.

8           IN WITNESS WHEREOF, the parties hereto have executed this

9   contract the day and year first hereinabove written.

10

11                                  THE UNITED STATES OF AMERICA

'2

13                          By _Robert Hammond_
        Acting     Regional Director, Region 2

14                          Bureau of Reclamation

15

16                          CONTRACTOR:

17                          _Clyde M. Horsley_
                            Clyde M. Horsley

18

19                          _Almeta Horsley_
                            Almeta Horsley

20

21

22

                                   7

017522

STATE OF OREGON )
                  ) ss.
COUNTY OF KLAMATH )

On this ___19___ day of ___January___, in the year 19 72,

before me, _____W. G. Ely_____, a notary public

in and for said County and State, residing therein, duly commissioned

and sworn, personally appeared ___Clyde M. Horsley and___

___Almeta Horsley___, known to me to be the person whose names

are
is subscribed to the within instrument, and acknowledged to me that he

executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed

my official seal the day and year in this certificate first above

written.

_____
Notary Public in and for the
County of Klamath, State of Oregon

(SEAL)

My commission expires ___December 4, 1973___

002391

017523

JOHN A. MARSHALL, PRESIDENT    WILLIAM RAJNUS, DIRECTOR    RAY L. ROBERTS, MANAGER    P. G. HORN, DIRECTOR    JOHN F. STEWART JR., SECRETARY

# KLAMATH IRRIGATION DISTRICT

HEADQUARTERS OFFICE
6640 K. I. D. LANE — (503) 882-6661
KLAMATH FALLS, OREGON 97601

December 8, 1971

Mr. Clyde Horsley
Box 57
Midland, Oregon - 97634

Dear Mr. Horsley:

The following Resolution was adopted at regular meeting of the Board of Directors, held on Friday, December 3, 1971:

"WHEREAS, Clyde Horsley is now, by purchase from the United States, the owner of land within the Klamath Irrigation District, and water is available for the 10.00 acres for which a water-right is desired, and

"WHEREAS, the United States is preparing an individual contract with Mr. Horsley, whereby the United States will collect original construction charges on the said 10.0 acres, and

"WHEREAS, water for use during the first half of the 1972 irrigation season, being through June 30, 1972, will be sold to Mr. Horsley on a rental basis at one half of the gravity Operation & Maintenance rate per acre,

"NOW, THEREFORE, BE IT RESOLVED: That the said 10.0 acres, being a portion of the SE¼SE¼, Section 31, Township 39 S, Range 9, E.W.M., in Mr. Horsley's ownership, be and are hereby placed on the Fiscal Year 1972-73 assessment roll of the Klamath Irrigation District for Operation & Maintenance and Supplemental Construction charges."

* * * * *

It was agreed that the supplemental construction charges would be prorated on assessment roll in accordance with the contracts, as follows:

Supplemental Pump      - 10 years @ 41¢ per acre per year
     "     C. Flume     - 11 years @ 56¢ per acre per year
     "     Drainage     - 20 years @ 42¢ per acre per year

Very truly yours,

KLAMATH IRRIGATION DISTRICT

Secretary & Office Manager

Please acknowledge by signing in space provided and return the original in the self-addressed stamped envelope enclosed.

Date:_____ 1971                    _____
                                              CLYDE HORSLEY

002392

002393
017524

R.O. Draft 2/12-1988

Contract No.
14-06-200-41-A
Amendatory

UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OR RECLAMATION

AMENDATORY CONTRACT BETWEEN THE UNITED STATES OF AMERICA
AND KLAMATH BASIN IMPROVEMENT DISTRICT FOR CONFORMANCE WITH SECTION 223
OF THE RECLAMATION REFORM ACT OF 1982 (TITLE II, PUBLIC LAW 97-293)

THIS CONTRACT AMENDMENT, made this 14th day of April, 1988,
pursuant to Small Reclamation Projects Act of August 6, 1956 (70 STAT.
1044), and acts amendatory thereof, including Section 223 of the
Reclamation Reform Act of 1982 (RRA) (96 STAT. 1272), is between the
UNITED STATES OF AMERICA, represented by the Contracting Officer
executing this amendment, and the KLAMATH BASIN IMPROVEMENT DISTRICT,
hereinafter call the Contractor.

It is agreed that the following change to Contract No.
14-06-200-41-A dated April 25, 1962 (existing contract), between the
United States and the Contractor, shall be effective commencing
October 12, 1982.

Article 16(c) of the existing contract, as amended, is
deleted and the following inserted in lieu thereof:

REPAYMENT BY THE DISTRICT

16. (c) With each annual principal installment due and payable
on January 1, the District shall pay to the United States interest at
the rate of three and three-fourths percent (3-3/4%) per annum on that
portion of the unpaid loan obligation which is attributable to
furnishing irrigation benefits to excess land at any time during the
preceding 12-month period. Such portion of the loan obligation shall
be determined by dividing the total acreage of "excess land", whether
irrigated or not irrigated, in the District during the preceding
12-month period by the total irrigable acreage in the District during
said period and multiplying the quotient so derived by the balance of
the loan obligation. Until such time as the loan obligation has been
determined, interest payments shall be computed on the basis of the
estimated loan obligation which shall be announced by the Contracting
Officer. For purposes of administering Part B (Small Reclamation
Project Loan) of this contract only, "excess land" shall mean that
part of the irrigable land receiving irrigation benefit and owned by a
qualified recipient in excess of 960 irrigable acres; or owned by a
limited recipient in excess of 320 irrigable acres, pursuant to
Section 223 of the Reclamation Reform Act of 1982 (Public Law 97-293).

1

017525

All other contract provisions shall remain in force and are not affected by this amendment.

IN WITNESS WHEREOF, the parties hereto have executed this amendatory contract the day and year first above written.

THE UNITED STATE OF AMERICA

Acting By _____

Regional Director, Mid-Pacific Region
Bureau of Reclamation

KLAMATH IMPROVEMENT DISTRICT

Attest:

By _____
President

_____
Secretary
MKKID

002395

017526

RESOLUTION

Approve the amending of a contract between the United
States and Klamath Basin Improvement District, No.
14-06-200-41-A, dated April 25, 1962, pursuant to
Section 223 of the Reclamation Reform Act of 1982
(96 Stat 1272) and subject to the approval of the
attorney for the District authorizing the President
and Secretary of the District to sign on behalf of
Klamath Basin District Improvement District.

Dated:      April 9, 1985

       We hereby certify that the above Resolution
was adopted by the landowners and the Board of
Directors of Klamath Basin Improvement District on
April 9, 1985.

                    _Cindy E Cherry_
                          Secretary

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Klamath Project, Oregon-California

Contract No.
14-06-200-41-A
April 25, 1962

CONTRACT BETWEEN THE UNITED STATES OF AMERICA AND KLAMATH BASIN
IMPROVEMENT DISTRICT PROVIDING FOR A WATER SUPPLY AND FOR
A LOAN FOR CONSTRUCTION OF A SMALL RECLAMATION PROJECT

Table of Contents

| Article No. | Title | Page No. |
|---|---|---|
| | Preamble | 1 |
| | Explanatory Recitals | 1- 3 |
| 1 | Definitions | 4- 5 |
| | PART A - WATER SUPPLY | |
| 2 | Water to be Furnished to District | 5- 6 |
| 3 | Measurement of Water | 6 |
| 4 | United States not Liable for Water Shortage | 7 |
| 5 | Use of Water Furnished to District | 7 |
| 6 | Excess Lands | 8 |
| | PART B - SMALL RECLAMATION PROJECT LOAN | |
| 7 | Estimated Cost--Loan--Contribution | 8- 9 |
| 8 | Work to be Performed by the District | 9-10 |
| 9 | Scheduling of Work | 10-12 |
| 10 | Advances by the United States | 12-16 |
| 11 | Accounts, Records, and Reports | 16-17 |
| 12 | Progress Reports, Drawings, and Inspection | 17-18 |
| 13 | Costs of the United States | 18-19 |
| 14 | Performance Bonds--Contracts with Others | 19 |
| 15 | Failure of the District to Complete the Project | 20-22 |
| 16 | Repayment by the District | 22-24 |
| 17 | Operation and Maintenance by the District | 24-26 |
| 18 | Right of United States to Assume Operation and Maintenance | 26-30 |
| | END OF PART B | |
| 19 | Other Charges to be Paid by the District | 30-32 |
| 20 | Agreed Charges a General Obligation of the District-- Levy of Taxes and Assessments--Fixing of Rates and Tolls | 33 |
| 21 | Refusal of Service in Case of Default | 33-34 |
| 22 | Penalty upon Delinquency in Payment | 34 |
| 23 | All Benefits Conditioned upon Payment | 34-35 |
| 24 | Books and Records--Access Thereto | 35-36 |

017528

Table of Contents   (cont'd)

| Article No. | Title | Page No. |
|---|---|---|
| 25 | Crop Census | 36 |
| 26 | Changes in Organization of District | 36 |
| 27 | Rules and Regulations | 36-37 |
| 28 | Contingent on Appropriations or Allotment of Funds | 37 |
| 29 | Copeland (Anti-Kickback) Act--Nonrebate of Wages | 37-38 |
| 30 | Assurances Relating to Validity of Contract | 38-39 |
| 31 | Remedies Under Contract not Exclusive--Waivers | 39 |
| 32 | Amendment or Repeal of Federal Reclamation Laws | 39 |
| 33 | Notices | 40 |
| 34 | Assignment Limited--Successors and Assigns Obligated | 40 |
| 35 | Determinations | 40 |
| 36 | Covenant Against Contingent Fees | 41 |
| 37 | Officials not to Benefit | 41 |
| 38 | Nondiscrimination | 42-45 |

002397

R. O. Draft 2/2-1962
Rev. W.O. 3-29-1962

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Klamath Project, Oregon-California

CONTRACT BETWEEN THE UNITED STATES OF AMERICA AND KLAMATH BASIN
IMPROVEMENT DISTRICT PROVIDING FOR A WATER SUPPLY AND FOR
A LOAN FOR CONSTRUCTION OF A SMALL RECLAMATION PROJECT

THIS CONTRACT, made this 25 day of April, 1962, in

pursuance generally of the Act of June 17, 1902 (32 Stat. 388), and

acts amendatory thereof or supplementary thereto, and particularly

pursuant to the Act of February 21, 1911 (36 Stat. 925), known as

the Warren Act, and the Small Reclamation Projects Act of 1956

(70 Stat. 1044), as amended (71 Stat. 48), all collectively hereinafter

referred to as the Federal reclamation laws, between THE UNITED STATES

OF AMERICA, hereinafter referred to as the United States, and the

KLAMATH BASIN IMPROVEMENT DISTRICT, hereinafter referred to as the

District, a public corporation of the State of Oregon, duly organized,

existing, and acting pursuant to the laws thereof, with its principal

place of business and office at Klamath Falls, Oregon,

WITNESSETH, That:

EXPLANATORY RECITALS

WHEREAS, the District wishes to secure, and the United

States is willing to furnish, surplus water from the Klamath Project,

Oregon-California, of the United States Department of the Interior,

017530

1    Bureau of Reclamation, hereinafter referred to as the Klamath

2    Project, for the irrigation of lands within the District; and

3            WHEREAS, delivery of surplus Klamath Project water to

4    the District's lands is dependent on the enlargement, extension,

5    or other modification of certain Klamath Project facilities, the

6    construction of additional facilities, and the integrated operation

7    of all thereof with other facilities of the Klamath Project which

8    are now operated and maintained by the Klamath Irrigation District

9    pursuant to a contract, No. 14-06-200-3784, dated November 29,

10    1954, with the United States, hereinafter referred to as the Operations

11    Contract; and

12            WHEREAS, the Small Reclamation Projects Act of 1956

13    provides for participation by non-Federal agencies in Federal

14    reclamation projects and for Federal assistance in similar projects

15    developed by non-Federal organizations; and

16            WHEREAS, the District has submitted to the Secretary

17    of the Interior a proposal in acceptable form and containing all

18    information and showings required by the Small Reclamation Projects

19    Act of 1956, accompanied by a payment of One Thousand Dollars

20    ($1,000), setting forth a plan and estimated cost in detail comparable

21    to those included in preauthorization reports required for a Federal

22    reclamation project; and

23

24                                2

25

26

017531

1          WHEREAS, the proposal of the District was submitted

2  for review to the Governor of the State of Oregon and his authorized

3  representative found the Project plan financially feasible and

4  recommended its approval and favorable comments have been received

5  from the State of California; and

6          WHEREAS, the proposal of the District is for the enlargement

7  of the Miller Hill Pumping Plant, certain portions of the G and

8  D Canal System, and the F Canal of the Klamath Project, and for

9  the construction of the Stukel Pumping Plant, the Poe Valley Pumping

10  Plant, and certain drain extensions and modifications; and

11         WHEREAS, it is contemplated that the Klamath Irrigation

12  District will enter into satisfactory contracts with the United

13  States and the District for operation and maintenance and to permit

14  construction of the works included in the District's Project proposal;

15  and

16         WHEREAS, the Secretary of the Interior has found the

17  Project proposal to be financially feasible, has determined that

18  it constitutes a reasonable risk under the provisions of the Small

19  Reclamation Projects Act of 1956, as amended, has approved the

20  Project proposal, and has transmitted to the Congress of the United

21  States the aforesaid findings and approval;

22         NOW, THEREFORE, in consideration of the mutual and dependent

23  covenants herein contained, it is agreed by the parties hereto

24  as follows:

25                                3

26

002400

017532

1

## DEFINITIONS

2    1.  When used herein, unless otherwise distinctly expressed

3  or manifestly incompatible with the intent hereof, the term:

4        (a)  "Secretary" or "Contracting Officer" shall mean

5        the Secretary of the Interior of the United States or his

6        duly authorized representative;

7        (b)  "Act" shall mean the Small Reclamation Projects

8   Act of 1956, as amended;

9        (c)  "year" shall mean the calendar year;

10        (d)  "fiscal year" shall mean the period July 1 through

11   the next following June 30;

12        (e)  "quarter" shall mean a 3-month period beginning

13   the 1st day of January, April, July, or October in any year;

14        (f)  "Project" shall mean and include the undertaking

15   for construction of additional works and the enlargement,

16   extension, or other modification of existing works of the

17   Klamath Project as set forth in the proposal of the District

18   or in any agreed-upon modification thereof;

19        (g)  "Enlarged Works" shall mean works and facilities

20   of the Klamath Project as enlarged, extended, or otherwise

21   modified in accordance with the plan set forth in the proposal

22   of the District or in any agreed-upon modification thereof,

23

24                              4

25

26

017533

1       together with all lands and interest in lands required for

2       successful construction, operation, and maintenance thereof;

3              (h)  "Additional Works" shall mean works and facilities

4       other than the Enlarged Works constructed in accordance with

5       the plan set forth in the proposal of the District or any

6       approved modification thereof, together with all lands and

7       interest in lands required for successful construction,

8       operation, and maintenance thereof;

9              (i)  "Project Works" shall mean and include Enlarged

10      Works and Additional Works; and

11             (j)  "surplus water" shall mean water available from

12      the Klamath Project in excess of that required to meet the

13      prior rights of lands and entrymen under the Klamath Project.

14      <u>PART A - WATER SUPPLY</u>

15                      <u>WATER TO BE FURNISHED TO DISTRICT</u>

16             2.  (a)  Upon completion of the Project, or portions thereof

17      adequate to enable delivery, as determined by the Contracting

18      Officer, the United States will deliver or cause to be delivered

19      to the District each year surplus water in such quantities as

20      can be beneficially used for irrigation of lands included within

21      the District but not to exceed an average of three and six-tenths

22      (3.6) acre-feet per irrigable acre.  Such water will be delivered

23

24

25

                                5

017534

1    at such points as may be agreed upon by the District and Klamath

2    Irrigation District with the approval of the Contracting Officer,

3    or, in the absence of such agreement, at such points as may be

4    designated by the Contracting Officer.

