UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUROK TRIBE, et al.,<br><br>      Plaintiffs,<br><br>   v.<br><br>U.S. BUREAU OF RECLAMATION, et al.,<br><br>      Defendants,<br>   and<br><br>KLAMATH WATER USERS ASSOCIATION,<br><br>   and<br><br>THE KLAMATH TRIBES,<br><br>      Intervenor-Defendants. | Case No. 19-cv-04405-WHO<br><br>**ORDER GRANTING REQUESTS TO LIFT STAY**<br><br>Re: Dkt. Nos. 928, 938, 951 |

The parties seek to lift the stay of litigation to which they stipulated on March 27, 2020. They disagree, however, on the scope of any subsequent litigation. The U.S. Bureau of Reclamation ("Bureau") and National Marine Fisheries Service (collectively, the federal defendants), along with the Yurok Tribe, Pacific Coast Federation of Fishermen's Associations, and Institute for Fisheries Resources (the plaintiffs), and an intervenor-defendant, the Klamath Tribes, wish to lift the stay only to file a crossclaim challenging an Oregon water district order. These parties also request specific limits on the litigation to protect tribal sovereignty and prevent the adjudication of tribal water rights. Another intervenor-defendant, Klamath Water Users Association ("KWUA"), argues that the stay should be lifted without such constraints.

Because the circumstances surrounding the stay have changed, the stay is LIFTED for the

limited purpose of litigating the crossclaim. The remaining terms of the stay, including the Interim Plan, will remain in effect.

**BACKGROUND**

The motions before me relate to the ongoing attempt to allocate the precious water supply of the Klamath River and balance the often-conflicting interests of the people and wildlife who depend on it. The Bureau is tasked with distributing water via the Klamath Project, which determines the level, timing, and rate of water flow in certain portions of the river. First Am. Compl. ("FAC") [Dkt. No. 17] ¶ 35. This already-difficult charge has become more challenging as the Klamath River Basin continues to endure severe drought conditions.

This case focuses on the Klamath Project's impact on Southern Oregon/Northern California Coast Coho salmon ("coho") and the Klamath River Chinook salmon populations. *Id*. at ¶ 1. Coho are listed as threatened under the Endangered Species Act ("ESA"), meaning the Bureau is prohibited from actions that "take" coho.[1] 62 Fed. Reg. 24,588 (May 6, 1997). Though not listed under the ESA, Chinook salmon are prey for Southern Resident Killer Whales, which are listed as endangered. 70 Fed. Reg. 69,903 (Nov. 18, 2005); FAC at ¶ 1.

The Yurok Tribe filed suit in 2019, challenging the Bureau's 2019-2024 Klamath Project Operations Plan ("Plan") along with a 2019 Biological Opinion ("BiOp") assessing the Plan's impacts on coho and Chinook salmon. Dkt. Nos. 1, 17. Later, they sought a preliminary injunction requiring the Bureau to revert to a previous BiOp. Dkt. No. 27. Before the motion was heard, the parties came to a resolution: The Bureau would implement an Interim Plan until the next Plan and BiOp were developed. Stipulated Stay of Litigation [Dkt. No. 907] 4. The parties also agreed to stay the case until September 30, 2022, "provided that the Bureau operates the Klamath Project in accordance with the Interim Plan." *Id*. at 5:1-3.[2]

There are now two motions to lift the stay, filed by KWUA and the federal defendants.

---

[1] The ESA defines "take" as "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

[2] The plaintiffs sought to lift the stay shortly after it went into effect, arguing that the Bureau failed to comply with the Interim Plan. Dkt. No. 909. I denied the motion, as the evidence did not establish any such violations. Dkt. No. 924.

Dkt. Nos. 928, 938. The federal defendants later modified their motion per a stipulation with the plaintiffs and the Klamath Tribes. Dkt. No. 951. I heard arguments on September 22, 2021.

