ELLEN F. ROSENBLUM
Attorney General of Oregon
J. NICOLE DEFEVER #191525
SARA VAN LOH #264704
Senior Assistant Attorneys General
YOUNGWOO JOH, OSB #164105 (admitted *pro hac vice*)
Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (503) 881-9008
Fax: (971) 673-5000
Email: Sara.VanLoh@doj.state.or.us

*Attorneys for Oregon Water Resources Department*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **YUROK TRIBE,** *et al.,*<br><br>                                    Plaintiffs,<br><br>**v.**<br><br>**U.S. BUREAU OF RECLAMATION,** *et al.,*<br><br>                                    Defendants. | Case No. 3:19-cv-04405-WHO<br><br>Related Cases No. 3:16-cv-04294-WHO<br>                        No. 3:16-cv-06863-WHO<br><br>**NOTICE OF MOTION AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON OREGON WATER RESOURCES DEPARTMENT'S COUNTERCLAIM; COMBINED OPPOSITION TO UNITED STATES' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE: November 9, 2022<br>TIME: 2:00 p.m.<br>Courtroom 2, 17th Floor<br>Judge: Honorable William H. Orrick |

# TABLE OF CONTENTS

Memorandum of Points and Authorities ................................................................. 1

Introduction ......................................................................................................... 1

Statement of Issues to Be Decided ..................................................................... 2

Background ......................................................................................................... 2

I. Oregon Water Rights ....................................................................................... 2

II. OWRD's Regulatory Authority ....................................................................... 3

III. U.S. Bureau of Reclamation's State Water Rights Under the Klamath Basin
Adjudication ........................................................................................................ 4

IV. Events Leading to the United States' Crossclaim Against OWRD .......................... 5

A. In April 2020, Klamath Irrigation District Obtained a Writ of Mandamus Requiring
OWRD to Take Exclusive Charge of the Upper Klamath Lake ...................................... 5

B. In October 2020, KID Obtained a Mandatory Injunction Requiring OWRD to Stop
Reclamation from Releasing Stored Water Except to Satisfy State Water Rights ........... 6

C. OWRD Attempted to Comply with the Injunction. ........................................... 8

D. OWRD Appealed the Circuit Court's Injunction and Seeks a Stay of the April 6
Order. .................................................................................................................. 9

E. In Response to the April 6 Order and the Later Notices of Violations, Reclamation
Generally Asserted That the Endangered Species Act Preempts OWRD's Authority ... 10

F. The United States Filed Its Crossclaim, Bringing OWRD Into the Litigation ........... 11

Standard of Review ............................................................................................ 11

Argument .......................................................................................................... 12

I. OWRD Is Entitled to Summary Judgment on Its Counterclaim ................................ 12

A. The Reclamation Act of 1902 Requires Reclamation to Comply with State Law
Unless There Is a Direct Conflict with Federal Law. ................................................ 12

B. Absent a Direct Conflict with Federal Law, OWRD Has Regulatory Authority over
Reclamation Under the Oregon Water Code .......................................................... 13

II. This Court Should Reject the United States' Argument That OWRD Cannot Issue
Orders "Impinging" on Reclamation's Compliance with Federal Law. ......................... 16

III. Intergovernmental Immunity Does Not Apply to OWRD's Regulatory Orders. ....... 18

IV. Section 8 of the Reclamation Act Does Not Prevent OWRD from Regulating Water
in an Interstate Stream When That Water Is Located in the State of Oregon. ............... 19

A. The Reclamation Act Did Not Affect Existing Law on Interstate Waters
.................................................................................................................................
............................................................................................................... 19

B. Section 8 Does Not Incorporate Equitable-Apportionment Principles, and the United
States Has Not Pled an Equitable-Apportionment Action.
.................................................................................................................................
............................................................................................................... 21

V. The United States' and Plaintiffs' Requested Remedies Are Overbroad, Because
State Law Is Preempted Only *to the Extent* It Conflicts with Federal Law................... 22

CONCLUSION ........................................................................................................ 24

1

## TABLE OF AUTHORITIES

2

3

**CASES**

4

*Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531 n.12 (1987)............................................23

5

*Arizona v. California*, 373 U.S. 546 (1963)...........................................................................21

6

*California Oregon Power Co. v. Beaver Portland Cement Co.*, 295 U.S. 142 (1935)...............20

7

*California v. United States*, 438 U.S. 645 (1978) ...................................................12, 13, 14, 18

8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................................................................11

9

*Colorado v. New Mexico*, 459 U.S. 176 (1982)....................................................................21

10

*Columbia Basin Land Protection Ass'n v. Schlesinger*, 643 F.2d 585 (9th Cir. 1981)...............18

11

*Davis v. Michigan Dep't. of Treasury*, 489 U.S. 803 (1989) ...................................................19

12

*Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975)....................................................................23

13

*Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132 (9th Cir. 2001) ....................................................................................................................12

14

*Florida v. Georgia*, 141 S. Ct. 1175 (2021)..........................................................................21

15

*Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988).........................................................18

16

*Hancock v. Train*, 426 U.S. 167 (1976) ...............................................................................18

17

*Hinderlider v. La Plata River & Cherry Creek Ditch Co.*, 304 U.S. 92 (1938) ........................22

18

*Idaho v. Oregon*, 462 U.S. 1017 (1983)...............................................................................21

19

*Klamath Irrigation District v. Oregon Water Resources Department* (20CV15606), .................5

20

*Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206 (9th Cir. 1999) ...............16

21

*Knox v. Brnovich*, 907 F.3d 1167 (9th Cir. 2018)...................................................................14

22

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970 (9th Cir. 1991) ...........................23, 24

23

*Martin v. Lessee of Waddell*, 41 U.S. 367 (1842) ................................................................20

24

*Mississippi v. Tennessee*, 142 S. Ct. 31 (2021)...............................................................21, 22

25

*States v. Cal. State Water Res. Control Bd.*, 694 F.2d 1171 (9th Cir. 1982) ............................13

26

*Tarrant Regional Water Dist. v. Herrmann*, 569 U.S. 614 (2013) ...........................................20

27

*Teel Irr. Dist. v. Water Res. Dept.*, 323 Or. 663 (1996)...........................................................2

28

*TPC, LLC v. Or. Water Res. Dept.*, 308 Or. App. 177 (2020) .................................................. 2

*United States v. Oregon*, 44 F.3d 758 (9th Cir. 1994) .......................................................... 3

*Volkswagen "Clean Diesel" Marketing, Sales Practices, & Products Liability Litig.*,
    959 F.3d 1201 (9th Cir. 2020) ........................................................................................ 14

*WaterWatch of Oregon v. Winchester Water Control District*, No. 3:20-cv-01927-IM,
    2021 WL 4317150 (D. Or. Sept. 22, 2021) ..................................................................... 17

*Wooley v. Maynard*, 430 U.S. 705 (1977) ......................................................................... 23

*Wyoming v. Colorado*, 259 U.S. 419 (1922) ..................................................................... 22

**STATUTES**

Desert Lands Act ................................................................................................................. 20

Endangered Species Act .................................................................................... 1, 2, 5, 6, 8, 11

Or. Admin. R. §§ 690-250-0100(1) ................................................................................... 15

Or. Rev. Stat. § 537.110 ....................................................................................................... 2

Or. Rev. Stat. § 537.120 .................................................................................................... 2, 3

Or. Rev. Stat. § 539.130 ....................................................................................................... 3

Or. Rev. Stat. § 539.170 .................................................................................................... 3, 4