5        (b)  The United States shall not be responsible for the

6    control, handling, carriage, use, disposal, or distribution of water

7    which is furnished at the delivery points established pursuant to

8    subdivision (a) of this article nor for claim of damage of any nature

9    whatsoever including, but not limited to, property damage, personal

10   injury or death arising out of or connected with the control, carriage,

11   handling, use, disposal, or distribution of such water beyond such

12   delivery points.

13                   MEASUREMENT OF WATER

14      3.  The water furnished to the District hereunder shall be

15   measured by such measuring and controlling devices or such automatic

16   gages, or both, satisfactory to the Contracting Officer, at such point

17   or points as may be designated by the Contracting Officer.  Said

18   measuring and controlling devices shall be furnished, installed, and

19   maintained as required for Project operations and preservation of

20   water rights and at no expense to the United States.  The District

21   shall arrange for collection of the data therefrom and for furnishing

22   the United States written reports of such data for each month on or

23   before the 7th day of the following month or at any other time on

24   request.

25

002403

017535

1            UNITED STATES NOT LIABLE FOR WATER SHORTAGE

2         4.  On account of drought, inaccuracy in distribution, or

3 other cause, there may occur at times a shortage in the quantity

4 of water that is available for delivery hereunder and in no event

5 shall any liability accrue against the United States or any of

6 its officers, agents, or employees for any damage, direct or

7 indirect, arising therefrom.  In any year in which there may

8 occur a shortage from any cause, the United States reserves the

9 right to apportion the available surplus water supply among the

10 District and others entitled, under existing and future contracts

11 made pursuant to the Warren Act, to receive water from the Klamath

12 Project.

13           USE OF WATER FURNISHED TO DISTRICT

14         5.  The District agrees that water furnished to it by the

15 United States pursuant to Article 2 will not be delivered or

16 furnished by the District for any purpose other than irrigation

17 and domestic purposes incidental thereto, including the watering

18 of livestock on lands included within the District.  The United

19 States does not abandon or relinquish any of the waste, seepage,

20 or return-flow waters coming from the lands of the District and

21 diverted from water furnished the District hereunder, but the

22 same are reserved and intended to be retained by the United States

23 for the use and benefit of the Klamath Project.

24                       7

25

26

1        EXCESS LANDS

2   6. Except as permitted by the Act of July 11, 1956 (70 Stat. 524)

3 or the Act of September 2, 1960 (74 Stat. 732), water made available

4 hereunder shall not be delivered to more than one hundred sixty (160)

5 irrigable acres held in the beneficial ownership of any single person

6 whether a beneficiary of a trust approved by the Contracting Officer,

7 a natural person, or a corporation, or to more than three hundred

8 twenty (320) irrigable acres held in the beneficial ownership of husband

9 and wife jointly, as tenants in common, or by entirety, or as community

10 property.  Irrigable lands in excess of the above limits are hereinafter

11 referred to as "excess lands."

12 PART B - SMALL RECLAMATION PROJECT LOAN

13     ESTIMATED COST--LOAN--CONTRIBUTION

14   7. (a) The estimated total cost of the Project is Nine Hundred

15 and Ninety-two Thousand One Hundred Dollars ($992,100), including costs

16 and expenses incurred or to be incurred by the United States as identified

17 in Article 11.

18    (b) Of the total estimated cost of the Project, the District

19 will contribute the cost of acquisition of all lands and interest in

20 lands necessary for the successful construction, operation, and main-

21 tenance of the Project; funds expended by the District in the development

22 of its Project plan and proposal; and preconstruction overhead and con-

23 struction supervision not to exceed Twenty-six Thousand Dollars ($26,000).

24

25           8

017537

1    (c)  The District filing fee submitted with its application

2 will be used to defray One Thousand Dollars ($1,000) of the cost

3 incurred by the United States in examining the loan proposal.

4    (d)  The United States will lend to the District an amount

5 of money not to exceed whichever is the lesser of:

6      (i)  Nine Hundred and Forty-two Thousand One

7   Hundred Dollars ($942,100); or

8      (ii)  the actual cost of the Project not including

9   the District's contribution and filing fee.

10      WORK TO BE PERFORMED BY THE DISTRICT

11   8.  (a)  To the extent that funds therefor may now or hereafter

12 be available pursuant to the terms of this contract, the District shall,

13 on its own account or by contract or contracts, construct the Project

14 substantially in accordance with the plan set forth in the proposal of

15 the District subject to such modifications or changes as may be agreed

16 upon by the District and the Contracting Officer.  No contracts for the

17 construction of the Enlarged Works shall be executed without the prior

18 approval of the Contracting Officer.  The District agrees to perform or

19 cause to be performed all of said work pursuant to detailed plans,

20 designs, estimates, and specifications and in accordance with sound

21 engineering practices, all as approved by the Contracting Officer as

22 adequate to protect the interests of the United States in the Project

23

24

25

9

1   and in the Klamath Project.  The District agrees to perform or cause

2   to be performed all of said work or so much thereof as may be ac-

3   complished within the estimated total cost of the Project less costs

4   incurred by the United States to be charged to the amount of the

5   loan to the District pursuant to Article 13 hereof.

6          (b)  The Project shall be considered completed for the

7   purposes of this contract when so determined by the Contracting

8   Officer.  The determination of the Contracting Officer shall be

9   announced by written notice to the District and may be made upon

10  the basis of substantial completion of the Project in accordance

11  with the plan and proposal submitted by the District, subject to

12  such modifications as may have been agreed upon by the District

13  and the Contracting Officer, or upon the basis of the completion

14  of such part thereof as funds made available pursuant to the contract

15  will permit, or upon the basis specified in subsection (ii) of sub-

16  division (a) and subdivision (b) of Article 15 of this contract.

17                          SCHEDULING OF WORK

18          9.  After execution of this contract the District shall submit

19  to the Contracting Officer (1) a master work schedule showing the

20  entire work to be performed or caused to be performed under this

21  contract and the total estimated cost thereof, and (2) a detailed

22  schedule of said work for the period from initiation of work through

23

24

25

10

017539

1    the first full quarter together with the estimated cost thereof.

2    The schedule under (2) above or any similar schedule for a sub-

3    sequent quarter may include in the estimated costs the sums required

4    for the preparation of designs and specifications, engineers' esti-

5    mates, legal work, and other preconstruction activities required to

6    initiate the stage of construction involved, whether incurred or to

7    be incurred subsequent to or prior to the execution of this contract

8    and subsequent to June 16, 1961.  To the extent that the work des-

9    cription or estimates required for any schedule hereunder are set

10    out adequately in the approved proposal of the District, such work

11    description or estimates may be incorporated in such schedule by

12    reference to appropriate items in said approved proposal.  Any work

13    schedule may be modified by change in or addition or deletion of

14    items only upon approval by the Contracting Officer of such modifica-

15    tion, addition, or deletion and upon his determination that the same

16    is made timely with respect to the schedule affected.  With respect

17    to schedules covering work and estimates subsequent to the initial

18    quarter, submittal shall be made to the Contracting Officer not less

19    than fifteen (15) days prior to the beginning of the quarter covered

20    by such schedule.  Engineering plans, designs, and specifications

21    required for work to be performed in any quarter shall, notwithstanding

22    any other provision of this article, be submitted to the Contracting

23

24

25

11

002408

017540

1  Officer sufficiently in advance of the proposed construction date to

2  permit his review and shall be in sufficient detail to permit an

3  engineering analysis of structures and to clearly establish proposed

4  standards for construction thereof.  For purposes of this contract the

5  Contracting Officer shall be the sole judge of the adequacy of such

6  plans and specifications insofar as necessary to determine that they

7  are in accord with sound engineering practices and adequate to protect

8  the interests of the United States.  The Contracting Officer shall use

9  due diligence in processing plans, designs, and specifications sub-

10  mitted by the District and his approval, disapproval, or indicated

11  modification thereof shall be transmitted to the District in writing.

12  The work schedule and cost estimates herein referred to shall be sub-

13  mitted by the District on such forms as the Contracting Officer may

14  designate for the purpose and shall contain such data and information

15  as the Contracting Officer may require.

16  <center>ADVANCES BY THE UNITED STATES</center>

17      19.  (a)  No funds shall be advanced hereunder until:

18          (i)  After the execution of a contract, satisfactory

19          in form and substance to the Contracting Officer, between the

20          District and the Klamath Irrigation District wherein the latter

21          agrees to care for, operate, and maintain the Project Works

22          and to deliver water to the District in accordance with the

23

24

25

<center>12</center>

017541

1   terms of this contract and also agrees to be bound by the

2   provisions of this contract relating to the care, operation,

3   and maintenance of the Project Works by either the Klamath

4   Irrigation District or the United States;

5              (ii)  After the execution of a contract between

6   the Klamath Irrigation District and the United States amending

7   the Operations Contract so as to permit the construction by

8   the District of the Enlarged Works, and providing for the care,

9   operation, and maintenance of the Project Works by the Klamath

10  Irrigation District.

11        (b)  Subject to the provisions of subdivision (a) hereof and

12  the approval by the Contracting Officer of (1) the master work schedule

13  required by Article 9 and (2) a detailed work schedule for the initial

14  construction period or any subsequent quarter as required in said Article 9,

15  the United States will advance to the District not later than the first day

16  of the month following approval of such detailed schedule such sums of

17  money as can be economically and beneficially used in carrying out the

18  work schedule for the applicable period, less any balance of funds available

19  therefor from prior advances.  In the event that funds advanced by the

20  United States are expended prior to the end of the initial construction

21  period or any subsequent quarter, additional sums may be advanced on the

22  basis of a supplemental detailed work schedule approved in like manner

23

24

25

002410

1    as the first. Each quarterly or other advance of funds subsequent to

2    the advance for the initial construction period shall be dependent

3    upon the performance by the District, in a manner satisfactory to the

4    Contracting Officer, of any work scheduled for prior performance, but

5    such advance shall not commit the Contracting Officer to approval of

6    performance of such prior work. The Contracting Officer, at his

7    election, may withhold any advance of funds contemplated hereunder at

8    any time when, in his opinion, the District is in default or delinquent

9    with respect to performance of any of the terms or conditions of this

10    contract.

11    (c) Prior to actual construction work during any quarter

12    the District shall acquire, by title satisfactory to the Contracting

13    Officer, the lands and interests therein necessary for such work, or

14    the District shall commence appropriate eminent domain proceedings in

15    a court of competent jurisdiction for the acquisition of such lands

16    or interest in lands and shall obtain, pursuant to said proceedings,

17    the right to immediate possession thereof and shall agree in writing

18    to prosecute diligently said proceedings to final judgment and to

19    obtain title satisfactory to the Contracting Officer to the lands or

20    interests therein to be acquired.

21    (d) The United States hereby authorizes the District to

22    construct the Enlarged Works on the terms and conditions stated in

23

24

25

017543

1. this contract.  The Enlarged Works shall be and remain the property
2. of the United States and part of its Klamath Project.  The District
3. shall execute and deliver to the United States such further instruments
4. of assurance of title as may be requested by the Contracting Officer.
5. The United States hereby grants the District the right to construct,
6. operate, and maintain the Additional Works on, along, and across the
7. property of the United States held for the Klamath Project subject to
8. such restrictions and regulations as to type, location, method of
9. installation, operation, and maintenance as may be prescribed by the
10. Contracting Officer.  At all reasonable times the Contracting Officer
11. shall have the right of ingress to and egress from the property of the
12. District for the purpose of inspection to determine compliance with or
13. to enforce the provisions of this contract.
14.     (e)  The funds advanced hereunder by the United States shall
15. be used only for costs and expenses incurred by the District for the
16. performance of work schedules approved pursuant to Article 9 and shall
17. not be used for the District's costs or expenses of acquiring any lands
18. or interests therein or any rights to the use of water necessary for the
19. successful construction, operation, and maintenance of the Project, nor
20. shall such funds be used to reimburse the District in any manner for the
21. cost of preparation of the District's plan and proposal.  All costs and
22. expenses of the Project, whether incurred prior to or after execution of
23.
24.
25.

15

002412

017544

1  this contract, shall be limited to such as are reasonably incurred in

2  the exercise of sound engineering, construction, and business practices,

3  and are chargeable or allocable to the Project.

4       (f)  All funds advanced hereunder by the United States shall

5  be deposited by the District in a special account in a bank which is

6  a member of the Federal Reserve System and such account shall be main-

7  tained until all funds so advanced shall have been expended or returned

8  to the United States.  Interest credited by the depository bank on funds

9  advanced shall be considered as advances by the United States.

10                 ACCOUNTS, RECORDS, AND REPORTS

11     11.  During the performance of the work under this contract, the

12  District shall maintain books of account under this contract separate

13  and apart from any other of its books of account and so keep them and

14  all other books, records, and memoranda which support in any way the

15  entries in such books of account as to be able to furnish readily full

16  information as to any item included in any account.  Each entry shall

17  be supported by such detailed information as will permit a ready identi-

18  fication, analysis, and verification of all of the facts relevant thereto.

19  Any such books and records which support entries to the accounts shall

20  be retained until destruction is permitted by the Contracting Officer.

21  The books of account maintained by the District and by the United States,

22  relating to matters covered by this contract, shall be open to inspection

23

24

25

002413

1  and audit by representatives of either party at all times during

2  regular office hours of each.

3  <div align="center">PROGRESS REPORTS, DRAWINGS, AND INSPECTION</div>

4      12. (a)  The District shall prepare and furnish to the Contracting

5  Officer, at such times as he shall indicate but not oftener than once

6  each month, written reports fully describing the progress and cost of

7  work performed by the District or for which costs have been incurred

8  or funds obligated by the District pursuant to this contract to the

9  end of the preceding month or other designated period.  Upon completion

10  of the Project, the District shall furnish copies of "as built" drawings

11  of all major structures to the extent requested by the Contracting

12  Officer.

13          (b)  Any and all work undertaken by the District pursuant

14  to this contract shall be open and subject to inspection by the

15  Contracting Officer and his designated representative at all times

16  during the progress thereof and on completion.  Should it be deter-

17  mined that any such work is not being performed or has not been completed

18  in accordance with applicable schedules, plans, and specifications and

19  otherwise in accordance with the terms and provisions of this contract,

20  the District shall be given written notice thereof within a reasonable

21  time after inspection.  No work undertaken by the District hereunder

22  shall be deemed to be completed until the same shall have been approved

23  by the Contracting Officer.

24

25

<div align="center">17</div>

002414

1    (c)  The District may utilize in connection with the

2    performance of work under this contract such independent expert,

3    consulting, or supervisory services as it may deem necessary, and

4    the reasonable cost of such services shall be considered a part of

5    the cost of the work performed.

6    ## COSTS OF THE UNITED STATES

7    13.  All costs, including those in the sum of Eighty Thousand

8    Dollars ($80,000) incurred by the United States for investigations

9    prior to March 1, 1961, heretofore or hereafter incurred by the

10   United States prior to the commencement of the repayment period

11   for examination of the District's proposal, surveys, investigations,

12   and for contract negotiations and in performance and administration

13   of this contract, the sum of Eleven Thousand Dollars ($11,000)

14   as the allocated cost of additional capacity which was built into

15   the existing Adams Pumping Plant in anticipation of service to

16   the District, and the reasonable cost of any plans, specifications,

17   and unpublished material furnished to the District by the United

18   States, less the One Thousand Dollars ($1,000) heretofore advanced

19   by the District with its proposal, shall be charged to the amount

20

21

22

23

24

25                                    18

1   of the loan to the District. The term "costs" shall be deemed

2   to include, without being limited to, applicable portions of salaries,

3   travel, per diem, leave of employees, and legal, overhead and general

4   expense allocable to inspection and approval of work performed

5   hereunder by the District, or the examination of title to lands

6   or interest in lands, or the inspection and auditing of accounts

7   and records of the District relating to such work. All costs incurred

8   by the United States shall be held to the minimum amount deemed

9   necessary by the Contracting Officer for protection of the interests

10   of the United States. After the execution of this contract and

11   until completion of the work hereunder, the United States shall

12   furnish to the District quarterly reports of all such costs incurred.