### A. KWUA'S MOTION TO LIFT THE STAY

KWUA argues that the stay should be lifted because the Bureau is not in compliance with the Interim Plan and because circumstances have changed since it was imposed. KWUA Mot. to Lift Stay ("KWUA Mot.") [Dkt. No. 928] 13, 17-20. To the latter point, KWUA cites the dismissal of a pair of cases that it contends leaves "key federal law questions" unanswered. *Id*. at 17:24-19:2. In 2019, KWUA and co-plaintiffs filed suit in the District of Oregon, challenging the Bureau's adoption of the 2019-2024 Plan. *Id*., Simmons Decl., Ex. A at 1. They took aim at Section 7(a)(2) of the ESA, seeking an order that it only applied to discretionary agency actions and that "future operations planning and decisions shall not apply ESA section 7(a)(2) to the storage, diversion, or delivery of water for irrigation, livestock, and domestic purposes."[3] *Id*. at 33. The court dismissed the cases after finding that the Klamath Tribes and Hoopa Valley Tribe were required parties but could not be joined because of their sovereign immunity. *Klamath Irrigation Dist. v. United States Bureau of Reclamation*, 489 F. Supp. 3d 1168, 1181 (D. Ore. 2020).[4] That dismissal, KWUA now argues, left it without a forum to "examine[] the proper scope and application of ESA section 7(a)(2)" to the Project. KWUA Reply [Dkt. 957] 10:7-14.

KWUA contends the stay should be lifted without limiting future motions or crossclaims. *Id*. at 1:14-16. KWUA concurrently submitted a motion for partial summary judgment, arguing that Section 7(a)(2) "does not apply to the aspects of [Klamath Project] operations that involve storage, diversion, delivery, and use of water for irrigation." KWUA Mot., Att. 1 at 1.

### B. FEDERAL DEFENDANTS' MOTION TO LIFT THE STAY

The federal defendants also cite the Bureau's compliance with the Interim Plan and

---

[3] Section 7(a)(2) requires federal agencies to engage in a consultation process to ensure that their actions are "not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification" of critical habitats. 16 U.S.C. § 1536(a)(2).

[4] The Tribes filed their motions to dismiss in November 2019. *Id*. at Dkt. Nos. 61, 62 (found at 2019 WL 9668253 and 2019 WL 9668254).

3

1  changed circumstances as reasons to lift the stay. Fed. Defs. Mot. to Lift Stay ("Fed. Defs. Mot.")
2  [Dkt. No. 938] 3:6. They focus on an April 6, 2021, order issued by the Oregon Water Resources
3  Department ("OWRD"). *Id*., Bottcher Decl., Att. 1. The order prohibits the Bureau from
4  releasing water from Upper Klamath Lake classified as "stored" under Oregon law beyond what is
5  authorized for irrigation purposes.[5] *Id*. at 10; Fed. Defs. Mot. at 3:25 n.2. The federal defendants
6  contend that they cannot comply with both the OWRD order and the Interim Plan, as releasing
7  stored water is necessary to meet the Interim Plan's requirements and Bureau's ESA obligations.
8  Fed. Defs. Mot. at 4:9-21. Alternatively, they argue that the order represents a changed
9  circumstance that justifies lifting the stay. *Id*. at 6:7-20.

10  The federal defendants seek to lift the stay only to file a crossclaim against OWRD and KWUA seeking declaratory and injunctive relief from the order, along with any supplemental complaint the plaintiffs might file against the OWRD. Stipulation on Fed. Defs. Mot. ("Stip.") [Dkt. 951] ¶ 1, 6. They seek additional limitations, specifically that: (1) the United States, Yurok Tribe, and Klamath Tribes do not waive sovereign immunity except to litigate the crossclaim and supplemental complaint; and (2) the parties will not adjudicate or quantify the Tribes' water rights, nor argue breach of trust. *See id*., Ex. A ¶ 7. The parties also wish to bifurcate the crossclaim, litigating the ESA basis for the crossclaim before the tribal water rights basis. *Id*. at ¶ 10.

## LEGAL STANDARD

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 683 (1997). Conversely, the court has the authority to lift a stay. *Boyle v. Cty. of Kern*, No. 1:03-cv-05162, 2008 WL 220413, at *5 (E.D. Cal. Jan. 25, 2008) ("The corollary to this power is the ability to lift a stay previously imposed."). Courts within the Ninth Circuit have recognized that "the court may abandon its imposed stay of litigation if the circumstances that persuaded the court to impose the stay in the first place have changed significantly." *United States v. Fallbrook Pub. Util. Dist.*, No. 51-cv-

---

[5] The federal defendants state that the OWRD has twice notified the Bureau of violations of the order. Fed. Defs. Oppo. to KWUA Mot. [Dkt. 954] at 2:7 n.3. The record, however, does not contain copies of these citations.