Or. Rev. Stat. § 540.045(a) .................................................................................................. 3

Or. Rev. Stat. § 540.045(b) .................................................................................................. 3

Or. Rev. Stat. § 540.045(c) ............................................................................................... 4, 15

Or. Rev. Stat. § 540.145 ...................................................................................................... 13

Or. Rev. Stat. § 540.210(1)–(3) ........................................................................................ 4, 15

Or. Rev. Stat. §§ 536.007(11) .............................................................................................. 3

Or. Rev. Stat. §§ 539.005 ..................................................................................................... 3

Or. Rev. Stat. §§ 539.010 ..................................................................................................... 3

Or. Rev. Stat. §§ 539.015–539.021 ...................................................................................... 3

Or. Rev. Stat. §§ 539.030–539.120 ...................................................................................... 3

Or. Rev. Stat. §§ 539.130–539.150 ...................................................................................... 3

Or. Rev. Stat. §§ 539.200 ..................................................................................................... 3

Or. Rev. Stat. §§ 540.010 ................................................................................. 3

Or. Rev. Stat. §§ 540.020 ................................................................................. 3

Or. Rev. Stat. §§ 540.045 (b) .......................................................................... 14

Or. Rev. Stat. §§ 540.045(a) ........................................................................... 14

ORS 540.210(2) ................................................................................................. 6

ORS 540.740 ...................................................................................................... 6

Section 8 of the Reclamation Act of 1902 ....................... 1, 2, 10, 11, 12, 18, 19, 20, 22

**OTHER AUTHORITIES**

Or. Admin. R. § 690-250-0150(4) ..................................................................... 5

Or. Rev. Stat.§ 690-250-0010(10) .................................................................... 5

**REGULATIONS**

Or. Admin. R. § 690-250-0100 (2) ............................................................... 4, 15

Or. Admin. R. § 690-250-0100(1) ................................................................ 4, 15

Oregon Water Code in 1909 ............................................................................. 3

**UNITED STATES CODE**

28 U.S.C. § 2201(a) ........................................................................................ 23

43 U.S.C. § 383 ..................................................................................... 12, 20, 22

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Cross-Defendant and Counterclaimant Oregon Water Resources Department (OWRD) will and hereby does move for partial summary judgment on its counterclaim against the United States of America, at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, on November 30, 2022, at 2:00 p.m., or at another date and time set by the Court.

OWRD submits this notice of motion and cross-motion for partial summary judgment and combined opposition to the United States' and Plaintiffs Yurok Tribe, Pacific Coast Federation of Fishermen's Associations, and Institute for Fisheries Resources' motions for summary judgment on the grounds that Section 8 of the Reclamation Act of 1902 requires the U.S. Bureau of Reclamation (Reclamation) to comply with state water law in its Klamath Project operations. This motion is based on the following memorandum of points and authorities, the set of stipulated documents the parties previously submitted to the Court, and the pleadings and files on record in this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Despite the inherent complexity of this major federal reclamation project, this Court need address only two simple questions to resolve this matter as it pertains to OWRD: (1) Does federal law preempt state law where there is a direct conflict between the two? (2) Must the U.S. Bureau of Reclamation comply with state law in its Klamath Project operations where there is not a direct conflict between state and federal law? The answer to both questions is yes.

OWRD does not dispute that it lacks authority to prevent Reclamation from complying with the Endangered Species Act. OWRD issued the April 6, 2021 Order purportedly instructing Reclamation to cease releasing water from Link River Dam because the Marion County Circuit Court issued an injunction requiring OWRD to do so.

But the United States' argument that OWRD did not have authority to issue the April 6 Order at all is wrong. The Reclamation Act of 1902 broadly requires Reclamation to comply with state law in its Klamath Project operations except where state law directly conflicts with

Reclamation's obligations under federal law. Contrary to the United States' contentions, OWRD's oversight power is not limited to questions of water-rights adjudication and subsequent administration. Instead, OWRD may lawfully regulate Reclamation's operation of the Klamath Project just as it regulates any other water-rights holder in the state. Ignoring the extensive body of U.S. Supreme Court and Ninth Circuit law that is directly on point, the United States asks this Court to strip OWRD of the regulatory authority over Reclamation that it unquestionably has. This the Court should not do.

In sum, OWRD agrees that the April 6 Order and the subsequent notices of violation cannot require Reclamation not to comply with the Endangered Species Act. But because the Reclamation Act expressly and broadly requires Reclamation to comply with state laws "relating to the control, appropriation, use, or distribution of water used in irrigation," the Court should reject Reclamation's sweeping assertions of immunity and freedom from state regulatory oversight.

## STATEMENT OF ISSUES TO BE DECIDED

1. Does federal law preempt state law when there is a direct conflict between the two?

2. Must the Bureau of Reclamation comply with state law in its Klamath Project operations where there is not a direct conflict between state and federal law?

## BACKGROUND

### I. OREGON WATER RIGHTS

In Oregon, all waters from any source belong to the public. Or. Rev. Stat. § 537.110. All waters within the state may be appropriated for beneficial use, subject to existing rights and rights already vested. Or. Rev. Stat. § 537.120. Oregon applies the doctrine of prior appropriation, or "first come, first served," in assigning water rights. *Teel Irr. Dist. v. Water Res. Dept.*, 323 Or. 663, 667 (1996). Under that doctrine, a person acquires an appropriative right by diverting water and applying it to a beneficial use. *Id.* During water shortages, senior water-rights holders may use the entirety of their water right before junior water-rights holders receive any water. *TPC, LLC v. Or. Water Res. Dept.*, 308 Or. App. 177, 194 (2020).

Prior to the enactment of the Oregon Water Code in 1909, the relative rights of water users were established piecemeal, and were based on the date of appropriation and amount of water appropriated. *United States v. Oregon*, 44 F.3d 758, 763 (9th Cir. 1994). Since the Water Code became law in 1909, all water users seeking to obtain new water rights are required to obtain a permit or license from OWRD, with some exceptions. Or. Rev. Stat. § 537.120. The priority date for such rights is generally the date of the permit application.

The Oregon Water Code expressly preserved water rights existing at the time of its enactment as "undetermined vested rights." Or. Rev. Stat. §§ 536.007(11), 539.010. The Code established a uniform system for ascertaining the parameters and priorities of all such pre-1909 water rights through a process known as a general stream adjudication, carried out by the director of OWRD. Or. Rev. Stat. §§ 539.200, 539.005; *United States v. Oregon*, 44 F.3d at 764.

Under these procedures, OWRD receives statements from claimants, on the basis of which it determines the relative rights of those claimants. Or. Rev. Stat. §§ 539.015–539.021. When necessary, OWRD investigates the claims and holds hearings for contested claims. *Id.* §§ 539.030–539.120. After the conclusion of the contests and compilation of the data, OWRD issues findings of facts and an order of determination, which determines and establishes the several rights to the waters of a stream. *Id.* § 539.130. Following that, OWRD files the findings of facts and order of determination in state circuit court, which then proceeds with automatic judicial review of OWRD's findings and determinations. *Id.* §§ 539.130–539.150. While the review proceeds in circuit court, OWRD must follow the division of water set forth in the director's order. *Id.* § 539.170.