13            PERFORMANCE BONDS--CONTRACTS WITH OTHERS

14       14. (a) The District shall require construction and equipment

15   contractors to furnish performance bonds in accordance with the

16   following schedule:

17    Amount of Contract                  Performance Bond Required

18   Up to $1,000,000              Not less than 50% of contract amount

19   $1,000,000 to $5,000,000      Not less than 40% of contract amount

20       (b) The United States shall not be a party to, or obligated

21   in any manner by, contracts entered into between the District and

22   other parties providing for construction of the Project.

23

24                           19

25

26

1       FAILURE OF THE DISTRICT TO COMPLETE THE PROJECT

2       15.  (a)  In the event that the District shall fail, for any

3       reason other than the nonavailability of funds to be advanced by

4       the United States under the terms of this contract, to complete

5       the work to be performed hereunder in the manner and to the extent

6       provided in Article 8 hereof, upon written notice from the United

7       States, the District shall return to the United States any unexpended,

8       unobligated, and unencumbered balances of funds advanced by the

9       United States in the same manner as is required in subdivision (a)

10      of Article 16 hereof, and the Secretary may, upon the giving of

11      the aforesaid notice, adopt either of the following alternatives:

12              (i)  Perform or cause to be performed all or any

13          part of the work remaining to be performed under and within

14          the limits of the Project and operate and maintain the Project

15          Works concurrently therewith, in which event the District

16          agrees to transfer to the United States custody and use of all

17          equipment, materials, and supplies used or acquired for use

18          in the performance of such work; permit the United States

19          and its contractors and agents ingress to and egress from

20          the lands and works and facilities of the District for the

21          performance of such work; and assign to the United States

22          its interest in any contract for the performance of work or

23

24                              20

25

26

017549

the supplying of equipment or material in connection with

such work where requested by the United States and agreed

to by the other contracting party; or

(ii)   Declare the Project completed within the

provisions of Article 16 hereof by giving written notice

to the District, in which event repayment of the loan obligation,

including the determination of the amount thereof, shall be

carried out in accordance with the provisions of said article:

Provided, That the first annual principal installment shall

become due in the year following the year in which the District

is notified of such declaration or completion.

(b)   In the event that the United States shall proceed

as provided in subsection (i) of subdivision (a) of this article,

the United States may, at any time regardless of the progress of

work performed thereunder, declare the Project completed by giving

written notice to the District, in which event the provisions

of subsection (ii) of subdivision (a) of this article shall apply:

Provided, That the loan obligation shall include all expenditures

of the United States made pursuant to the provisions of subsection (i)

of subdivision (a) of this article including related costs of

the character prescribed in Article 13 hereof:   Provided further,

That the loan obligation shall not exceed the amount prescribed

in subdivision (d) of Article 7 hereof.

21

002418

017550

(c)  Upon the giving of the written notice to the District as provided in subsection (ii) of subdivision (a) or subdivision (b) of this article, the United States shall have the right, without further notice, to take over the care, operation, and maintenance of the Project Works in the same manner, to the same extent, and upon the same conditions as prescribed in Article 18 hereof, and the rights and obligations of the respective parties shall be as prescribed in that article including the transfer of care, operation, and maintenance to the Klamath Irrigation District in accordance with subdivision (c) thereof.

REPAYMENT BY THE DISTRICT

16.  (a)  Upon completion of the Project, as determined by the Contracting Officer, the District shall return to the United States any unexpended, unobligated, and unencumbered balances of funds advanced by the United States.  The United States shall thereupon render to the District a statement of the total amount of money repayable to the United States under the terms of this contract, which total amount, hereinafter called the loan obligation, shall be the sum of all funds advanced to the District hereunder and costs of the United States as prescribed in Article 13 hereof, less the amount of any unexpended, unobligated, and unencumbered balances of funds returned to the United States as hereinabove

22

002419

017551

1   provided.  With the repayment of the loan obligation the District

2   shall pay interest thereon to the extent and in the manner provided

3   in this article.

4        (b)  The loan obligation shall be repaid by the District

5   in forty (40) successive annual principal installments, the first

6   of which shall become due on January 1 following the year in which

7   the Project is completed, as determined by the Contracting Officer

8   pursuant to subdivision (b) of Article 8.  Subsequent annual

9   installments shall become due on January 1 of each succeeding

10   year.  Payments shall be made in the following amounts at the

11   times indicated:

| Year | Amount |
|------|--------|
| 1st year | $5,280 |
| 2d year | $5,280 |
| 3d year | $5,280 |
| 4th year | $10,550 |
| 5th year | $10,550 |
| 6th year | $10,550 |
| 7th year through 40th year | Annual installments equal to one thirty-fourth (1/34) of the balance of the loan obligation remaining unpaid after payment for the 6th year has been made. |

23

002420

1    (c) With each annual principal installment due and payable

2    on January 1, the District shall pay to the United States interest at

3    the rate of _ three and three-fourths _ percent (3-3/4%) per annum

4    on that portion of the unpaid loan obligation which is attributable to

5    furnishing irrigation benefits to excess land at any time during the

6    preceding 12-month period. Such portion of the loan obligation shall

7    be determined by dividing the total acreage of excess land in the District

8    during the preceding 12-month period by the total irrigable acreage in

9    the District during said period and multiplying the quotient so derived

10   by the balance of the loan obligation. Until such time as the loan

11   obligation has been determined, interest payments shall be computed on

12   the basis of the estimated loan obligation which shall be announced by

13   the Contracting Officer.

14   (d) The District may on any January 1 prepay all or any

15   part of the balance of the loan obligation remaining due: Provided, That

16   all interest accrued hereunder is paid at the same time: Provided further,

17   That any such prepayment, if less than the entire loan obligation, shall

18   not relieve the District of its obligation to make the payments in the

19   amounts and at the times specified in this article until the loan

20   obligation is repaid.

21   OPERATION AND MAINTENANCE BY THE DISTRICT

22   17. (a) The District will be responsible for the care, operation,

23   and maintenance of the Project Works during the performance of the work

24

25

24

017553

1    under this contract.  After completion of such work, the Project

2    Works shall be cared for, operated, and maintained pursuant to the

3    contracts referred to in subdivision (a) of Article 10 of this

4    contract without cost or expense to the United States.  Such care,

5    operation, and maintenance shall be carried out in such manner that

6    the Project Works shall remain in as good and efficient condition

7    as upon completion of such work.  No substantial change shall be

8    made by or under the authority of the District in any of the major

9    Project Works without first obtaining the written consent of the

10   Contracting Officer.  The Contracting Officer's opinion as to whether

11   any change in any such works is or is not substantial shall be con-

12   clusive and binding on the parties hereto.

13          (b)  The District shall make or cause to be made promptly

14   any and all repairs to the Project Works which the Contracting Officer

15   may determine are reasonably necessary.  If the Contracting Officer

16   determines that any part of the Project Works is for any cause inade-

17   quately maintained, the Contracting Officer shall so notify the

18   District, and the District shall have a reasonable time to make or

19   cause to be made the necessary repairs.  In case of neglect or failure

20   of the District to make such repairs or cause them to be made after

21   such reasonable notice, the Contracting Officer may cause the repairs

22   to be made and the cost thereof, as determined by the Contracting

23   Officer, shall be paid by the District to the United States as provided

24   in Article 19 hereof.

25

25

002422

017554

1    (c)  The Contracting Officer may from time to time cause an

2  appropriate inspection of the Project Works and of the books and

3  records of the District and of the Klamath Irrigation District to be

4  made to ascertain whether the requirements of this contract are being

5  satisfactorily performed.  Such inspections may include physical

6  inspection of all properties and audit of the books and records of the

7  District and of the Klamath Irrigation District.  Any such inspection

8  or audit shall, except in a case of emergency, be made after written

9  notice to the District and the actual expense of any such inspection

10  and audit shall be paid by the District to the United States in the

11  manner provided in Article 19 hereof.

12    (d)  No liability shall accrue against the United States, its

13  officers or employees, because of damages arising out of or in any

14  manner connected with the work performed by the District under this

15  contract or the operation and maintenance of the Project Works by

16  the District or the Klamath Irrigation District.

17    RIGHT OF UNITED STATES TO ASSUME OPERATION AND MAINTENANCE

18    18.  (a)  If, in the opinion of the Contracting Officer, the

19  District shall have failed at any time or from time to time to comply

20  substantially with any provision of this contract, or the Klamath

21  Irrigation District shall have failed at any time to comply substantially

22  with any provision of its contracts with the District and the United

23

24

25

002423

017555

1   States referred to in subdivision (a) of Article 10 of this contract,

2   the United States shall give the District and the Klamath Irrigation

3   District written notice specifying the respect in which the District

4   shall have failed to so perform, and in the event the District or the

5   Klamath Irrigation District fails to cure such default or defaults

6   within a reasonable time fixed in the notice, the United States may

7   take over the care, operation, and maintenance of the Additional Works

8   and all Klamath Project facilities transferred to Klamath Irrigation

9   District under the Operations Contract, appurtenant works, and all

10  equipment, records, materials, and supplies used or acquired for use

11  in the care, operation, and maintenance thereof, and thereafter care

12  for, operate, and maintain the same:  Provided, That the date on which

13  the property and works are to be turned over to the United States shall

14  be not less than sixty (60) days after the date of notice sent to the

15  District and the Klamath Irrigation District.  The United States also

16  shall have the right to assume operation and maintenance of the Addi-

17  tional Works at any time that it resumes operation and maintenance of

18  the Klamath Project facilities pursuant to the provisions of the

19  Operations Contract.

20      (b)  In the event notice that the United States proposes to

21  take over the care, operation, and maintenance of the Additional Works

22  and Klamath Project facilities is given pursuant to subdivision (a)

23  hereof, the United States shall furnish the District an estimate in

24

25

002424

017556

1   writing of the cost of the care, operation, and maintenance by the

2   United States to the end of the then current year together with an

3   estimate of such cost for the year immediately following and a state-

4   ment of the equitable share thereof which has been apportioned to

5   the District, whereupon the District within a reasonable time, as

6   determined by the Contracting Officer, of the receipt of said estimates

7   shall advance to the United States the stated share of the estimated

8   cost of the care, operation, and maintenance to the end of the then

9   current year, and without further notice or demand shall at the end

10  of such year advance to the United States the stated share of the

11  estimated cost of the care, operation, and maintenance for the year

12  immediately following.  Advances of costs for each year thereafter

13  shall be made by the District to the United States on the basis of

14  estimates to be furnished by the United States on or before September 1,

15  and the estimated costs shall be paid one-half (1/2) on December 1 and

16  one-half (1/2) on June 1 next immediately following.  If, in the opinion

17  of the Contracting Officer, the amount advanced by the District for any

18  period is likely to be insufficient to pay its share of the cost of

19  all care, operation, and maintenance by the United States for such

20  period, additional and sufficient sums of money shall be paid within

21  sixty (60) days by the District to the United States upon written notice

22  thereof and demand therefor by the Contracting Officer.  The surplus of

23

24

25

002425

017557

1    any amount as advanced by the District for care, operation, and main-

2    tenance by the United States during any period shall be credited on

3    the estimated cost of care, operation, and maintenance by the United

4    States during the succeeding period.  Any surplus of any advances

5    made by the District for care, operation, and maintenance which shall

6    remain unobligated for such purpose by the United States at the time

7    the care, operation, and maintenance of the Additional Works and

8    Klamath Project facilities are returned to the Klamath Irrigation

9    District shall be refunded to the District or, at the option of the

10    Contracting Officer, applied against any obligation of the District

11    under this contract due at that time.  Nothing herein contained shall

12    relieve the District of any of its obligations under this contract.

13        (c)  Whenever the United States shall have assumed the care,

14    operation, and maintenance of the Additional Works and Klamath Project

15    facilities pursuant to the provisions of subdivision (a) of this

16    article, the Contracting Officer, upon written request by the District

17    and the Klamath Irrigation District accompanied by assurances satis-

18    factory to him, may upon sixty (60) days' written notice to the District

19    and the Klamath Irrigation District return the care, operation, and

20    maintenance of the Additional Works and Klamath Project facilities to

21    the Klamath Irrigation District under the provisions of this contract.

22    In like manner at any time during the period of care, operation, and

23    maintenance by the United States when, in the opinion of the Contracting

24

25                           29

002426

017558

1    Officer, the Klamath Irrigation District on behalf of the District is

2    in a position to resume care, operation, and maintenance of the

3    Additional Works and Klamath Project facilities, the care, operation,

4    and maintenance thereof or any part thereof may be retransferred to

5    the Klamath Irrigation District.

6        (d)   It is agreed that in the event the United States, its

7    officers or employees, take over the care, operation, and maintenance

8    of the Additional Works and Klamath Project facilities, as provided in

9    this contract, neither the United States nor its officers or employees

10    shall be liable for any damages resulting directly or indirectly from

11    any such assumption, and the District agrees to hold the United States,

12    its officers and employees, harmless from any and all claims for such

13    damages.

14    **END OF PART B**

15                OTHER CHARGES TO BE PAID BY THE DISTRICT

16    19.   (a)   In addition to all other payments to be made by the

17    District, as provided in this contract, on or before February 1 of

18    each year after completion of the Project the United States shall

19    furnish to the District an itemized estimate of all costs expected

20    to be incurred by the United States under the provisions of this

21    contract during that year which are properly chargeable to the

22    District and a statement of the differences between estimated and

23    actual costs for the previous year, with appropriate charges or

24    credits to adjust the previous year's estimate to the total of actual

25

002427

1    costs for that previous year:   _Provided_, That, as determined by the

2    Contracting Officer, the District will not be required to pay directly

3    to the United States any such charges as may be made to or through the

4    Klamath Irrigation District.   The District shall pay to the United

5    States the total of such estimated costs for the current calendar year,

6    as adjusted by the reconciliation of actual and estimated costs for

7    the previous year, within sixty (60) days after receipt of said estimate

8    and statement.   Each such annual estimate and statement shall list

9    separately the following types of costs:

10           (i)   An equitable share of the estimated annual general

11    expense, as determined by the Contracting Officer, to be incurred

12    by the United States and apportioned to the Main and Pumping

13    Divisions of the Klamath Project.   This estimate shall be itemized

14    by office and by activity, but shall not include the costs itemized

15    under other subdivisions of this article;

16           (ii)   Estimated annual costs of any bookkeeping, accounting,

17    engineering, legal, drafting, clerical, or other technical or adminis-

18    trative services which the District has specifically requested from

19    the United States in writing or which are furnished by the United

20    States pursuant to some mutual agreement in writing, which costs

21    shall be itemized for each type of service;

22           (iii)   An equitable proportion of the estimated annual

23    costs of operating and maintaining Link River Dam and of regulating

24    Upper Klamath Lake, as determined by the Contracting Officer;

25

31

002428

1          (iv)  An equitable share of the estimated cost of

2    repairs, if any, to the Project Works expected to be made by or

3    under the authority of the United States under the provisions of

4    subdivision (b) of Article 17 hereof, or otherwise;

5          (v)  Estimated cost of all inspections expected to be

6    performed by the United States under the provisions of subdivision (c)

7    of Article 17 hereof; and

8          (vi)  An equitable share as determined by the Contracting

9    Officer of establishing and maintaining Klamath Project water

10    rights.

11        (b)  The District shall pay the United States any actual costs

12    in excess of the previous year's estimate for work performed or services

13    furnished by the United States during that year under provisions of this

14    contract, itemized by each of the preceding subsections (i) through (vi)

15    of subdivision (a) of this article.

16        (c)  The District shall be credited for any amounts by which

17    the actual costs of work performed or services furnished by the United

18    States during the previous year under provisions of this contract were

19    less than the amounts for such work shown in the previous year's estimate,

20    itemized by subsections (i) through (vi) of subdivision (a) of this

21    article.