4

1247, 2017 WL 1281915, at *2 (S.D. Cal. April 6, 2017) (citation omitted).

## DISCUSSION

As a threshold issue, I find that circumstances have significantly changed since the stay was imposed that justify lifting it now.

Of primary note is the parties' underlying concession that the stay should be lifted. The parties agreed to this stay in March 2020. Now, they agree—albeit on different grounds—that litigation should proceed. This on its own is a changed circumstance that warrants action.

The OWRD order marks another significant change. Whether the Bureau is bound by the order in the face of the Interim Plan and its other obligations under federal law is a question that remains unanswered—and one that did not exist when the parties first stipulated to the stay. The federal defendants' concerns about complying with both the OWRD order and the Interim Plan, when one action prohibits the use of stored water and the other necessitates it, are justified without further clarification. *See* Fed. Defs. Mot. at 4:9-21.

I am less compelled by the dismissal of the Oregon cases, which was pending when the parties in this case agreed to the stay. *See Klamath Irrigation Dist.*, 489 F. Supp. 3d 1168 [Dkt. Nos. 61, 62]. But this need not carry great weight in my decision. The parties' agreement and OWRD order represent sufficient changes in circumstances to lift the stay.

The question, then, is what happens next.

The stakes here are high. The water supply in the Klamath River Basin is increasingly limited. The people and wildlife who depend on that water—for food, jobs, culture, and habitat—feel the effects daily. As such, I believe it especially important to ensure that all parties are fully heard in a timely way on issues that may affect water allocation in 2022. At the same time, the federal defendants, plaintiffs, and the Klamath Tribes make compelling arguments about the need to protect sovereign immunity and avoid an extensive back-and-forth that will undoubtedly delay the resolution of any critical issues for 2022.

Given this, the stay will be lifted in a limited manner: to litigate the federal defendants' crossclaim. For clarity, the defendants of that crossclaim, including any new parties to this suit, may assert any affirmative defense (or new crossclaim) they wish. If they also wish to file a

motion to dismiss, they may do so on any issue affecting the 2022 water allocation as allowed by the stipulation between the federal defendants, the plaintiffs and the Klamath Tribes. Dkt. No. 951. They may identify in that motion any other issue that is covered by the stipulation that would have been a basis of a motion to dismiss absent the stay; such identified issues may be litigated once the stay is lifted.[6] The plaintiffs may also file a supplemental complaint against OWRD, as requested. *See* Stip. at ¶ 6. To protect tribal sovereignty and avoid the adjudication of tribal water rights, this litigation will not exceed the parameters proposed by the federal defendants, plaintiffs, and Klamath Tribes in Paragraph 7 of their stipulation, which I incorporate by reference here, for so long as the rest of the stay is in effect. Stip., Ex. A at ¶ 7. The federal defendants are also permitted to bifurcate their crossclaim as requested. *See id.* at ¶ 10.

Having reviewed the proposed crossclaim and motion for summary judgment, I believe the crossclaim provides ample grounds to litigate the issues that are critical for resolution prior to resolving any allocation issues in 2022. If there are any other issues that any party asserts must be decided quickly because of their impact on the 2022 allocation issues, or any disputes about what may be litigated pursuant to this Order, the parties may bring those to my attention at the next case management conference, which I am moving up to December 7, 2021. The Joint Case Management Statement is due November 30, 2021.

## CONCLUSION

The stipulated stay ordered on March 27, 2020, is LIFTED for the limited purpose of litigating the federal defendants' crossclaim and plaintiffs' supplemental complaint. Any terms of the stay not directly modified by this Order shall remain in effect, including the Interim Plan.

**IT IS SO ORDERED.**

Dated: September 30, 2021

William H. Orrick
United States District Judge

---

[6] The Klamath Irrigation District ("KID") sought leave to file an amicus brief opposing the federal defendants' motion to lift the stay. Dkt. 944. The submitted brief, however, focused on the merits of the federal defendants' crossclaim. As such, KID's request to participate as amicus is DENIED without prejudice. KID is welcome to renew its request after the crossclaim is filed.