## II.   OWRD'S REGULATORY AUTHORITY

Oregon is divided into water districts, each managed by a watermaster appointed by OWRD's director. Or. Rev. Stat. §§ 540.010, 540.020. Watermasters have the authority and duty to regulate the respective water users' rights when a senior water-rights holder makes a "call" for water during shortages, or in the context of a dispute between users. Or. Rev. Stat. § 540.045(a), (b). "Regulating" in this context may require the watermaster to take physical

control of the headgates, valves, or other control works at the points of diversion. Or. Rev. Stat. § 540.045(c).

After receiving a complaint of water shortage or unlawful use, a watermaster initiates an investigation by reviewing the relevant records and performing field inspections, as necessary to determine the priority of the relevant rights and the availability of water. Or. Admin. R. § 690-250-0100(1). If the investigation reveals a valid complaint, the watermaster may begin regulating the users' appropriation in accordance with their existing water rights of record. Or. Admin. R. § 690-250-0100(1), (2). Where a dispute involves the division of water from a reservoir, the watermaster, upon the request of a water user or reservoir owner, may take exclusive charge of the reservoir to divide or distribute the water in accordance with the respective rights of the users.[1] Or. Rev. Stat. § 540.210(1)–(3).

III. **U.S. BUREAU OF RECLAMATION'S STATE WATER RIGHTS UNDER THE KLAMATH BASIN ADJUDICATION**

As discussed at length in the United States' and Plaintiffs' briefs, Oregon began a general adjudication of Klamath Basin surface water rights in 1975. On February 28, 2014, OWRD submitted the Amended and Corrected Findings of Fact and Order of Determination (ACFFOD) to the Klamath County Circuit Court, where it is currently under judicial review. Until the circuit court concludes its review, the watermaster must follow the division of water set forth in the ACFFOD. *See* Or. Rev. Stat. § 539.170 ("While the hearing of the order of the Water Resources Director is pending in the circuit court, and until a certified copy of the judgment, order or decree of the court is transmitted to the director, the division of water from the stream involved in the appeal shall be made in accordance with the order of the director.").

Per the ACFFOD, Reclamation has a right to store water in the Upper Klamath Lake under provisionally determined claim KA 294, up to a maximum storage volume of 486,828 acre-feet per year between the elevations of 4143.3 and 4136.0. Multiple water users share a water-rights claim, KA 1000, that includes the right to use water stored in Upper Klamath Lake

---

[1] OWRD is not aware of any authority that allows it to physically take exclusive charge of federally owned facilities.

1   under claim KA 294. Under Oregon law, "legally stored water" is defined as "[a]ny water

2   impounded in a reservoir under the provisions of an established right to store water." *Id.* § 690-

3   250-0010(10). The use of legally stored water "is governed by the water rights, if any, which

4   call upon that source of water." Or. Admin. R. § 690-250-0150(4).

5   **IV.   EVENTS LEADING TO THE UNITED STATES' CROSSCLAIM AGAINST OWRD**

6        **A.   In April 2020, Klamath Irrigation District Obtained a Writ of Mandamus
             Requiring OWRD to Take Exclusive Charge of the Upper Klamath Lake.**

7

8        Severe drought conditions struck the Klamath area in 2020. (STIPDX-000701, Recl.

9   Letter to OWRD re: First Suppl. Resp. to Interim Order (Apr. 28, 2020))  Due to the diminished

10  water supply, Reclamation did not provide a full allocation of Klamath Project water to

11  irrigators during the growing season, but continued releasing water from Upper Klamath Lake

12  to comply with the Endangered Species Act (ESA). (*Id.*; STIPDX-000707, OWRD, Interim

13  Order (Apr. 23, 2020)) The Klamath Irrigation District (KID)—a contractual recipient of Project

14  water—filed a notice of dispute against Reclamation with OWRD in April 2020, challenging

15  Reclamation's alleged release of stored water for Endangered Species Act and federal tribal

16  trust responsibilities rather than irrigation. (STIPDX-000707, OWRD, Interim Order (Apr. 23,

17  2020); STIPDX-000429, Apr. 6 Order.)  KID requested that the watermaster take charge of

18  Upper Klamath Lake reservoir to prevent Reclamation from releasing stored water through the

19  Link River Dam "except to meet the needs of state-recognized water rights calling on that

20  source." (*Id.*)

21       On April 16, 2020, about two weeks after receiving KID's notice of dispute, OWRD

22  took charge of Upper Klamath Lake and issued a notice of dispute and investigation to

23  Reclamation, PacifiCorp,[2] and KID. (STIPDX-000707, OWRD Interim Order (Apr. 23, 2020))

24  The following day, KID filed a mandamus petition in the Marion County Circuit Court,

25  *Klamath Irrigation District v. Oregon Water Resources Department* (20CV15606), asking the

26  court to command that OWRD take exclusive charge of Upper Klamath Lake and divide or

27  _____

28       [2] PacifiCorp operates the Link River Dam under Reclamation's direction. *Klamath
    Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1212-13 (9th Cir. 1999).

distribute the reservoir water in accordance with the relative rights of the water users under ORS 540.210(2). (*Id.*) The court quickly issued the writ.

OWRD then issued an Interim Order on April 23, 2020, ordering Reclamation to "cease releasing stored water from [Upper Klamath Lake] reservoir except in accordance with the relative and respective state law rights calling upon the stored water." (*Id.*) The Interim Order provided further that, for releases of stored water "for a purpose other than to satisfy state law rights," Reclamation could justify its releases by "provid[ing] the Department the following information in writing: [among others, rate, volume, and legal authority]." (*Id.*)

Reclamation responded to the Interim Order that same day, explaining that it was "accomplishing the release of water from Upper Klamath Lake in compliance with applicable federal law, including but not limited to the Endangered Species Act, and also consistent with a stipulated stay of litigation entered" in the underlying litigation here. (STIPDX-000710, Recl. Letter to OWRD re: Initial Resp. to Interim Order (Apr. 23, 2020).) Five days later, Reclamation supplemented that response with further explanation and data. (STIPDX-000701–06 (Recl. Letter to OWRD re: First Supp. Resp. to Interim Order (Apr. 28, 2020).) That data included the flow rates of Endangered Species Act releases by day for the latter half of April 2020. (*Id.* at -000706.) Reclamation explained that it "may provide additional relevant data and information as it is generated and becomes available, understanding that OWRD may make more specific requests in conjunction with its investigation." (*Id.*)

**B.  In October 2020, KID Obtained a Mandatory Injunction Requiring OWRD to Stop Reclamation from Releasing Stored Water Except to Satisfy State Water Rights**

Dissatisfied with OWRD's response to the writ of mandamus, KID filed a complaint against OWRD in Marion County Circuit Court in May 2020. (STIPDX-000237, Order Granting Pet'r's Partial Mot. for Summ. J., *KID v. OWRD*, No. 20CV17922 (Oct. 13, 2020)) KID sought an injunction under ORS 540.740, which allows injunctive relief where "the watermaster has failed to carry into effect the order of the Water Resources Commission or decrees of the court determining the existing rights to the use of water." (*Id.*) KID quickly

1  moved for summary judgment, which OWRD opposed on several state-law grounds. (*Id.* at -

2  000237.)