22

23

24

25                       32

002429

017561

1    AGREED CHARGES A GENERAL OBLIGATION OF THE DISTRICT--LEVY
2         OF TAXES AND ASSESSMENTS--FIXING OF RATES AND TOLLS

3       20.  (a)  The District as a whole is obligated to pay to the

4    United States the charges which become due as provided in this contract

5    notwithstanding the individual default in the payment to the District

6    by individual water users of assessments, tolls, or other charges levied

7    by the District.

8         (b)  The District will cause to be levied and collected all

9    necessary taxes and assessments and will use all of the authority and

10   resources of the District to make in full all payments to be made pur-

11   suant to this contract on or before the date such payments become due

12   and to meet its other obligations under this contract.  The District

13   may use funds available to it from any source and require the payment

14   of toll charges and/or levy assessments to meet its obligations hereunder.

15           REFUSAL OF SERVICE IN CASE OF DEFAULT

16    21.  No service from the Project Works shall be furnished by the

17   District or the Klamath Irrigation District to or for the use of lands

18   in the District during any period in which the District may be in

19   arrears in advance payment of care, operation, and maintenance costs,

20   or for more than twelve (12) months in the payment of any installment

21   of the loan obligation or interest thereon, or of any other charge to

22   be paid by the District under this contract.  No service from the

23   Project Works shall be furnished by the District or the Klamath

24

25

002430

017562

1   Irrigation District to any lands or parties which are in arrears in

2   payment to the District of any assessments, rates, tolls, or other

3   charges levied or established by the District and necessary for the

4   purpose of raising revenues to meet the payments by the District to

5   the United States required under this contract.  The provisions of

6   this article are not exclusive and action taken pursuant hereto shall

7   not prejudice or preclude the exercise of any other remedy by the

8   United States or the District to enforce collection of any amounts due

9   hereunder.

10             PENALTY UPON DELINQUENCY IN PAYMENT

11      22.  Every installment or charge required to be paid to the

12   United States under this contract and which shall remain unpaid after

13   it shall have become due and payable, shall be subject to a penalty of

14   one-half (1/2) of one percent (1%) per month from the date of delinquency:

15   Provided, That no penalty shall be charged to or be paid by the District

16   unless such delinquency continues for more than thirty (30) days.

17           ALL BENEFITS CONDITIONED UPON PAYMENT

18      23.  Should any assessment or assessments levied by the District

19   against any tract of land or water user in the District, required by

20   the terms of this contract, be judicially determined to be irregular or

21   void or should the District or its officers be enjoined or restrained

22   from making or collecting any assessments, tolls, or charges upon such

23

24

25                    34

017563

1    land or from such water user as provided for herein, then such tract,

2    or water user, shall have no right to any of the benefits of this

3    contract, and no use shall be made of the Project Works for the

4    benefit of any such land or water user, except upon the payment by

5    the landowner of his assessment or a toll charge for the use of the

6    Project Works notwithstanding the existence of any contract between

7    the District and the owner or owners of such tract.  Contracts, if any,

8    between the District and the water users involving service from the

9    Project Works pursuant to this contract shall provide that such use

10    shall be subject to the terms of this contract.  It is agreed that the

11    payment of charges at the rates and upon the terms and conditions

12    provided for herein is a prerequisite to the right to service from the

13    Project Works, and no irregularity in levying taxes, assessments, or

14    charges by the District, nor lack of authority in the District, whether

15    affecting the validity of District taxes, assessments, or charges or

16    not, shall be held to authorize or permit any water user of the District

17    to demand or receive service from the Project Works unless charges at

18    the rates and upon the terms and conditions provided for herein have

19    been paid by such water user.

20    <u>BOOKS AND RECORDS--ACCESS THERETO</u>

21        24.  (a)  The District shall maintain account and other books and

22    records and furnish reports and information, to the extent permitted by

23

24

25                           35

002432

017564

1   law, as the Contracting Officer may request concerning accounts and

2   financial transactions of the District  and the irrigation water

3   supply and the disposition thereof.

4           (b)  Duly authorized representatives of each party shall

5   have the right, during business hours, to inspect and make copies

6   of the other party's books and official records insofar as they relate

7   to matters covered by this contract.

8                           CROP CENSUS

9       25.  The District shall, at its own expense, keep a reasonably

10   accurate record of all crops raised, including agricultural and livestock

11   products produced on District lands, and furnish the Contracting Officer

12   on or before December 31 of each year a crop report including the afore-

13   said date in a form prescribed by the Contracting Officer.

14           CHANGES IN ORGANIZATION OF DISTRICT

15       26.  While this contract is in effect no change shall be made in the

16   District by either inclusion or exclusion of lands, by proceedings to

17   dissolve, consolidate, merge, or otherwise, except upon the Contracting

18   Officer's written consent thereto.

19                      RULES AND REGULATIONS

20       27.  There is reserved to the Contracting Officer the right, so far

21   as the purport thereof may be consistent with the provisions of this

22   contract, the laws of the United States and of the State of Oregon,

23

24

25                              36

002433

017565

1    to make operating rules and regulations and to add to and modify them

2    as may be deemed proper and necessary to carry out this contract, and

3    to supply necessary details of its administration, and the District

4    agrees to observe such rules and regulations.

5              CONTINGENT ON APPROPRIATIONS OR ALLOTMENT OF FUNDS

6        28.   The expenditure or loan of any money or the performance of

7    any work by the United States hereunder which may require appropriations

8    of money by the Congress or the allotment of funds shall be contingent

9    upon such appropriations or allotment being made.   The failure of the

10    Congress so to appropriate funds or the absence of an allotment of

11    funds shall not relieve the District from any obligations then accrued

12    under this contract and no liability shall accrue to the United States

13    in case such funds are not appropriated or allotted.  The Contracting

14    Officer will notify the District in writing of the date when appropriated

15    funds are available and allotted and the amount thereof, to initiate the

16    Project, and work by the United States relating thereto, which are

17    provided for in this contract.  The Contracting Officer also shall notify

18    the District from time to time as additional funds become available and

19    are allotted for performance of any of the provisions of this contract.

20           COPELAND (ANTI-KICKBACK) ACT--NONREBATE OF WAGES

21        29.   All construction contracts entered into by the District for

22    prosecution of the Project as provided in Article 8 hereof shall

23    contain the following provision:

24

25

002434

017566

1        The regulations of the Secretary of Labor applicable to

2    contractors and subcontractors (29 C.F.R., Part 3), made

3    pursuant to the Copeland Act, as amended (40 U.S.C. 276c)

4    and to aid in the enforcement of the Anti-Kickback Act

5    (18 U.S.C. 874) are made a part of this contract by reference.

6    The contractor will comply with these regulations and any

7    amendments or modifications thereof and the prime contractor

8    will be responsible for the submission of affidavits required

9    of subcontractors thereunder.  The foregoing shall apply except

10    as the Secretary of Labor may specifically provide for reasonable

11    limitations, variations, tolerances, and exceptions.

12          ASSURANCES RELATING TO VALIDITY OF CONTRACT

13      30.  (a)  Promptly after the execution and delivery of this contract

14    the District shall file and prosecute to a final decree, including any

15    appeal therefrom to the highest court of the State of Oregon, in a court

16    of competent jurisdiction a special proceeding for the judicial examina-

17    tion, approval, and confirmation of the proceedings had for the organiza-

18    tion  of the District and the proceedings of the District Board of

19    Directors and of the District leading up to and including the making of

20    this contract and the validity of the provisions thereof; and this contract

21    shall not be binding on the United States until said District organiza-

22    tion, proceedings, and contract shall have been so confirmed by a court

23    of competent jurisdiction or pending appellate action in any court

24

25

002435

1    if ground for appeal be laid:  Provided, That nothing herein

2    contained shall require the District to assume the responsibility

3    of prosecuting judicial review beyond the highest court of the

4    State of Oregon.

5            (b)  This contract shall be indivisible for purposes of

6    validation and shall not be binding on the United States or the

7    District unless validated in each and all of its terms and conditions

8    as executed by the parties.

9            REMEDIES UNDER CONTRACT NOT EXCLUSIVE---WAIVERS

10    · 31.  (a)  Nothing contained in this contract shall be construed

11    as in any manner abridging, limiting, or depriving the United States

12    of any means of enforcing any remedy, either at law or in equity, for

13    the breach of any of the provisions hereof which it would otherwise have.

14            (b)  Any waiver at any time by either party to this contract

15    of its rights with respect to a default, or any other matter arising in

16    connection with this contract, shall not he deemed to be a waiver with

17    respect to any subsequent default or matter.

18            AMENDMENT OR REPEAL OF FEDERAL RECLAMATION LAWS

19    32.  In the event that the Congress of the United States may

20    repeal or amend any pertinent provisions of the Federal reclamation

21    laws, the United States agrees, at the option of the District, to

22    negotiate amendments of appropriate articles of this contract, all

23    consistently with the provisions of such repeal or amendment.

24

25
                                    39

NOTICES

32. Any notice, payment, or announcement authorized or required by this contract shall be deemed properly given, except where otherwise herein specifically provided, if mailed postage prepaid to the Regional Director, Region 2, Bureau of Reclamation, United States Department of the Interior, Sacramento, California, on behalf of the District, and to the Klamath Basin Improvement District at Klamath Falls, Oregon, on behalf of the United States. The designation of the person to be notified, or the address of such person, may be changed at any time by similar notice. Provided, however, That this article shall not preclude the effective service of any such notice or announcement by other reasonable means.

ASSIGNMENT LIMITED--SUCCESSORS AND ASSIGNS OBLIGATED

34. The provisions of this contract shall apply to and bind the successors and assigns of the parties hereto, but no assignment or transfer of this contract, or any part thereof or interest therein, shall be valid until approved by the Secretary.

DETERMINATIONS

35. Where the terms of this contract provide for action to be based upon the opinion or determination of either party to this contract, whether or not stated to be conclusive, said terms shall not be construed as permitting such action to be predicated upon arbitrary, capricious, or unreasonable opinions or determinations.

40

1

2                    COVENANT AGAINST CONTINGENT FEES

3        36.  The District warrants that it has not employed any person

4   to solicit or secure this contract upon any agreement for a commission,

5   percentage, brokerage, or contingent fee.  Breach of this warranty

6   shall give the United States the right to annul the contract or, in its

7   discretion, to add to the loan obligation the amount of such commission,

8   percentage, brokerage, or contingent fee.  This warranty shall not apply

9   to commissions payable by the District upon contracts or sales secured

10   or made through bona fide established commercial or selling agencies

11   maintained by the District for the purpose of securing business.

12                      OFFICIALS NOT TO BENEFIT

13        37.  (a)  No Member of or Delegate to Congress or Resident

14   Commissioner shall be admitted to any share or part of this contract

15   or to any benefit that may arise herefrom, but this restriction shall

16   not be construed to extend to this contract if made with a corporation

17   or company for its general benefit.

18            (b)  No official of the District shall receive any benefit

19   that may arise by reason of this contract other than as a landowner

20   within the District and in the same manner as other landowners within

21   the District.

22

23

24

25                              41

017570

<pre>
 1              NONDISCRIMINATION
 2      38. (a) In connection with the performance of work under this contract,
 3   the District agrees as follows:
 4          (1) The District will not discriminate against any employee
 5      or applicant for employment because of race, creed, color, or
 6      national origin.  The District will take affirmative action
 7      to ensure that applicants are employed, and that employees are
 8      treated during employment, without regard to their race, creed,
 9      color, or national origin.  Such action shall include, but not
10      be limited to, the following: employment, upgrading, demotion or
11      transfer; recruitment or recruitment advertising; layoff or
12      termination; rates of pay or other forms of compensation; and
13      selection for training, including apprenticeship.  The District
14      agrees to post in conspicuous places, available to employees
15      and applicants for employment, notices to be provided by the
16      Contracting Officer setting forth the provisions of this non-
17      discrimination clause.
18      (ii)  The District will, in all solicitations or advertise-
19      ments for employees placed by or on behalf of the District, state
20      that all qualified applicants will receive consideration for
21      employment without regard to race, creed, color, or national
22      origin.
23      (iii) The District will send to each labor union or represen-
24      tative of workers with which it has a collective bargaining
25      agreement or other contract or understanding, a notice, to be
</pre>

002439

017571

1    provided by the Contracting Officer, advising the said labor

2    union or workers' representative of the District's commitments

3    under this section, and shall post copies of the notice in

4    conspicuous places available to employees and applicants for

5    employment.

6         (iv) The District will comply with all provisions of

7    Executive Order No. 10925 of March 6, 1961, and of the rules,

8    regulations, and relevant orders of the President's Committee on

9    Equal Employment Opportunity created thereby.

10        (v) The District will furnish all information and reports

11   required by Executive Order No. 10925 of March 6, 1961, and by

12   the rules, regulations, and orders of the said Committee, or

13   pursuant thereto, and will permit access to its books, records,

14   and accounts by the Contracting Officer and the Committee for

15   purposes of investigation to ascertain compliance with such

16   rules, regulations, and orders.

17        (vi) In the event of the District's noncompliance with the

18   nondiscrimination clauses of this contract or with any of the

19   said rules, regulations, or orders, this contract may be cancelled

20   in whole or in part and the District may be declared ineligible

21   for further government contracts in accordance with procedures

22   authorized in Executive Order No. 10925 of March 6, 1961, and such

23

24

25

-43-

002440

017572

1   other sanctions may be imposed and remedies invoked as provided

2   in the said Executive Order or by rule, regulation, or order of

3   the President's Committee on Equal Employment Opportunity, or as

4   otherwise provided by law.

5        (vii)   The District will include the provisions of the

6   foregoing subdivisions (i) through (vi) of this article in every

7   subcontract or purchase order unless exempted by rules, regulations,

8   or orders of the President's Committee on Equal Employment Opportunity

9   issued pursuant to section 303 of Executive Order No. 10925 of

10   March 6, 1961, so that such provisions will be binding upon each

11   subcontractor or vendor.  The District will take such action with

12   respect to any subcontract or purchase order as the Contracting

13   Officer may direct as a means of enforcing such provisions, including

14   sanctions for noncompliance: Provided, however, That in the event

15   the District becomes involved in, or is threatened with, litigation

16   with a subcontractor or vendor as a result of such direction by the

17   Contracting Officer, the District may request the United States to

18   enter into such litigation to protect the interests of the United

19   States.

20        (b)   The District shall require its contractor to include in

21   each subcontract which it shall make with a subcontractor the following

22   clause:

23

24

25                        -44-

002441

1        "The (here identify the subcontractor), being bound by

2        paragraphs (1) through (6) of section 301 of Executive

3        Order No. 10925 of March 6, 1961, by virtue of regulations

4        issued thereunder (41 CFR §60-1.3), shall further incor-

5        porate by reference in each subcontract or purchase order

6        with a subcontractor or supplier paragraphs (1) through (6)

7        of said section 301 of said Order unless exempted pursuant

8        to section 303 thereof."

9    Upon execution of this contract on behalf of the United States, this

10    subarticle (b) shall be deemed to be and shall have the force of a

11    special order of the Contracting Officer pursuant to the regulations

12    issued under Executive Order No. 10925 of March 6, 1961.

13        IN WITNESS WHEREOF, the parties hereto have executed this

14    contract as of the day and year first above written.

15

    Approved as to Legal        THE UNITED STATES OF AMERICA

16    Form and Sufficiency

17    /s/ R. T. Moss        By  /s/ H P Dugan
                              Regional Director, Region 2

18      Attorney            Bureau of Reclamation
    Department of Interior

19

                           KLAMATH BASIN IMPROVEMENT DISTRICT

20

21    (SEAL)  Affixed        By /s/  J Randall Pope
                            President

22

    Attest:

23

    /s/ John L. Stewart Jr

24    Secretary              45

017574

COPY:em

# R E S O L U T I O N

RESOLVED, that proposed contract R. O. Draft 2/2/1962 Rev. W.O. 3/29/1962, between the United States of America and the Klamath Basin Improvement District, providing for a water supply and for a loan for construction of a Small Reclamation Project, be and the same hereby is approved and the President and Secretary be and they hereby are authorized to execute the same.