3      At the end of September, the circuit court issued an opinion finding in KID's favor. (*Id.*

4  at -000238.)[3] The court found that, even after taking exclusive charge of Upper Klamath Lake

5  and having a statutory duty to divide or distribute the water per the relative rights of the water

6  users, OWRD improperly allowed Reclamation to use stored water from Upper Klamath Lake

7  without first "determining whether the Bureau had a right, permit, or license to appropriate the

8  Stored Water in the [lake]." (STIPDX-000241-42, Amended Opinion, *KID v. OWRD*, No.

9  20CV17922 (Oct. 2, 2020)) The court explained that it had "reviewed the entirety of the Oregon

10  Water Rights Act and [was] unable to identify any opt-out provision that would allow [OWRD]

11  to allow the distribution or use of water to any party, including the Federal Government, without

12  an established right, permit or license to use Oregon Water." (*Id.* at -000243.) The court further

13  found that the OWRD watermaster had knowingly allowed Reclamation to release water

14  illegally, at the expense of Oregon water users.[4] (*Id.*)

15      In accordance with its Amended Opinion, the court issued an order granting KID's

16  motion for summary judgment. (STIPDX-000237–38, Marion Cnty. Cir. Ct. Order (Oct. 13,

17  2020)) The order also contained a mandatory injunction that required OWRD to immediately

18  stop Reclamation from releasing stored water from Upper Klamath Lake except to satisfy state

19  water rights:

20          Accordingly, pursuant to ORS 540.740, [the OWRD
            watermaster] is ordered to immediately stop the distribution, use
21          and/or release of Stored Water from [Upper Klamath Lake]
            without determining that the distribution, use and/or release is
22          for a permitted purpose by users with existing water rights of
            record or determined claims to use the Stored Water in [Upper
23          Klamath Lake]. (*Id.*).

24  ───────────────

25      [3] In an order granting KID's motion for partial summary judgment, the court described
    its Amended Opinion as issuing on September 30, 2020. (STIPDX-000237–38.) The Amended
26  Opinion itself, however, is dated October 2, 2020. (STIPDX-000239.) The difference in date is
    immaterial, and OWRD thus relies on the court's description in the later order.

27      [4] OWRD disagrees with the Amended Opinion's factual findings and legal conclusions.
    OWRD also disagrees with some of the Amended Opinion's characterizations of OWRD's
28  arguments. Those disagreements, however, are not germane to this proceeding.

1

### C.    OWRD Attempted to Comply with the Injunction.

2        To comply with the injunction,[5] OWRD began actively monitoring flows and releases

3  from Link River Dam to determine whether Reclamation was releasing stored water.[6] (STIPDX-

4  000429–30, Apr. 6 Order.) Between mid-October 2020 and early April 2021, OWRD did not

5  observe any releases of stored water through the dam. (*Id.* at -000430, -000434.)

6        In mid-March 2021, Reclamation sent a letter to KID, with a copy to OWRD, directing

7  KID to delay its diversions of water from the Upper Klamath Lake and the Klamath River until

8  further notice because Reclamation did not have Project water available for KID's use.

9  (STIPDX-000447–49, Recl. Letter to KID re: Klamath Project Water Availability (Mar. 12,

10 2021).) The letter explained that the delayed diversions were necessary because the Endangered

11 Species Act required Reclamation "to meet certain water surface elevations in [Upper Klamath

12 Lake] and Klamath River flows below Iron Gate Dam." (*Id.* at -000447.) That letter, combined

13 with forecasts of decreasing inflows to Upper Klamath Lake, gave OWRD "cause to believe that

14 the Bureau [would], at some near future date, release legally stored water through the Link

15 River Dam to comply with the Bureau's federal tribal trust obligations and ESA obligations."

16 (STIPDX-000434, Apr. 6 Order.) The Marion County court's injunction thus compelled OWRD

17 to issue an order against Reclamation. (*Id.*)

18       On April 6, 2021, OWRD issued that order (which is now the subject of the United

19 States' crossclaim). The order explained that OWRD did not believe it had authority to stop

20 Reclamation from releasing stored water through Link River Dam as the circuit court had

21 ordered. (STIPDX-000435 ("Notwithstanding the order's directive, the Department has

22 identified no source of state law that authorizes the watermaster to prohibit the distribution, use

23 or release of stored water from UKL as directed in the October 13, 2020 order.").) OWRD also

24 _____

25       [5] OWRD sought to appeal and stay the order, without success, initially, because the
order was not an appealable judgment. (*See* STIPDX-000430, Apr. 6 Order.) OWRD moved to
stay the order, and the court denied that motion. (Register of Actions, *KID v. OWRD*, No.
26 20CV17922 (as of Dec. 23, 2021), ECF 991-10 at 6-7 (motion filed Oct. 15, 2020, denied Jan.
4, 2021).)

27       [6] Active monitoring of reservoirs by OWRD is not the norm. *See* Or. Rev. Stat. §
540.210(1) (providing that water users may "ask[] the watermaster to take charge of [a]
28 reservoir for the purpose of making a just division or distribution of water").

noted that it was "not clear that every release of stored water other than for [state-law water rights] is thereby unlawful." (*Id.* (quotation marks omitted).)

Recognizing that the Marion County court likely did not intend to require OWRD to order Reclamation to violate federal law, OWRD took a two-part approach. First, to comply with the court's injunction, OWRD ordered Reclamation to stop releasing water from Upper Klamath Lake except to satisfy state-law water rights:

> The Bureau is ordered to immediately preclude or stop the distribution, use or release of stored water from the UKL, in excess of amounts that may be put to beneficial use under KA 1000 downstream of the Link River Dam.

(STIPDX-000436, Apr. 6 Order.) Second, to avoid ordering Reclamation to violate federal law, OWRD included a paragraph providing that the order did not alter Reclamation's other legal obligations, such as those under federal law or court orders:

> Nothing in this order alters, relieves or releases any person, state, or federal agency from any and all rights, duties or obligations arising from other sources of law including without limitation other state laws or rules, federal laws and related federal agency regulations, federal or state court orders, or contracts.

(*Id.*)

### D. OWRD Appealed the Circuit Court's Injunction and Seeks a Stay of the April 6 Order.

In June 2021, the Marion County Circuit Court entered a judgment finalizing its injunction, which OWRD promptly appealed to the Oregon Court of Appeals. (STIPDX-000235–36, Marion Cnty. Cir. Ct. Gen. J. (June 14, 2021); Register of Actions, *KID v. OWRD*, ECF 991-10 at 9.) The appeals court granted OWRD's request for a stay of the April 6 Order in December 2021. (Order Granting Stay, *KID v. OWRD*, No. A176270 (Or. Ct. App. Dec. 17, 2021), ECF 991-14.) Briefing in the appeal has since concluded, and the Court of Appeals has taken the case under advisement following oral argument held on July 15, 2022.

1

2

**E.      In Response to the April 6 Order and the Later Notices of Violations,
Reclamation Generally Asserted That the Endangered Species Act Preempts
OWRD's Authority.**

3      Also in June 2021, Reclamation submitted a petition for reconsideration of the April 6

4   Order to OWRD. (STIPDX-000254, Recl. Letter to OWRD re: Pet. for Reconsideration (June 4,

5   2021).) Reclamation interpreted OWRD's order to preclude it from releasing water to meet

6   federal ESA requirements or fulfill downstream reserved water rights. (*Id.* at -000254–55.)

7   Based on that reading, Reclamation asserted that "OWRD [had] overstepped its jurisdiction"

8   and that the order was therefore *ultra vires* and facially invalid. (*Id.* at -000255.)