I, John L. Stewart, Jr. hereby certify that the foregoing is a full, true and correct copy of the Resolution duly adopted by the Board of Directors of the Klamath Basin Improvement District at a special meeting held April 25, 1962, with seven of the eight directors being present and voting.

/s/  John L. Stewart Jr

SEAL AFFIXED                                    John L. Stewart, Jr., Secretary

002443

017575

RECORDED
COMMUNICATION

440                    April 5, 1962


Memorandum

To:          Secretary of the Interior

From:        Commissioner of Reclamation

Subject:     Proposed Water Service and Public Law 984 Contract
             Between the United States and the Klamath Basin
             Improvement District and Proposed Amendment to
             Operations Contract No. 14-06-200-3784 Between the
             United States and the Klamath Irrigation District,
             Klamath Project, Oregon-California

Enclosed for your approval is the form of proposed contract between
the United States and the Klamath Basin Improvement District.  The
draft provides, pursuant to the Warren Act, for delivery of water
to the District from the water supply which is surplus to the exist-
ing Klamath Project needs.  The proposed contract also provides funds
to the District, pursuant to the Small Reclamation Projects Act as
amended (70 Stat. 1044; 71 Stat. 48) for construction of additional
facilities, including enlargement and extension of certain existing
facilities of the Klamath Project, to deliver the water to the irrigable
lands of the District, and the integrated operation of all with other
facilities of the Klamath Project which are now operated and maintained
by the Klamath Irrigation District.

Also enclosed for your approval is the form of proposed amendatory
contract between the United States and the Klamath Irrigation District.
This proposed contract amends existing contract No. 14-06-200-3784
dated November 29, 1954, pursuant to which responsibility for the
care, operation, and maintenance of certain of the existing Klamath
Project works serving the District were transferred to the District.
The proposed amendatory contract permits the construction of facilities
mentioned in the preceding paragraph and binds the Klamath Irrigation
District to integrated operation of all the facilities and to the
carriage and delivery of surplus Klamath Project water to lands within
Klamath Basin Improvement District.

The Klamath Basin Improvement District and the Klamath Irrigation
District have also agreed in principle upon a form of contract whereby
the latter agrees, primarily, to operate and maintain the facilities
to be constructed and to integrate them with other existing facilities

002444

017576

and deliver water therefrom. A draft of that proposed contract
is attached for your information. Certain minor revisions of this
draft will be made before it is executed. Such changes, however,
will not affect the interests of the United States, and the draft
is attached to illustrate the close cooperation between the Districts,
as well as to expedite full approval of the loan contract.

The Klamath Basin Improvement District is a public corporation
organized under the laws of the State of Oregon on July 14, 1961,
and has the necessary powers to contract with the United States for
a water supply and for a loan for construction of any works or
improvement of the corporation and for repayment of such loan. It
has a gross area of approximately 9,750 acres, of which 9,239 acres
are irrigable and about one-half are now being served under temporary
arrangements. The District lands are scattered around and throughout
the area served as a part of the Klamath Project, and all lie within
the State of Oregon. The District's application for funds to construct
works pursuant to the provisions of the Small Reclamation Projects Act
was approved on August 18, 1961, by Acting Secretary Carr. A copy of
the approval memorandum is enclosed.

Thus, there are three proposed contracts. The first is between the
Klamath Basin Improvement District and the United States. The second
is between the Klamath Irrigation District and the United States. The
third is between the Klamath Basin Improvement District and the Klamath
Irrigation District. The first two are submitted for approval as to
form, the third for your information.

The draft of proposed contract between the United States and Klamath
Basin Improvement District is composed of two main parts: Part A —
Water Supply, and Part B — Small Reclamation Project Loan. Under
Part A, water supplied to the District shall not exceed 3.6 acre-feet
per irrigable acre and such water shall be in excess of that required
to meet the prior rights of lands and entrymen under the existing
Klamath Project. The main source of water supply will be from Upper
Klamath Lake with primary conveyance through the Lost River Diversion
Channel and the "A" or Main Canal. Since the supply is limited to
that which is surplus to the needs of the existing Klamath Project,
it is made available pursuant to the Act of February 21, 1911 (36
Stat. 925), known as the Warren Act. About 84,000 acres of the 217,000
acres in the Klamath Project are served pursuant to the Warren Act. In
this proposed contract, as in other Warren Act contracts on the Klamath
Project, the District assumes responsibility for the control, carriage,
use, and measurement of water. Furthermore, the United States assumes
no liability whatsoever for water shortages and does not abandon or
relinquish any of the waste, seepage, or return-flow waters coming
from the lands of the District.

2

Under the proposed contract, the Klamath Basin Improvement District will not deliver water to land in excess holdings under Reclamation Law. This provision, which was inserted during Washington Office review, replaces the excess land provisions which would have permitted service to excess land under recordable contract arrangements. The revision has been informally discussed and cleared with the District's attorney.

Part B of the proposed contract is generally similar to contract No. 14-06-200-8690 between the United States and the South San Joaquin Irrigation District, the form of which was approved by Assistant Secretary Aandahl on March 15, 1960. The proposed contract contemplates a loan not in excess of $942,100 to be used for the enlargement and extension of existing Klamath Project facilities to serve lands within the District. The works to be constructed will include two new pumping plants, the enlargement of an existing pumping plant, the enlargement of three existing canals, and the extension of certain minor drains. It is estimated that this work will cost $992,100. Of this, the local interests will provide, or have provided, all rights-of-way other than those to be obtained from the United States, construction supervision and preconstruction overhead (not to exceed $26,000), the cost of some additional land classification, and some drains and other minor works already completed, all of which have an estimated cost of $50,000.

Subdivision (a) of Article 10 requires, as a prerequisite to the advancing of funds, execution of the contract between the Klamath Basin Improvement District and Klamath Irrigation District, and execution of the contract between the United States and Klamath Irrigation District. These contracts are necessary as the works to be constructed with loan funds will be a part of the existing system operated by Klamath Irrigation District and must be operationally integrated.

The total estimated cost of the Project ($992,100) includes costs of the United States. Article 13 describing "costs" of the United States in connection with the loan, is similar to language in other contracts under the Small Reclamation Projects Act. However, in addition to the usual costs, $80,000 has been included to cover costs incurred by the United States for investigations prior to March 1, 1961. The sum of $11,000 as the allocated cost of additional capacity which was built into an existing pumping plant in anticipation of service to the District is also included.

Article 16 of the proposed contract provides for repayment of the loan, estimated at $942,100, within the 40 years beginning with the year immediately following that in which construction is completed.

3

Payments will be $5,280 annually during the first three years, $10,550 annually for the next three years, and the balance in 34 equal annual installments. In addition, this article provides that the District will pay interest each year on the pro rata share of the loan which is attributable to furnishing irrigation benefits to so-called "excess land" holdings. No provision is necessary for interest on water for municipal and industrial purposes as usage is restricted to agricultural purposes.

Average payment capacity for District lands has been estimated at slightly more than $7 per irrigable acre. Operating costs for a similar class of service from the Klamath Irrigation District are established at $2.70 per acre. The difference is more than ample for repayment of the proposed loan.

The Board of Directors of the Klamath Basin Improvement District by resolution has approved the form of contract submitted here for review and approval as to form. Subsequently, we have made minor revisions for clarity and have inserted a provision, as previously discussed, that water deliveries are not to be made to excess lands. The Board of Directors of the Klamath Irrigation District has also approved the draft of proposed amendatory contract which is necessary for integrated oper-ation of the works to be constructed. These proposed contracts are acceptable to the Bureau of Reclamation as reflecting the best interests of the Districts and the United States. We recommend, therefore, that you approve:

    (1)   The form of the proposed contract between the United States and the Klamath Basin Improvement District (R.O. Draft 2/2-1962; Revised W.O. 3-29-62).

    (2)   The form of the proposed amendatory contract between the United States and Klamath Irrigation District (R.O. Draft 12/26-1961; Revised W.O. 3-29-62).

Thereafter, pursuant to existing delegations of authority and after execution by the President and Secretary of the Board of Directors on behalf of the respective Districts, the Regional Director, Region 2, will execute the two contracts on behalf of the United States and will act as Contracting Officer for the Secretary of the Interior for the purposes of the contract.

                            (Sgd) Floyd E. Dominy

Enclosures

Approved:  Apr. 9, 1962   Copy to: Reg. Dir., Sacramento, Calif.--AIRMAIL
                                 Reg. Sol., Sacramento, Calif.--AIRMAIL
   (Sgd) Kenneth Holum       Project Mgr., Klamath Falls, Oregon--
                                           AIRMAIL

Assistant Secretary of the Interior

017579

COPY:em

## R E S O L U T I O N

RESOLVED, that proposed contract, dated April 25, 1962, between the Klamath Basin Improvement District and the Klamath Irrigation District, providing that KID shall care for, operate and maintain the Project Works and to deliver water furnished pursuant to the contract between the United States of America and KBID for use of lands of KBID, be and the same hereby is approved and the President and Secretary be and they hereby are authorized to execute the same.

I, John L. Stewart, Jr., hereby certify that the foregoing is a full, true and correct copy of the Resolution duly adopted by the Board of Directors of the Klamath Irrigation District at a special meeting held April 25, 1962, with three of the three directors being present and voting.

/s/ John L. Stewart Jr.

John L. Stewart, Jr., Secretary

SEAL AFFIXED

002448

017580

R.O. Draft 1/27-1975
Rev. R.O. 9/9-1975

Contract No.
14-06-200-8334A

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Klamath Project, Oregon-California

CONTRACT BETWEEN THE UNITED STATES AND KLAMATH DRAINAGE DISTRICT
PROVIDING FOR THE PERFORMANCE OF MINOR CONSTRUCTION WORK

Table of Contents

| Article No. | Title | Page No. |
|---|---|---|
| | Preamble | 1 |
| | Explanatory Recitals | 1- 2 |
| 1 | Approval of Designs and Specifications | 2- 3 |
| 2 | Costs Incurred by the District and United States | 3 |
| 3 | Operation and Maintenance of Facilities | 4 |
| 4 | Rights to the Use of the Drain | 5 |
| 5 | District to Construct Drainage Facilities | 5 |
| 6 | District to be Reimbursed for actual Costs | 5 |
| 7 | District to Maintain Cost Accounts | 6 |
| 8 | Contingent on Appropriation or Allotment of Funds | 6 |
| 9 | Notices | 6- 7 |
| 10 | Contracts with Third Parties | 7 |
| 11 | Officials Not to Benefit | 7- 8 |
| 12 | Rules and Regulations | 8 |
| 13 | Determination of Findings of Facts | 8 |
| 14 | Equal Opportunity | 9-11 |
| 15 | Title VI, Civil Rights Act of 1964 | 12-13 |
| 16 | Certification of Nonsegregated Facilities | 14-15 |
| 17 | Liability | 15 |
| | Signatures | 16 |

017581

Contract No.
14-06-200-8334A

1                        UNITED STATES
                  DEPARTMENT OF THE INTERIOR
2                   BUREAU OF RECLAMATION
              Klamath Project, Oregon-California
3

CONTRACT BETWEEN THE UNITED STATES AND KLAMATH DRAINAGE DISTRICT
4    PROVIDING FOR THE PERFORMANCE OF MINOR CONSTRUCTION WORK

5         THIS CONTRACT, made this 24 day of December, 1975,

6  in pursuance of the Acts of June 17, 1902 (32 Stat. 388), and June 13,

7  1956 (70 Stat. 274), and acts amendatory thereof or supplementary

8  thereto, between THE UNITED STATES OF AMERICA, hereinafter referred

9  to as the United States, and the KLAMATH DRAINAGE DISTRICT, hereinafter

10  referred to as the District, organized and existing pursuant to the

11  laws of the State of Oregon, with its principal place of business in

12  Klamath Falls, Oregon,

13         WITNESSETH, That:

14                 EXPLANATORY RECITALS

15         WHEREAS, the work to be performed pursuant to this contract

16  is within the boundaries of the Lower Klamath Lake Division, Klamath

17  Project, and is to be performed on District and Federal lands; and

18         WHEREAS, by virtue of the contracts entered into between the

19  United States and the District, identified by that certain agreement

20  dated November 30, 1917, Contract No. Ilr-402, dated August 24, 1921,

21  as amended by Amendatory Contract No. Ilr-402, dated July 6, 1929,

22  further amended by Contract No. Ilr-402, dated April 28, 1943, and

                                  Preamble
                                 Explanatory Recitals--

017582

1   Supplementary Contract No. Ilr-402, dated October 11, 1947, the

2   District is the repayment organization concerned for the said area;

3   and

4           WHEREAS, it is necessary for the proper drainage of certain

5   District land and Federal land situated within the District to construct

6   a drain through and along said lands; and

7           WHEREAS, it is in the interest of both the United States and

8   the District that the District perform excavation of the drain, place-

9   ment of inlet structures and culverts, and embankment for road crossings

10  on District and Federal lands of the Lower Klamath Lake Division, Klamath

11  Project, as the Contracting Officer shall deem necessary to properly

12  remove drainage and other excess water from the surrounding area; and

13          WHEREAS, pursuant to the Act of June 13, 1956 (70 Stat. 247),

14  the Secretary of the Interior is authorized to contract with the repay-

15  ment organization concerned for said organization to perform minor

16  construction work, and to be reimbursed by the United States for such

17  work, under conditions hereinafter set forth;

18          NOW, THEREFORE, in consideration of the mutual and dependent

19  covenants herein contained, it is agreed as follows:

20          APPROVAL OF DESIGNS AND SPECIFICATIONS

21      1.  Upon approval by the Contracting Officer of the designs and

22  specifications prepared by the District, the District shall undertake

23  the excavation of a drain, placement of inlet structures, culverts,

2

--Explanatory Recitals
Article 1--

1   and embankment for road crossings, and the District shall be reimbursed

2   for that portion of the total cost allocated to the United States as

3   hereinafter described in Article 2: Provided, however, That the total

4   reimbursed to the District by the United States shall not exceed $100,000.

5               COSTS INCURRED BY THE DISTRICT AND UNITED STATES

6       2.   All costs incurred in constructing the drain, including but not

7   limited to, the costs in meeting the requirements of the National Environ-

8   mental Policy Act of 1969, review of plans and designs prepared by the

9   District, contract negotiations and the performance or administration

10  of this contract including the cost or proportionate part of the costs

11  of salaries, travel, per diem, and legal, overhead, and general expenses

12  of the United States and the District which are allocable to inspection

13  and approval of work performed hereunder by the District and to the

14  inspection and auditing of accounts and records of the District relating

15  to such work, shall be shared 40% by the District and 60% by the United

16  States:  Provided, That the District shall receive credits toward its

17  share of the total costs incurred in constructing the entire drain in the

18  total amount of $54,035, of which $50,235 represents the estimated cost

19  of construction by the District of that portion of the drain located on

20  District land and $3,800 which represents the depreciated value of culverts

21  and gates placed along that portion of the drain located below the State

22  line in California and within the Lower Klamath Lake National Wildlife

23  Refuge which is to be abandoned by the District.

<u>OPERATION AND MAINTENANCE OF FACILITIES</u>

3.  (a)  Upon completion of constructing the drain, as determined by the Contracting Officer, the United States, without expense to the District, shall operate and maintain that portion of the drain located on Federal lands and the District, without expense to the United States, shall operate and maintain that portion of the drain located on District lands:  <u>Provided</u>, That upon giving 30 days written notice by the District to the Contracting Officer that needed maintenance is required on that portion of the drain located on Federal lands and such maintenance is not accomplished by the United States, the District may enter upon Federal lands to complete the required maintenance work.  Such maintenance work performed by the District on Federal lands and the cost thereof, shall be paid by the United States to the District subject to availability of funds for such purpose.

(b)  The United States contemplates the construction of a pumping plant on that portion of the drain located on Federal lands as part of future development of the Klamath Straits Unit - East.  The costs of construction, operation and maintenance of said pumping plant shall be the responsibility of the United States and without participation of the District.