9      On July 2, 2021, OWRD issued a Notice of Violation based on Reclamation's stored

10   water releases from Link River Dam on June 28, 2021. (STIPDX-000229, OWRD, Not. of

11   Violation (July 2, 2021).) In that notice, OWRD acknowledged that Reclamation "operates the

12   Project pursuant to the Reclamation Act of 1902 . . . as well as other federal laws and

13   regulations, including but not limited to the [ESA]," but it made no findings regarding whether

14   the June 28 releases were for ESA or other federal-law purposes. (*Id.* at -000225.) Thus,

15   "according to the best information available to it, the Department conclud[ed] that legally stored

16   water was passing through the Link River Dam [on June 28] in violation of the ORDER dated

17   April 6, 2021." (*Id.* at -000229.) The notice further provided that if the "violation [was] not

18   corrected within one (1) day from the date of [the] notice the Bureau may be subject to further

19   agency action or any other lawful remedy." (*Id.* at -000230.) Reclamation submitted a letter

20   response the following day, reiterating its position that OWRD did not have authority to issue

21   the Order or the notice of violation. (STIPDX-000221, Recl. Letter to OWRD re: Initial Resp.

22   (July 3, 2021).)

23      On July 28, 2021, OWRD issued another notice to Recl. finding two more violations of

24   the April 6 Order. (STIPDX-000218, OWRD, Determination on Status of Releases (July 28,

25   2021).) Specifically, OWRD determined that, on June 29 and July 2, 2021, Reclamation had

26   released 10 cubic feet per second (cfs) of water "in excess of permitted purposes by users with

27   existing water rights of record or determined claims to use the stored water in [Upper Klamath

28

Lake]." (*Id.*) The notice did not impose any sanction, and instead provided that OWRD would "continue to monitor conditions." (*Id.*)

### F. The United States Filed Its Crossclaim, Bringing OWRD Into the Litigation.

In October 2021, the United States filed its crossclaim in this case, seeking declaratory and injunctive relief against OWRD on the ground that OWRD does not have authority to issue orders to Reclamation that might interfere with Reclamation's federal-law obligations. (Crosscl., ECF 963.) OWRD then filed a counterclaim against the United States, asserting that Section 8 of the Reclamation Act of 1902 requires Reclamation to comply with state law in its Klamath Project operations. (Countercl., ECF No. 1021.) OWRD requested a permanent injunction requiring Reclamation to provide sufficiently detailed information to establish that the quantity of particular releases through Link River Dam is required by the Endangered Species Act or other federal law, so that OWRD can identify which releases are preempted by federal law and beyond the scope of OWRD's regulatory authority. (Countercl., Prayer for Relief ¶ 1.) The United States and Plaintiffs subsequently filed motions for summary judgment on the crossclaim. (U.S. Mot. Summ. J. (U.S. MSJ), ECF No. 1027; Pls.' Mot. Partial Summ. J. (Pls.' MPSJ), ECF No. 1029.)

### STANDARD OF REVIEW

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.56(a). The initial burden for a motion for summary judgment rests with the movant, who must demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant satisfies that burden, the burden shifts to the nonmovant to demonstrate the existence of a triable fact. *Id.* "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249

1   F.3d 1132, 1136 (9th Cir. 2001). "The court must rule on each party's motion on an individual

2   and separate basis, determining, for each side, whether a judgment may be entered in

3   accordance with the Rule 56 standard." *Id.* (quotation marks omitted). When ruling on those

4   cross-motions, the court must consider all evidence filed in support of those motions. *Id.* at1137.

5                                                      **ARGUMENT**

6          As discussed in the further detail below, OWRD agrees, as it must, that the Supremacy

7   Clause of the U.S. Constitution makes federal law the rule of decision when state law and

8   federal law directly conflict. OWRD disagrees, however, that the overlap of state water law and

9   the ESA divests OWRD of authority to regulate the storage and distribution of water stored

10  under Reclamation's state-law water right. OWRD thus opposes the United States' and

11  Plaintiffs' motions for summary judgment and further cross-moves for summary judgment in

12  OWRD's favor on its counterclaim.

13  **I.      OWRD IS ENTITLED TO SUMMARY JUDGMENT ON ITS COUNTERCLAIM**

14         This Court should grant summary judgment in OWRD's favor on its counterclaim because

15  (1) Section 8 of the Reclamation Act requires Reclamation to comply with state law in its

16  operation of reclamation projects unless the state law directly conflicts with federal law; (2)

17  OWRD has the authority to regulate water rights, including Reclamation's water rights, under

18  Oregon law.

19         **A.      The Reclamation Act of 1902 Requires Reclamation to Comply with State Law
                     Unless There Is a Direct Conflict with Federal Law.**
20

21         Section 8 of the Reclamation Act of 1902 requires the Secretary of the Interior to comply

22  with state laws "relating to the control, appropriation, use, or distribution of water used in

23  irrigation," except where the state law directly conflicts with federal law. 43 U.S.C. § 383;

24  *California v. United States*, 438 U.S. 645 (1978).

25         In the seminal case *California v. United States*, the U.S. Supreme Court examined the

26  extent to which Section 8 allowed the state to condition Reclamation's impoundment and

27  distribution of surface water on compliance with various state-law-based requirements. The

28  Court broadly construed Section 8 and upheld California's imposition of twenty-five separate

conditions on Reclamation's permit, including one that precluded Reclamation's impoundment of any water at all until it submitted certain documentation to the state's water board. *Id.* at 652, 674-75. In finding that Reclamation was indeed subject to California's oversight authority, the Court noted that Section 8 followed the "well-established precedent in national legislation of recognizing local and State laws relative to the appropriation and distribution of water." The Court found that Section 8's legislative history "makes it abundantly clear that Congress intended to defer to the substance, as well as the form, of state water law." *Id.* at 674-75. In addition, the Court emphasized "the legal confusion that would arise if federal water law and state water law reigned side by side in the same locality." *Id.* at 668-69.

But the Supreme Court also concluded that "Congress did not intend to relinquish total control of the actual distribution of the reclamation water to the states." *Id.* at 668 n.21. Preserving federal supremacy, the Court found that "state water law does not control in the distribution of reclamation water *if* inconsistent with other congressional directives to the Secretary." *Id.* (emphasis in original). On remand, the Ninth Circuit held that "inconsistent with congressional directives" means a preempting federal statute that displaces state law. *United States v. Cal. State Water Res. Control Bd.*, 694 F.2d 1171, 1176 (9th Cir. 1982) (quotation marks omitted).

Indeed, the United States agrees that Reclamation must generally comply with state law, conceding that "state law shall govern the appropriation, distribution, and use of water under federal reclamation projects" unless the state law is "'inconsistent with other congressional directives.'" (Crosscl. ¶ 105, *quoting California v. United States,* 438 U.S. at 668 n.21.) That state law is discussed below.

### B. Absent a Direct Conflict with Federal Law, OWRD Has Regulatory Authority over Reclamation Under the Oregon Water Code

As the holder of provisionally determined water rights under the ACFFOD, Reclamation is subject to OWRD's regulatory authority. The Oregon Water Code and related administrative rules are intended "to secure the equal and fair distribution of water in accordance with the rights of the various users." Or. Rev. Stat. § 540.145. The rules apply to all established water-

1  rights holders, including water users with provisionally determined rights, such as Reclamation.