1        ## RIGHTS TO THE USE OF THE DRAIN

2            4.   The purpose of the drain is to furnish proper drainage for

3    certain District land and Federal land situated within the District

4    to be served thereby.  Accordingly the rights of the United States and

5    the District to utilize the capacity of the drain shall be and are hereby

6    allotted 60% to the United States and 40% to the District.

7        ## DISTRICT TO CONSTRUCT DRAINAGE FACILITIES

8            5.   Permission is hereby granted to the District to enter upon and

9    to construct a drain in, on, across and through the Federal lands in

10   accordance with plans and designs approved by the Contracting Officer.

11       ## DISTRICT TO BE REIMBURSED FOR ACTUAL COSTS

12           6.   At the end of any month, during which the District shall have

13   performed work under this contract and any supplemental agreement, the

14   District shall submit a certified cost statement computing the cost of

15   the work performed, supplies, materials, equipment rental, labor and such

16   overhead and general expense as is deemed applicable.  Such cost state-

17   ment shall be in the form approved by the Contracting Officer and shall

18   be submitted to the Contracting Officer.  Payments for the United States'

19   share will be made to the District upon the Contracting Officer's

20   approval of such cost statement.

21

22

<div align="center">5           Articles 4 - 6</div>

002454

<u>DISTRICT TO MAINTAIN COST ACCOUNTS</u>

7.   The District shall maintain separate accounts for costs which it will share and be reimbursed by the United States in the form and manner prescribed by the Contracting Officer, and such accounts shall be subject to audit by the United States in the form and manner as requested by the Contracting Officer.

<u>CONTINGENT ON APPROPRIATION OR ALLOTMENT OF FUNDS</u>

8.   The expenditure or advance of any money or the performance of any work by the United States hereunder which may require appropriation of money by the Congress or the allotment of funds shall be contingent upon such appropriation or allotment being made.  The failure of the Congress to appropriate funds or the absence of any allotment of funds shall not relieve the District from any obligations under this contract. No liability shall accrue to the United States in case such funds are not appropriated or allotted.

<u>NOTICES</u>

9.   Any notice, demand, or request authorized or required by this contract shall be deemed to have been given when mailed, postage prepaid, or delivered to the Regional Director, Mid-Pacific Region, Bureau of

6                        Articles 7 - 9--

002455

017587

1   Reclamation, 2800 Cottage Way, Sacramento, California  95825, on behalf

2   of the United States and to the Board of Directors, Klamath Drainage

3   District, 280 Main Street, Klamath Falls, Oregon  97601, on behalf of

4   the District.  The designation of the addressee or the address may be

5   changed by notice given in the same manner as provided in this article

6   for other notices.

7                    CONTRACTS WITH THIRD PARTIES

8        10.  (a)  The District shall advertise each construction, equipment

9   or supply contract exceeding $10,000 for competitive bidding.  Upon

10  receipt of bids, any action proposed by the District other than making

11  the award to the lowest responsible bidder shall be subject to review

12  by the Contracting Officer.

13            (b)  The United States shall not be a party to, or obligated

14  in any manner by, contracts entered into between the District and other

15  parties pursuant to this contract.

16                    OFFICIALS NOT TO BENEFIT

17       11.  (a)  No member of or delegate to Congress or resident com-

18  missioner shall be admitted to any share or part of this contract or to

19  any benefit that may arise therefrom.  This restriction shall not be

20  construed to extend to this contract if made with a corporation for its

21  general benefit.

22

                                              --Articles 9 - 11--

                         7

002456

017588

1    (b) No official of the District shall receive any benefit

2 that may arise by reason of this contract other than as a water user

3 within the Project and in the same manner as other landowners within

4 the Contractor's service area.

5        RULES AND REGULATIONS

6  12. The Contracting Officer, after offering the District an

7 opportunity for consultation, shall make rules and regulations and

8 supply necessary details for administration of this minor construction

9 contract.  Such rules and regulations shall be consistent with the pro-

10 visions of this contract, the laws of the United States, and the State

11 of Oregon.  The Contracting Officer may add to or modify them as may

12 appear necessary and the District shall observe such rules and regulations.

13      DETERMINATION OF FINDINGS OF FACTS

14  13. Where the terms of this contract provide for action to be

15 based upon the opinion or determination of either party to this contract,

16 said terms shall not be construed as permitting such action to be

17 predicated upon arbitrary, capricious, or unreasonable opinions or

18 determination, whether or not stated to be conclusive.  If the District

19 questions any determination made by the Contracting Officer, the findings

20 of facts shall be made by the Secretary of the Interior after consultation

21 with the District and shall be binding upon the parties.

22

     --Articles 11 - 13

002457

017589

1        EQUAL OPPORTUNITY

2        14.   During the performance of this contract, the District

3    agrees as follows:

4            (a)   The District will not discriminate against any

5    employee or applicant for employment because of race, color,

6    religion, sex, or national origin.   The District will take

7    affirmative action to ensure that applicants are employed, and

8    that employees are treated during employment, without regard

9    to their race, color, religion, sex, or national origin.   Such

10   action shall include, but not be limited to, the following:

11   Employment, upgrading, demotion, or transfer; recruitment or

12   recruitment advertising; layoff or termination; rates of pay

13   or other forms of compensation; and selection for training,

14   including apprenticeship.   The District agrees to post in

15   conspicuous places, available to employees and applicants for

16   employment, notices to be provided by the Contracting Officer

17   setting forth the provisions of this Equal Opportunity clause.

18           (b)   The District will, in all solicitations or advertise-

19   ments for employees placed by or on behalf of the District,

20   state that all qualified applicants will receive consideration

21   for employment without regard to race, color, religion, sex,

22   or national origin.

                        9                Article 14--

002458

1    (c)   The District will send to each labor union or

2    representative of workers with which it has a collective

3    bargaining agreement or other contract or understanding, a

4    notice, to be provided by the Contracting Officer, advising

5    the labor union or workers' representative of the District's

6    commitments under this Equal Opportunity clause, and shall

7    post copies of the notice in conspicuous places available to

8    employees and applicants for employment.

9    (d)   The District will comply with all provisions of

10   Executive Order No. 11246 of September 24, 1965, as amended,

11   and of the rules, regulations, and relevant orders of the

12   Secretary of Labor.

13   (e)   The District will furnish all information and

14   reports required by said amended Executive Order and by the

15   rules, regulations, and orders of the Secretary of Labor, or

16   pursuant thereto, and will permit access to its books, records,

17   and accounts by the Contracting Officer and the Secretary of

18   Labor for purposes of investigation to ascertain compliance

19   with such rules, regulations, and orders.

20   (f)   In the event of the District's noncompliance with

21   the Equal Opportunity clause of this contract or with any of

22   the said rules, regulations, or orders, this contract may be

--Article 14--

10

017591

1  canceled, terminated, or suspended, in whole or in part, and

2  the District may be declared ineligible for further Govern-

3  ment contracts in accordance with procedures authorized in said

4  amended Executive Order, and such other sanctions may be imposed

5  and remedies invoked as provided in said Executive Order, or by

6  rule, regulation, or order of the Secretary of Labor, or as

7  otherwise provided by law.

8      (g)  The District will include the provisions of para-

9  graphs (a) through (g) in every subcontract or purchase order

10  unless exempted by rules, regulations, or orders of the Secretary

11  of Labor issued pursuant to Section 204 of said amended Executive

12  Order, so that such provisions will be binding upon each sub-

13  contractor or vendor.  The District will take such action with

14  respect to any subcontract or purchase order as the Contracting

15  Officer may direct as a means of enforcing such provisions,

16  including sanctions for noncompliance: Provided, however, That

17  in the event the District becomes involved in, or is threatened

18  with, litigation with a subcontractor or vendor as a result of

19  such direction by the Contracting Officer, the District may

20  request the United States to enter into such litigation to

21  protect the interests of the United States.

22

--Article 14

11

002460

# TITLE VI, CIVIL RIGHTS ACT OF 1964

1

2      15. (a)  The District agrees that it will comply with Title VI

3  of the Civil Rights Act of July 2, 1964 (78 Stat. 241) and all require-

4  ments imposed by or pursuant to the Department of the Interior Regulation

5  (43 CFR 17) issued pursuant to that title, to the end that, in accordance

6  with Title VI of that Act and the Regulation, no person in the United

7  States shall, on the grounds of race, color, sex, or national origin

8  be excluded from participation in, be denied the benefits of, or be

9  otherwise subjected to discrimination under any program or activity for

10  which the District receives financial assistance from the United States

11  and hereby gives assurance that it will immediately take any measures to

12  effectuate this agreement.

13          (b)  If any real property or structure thereon is provided or

14  improved with the aid of Federal financial assistance extended to the

15  Contractor by the United States, this assurance obligates the District,

16  or, in the case of any transfer of such property, any transferee for the

17  period during which the real property or structure is used for a purpose

18  involving the provision of similar services or benefits.  If any personal

19  property is so provided, this assurance obligates the District for the

20  period during which it retains ownership or possession of the property.

21  In all other cases, this assurance obligates the District for the

22  period during which the Federal financial assistance is extended to it

23  by the United States.

Article 15--

002461

1    (c) This assurance is given in consideration of and for

2 the purpose of obtaining any and all Federal grants, loans, contracts,

3 property, discounts, or other Federal financial assistance extended

4 after the date hereof to the District by the United States, including

5 installment payments after such date on account of arrangements for

6 Federal financial assistance which were approved before such date.  The

7 District recognizes and agrees that such Federal financial assistance

8 will be extended in reliance on the representations and agreements

9 made in this assurance, and that the United States shall reserve the

10 right to seek judicial enforcement of this assurance.  This assurance

11 is binding on the District, its successors, transferees, and assignees.

12

13

14

15

16

17

18

19

20

21

22

--Article 15

13

017594

<center>CERTIFICATION OF NONSEGREGATED FACILITIES</center>

16.   The District hereby certifies that it does not maintain or provide for its employees any segregated facilities at any of its establishments, and that it does not permit its employees to perform their services at any location, under its control, where segregated facilities are maintained.   It certifies further that it will not maintain or provide for its employees any segregated facilities at any of its establishments, and that it will not permit its employees to perform their services at any location, under its control, where segregated facilities are maintained.   The District agrees that a breach of this certification is a violation of the Equal Opportunity clause in this contract.   As used in this certification, the term "segregated facilities" means any waiting rooms, work areas, rest rooms and wash rooms, restaurants and other eating areas, time clocks, locker rooms and other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation, and housing facilities provided for employees which are segregated by explicit directive or are in fact segregated on the basis of race, creed, color, or national origin, because of habit, local custom, or otherwise.   The District further agrees that (except where it has obtained certifications from proposed subcontractors for specific time periods) it will obtain identical certifications from proposed

Article 16--

14

002463

017595

1    subcontractors prior to the award of subcontracts exceeding $10,000

2    which are not exempt from the provisions of the Equal Opportunity

3    clause; that it will retain such certifications in its files; and

4    that (except where the proposed subcontractors have submitted identical

5    certifications for specific time periods) the District will forward

6    the following notice:

7         NOTICE TO PROSPECTIVE SUBCONTRACTORS OF REQUIREMENT FOR
              CERTIFICATIONS OF NONSEGREGATED FACILITIES

8

9         A Certification of Nonsegregated Facilities must be submitted
          prior to the award of a subcontract exceeding $10,000 which
10        is not exempt from the provisions of the Equal Opportunity
          clause.  The certification may be submitted either for each
11        subcontract or for all subcontracts during a period (i.e.,
          quarterly, semiannually, or annually).  Note:  The penalty
12        for making false statements in offers is prescribed in
          18 U.S.C. 1001.

13

14                        LIABILITY

15        17.  The District hereby agrees to indemnify and hold harmless the

16    United States, its agents and employees, from any loss or damage and from

17    any liability on account of personal injury, death, or property damage,

18    or claims for personal injury, death, or property damage of any nature

19    whatsoever and by whomsoever made arising out of the District's activities

20    under this agreement.

21

22

--Articles 16 - 17

002464

1          IN WITNESS WHEREOF, the parties hereto have executed this

2     contract the day and year hereinabove written.

3                              THE UNITED STATES OF AMERICA

4

5                              By _B. E. Martin_____
                                  Regional Director, Mid-Pacific Region
6                                 Bureau of Reclamation

7                              KLAMATH DRAINAGE DISTRICT

8     (SEAL)

9                              By _____
                                  President

10    Attest:

11    _____

12    Secretary

13

14

15

16

17

18

19

20

21

22

                                              Signatures

                              16

017597

BE IT RESOLVED That the Contract between the United States and Klamath Drainage District for the performance of minor construction work, RO Draft 1-27-75, Rev. RO 9-9-1975, be and the same is hereby approved; and that the President and Secretary are authorized to sign the Contract on behalf of the District.

The above Resolution was adopted by the Board of Supervisors of Klamath Drainage District on the 13th day of December, 1975.

KLAMATH DRAINAGE DISTRICT

By _____
                            Attorney.

002466

017598

RECORDED
COMMUNICATION

United States Department of the Interior

BUREAU OF RECLAMATION
WASHINGTON, D.C.  20240

IN REPLY
REFER TO: 440
832.-

NOV 7  1975

Memorandum:

To:        Commissioner

From:      Chief, Division of Water and Land

Subject:   Proposed Drainage and Minor Construction Contract between
           the United States and Klamath Drainage District--Klamath
           Project, Oregon

Pursuant to delegations of authority in Reclamation Instructions 053.2.2F.,
approval of the enclosed contract must be accomplished in this office.

The proposed contract is prepared under the provisions of the Drainage
and Minor Construction Act of June 13, 1956.  Reimbursement from the
United States to the district may not exceed $100,000.  The proposed
contract is acceptable to the Regional Solicitor and is considered
legally sufficient by the Associate Solicitor - Energy and Resources.

We recommend that you sign the attached statement indicating your
approval of the form of the proposed contract which is designated
R.O. Draft 1/27-1975; Rev. R.O. 9/9-1975.  Thereafter, pursuant to
existing delegations of authority, the Regional Director, Mid-Pacific
Region will execute the contract in behalf of the United States and
will serve as contracting officer in its subsequent administration.

Enclosures

cc:  Regional Director, Sacramento, California (w. a copy of enc.)
     Regional Solicitor, Sacramento, California (w. a copy of enc.)
     Chief, Division of Water O&M, E&R Center (w. a copy of enc.)

002467

United States Department of the Interior
Bureau of Reclamation

Mid-Pacific Region, Sacramento, California


DRAINAGE AND MINOR CONSTRUCTION CONTRACT BETWEEN
THE UNITED STATES AND KLAMATH DRAINAGE DISTRICT
(Act of June 13, 1956)


OCT 23 1975

Acting Regional Director                    Date


Concur   [Sgd] G. G. Stamm

Commissioner


Date   NOV 24 1975

017600

DRAINAGE AND MINOR CONSTRUCTION CONTRACT BETWEEN
THE UNITED STATES AND KLAMATH DRAINAGE DISTRICT

Authorized by Act of June 13, 1956

October 17, 1975


1.  Proposed Work:  The proposed contract provides for the excavation of
a drain, having an outlet capacity of 60 ft$^3$/s, to be constructed across
lands of the United States and the Klamath Drainage District, all of which
are located within the Klamath Project, Oregon.  The work to be performed
will be completed by forces and equipment of the District.  The drain will
provide drainage service benefiting a total of about 6,180 irrigable acres,
of which about 2,495 irrigable acres are lands within the District and about
3,685 irrigable acres are Federally-owned lands which are leased by the
Bureau of Reclamation for agricultural purposes for the Klamath Project.
Attached is a map for ready-reference which depicts the areas to be benefited
and approximate alignment of the proposed drain.  The construction period
to complete the drain is anticipated to be 3 to 6 months which is dependent
upon weather conditions.  The drain is required to improve the area through
proper removal of drainage waters, thus preventing further buildup of salt
content of the area's soils.