2  *Id.* Absent a direct conflict with federal law, OWRD can freely exercise that authority over

3  Reclamation. *See California v. United States*, 438 U.S. at 668.

4      The dispute here is not whether Oregon law applies to Reclamation's operation of the

5  Klamath Project—it unquestionably does—but where the line is drawn between OWRD's

6  lawful regulation of the Klamath Project and Reclamation's independent obligations under the

7  Endangered Species Act, which are not subject to state law.

8      As with other types of preemption, state law is inconsistent only "to the extent that it

9  *actually conflicts* with federal law." *Knox v. Brnovich*, 907 F.3d 1167, 1175 (9th Cir. 2018)

10 (emphasis added); *see In re Volkswagen "Clean Diesel" Marketing, Sales Practices, &*

11 *Products Liability Litig.*, 959 F.3d 1201, 1213 (9th Cir. 2020) ("[T]he Court does not infer

12 Congress intended to preempt state enactments merely because they overlap with a federal

13 act."). Further, in the reclamation context, courts start with a presumption *against* finding

14 conflict, due to Congress's "long history of purposeful and continued deference to state water

15 law." *Cal. State Water Res. Control Bd.*, 694 F.2d at 1176.

16     In challenging OWRD's April 6 Order, the United States contends that OWRD did not

17 have authority to issue the April 6 Order at all. This is wrong. OWRD has the authority and duty

18 to regulate water users' respective rights when a senior water-rights holder makes a "call" for

19 water during shortages, or in the context of a dispute between water users.[7] Or. Rev. Stat.

20 §§ 540.045(a), (b). Specifically, after receiving a complaint of water shortage or unlawful use, a

21 watermaster must initiate an investigation, which may involve reviewing relevant records to

22 ascertain the priority and scope of the rights at issue and performing field inspections to

23 determine the availability of sufficient water to meet the relevant rights. Or. Admin. R. § 690-

24

25     [7] OWRD notes that, prior to issuing findings of fact and order of determination, OWRD does not have the authority to regulate either in favor of or against the claims asserted in a general stream adjudication. That is because OWRD's regulatory authority is limited to "water

26 rights of record" and "determined claims." *Id.* §§ 540.045(1) (water rights of record), 539.170 (determined claims). By their nature, pre-Water Rights Code rights and federal reserved rights

27 are not "of record" or "determined claims." Thus, before the ACFFOD was issued in 2014, OWRD did not regulate water disputes involving asserted pre-1909 claims in the Klamath

28 Basin.

250-0100(1). If the investigation reveals a valid complaint, the watermaster may begin regulating the users' appropriation in accordance with their existing water rights of record. Or. Admin. R. §§ 690-250-0100(1), (2). The watermaster is authorized to take physical control of the headgates, valves, or other control works at the point of diversion when regulating water users. Or. Rev. Stat. § 540.045(c). Where a dispute involves the division of water from a reservoir, the watermaster, upon the request of a water user or reservoir owner, may take exclusive charge of the reservoir to divide or distribute the water in accordance with the respective rights of the users. Or. Rev. Stat. § 540.210(1)–(3).

Despite acknowledging that state law rightly governs at least some aspects of the Klamath Project, the United States has taken the position that the Challenged Orders—that is, the April 6 Order and the July 2 and July 28 notices of violations—are facially and entirely invalid because they allegedly "limit and/or regulate Reclamation's compliance with federal law." (Crosscl. ¶ 103.) The United States seeks to preclude OWRD from issuing any future orders that may involve an overlap of state water law and the ESA. (*Id.* ¶ 102, Prayer for Relief ¶ A.1.; U.S. MSJ at 48–60.) The United States' position cannot stand.

Although OWRD disagrees with the Marion County Circuit Court's conclusion that OWRD could stop Reclamation from releasing stored water from the Upper Klamath Lake under the circumstances before it, as a general matter OWRD may issue orders to Reclamation in response to a call or a notice of dispute. Reclamation must comply with such orders or explain with specificity why compliance is not possible.

OWRD agrees that it cannot compel Reclamation to stop complying with the Endangered Species Act. But neither can the United States assert that OWRD has no authority over Reclamation because an order might touch on matters of federal law. In the event of a call by a senior water-rights holder or a notice of dispute, at minimum Reclamation must comply with OWRD's investigation into the availability of water.

//

//

//

1

2

## II. THIS COURT SHOULD REJECT THE UNITED STATES' ARGUMENT THAT OWRD CANNOT ISSUE ORDERS "IMPINGING" ON RECLAMATION'S COMPLIANCE WITH FEDERAL LAW.

3

The United States' argument that OWRD does not have jurisdiction to issue orders

4

impinging on Reclamation's compliance with federal law is particularly problematic because, as

5

discussed further below, the United States mischaracterizes the April 6 Order as interpreting

6

federal law, incorrectly asserts that OWRD's authority is limited to water-rights administration

7

and adjudication, and improperly attempts to limit OWRD's regulatory authority based on a

8

novel theory that OWRD's action "impinged" on Reclamation's compliance with federal law.

9

(*See* U.S. MSJ 43.)

10

First, the United States ignores the context that led to the April 6 Order and characterizes

11

the Order as "effectively" and "implicitly" interpreting federal law and contracts. (*Id.* at 43.) But

12

the Order did neither. The Order's language requiring Reclamation to cease releasing stored

13

water from Link River dam was taken directly from the state-court injunction against OWRD,

14

which was based entirely on state law. (*See* STIPDX-000435.) The references to Reclamation's

15

obligations under federal law and the savings clause (which provided that the Order does not

16

take precedence over federal law) simply reflected OWRD's acknowledgment of the situation as

17

it existed. The Order also stated that the Oregon Water Code likely does not provide authority

18

for the injunction, that OWRD does not have authority to stop Reclamation from releasing water

19

as ordered, and that OWRD had no choice but to comply with the injunction by issuing the

20

April 6 Order. (*Id.*) Nothing in the Order purports to interpret Reclamation's obligations under

21

federal law.

22

Second, the United States' argument that OWRD only has "jurisdiction"[8] over water-

23

rights adjudication and administration relies on several cases that say no such thing. (U.S. MSJ

24

at 44.) For example, the United States suggests that the court in *Klamath Water Users Protective*

25

*Ass'n v. Patterson*, 204 F.3d 1206 (9th Cir. 1999), recognized that the federal court had

26

---

27

[8] The United States' first cause of action turns on OWRD's *authority*, not on its jurisdiction. Oregon statutes provide that OWRD, through its director, "shall . . . [a]dminister and enforce the laws of the state concerning the water resources of this state." Or. Rev. Stat. §

28

536.037(c).

1  jurisdiction over Reclamation's Klamath Project operations, while the state court had

2  jurisdiction over "'questions of relative amounts and priorities [of water rights], at least within

3  the State of Oregon,' which were being addressed in the state court in the [Klamath Basin

4  Adjudication]." (U.S. MSJ at 44.) But the *Patterson* court did not even consider jurisdiction, let

5  alone draw the distinction the United States makes. Instead, the court considered whether the

6  irrigators' water rights were subservient to the Tribes' water rights, an issue that under the

7  United States' reasoning should have been beyond the court's jurisdiction. *Patterson*, 203 F.3d

8  at 1214. In fact, the court mentioned the Klamath Basin Adjudication in a footnote specifically

9  because the court wanted to clarify that its decision was limited to the parties before it and did

10  not involve "the relative rights of others not before the court to the use of the waters of the

11  Basin." The court did not mention OWRD at all.

12         Similarly, the United States' characterization of the holding in the unpublished opinion

13  *WaterWatch of Oregon v. Winchester Water Control District*, No. 3:20-cv-01927-IM, 2021 WL

14  4317150 (D. Or. Sept. 22, 2021), is simply wrong. The United States asserts that the

15  *WaterWatch* court found "that OWRD did not have primary jurisdiction over dam 'operations'

16  as opposed to administration of water rights." (U.S. MSJ 44.) Far from reaching any such

17  conclusion, the court simply noted that "there is no indication that either the OWRD or the

18  ODFW is conducting any process that will impact the [dam] operations." 2021 WL, at *6-7. The

19  court declined to dismiss the case under the primary-jurisdiction doctrine, but it did so because

20  the case did not "require expertise specific to an administrative body." *Id.*

21         The cases in no way suggest that OWRD's authority is limited to matters of water-rights

22  adjudication and administration. Although OWRD agrees that federal law may preempt its

23  regulatory authority if there is a direct conflict between state and federal law, OWRD does not

24  agree that it only has authority over water-rights adjudication and administration. That OWRD

25  has authority to administer water rights does not mean OWRD is unauthorized to do anything

26  else.