2.  Contracting Entity:  The Klamath Drainage District is one of several
irrigation districts situated within the Klamath Project, Oregon.  The
District provides irrigation water service to approximately 27,000 acres
which includes 7,000 acres of Federally-owned lands that are leased for
agricultural purposes.

3.  Background:  The United States entered into a supplemental contract with
the District in 1947 which provided for the payment by the District of its
share of the operation and maintenance costs incurred by the United States
in the operation of drainage facilities that were constructed by the United
States.  The drainage works (Klamath Straits Drain) were considered a part
and an extension of the Modoc Unit, Tule Lake Division, Klamath Project, and
intended for use primarily in connection with the operations of the United
States.  The drainage works constructed were necessary for the removal of
excess water brought in from Tule Lake to Lower Klamath through the Tule
Lake tunnel and excess water originating in the Lower Klamath area.

Present irrigation practice consists of flooding District lands from December
to March for leaching and pre-irrigation and then pumping off the water.
Under terms of a contract dated May 25, 1940, between the District and the
Fish and Wildlife Service (Biological Survey) the District is permitted to
dispose of its drainage water by pumping it into a drain constructed by the

017601

Fish and Wildlife Service across Lower Klamath Lake near the California-Oregon state line. A portion of the Federally-owned leased lands have also utilized this drain. The drainage water from these lands upon entering the drain are then diverted into the Klamath Straits Drain for disposal into the Klamath River.

Under a proposed rehabilitation plan for the Federally-owned leased land area prepared by the Bureau some years ago it was contemplated as part of this plan that a new drain would be constructed on the east side of the District along the California-Oregon state line to the Klamath Straits Drain. With the construction of this new drain, the present arrangement the District has with the Fish and Wildlife Service would be terminated. Since the construction program, as recommended in the proposed rehabilitation plan, had not been funded the District recommended that the portion of the plan dealing with construction of a new drain be initiated on the basis of a cooperative cost-sharing arrangement between the District and the United States.

4.  Contractual Arrangements:  The proposed contract provides for the excavation of a drain by District forces on Federal and District lands, with the Federal share of the construction costs being reimbursed to the District through appropriations by the Congress. The construction costs attributable to the Federal and District lands will be prorated on the basis of area benefited. The proposed drain will benefit about 6,180 acres, of which about 2,495 acres are District lands and about 3,685 acres are Federally-owned lands. Thus, District lands comprise about 40% of the area benefited, while the remaining 60% is with the United States. In addition to the costs involved with construction of the drain, the costs of meeting the requirements of the National Environmental Policy Act, engineering review of drain design and specifications, and the construction inspection that are attributable to the Federal lands shall be prorated on the same percentage basis as the area benefited. The District will prepare the design and specifications subject to Bureau approval.

The total estimated cost of constructing the entire drain is $163,235. The proposed contract limits the total amount to be reimbursed by the United States to the District to $100,000. The contract also provides that the District will receive a credit toward their share of the total cost of constructing the entire drain in the total amount of $54,035. This credit represents $50,235 which is the estimated cost of construction by the District of that portion of the drain located on District land and $3,800 for the depreciated value of culverts and gates installed by the District on the existing drain to be abandoned by the District.

002470

017602

The contract further provides upon completion of construction of the drain, that the United States will operate and maintain the portion of the drain located on Federal lands and the District will operate and maintain the portion of the drain located on District lands.

5.  Environmental Considerations:  In compliance with the National Environmental Policy Act of 1969, an environmental assessment has been made.  It has been determined that the effects of the work upon the environment are considered to be of no significance, and an environmental impact statement nor a negative determination is required.

6.  Legal Considerations:  The Regional Solicitor, Sacramento, California, has concurred in the proposed contract.  The contract is considered legally sufficient and in the best interests of the United States and the District.

Attachment

3

002471

Symbol Ilr-402

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION

Klamath Project, Oregon

Amendatory Contract Between the United States
and Klamath Drainage District

I-N-D-E-X

| Article | Title | Page No. |
|---------|-------|----------|
| 2-9 | Explanatory Recitals | 1-3 |
| 10 | Scope of Amendatory Contract | 3 |
| 11 | District Relieved of Further Payments Under 1917 Contract, as Amended | 3-4 |
| 12 | Definition of Construction Charge Obligation | 4 |
| 13 | Schedule for Payment of Construction Charge Obligations | 4-5 |
| 14 | Delivery of Water by the United States | 5-6 |
| 15 | The District to Receive Water at Point of Delivery | 6 |
| 16 | Other Payments to be Made by District | 6-8 |
| 17 | Computation of Cost | 8 |
| 18 | General Obligations of the District | 8-9 |
| 19 | Assessments by District | 9 |
| 20 | Operation of District Irrigation System | 10 |
| 21 | Refusal to Deliver Water in Case of Default | 10-11 |
| 22 | Penalty for Delinquency in Payment | 11-12 |
| 23 | Waste, Seepage, and Return Flow | 12 |
| 24 | Shortage of Water | 12-13 |
| 25 | Utilization of District's South Canal by the United States | 13-14 |
| 26 | Disposition of Revenues from Public Lands | 14-15 |

A

| Article | Title | Page NO. |
| --- | --- | --- |
| 27 | Opening and Assessment of Public Lands; Water Rental Prior to Opening | 15-16 |
| 28 | Installation, Maintenance and Regulation of Gates in Klamath Strait | 16-17 |
| 29 | United States Not Obligated to Construct, Operate, or Maintain Systems | 17 |
| 30 | Charges for Crop Census and Special Work | 17 |
| 31 | District to Keep Books and Records and Crop Report Returns | 17-18 |
| 32 | Crop Census | 18-19 |
| 33 | Access to Books and Records | 19-20 |
| 34 | United States to Assist District to Secure Liens | 20 |
| 36 | Rules and Regulations | 20 |
| 36 | Secretary Arbiter of Disputes Involving Questions of Fact | 20-21 |
| 37 | Representative of Secretary | 21 |
| 38 | Changes in Organization of the District | 21 |
| 39 | Assignment Prohibited: Successors and Assigns Obligated | 21-22 |
| 40 | Contingent on Appropriations or Allotment of Funds | 22 |
| 41 | This Contract Not to Affect Contract of May 25, 1940 | 22 |
| 42 | Confirmation of Contract | 22-23 |
| 43 | Procedure for Amendment | 23 |
| 44 | Officers Not to Benefit | 23 |

002473

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION

Klamath Project, Oregon

Amendatory Contract Between the United States
and Klamath Drainage District

THIS AGREEMENT, Made this ___28th___ day of ___April___, 1943,

pursuant to the Act of Congress, approved June 17, 1902 (32 (Stat., 388),

and acts amendatory thereof or supplementary thereto, and particularly

Section 2 of the Act of February 21, 1911 (36 Stat., 925), and the Act of

August 4, 1939 (53 Stat. 1187), together hereinafter referred to as the

Federal Reclamation Law, between the UNITED STATES OF AMERICA, hereinafter

referred to as the United States, acting for this purpose by the _____

___Assistant___ Secretary of the Interior, hereinafter referred to as the

Secretary, and the KLAMATH DRAINAGE DISTRICT, a public corporation duly

organized and existing under the laws of the State of Oregon, with its

principal place of business at Klamath Falls, Oregon, hereinafter styled

the District:

WITNESSETH, That:

Explanatory Recitals

2.   WHEREAS, under the authority of the Federal Reclamation Law, the

United States has constructed and is still constructing that certain irri-

gation project in the States of Oregon and California, commonly known and

designated as the Klamath Project, hereinafter referred to as the Project;

and

3.   WHEREAS, the United States and the District entered into contracts

dated November 30, 1917, August 24, 1921, and July 6, 1929, said contracts

being hereinafter referred to collectively as the Government-District con-

tract: and

1

017606

4.    WHEREAS, the Government-District contract provides among other things for the payment to the United States by the District of a part of the expenditures made by the United States in constructing, providing a water supply for, and making investigations for the Project; and

5.    WHEREAS, the District, as the duly authorized representative of the water users involved, desires to enter into an amendatory contract for the purpose of securing the benefits of the Act of Congress of August 4, 1939 (53 Stat. 1187), as to its repayment obligation; and

6.    WHEREAS, the Secretary determined in his judgment that a contract under Section 3 or 4 of the Act of August 4, 1939, would not be practicable nor provide an economically sound adjustment, that the problems were properly the subject of negotiation under subsection 7(a) of that Act, and that this contract in his judgment provides fair and equitable treatment of the repayment problem involved and is in keeping with the general purpose of the Act of August 4, 1939; and

7.    WHEREAS, the Secretary has negotiated this contract pursuant to the authority of subsection 7(a) of the Act of August 4, 1939, and approval of its execution on behalf of the United States has been given by Act of Congress dated June 17, 1944 (Pub. No. 342, 78 Cong. 2 Sess.); and

8.    WHEREAS, the District boundaries at the present time include approximately 20,000 acres of patented lands and approximately 7,000 acres of public lands; and

9.    WHEREAS, the proportionate part of the total sum of $283,225 specified in Section 2 of the Act of May 27, 1920 (41 Stat., 628), has heretofore

2

been apportioned to the 7,000 acres of public lands within the District's boundaries in the proportion that 7,000 bears to 54,000 and said proportionate part remains unpaid.

NOW, THEREFORE, in consideration of the mutual and dependent stipulations and covenants herein contained, it is hereby mutually agreed by and between the parties hereto that:

### Scope of Amendatory Contract

10.   This amendatory contract supersedes and takes the place of the contracts between the United States and the District, dated November 30, 1917, August 24, 1921, and July 6, 1929 (herein collectively designated as the Government-District contract), and the Government-District contract shall remain and be effective only to the extent expressly provided by this contract: Provided, That any provisions of said Government-District contract, which have been fully executed prior to the effective date of this contract, shall remain unaffected by this contract, except as this contract expressly provides otherwise.

### District Relieved of Further Payments
### Under 1917 Contract, as Amended

11.   The unpaid balance of the District's obligation to the United States for construction charges under the contract of November 30, 1917, as extended by the provisions of Article 6 of the contract of July 6, 1929, is agreed to be in the amount of $47,627.89, including unpaid interest, as of December 31, 1942.   The United States hereby agrees to release the District from the obligation to pay this amount, and whatever additional penalty and interest may have accrued thereon under the terms of the contract of

3

017608

July 6, 1929, after December 31, 1942, and such release shall become
effective automatically upon compliance by the District with the provisions
of Article 42 of this contract.

### Definition of Construction Charge Obligation

12.   The unpaid balance of the District's obligation to the United
States for construction charges under this contract is agreed to be in the
amount of $28,773.53 as of December 30, 1942.   This amount includes instal-
ments or parts of instalments, with accrued interest thereon computed
as of December 30, 1942, deferred under the Act of April 1, 1932
(47 Stat., 75), as amended, under the Act of August 21, 1937 (50 Stat., 737),
and under the Act of May 31, 1939 (53 Stat. 792 and 1187), as extended, but
excludes any part of the District's obligation covered by the provisions
of Article 11 of this contract, and excludes any charges heretofore
apportioned against the public lands within the District's boundaries.
This unpaid balance is hereinafter referred to as the District's construc-
tion charge obligation.

### Schedule for Payment of Construction Charge Obligations

13.   The District agrees to pay to the United States the construction
charge obligation defined in Article 12 in successive annual instalments,
due and payable one-half (1/2) thereof on or before June 30, and one-half
(1/2) thereof on or before December 31 of each year, commencing with
December 31, 1942.   The dates when the instalments shall become due under
this contract and the amount of said instalments are as follows:

| | | |
|---|---|---|
| December 31, 1942 | – | $1,250.00 |
| June 30, 1943 | – | 1,250.00 |
| December 31, 1943 | – | 1,750.00 |
| June 30, 1944 | – | 1,750.00 |
| December 31, 1944 | – | 1,750.00 |

4

002477

| | | |
|---|---|---|
| June 30, 1945 | — | $1,750.00 |
| December 31, 1945 | — | 1,750.00 |
| June 30, 1946 | — | 1,750.00 |
| December 31, 1946 | — | 1,250.00 |
| June 30, 1947 | — | 1,250.00 |
| December 31, 1947 | — | 1,250.00 |
| June 30, 1948 | — | 1,250.00 |
| December 31, 1948 | — | 1,250.00 |
| June 30, 1949 | — | 1,250.00 |
| December 31, 1949 | — | 1,250.00 |
| June 30, 1950 | — | 1,250.00 |
| December 31, 1950 | — | 1,250.00 |
| June 30, 1951 | — | 1,250.00 |
| December 31, 1951 | — | 1,250.00 |
| June 30, 1952 | — | 1,250.00 |
| December 31, 1952 | — | 773.53 |

## Delivery of Water by the United States

14. (a)    The United States agrees that, subject to the provisions of the Act of February 21, 1911 (36 Stat. 925), known as the Warren Act, and particularly Section 2 thereof, it will deliver to the District during the irrigation season of each year at the gates installed in the railroad embankment near Ady, Oregon, in the $NE\frac{1}{4}NW\frac{1}{4}$ of Section twenty-three (23), Township Forty (40) South, Range Eight (8), East, Willamette Meridian, Klamath County, Oregon, a supply of water out of storage in Upper Klamath Lake and from the natural flow of Klamath River.  For the purposes of this contract, the irrigation season is the period from April 15 to September 30, inclusive, of each year.  The amount of water to be delivered in any season shall not be in excess of the amount that can be used beneficially for the irrigation of lands in the District in cultivation in that season, and in no event to exceed the amount that can be used beneficially for 27,500 acres of irrigable lands within the District boundaries.  In determining the amount to be delivered at the delivery point a reasonable allowance will be made for losses from seepage, evaporation, or other causes between the point of delivery and the places of use within the District.  In the event of a

002478

017610

shortage of water in any irrigation season there shall be a proration of the supply from the sources above named between the District and others supplied therefrom in a manner deemed equitable by the Secretary.

(b)  The water to be delivered under this contract shall be used only for irrigation and for domestic purposes incidental to such irrigation, and only on lands within the boundaries of the District, including revisions thereof made from time to time as permitted under Article 38.

(c)  The delivery of water to the District, as provided in this article, shall be made at such times and in such quantities (compatible with the operation of the project works in connection with the handling and disposition of water to others) as may be arranged between the appropriate representative of the District and the officer of the United States in charge of the Klamath Project.  When requested by the District, and when approved by the officer of the United States in charge of the Klamath Project, any part of the water to which the District is entitled under this contract will be delivered to the District during the nonirrigation season.

### The District to Receive Water at Point of Delivery

15.  The District agrees to receive the water herein provided for at the point of delivery, to convey the same to the places of use, and to perform all acts or things necessary or required by law or custom in order to maintain its control over such water and in order to secure the lawful and proper distribution thereof to the lands within the District entitled to receive it.  All losses or diminutions of such water from seepage, evaporation, or other causes between the point of delivery and the places of use within the District shall be borne by the District.

### Other Payments to be Made by District

16.  The District, in addition to the payment of the construction

6

002479

017611

charge obligation as scheduled for payment in Article 13, agrees to make the following payments to the United States:

    (a)  An operation and maintenance charge which shall include the District's proper proportion of any cost incurred by the United States in regulating the water level of Upper Klamath Lake, the District's proper portion of the cost of operating and maintaining various common features of the Project, the operation and maintenance of which, in the opinion of the Secretary, is of benefit to the District in the delivery of water to it, and all cost incurred by the United States directly chargeable to the delivery to the District of any of the water to be provided under this contract. Payments of said operation and maintenance charge shall be made each year on the basis of annual estimates made by the Secretary. Such annual estimates, hereinafter referred to as the operation and maintenance charge notice, shall contain a statement of the estimated cost of operation and maintenance of the Project to be incurred in the following calendar year and the amount of the District's share of said estimated costs. Such operation and maintenance charge notice shall be furnished to the District on or before September 1 of the year preceding the year covered thereby: Provided, That said notice for the calendar year 1943 may be given at any time on or before June 1, 1943.