27         Finally, the United States cites no authority for its vague contention that OWRD may not

28  "impinge" on Reclamation's obligations under federal law. "Impingement" is not the standard in

this context. Instead, Section 8 of the Reclamation Act requires that "state law shall govern the appropriation, distribution, and use of water under federal reclamation projects" unless the state law is "'inconsistent with other congressional directives.'" (Crosscl. ¶ 105, *quoting California v. United States,* 438 U.S. at 668 n.21.) The Court should reject the United States' argument.

### III.   INTERGOVERNMENTAL IMMUNITY DOES NOT APPLY TO OWRD'S REGULATORY ORDERS.

The United States argues that, under the doctrine of intergovernmental immunity, OWRD cannot "directly regulate the conduct of the federal government," to include "Reclamation's release of water from UKL in its operation of the Klamath Project." (U.S. MSJ 46.)  But the doctrine only applies in the absence of a "clear and unambiguous declaration by the Congress." *Hancock v. Train*, 426 U.S. 167, 180 (1976). As the Ninth Circuit noted more than four decades ago, Section 8 of the Reclamation Act provides just such a clear and unambiguous declaration. *Columbia Basin Land Protection Ass'n v. Schlesinger*, 643 F.2d 585, 605 (9th Cir. 1981) (explaining that in *California v. United States*, the Reclamation Act required Reclamation to obtain and comply with a state water appropriation permit, based on "the very clear and specific language" of Section 8, which "leaves no room for doubt" that Congress intended Reclamation to submit to state requirements).

Without acknowledging *Columbia Basin* or citing any other cases discussing the Reclamation Act, the United States asserts that "the Challenged Orders are invalid because they directly regulate the conduct of the federal government, and Congress has not clearly and unambiguously authorized such regulation under Section 8 of the Reclamation Act." (U.S. MSJ 47.) The United States is wrong.

The United States also asserts that "it is well-established that 'the activities of federal installations are shielded by the Supremacy Clause from direct state regulation unless Congress provides 'clear and unambiguous' authorization for such regulation.'" (Crosscl. ¶ 103 (quoting *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180 (1988)) But the Supreme Court has already answered the question of whether Reclamation-owned dams are subject to state regulation of water distribution. Under *California v. United States*, Reclamation is required to comply with

1   state regulation of water distribution, so long as the state regulation is not inconsistent with

2   other congressional directives. *See Cal. State Water Res. Control Bd.*, 694 F.2d at 1182

3   (explaining that state law could "control [a] federally funded dam" by controlling "the

4   impoundment of water into the dam and the distribution of water from the dam to individual

5   landowners").

6   **IV.   SECTION 8 OF THE RECLAMATION ACT DOES NOT PREVENT OWRD FROM**
    **REGULATING WATER IN AN INTERSTATE STREAM WHEN THAT WATER IS**
7   **LOCATED IN THE STATE OF OREGON.**

8           Plaintiffs incorrectly argue that Section 8 of the Reclamation Act "prevents" OWRD

9   from regulating in-state water in an interstate stream. (Pls.' MPSJ at 28–31.) Plaintiffs make that

10  argument by reading Section 8's limitation clause as an "exclusion." (Pls.' MPSJ at 28.) To the

11  contrary, the limitation clause left in place the already-existing laws applicable to interstate

12  waters. Further, Plaintiffs attempt to incorporate principles from the doctrine of equitable

13  apportionment, which is not applicable to the United States' preemption-based claims.

14  Plaintiffs' construction of Section 8 is incorrect, and this Court should reject it.

15          **A.   The Reclamation Act Did Not Affect Existing Law on Interstate Waters**

16          Plaintiffs read Section 8 atextually to argue that it both "prevents" OWRD from

17  regulating Reclamation and "allows" Reclamation to ignore an upstream state's water laws

18  based on downstream impacts in another state. (Pls.' MPSJ at 28.) Contrary to Plaintiffs'

19  construction, Section 8's own terms provide that the Reclamation Act *does not affect* each

20  state's right to regulate water within their own borders, even in interstate streams.

21          This is straightforward statutory construction. "The purpose of statutory construction is

22  to discern the intent of Congress in enacting a particular statute." *United States v. Daas,* 198

23  F.3d 1167, 1174 (9th Cir. 1999). "The first step in ascertaining congressional intent is to look to

24  the plain language of the statute." *Id.* "[T]he words of a statute must be read in their context and

25  with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't. of*

26  *Treasury*, 489 U.S. 803, 809 (1989). "The plain meaning of the statute controls, and courts will

27  look no further, unless its application leads to unreasonable or impracticable results." *Daas*, 198

28  F.3d at 1174.

Here, the plain meaning of Section 8 provides that the Reclamation Act *does not affect* existing state laws and rights relating "to the control, appropriation, use or distribution of water" in interstate streams:

> Nothing in this Act shall be construed as affecting or intended to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the provisions of this Act, shall proceed in conformity with such laws, and nothing herein shall in any way affect any right of any State or of the Federal Government or of any landowner, appropriator, or user of water in, to, or from any interstate stream or the waters thereof.

43 U.S.C. § 383. In other words, Section 8 is not a source of law with respect to interstate waters. Plaintiffs are thus incorrect to argue that Section 8 either "prevents" OWRD from regulating Reclamation or "allows" Reclamation to ignore state water law in interstate waters.

Indeed, as Plaintiffs recognize, "[a] state has sovereign authority over . . . those waters within the state." (Pls.' MPSJ at 28, *citing Martin v. Lessee of Waddell*, 41 U.S. 367, 410 (1842)). *See also California Oregon Power Co. v. Beaver Portland Cement Co.*, 295 U.S. 142 (1935) (emphasizing that a state has plenary control over non-navigable waters within its boundaries and interpreting the Desert Lands Act). Under longstanding precedent, "the people of each state . . . hold the absolute right to all their navigable waters, . . . subject only to the rights since surrendered by the constitution to the general government." *Martin v. Lessee of Waddell*, 41 U.S. at 410. Still today, the Court recognizes that a state's "authority to regulate the water within its borders" is an "essential attribute of sovereignty." *Tarrant Regional Water Dist. v. Herrmann*, 569 U.S. 614, 631–33 (2013) (quotation marks and citations omitted).

This case concerns the control of water located in Oregon. (*See* STIPDX-000426–36, Apr. 6 Order.) The United States and Plaintiffs take issue with the Challenged Orders because the orders could affect the amount of water that flows downstream into the State of California. OWRD readily concedes that federal law, such as the ESA, may preempt its orders, and that federal laws can impose limits on states' authority. But Section 8 of the Reclamation Act, by its

own terms, is not one of those federal laws, and it does not "prevent" OWRD regulation or "allow" Reclamation to ignore state water law. Plaintiffs are incorrect to argue otherwise.