    (b)  The charges provided for under Article 30 of this contract.

<div align="center">7</div>

017612

The District agrees to pay its share of the amounts set out in such opera-
tion and maintenance charge notice under (a) above, except for the year
1943 (which shall be paid in full on or before July 1, 1943), in two equal
instalments, the first on or before December 1 of the year in which the notice
is given, and the second on or before June 1 of the year for which such
charges are due.  Whenever, in the opinion of the Secretary, funds so advanced
will be inadequate to operate and maintain the works being operated and
maintained by the United States for the year for which the advance was made,
he may give a supplemental operation and maintenance charge notice, stating
therein the amount of additional funds required.  The District shall advance
such additional amount on or before the date specified in the supplemental
notice.  If funds advanced by the District under this article exceed the cost
of operation and maintenance for the year for which advanced, the surplus shall
be credited on the second instalment due for the succeeding year.

## Computation of Cost

17.  The "cost" which makes up the respective obligations of the District
to the United States under this contract shall embrace all expenditures of
whatsoever kind incurred by the United States, in relation to the operation
or function for which the charge is made, including but not limited to the
cost of labor, property, material, equipment, engineering, legal work,
superintendence, administration, overhead, general expenses, and damage
claims of all kinds.

## General Obligations of the District

18.  The District's obligations hereunder are general obligations
under which the District as a whole is obligated to pay to the United States
the full amount or amounts herein agreed upon, according to the terms

002481

017613

stated, notwithstanding any default in the payment to the District by any individual water user of any assessments, tolls, or other charges levied by the District.  While the District, so far as its powers under the laws of Oregon permit, may distribute said obligations among its landowners in a manner that takes into account the productivity of the various classes of lands of its landowners and the benefits accruing to said lands by reason of this contract with the United States, no such distribution of said obligations shall in any manner be deemed to relieve the District, or any of its landowners, or any lands therein, of the District's general obligations to the United States.

### Assessments by District

19. (a)  The District agrees that it will cause to be levied each year all necessary assessments, tolls, or other charges (notwithstanding discounts for prompt payment provided by the law of Oregon and taking into consideration prior and probable future delinquencies in collections), and will use all the power and resources of the District, including its taxing power and its power to withhold delivery of water, to collect suffi-cient funds for payment in full, on or before the same become due, of all obligations of the District to the United States under this contract, and to secure the funds to meet the annual operation and maintenance cost of the District's irrigation system.

(b)  Whenever required so to do by the Secretary, the District shall give the officer of the United States in charge of the Project, advance notice of the amount of any assessment, toll, or other charge intended to be levied.  Whenever practical, such notices shall be given not less than fifteen (15) days prior to the intended levy.

002482

017614

### Operation of District Irrigation System

20. (a)  In the distribution of the water supply provided for herein, the District shall comply with all of the applicable provisions of the Federal Reclamation Law and the regulations of the Secretary thereunder, and will operate and maintain its own irrigation system.

(b)  The United States assumes no responsibility whatever for the safety or operation of the District's irrigation system or any portion thereof; and the District will hold the United States, and its officers, contractors, agents, and employees harmless from any and all claims of any nature whatsoever arising in connection therewith.

(c)  During the irrigation season the United States shall have the right to place inspectors at any point or points in the District to make such measurements, investigations, or observations as in the judgment of the official of the United States in charge of the Project may be necessary for the enforcement of the provisions of this contract and for the interests of the Project generally.

### Refusal to Deliver Water in Case of Default

21. (a)  No water shall be delivered to or for the District under this contract if the District shall be in arrears in the advance payment of operation and maintenance charges due to the United States, if any, or more than twelve (12) months in arrears in the payment as required by the terms of Article 13 of this contract, of the construction charge obligation instalments, or more than twelve (12) months in arrears in the payment of any other amounts payable to the United States by the District under the provisions of this contract.  The District agrees that it will refuse to

10

002483

017615

deliver water to lands or parties which are in arrears in the advance
payment of operation and maintenance charges due from said lands or
parties to the United States or to the District, or to lands or parties
who are in arrears for more than twelve (12) months in the payment of the
amounts due from said lands or parties to the United States or to the
District for the construction charge obligation or for any other amounts
due from the District to the United States under this contract.  The pro-
visions of this article are not exclusive and shall not in any manner
prevent the United States from exercising any other remedy given by this
contract, or by law, to enforce the collection of any payments due under
the terms of this contract.

(b)  The District grants to the United States the right, power and
license to enter on any of the irrigation works of the District, to shut
off water being delivered in violation of this article or Article 32.  In
the event that the United States exercises said right, power and license
as herein provided, neither the United States, its officers or employees
shall be liable for any damages resulting directly or indirectly from any
such exercise of said right, power and license, and the District agrees
to hold the United States, its officers and employees, harmless from any
and all claims of damages.

<center>Penalty for Delinquency in Payment</center>

22.  (a)  In the event that any payment by the District to the United
States provided for in this contract is not made on or before the date that
such payment is due and payable, there shall be added to the amount unpaid
a penalty of one-half of one percent (1/2%) on the day following the due
date, and there shall be added a like penalty of one-half of one percent

<center>11</center>

002484

017616

(1/2%) of the remaining unpaid amount on the first day of each calendar month thereafter so long as said default shall continue.

(b)  If the District shall be one year in default in the payment of any instalment on account of construction charges provided in Article 13 of this contract, or penalty thereon, or any part thereof, this contract shall be subject to cancellation as a cumulative remedy in the discretion of the Secretary, and all payments made by the District in case of cancellation forfeited to the United States.  Any such cancellation shall be effected only by written notice to the District given after a written notice of the intended cancellation has been given by the Secretary not less than thirty days prior thereto.  In the event of such cancellation, the United States may divert the waters referred to herein to the irrigation of other lands in the discretion of the Secretary.

### Waste, Seepage, and Return Flow

23.  It is agreed and understood that the United States does not abandon or relinquish any of the waste or seepage water or return flow coming either from the lands of the Project, or from lands within the District, as the result of water supplied through storage or other works constructed by the United States, but that the same are reserved and intended to be retained and used for the benefit of the Project.

### Shortage of Water

24.  On account of drought, canal breaks, inaccuracy in distribution or other causes, there may occur at times a shortage in the water supply for lands of the District, and while the United States will use all reasonable means to guard against such shortage, in no event shall any

12

002485

017617

liability accrue against the United States, its officers, agents, or employees, for any damages, direct or indirect, arising therefrom; nor shall any obligation provided for herein be reduced or deferred because of any such shortage or damage.

Utilization of District's South Canal by the United States

25. (a)  For the purpose of carrying water to and from lands in California for reclamation and related uses, the District hereby grants to the United States

(i)  the perpetual right and easement to use the enlarged South Canal, indicated on the attached exhibit A,

(ii)  the right to enlarge and extend the South Canal, and

(iii)  the right to use any roads constructed or to be constructed along that canal to the extent reasonably necessary in the exercise of the right so to carry water;

Provided, That the District shall at all times have a prior right to the use of the South Canal for an amount of water equal to the normal capacity of the canal prior to its enlargement by the United States, acting through the Fish and Wildlife Service, under the contract dated May 25, 1940.

(b)  Any enlargement of the South Canal undertaken under Article 25(a)(ii) of this contract shall be without expense to the District, including any expenditures required to accommodate structures and facilities, such as roads, bridges, or turnouts existing at the time of such enlargement, and shall be done in a manner that will avoid as much as reasonably possible any unnecessary

13

002486

017618

encroachment on or damage to irrigable lands adjacent to the canal.

(c)  If the United States, acting under this contract, uses the enlarged South Canal, or provides capacity in the South Canal in excess of that enlarged capacity provided pursuant to the contract of May 25, 1940, by the United States (acting through the Fish and Wildlife Service), the United States' share of the cost of maintaining and operating the Strait gates, intake structures, and the South Canal for any calendar year shall be in the proportion that

(i)  the number of acre-feet of water carried through the canal for use by the United States in connection with operations in California, is to

(ii)  the total number of acre-feet carried through the canal. Payment of the United States' share shall be made within a reasonable time after the close of each calendar year, but nothing herein shall be deemed to supersede any special arrangement with the District for the time or manner of settlement.  Nothing in this contract, however, shall govern the matter of division of the United States' share of the costs between various interested government agencies.

### Disposition of Revenues from Public Lands

26.  (a)  It is understood and agreed, and without which understanding and agreement this contract would not have been made, that the provisions of subsection I of section 4 of the Act of December 5, 1924 (43 Stat. 701, 703), as between the parties hereto, do not control the disposition of revenues derived by the United States from public lands situated within the boundaries of the District, or from any source whatsoever.

(b)  Net revenues derived by the United States from the public lands within the boundaries of the District shall be covered into the reclamation

002487

017619

fund and credited, first, as a return of the amount by which the District's obligations are reduced under the provisions of Article 11 of this contract; second, as the return of the cost apportioned to the public lands within the boundaries of the District; third, to offset the balance of the charges allocated to the Lower Klamath Lake Division as of December 31, 1942; and fourth, as an increment to the reclamation fund without being credited for the benefit of any division of the Project.

(c)  The term "public lands" used in this contract with respect to lands within the District boundaries, as these may be revised, includes lands ceded to the United States by the State of Oregon pursuant to its act approved January 20, 1905 (L. 1905, ch. 5, p. 63); and it is agreed that there has heretofore been apportioned to the public lands within the District, as of the date of this contract, the sum of $36,714.37, representing a proportionate share of funds heretofore expended from the reclamation fund in connection with the Project.

<u>Opening and Assessment of Public Lands; Water Rental</u>
<u>Prior to Opening</u>

27.  When the public lands within the District boundaries are opened to entry, the District shall furnish water for them, as required from the water supply provided for herein in the same manner and in the same quantity that is furnished to other comparable lands within the District, subject to the payment of requisite assessments, tolls, or other charges.  The District agrees that construction charges assessed against or allocated to the public lands upon their being opened to entry shall not exceed the amount charged against other comparable lands within the District (not now public lands), taking into account any adjustment of charges against such other lands as the result of this contract and as the

15

002488

result of the charges against such public lands.  Until such time as the
public lands within the District are opened to entry, the District shall
furnish water for them, as required, from the water supply provided for
herein, at rates per acre which shall not exceed the operation and mainten-
ance charge per acre levied against the private lands in the District,
plus a water rental charge as the Secretary shall determine to be
reasonable.

## Installation, Maintenance and Regulation of Gates in Klamath Strait

28. (a)  The United States has heretofore installed gates in the
so-called Klamath Strait, for the purpose of regulating flows of water
into and out of the area within the District's boundaries and for other
purposes.  The right to operate these gates and works incidental thereto is
vested in the United States.  Subject to the provisions of
this article, the United States agrees to keep these gates closed, barring
acts of God, unavoidable accidents, or other causes beyond the control of the
United States, except as provided in this subsection.  The gates will be
opened, at the request of the District, when this is necessary in con-
nection with the reclamation of lands within the District boundaries, or
when this is determined to be necessary by the United States in connection
with the reclamation and use of lands in California.

(b)  Complete control of the gates in Klamath Strait shall be and
remain in the United States, but by the retention of such control the United
States does not assume any obligation for any maintenance or replacement
thereof.  In no event shall any liability accrue against the United States,
its officers, agents, or employees for any damages, direct or indirect, that

16

017621

may result to the lands within the District from the operation or control
of said gates and related structures by the United States.

### United States Not Obligated to Construct, Operate, or Maintain Systems.

29. It is understood and agreed that the United States shall not be
obligated to construct any portion of the system required for the irrigation
or drainage of the lands within the District boundaries, nor to operate or
maintain such works, nor to expend any further sums toward the reclamation
of these lands; nor does the United States assume any responsibility for the
success of the reclamation of the lands within the boundaries of the
District.

### Charges for Crop Census and Special Work

30. On or before April 1 of each year from the date of this con-
tract, the District shall pay to the United States for the calendar year
ending on the preceding December 31 in each case, the following costs:

(a) The cost of all crop censuses and investigations under
the provisions of Article 32 hereof;

(b) The District's share as determined by the Secretary of
such costs for special work performed for the benefit of the
District or the Project by the United States at the direction of
the Secretary, and which in the opinion of the Secretary are for
the use and benefit of the District.

### District to Keep Books and Records and Crop Report Returns

31. The District shall

(a) Install and maintain a set of books of accurate account,
to be acceptable to the Secretary, showing all the financial
transactions of the District, and furnish such financial reports

002490

017622

and statements in such form as may be required from time to time by the Secretary.

(b)  Keep an accurate record of all crops raised and agricultural or livestock products produced on the lands within the District, and furnish to the Secretary on or before December 31 of each year a crop report, covering such crops, agricultural and livestock products in such form as is prescribed by the Secretary.

(c)  Keep each year an accurate record of the water supply and the disposition of the same and furnish the Secretary with such detailed reports covering said water supply and its disposition, in such form as is prescribed by the Secretary.

(d)  Keep such other records in such manner and form as the Secretary may require and submit such reports based thereon as may be requested from time to time by the Secretary.

### Crop Census

32.  At such times, as the Secretary, in his opinion, shall deem it necessary or desirable, he may cause a crop census to be taken in the District and an investigation of the per acre income to be made of all, or of such part as he shall determine, of the lands within the boundaries of the District; Provided, That no such census and investigation shall be taken and made more often than once in each calendar year.  Such a census and investigation shall be for the purpose of assisting the Secretary in checking the records furnished by the District to the United States, or for the purpose of securing independent information concerning the crops produced and income secured from the District lands.  In con-

002491

017623

nection with such a census or investigation the Secretary may require such information to be given under oath, and any owner or occupant of District land who shall refuse to give under oath such information, when requested to do so by a crop census taker or other person authorized by the Secretary to secure such information, shall be without right to receive water made available by this contract, until such information is furnished.  The census taker, enumerator, investigator or other person authorized by the Secretary to secure such information shall report to the District Board the descriptions of lands and the names of the owners or occupants refusing such information or refusing to verify or affirm the same under oath or affirmation.  Upon notice from the Secretary, the District shall refuse to deliver water made available by this contract to such land or to such landowners or occupants until the requested information has been furnished.  The Secretary shall furnish the District with a statement of the costs of such crop census and investigation, which costs shall be paid to the United States by the District, as provided in Article 30 hereof.

### Access to Books and Records

33.  Subject to applicable Federal Laws and Regulations, the proper officers or agents of the District shall have full and free access at all reasonable times to the project account books and official records of the Bureau of Reclamation relating to the construction, acquisition, care, operation and maintenance of the project works, and the status of District accounts and payments of operation and maintenance and construction charges, with the right at any time during office hours to make copies thereof.  The proper representative of the United States shall have similar rights in

002492

017624

respect to the account books and records of the District.

### United States to Assist District to Secure Liens

34. The Secretary will, insofar as authorized by law, or as he may in the future be authorized, cooperate with the District for the purpose of permitting the District to secure a lien upon lands within the District, the title to which has not been initiated from the United States, and will cooperate with the District in all ways that may seem to the Secretary advisable as to such public lands within the District. In case of failure to pay charges or assessments, charged or levied against such lands within the District, title to which has not passed from the United States, the District shall report such cases to the Secretary, through the proper officers of the Bureau of Reclamation; and the Secretary will, when in his judgment, the conditions warrant such action, aid the District in forcing the collection of payments or assessments by cancellations of entries and the means provided by the Federal Reclamation Law.

### Rules and Regulations

35. The United States, acting for this purpose through the Secretary, reserves the right, so far as the purport thereof may be consistent with the provisions of this contract, to make reasonable rules and regulations, and to add to or modify them as the Secretary may deem proper and necessary to carry out the true intent and meaning of the law and of this contract and to supply necessary details of their administration; and the District agrees to observe such rules and regulations.

### Secretary Arbiter of Disputes Involving
### Questions of Fact

36. In the event of disputes between the parties hereto arising out of this contract involving questions of fact, insofar as the provisions

002493