**B.    Section 8 Does Not Incorporate Equitable-Apportionment Principles, and the United States Has Not Pled an Equitable-Apportionment Action.**

Plaintiffs argue further that Section 8 "incorporates" principles limiting the ability of states to consume natural resources to the detriment of downstream states. (Pls.' MPSJ at 29.) That is wrong. As explained above, rather than "incorporate" any law, Section 8 defers to existing law. Also, the principles on which Plaintiffs rely are taken from the doctrine of equitable apportionment, which does not apply to this preemption-based declaratory judgment action.

The doctrine of equitable apportionment "aims to produce a fair allocation of a shared water resource between two or more States." *Mississippi v. Tennessee*, 142 S. Ct. 31, 39 (2021). "Traditionally, equitable apportionment has been the exclusive judicial remedy for interstate water disputes, unless a statute, compact, or prior apportionment controls." *Id.* at 37.

That doctrine is not applicable here, because the United States has not pled a claim for equitable apportionment. (*See* Crosscl. ¶¶ 97–110 (asserting claim for declaratory relief based on preemption by the ESA).) And even if it did, it is unlikely that the United States could make such a claim. Equitable-apportionment actions are typically initiated by a state against another state under the U.S. Supreme Court's original jurisdiction. *See, e.g.*, *Idaho v. Oregon*, 462 U.S. 1017 (1983); *Colorado v. New Mexico*, 459 U.S. 176 (1982); *Florida v. Georgia*, 141 S. Ct. 1175 (2021). OWRD is not aware of any equitable-apportionment actions initiated by the United States, and the U.S. Supreme Court has previously rejected arguments that tribal governments can bring an equitable apportionment claim. *Arizona v. California*, 373 U.S. 546, 597 (1963).[9]

---

[9] *Arizona* was disavowed on other grounds in *California v. United States*, 438 U.S. at 674, *see also Arizona v. California*, 460 U.S. 605, 616 (1983) (discussing rejection of argument in 1963 case).

Also, although tribal governments cannot bring equitable-apportionment actions, they

(continued…)

Plaintiffs rely on equitable-apportionment caselaw for their argument that Section 8 somehow limits OWRD's regulatory authority over in-state waters. *See* (Pls.' MPSJ at 29); *Hinderlider v. La Plata River & Cherry Creek Ditch Co.*, 304 U.S. 92, 102–03, 109–11 (1938) (describing applicability of doctrine); *Mississippi v. Tennessee*, 142 S. Ct. 31, 39–41 (2021) (applying doctrine); *Wyoming v. Colorado*, 259 U.S. 419, 464, 466 (1922)[10] (same)). As explained in the previous section, conflicting federal law may preempt OWRD's orders, but the doctrine of equitable apportionment plays no part in that analysis. Plaintiffs' reliance on the principles underlying that doctrine is thus misplaced.

In sum, Plaintiffs' construction of Section 8 of the Reclamation Act is incorrect. Section 8, by its own terms, provides that the Reclamation Act in no way affects laws governing the water rights of states, the federal government, or water users in interstate streams. 43 U.S.C. § 383. And as Plaintiffs acknowledge, it is well-settled that a state has full authority to regulate water located within its borders. Plaintiffs' attempt to read an "interstate waters exclusion" into Section 8 contradicts the plain meaning of the statute, and this Court should reject that reading.

## V. THE UNITED STATES' AND PLAINTIFFS' REQUESTED REMEDIES ARE OVERBROAD, BECAUSE STATE LAW IS PREEMPTED ONLY *TO THE EXTENT* IT CONFLICTS WITH FEDERAL LAW.

Putting aside the merits, the United States' and Plaintiffs' requested remedies are inappropriate, because they far exceed the alleged harm. Both the United States and Plaintiffs argue that the Challenged Orders must be declared invalid in their entirety, and that OWRD must be entirely enjoined from enforcing them. (*See* U.S. MSJ at 71 (asking Court to "enjoin further enforcement of the Challenged Orders); Pls.' MPSJ at 49 (similar).) Plaintiffs further seek an injunction to "enjoin OWRD from issuing or enforcing . . . similar, successor orders." (Pls.' MPSJ at 49.) The requested relief is inappropriate.

---

can participate by intervention. *See South Carolina v. North Carolina*, 558 U.S. 256, 268 (2010) (explaining that, in a successor case, *Arizona v. California*, 460 U.S. 605 (1983), "the Court allowed Indian tribes to intervene in a sovereign dispute concerning the equitable apportionment of the Colorado River").

[10] The decree in *Wyoming v. Colorado*, 259 U.S. 419 (1922), was vacated in *Wyoming v. Colorado*, 353 U.S. 953 (1957).

First, if this Court is to issue declaratory relief, that relief must conform to the decisions on the merits. 28 U.S.C. § 2201(a) authorizes courts to "declare the rights and other legal relations" of the parties, and the declaratory judgment must therefore be consistent with the rights and legal relations determined in these proceedings.

Here, the United States and Plaintiffs seek to preempt the orders (and, in the case of Plaintiffs, future orders) "merely because they overlap with [the ESA]." *In re Volkswagen*, 959 F.3d at 1213. As explained, that is not the law. *See id.* at 1213. If this Court holds that the orders conflict with federal law in particular ways, then its declaratory judgment should identify those specific conflicts; it should not simply declare that the Challenged Orders are "invalid."

Second, neither the United States nor Plaintiffs have justified the need for further injunctive relief. "[D]istrict court[s] can generally protect [the] interests of a federal plaintiff by entering a declaratory judgment, and therefore the stronger injunctive medicine will be unnecessary." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975). That is especially so when enjoining state action, due to the resulting impairment of states' interests and concerns for federalism. *Wooley v. Maynard*, 430 U.S. 705, 712 (1977). To be sure, it is not an absolute policy. *Id.* Nonetheless, "[t]o justify such interference there must be exceptional circumstances and a clear showing that an injunction is necessary." *Id.* (quotation marks omitted).[11]

Here, neither the United States nor Plaintiffs explain why declaratory relief would be insufficient. Given the Ninth Circuit's preference for "negotiation" and "mutual accommodation" in lieu of litigation for interstate water cases and for cases raising federalism concerns (this case involves both), that lack of explanation is fatal for the additional injunctive relief sought.

Last, "[i]njunctive relief . . . must be tailored to remedy the specific harm." *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991); *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction

---

[11] The U.S. Supreme Court stated that standard in the context of "afford[ing] adequate protection of constitutional rights." *Id.* OWRD assumes without conceding that the standard applies equally here.

is essentially the same as for a permanent injunction with the exception that the plaintiff must

show a likelihood of success on the merits rather than actual success."). "An overbroad

injunction is an abuse of discretion." *Lamb-Weston*, 941 F.2d at 974.

As explained, it is the law of this circuit that "a state limitation or condition on the

federal management or control of a federally financed water project is valid unless it clashes

with express or clearly implied congressional intent or works at cross-purposes with an

important federal interest served by the congressional scheme." *United States. v. California*, 694

F.2d at 1177. Here, the United States' and Plaintiffs' requested injunctive relief goes beyond

those circumstances, and it is thus overbroad for that reason.

## CONCLUSION

For the reasons discussed above, OWRD respectfully requests that this Court grant its

motion for partial summary judgment and find that Reclamation must comply with state law,

unless a direct conflict between state and federal law exists.


DATED July  29 , 2022.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General


*/s/ Sara Van Loh*
SARA VAN LOH
Senior Assistant Attorney General
*Attorneys for Oregon Water Resources Department*